# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| REBECCA BROWN and AUGUST TERRENCE ROLIN, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO. 2:20-cv-00064-LPL |
| TRANSPORTATION SECURITY ADMINISTRATION; DAVID P. PEKOSKE, Administrator, Transportation Security Administration, in his official capacity; DRUG ENFORCEMENT ADMINISTRATION; UTTAM DHILLON, Acting Administrator, Drug Enforcement Administration, in his official Capacity; "STEVE" LAST NAME UNKNOWN, Agent, Drug Enforcement Administration, in his individual capacity; and UNITED STATES OF AMERICA, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## THE GOVERNMENT DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................ 2

   I.  Factual Background ................................................................................ 2

     A. Plaintiffs' Experience ........................................................................ 2

     B. DEA Currency Seizures .................................................................... 5

   II.  Procedural History ................................................................................ 6

ARGUMENT ...................................................................................................... 7

   I.  The Court Should Dismiss Counts I-III for Lack of Subject Matter Jurisdiction and Failure to State a Claim Upon Which Relief May Be Granted ................................. 7

     A. Plaintiffs Lack Standing To Raise the Claims in Counts I-III ...................... 7

     B. The Court Lacks Jurisdiction To Review Claims Challenging TSA Policies and Procedures .......................................................... 11

     C. Counts I-III Fail To State A Claim on Which Relief May Be Granted ...................... 12

        1.  Plaintiffs Have Not Plausibly Alleged *Ultra Vires* or Unconstitutional Action by TSA ................................................................ 14

          a. Plaintiffs Have Not Plausibly Alleged *Ultra Vires* Action by TSA .................. 14

          b. Plaintiffs Have Not Plausibly Alleged That TSA Is Violating the Fourth Amendment ................................................... 17

        2.  Plaintiffs Have Not Plausibly Alleged a Fourth Amendment Violation by the DEA .............................................................. 18

   II.  The Court Should Dismiss Count IV for Lack of Subject Matter Jurisdiction ................ 20

     A. Plaintiffs' Return of Property Claim Is Moot ............................................ 20

     B. Sovereign Immunity Bars Plaintiffs' Claim for Interest .............................. 21

CONCLUSION .................................................................................................. 22

# TABLE OF AUTHORITIES

## CASES

*Adamski v. McHugh*,
    304 F. Supp. 3d 227 (D.D.C. 2015) ...................................................................... 15

*Already, LLC v. Nike, Inc.*,
    568 U.S. 85 (2013) ............................................................................................... 8

*Alvarez v. Smith*,
    558 U.S. 87 (2009) ............................................................................................. 20

*Argueta v. U.S. Immigration & Customs, Enf't*,
    643 F.3d 60 (3d Cir. 2011) ................................................................................ 20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................... *passim*

*Bark v. U.S. Forest Serv.*,
    37 F. Supp. 3d 41 (D.D.C. 2014) ....................................................................... 13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................... 12

*Bennett v. Spear*,
    520 U.S. 154 (1997) ........................................................................................... 13

*Brown v. Fauver*,
    819 F.2d 395 (3d Cir. 1987) ................................................................................ 8

*Buck v. Hampton Twp. Sch. Dist.*,
    452 F.3d 256 (3d Cir. 2006) ................................................................................ 2

*City of L.A. v. Lyons*,
    461 U.S. 95 (1983) ................................................................................... 8, 9, 11

*Clapper v. Amnesy Int'l*,
    568 U.S. 398 (2013) ............................................................................................ 8

*Cobell v. Kempthorne*,
    455 F.3d 301 (D.C. Cir. 2006) ........................................................................... 13

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006) ............................................................................................ 7

*Danvers Motor Co. v. Ford Motor Co.*,
    432 F.3d 286 (3d Cir. 2005) ................................................................................ 8

*Florida v. Bostick*,
 501 U.S. 429 (1991) ................................................................................................ 19

*Florida v. Royer*,
 460 U.S. 491 (1983) ................................................................................................ 19

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
 528 U.S. 167 (2000) .................................................................................................. 8

*Gould Elecs., Inc. v. United States*,
 220 F.3d 169 (3d Cir. 2000) ..................................................................................... 9

*In re Horizon Healthcare Servs. Inc. Data Breach Litig.*,
 846 F.3d 625 (3d Cir. 2017) ..................................................................................... 9

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*,
 678 F.3d 235 (3d Cir. 2012) ..................................................................................... 7

*Kerchner v. Obama*,
 612 F.3d 204 (3d Cir. 2010) ..................................................................................... 8

*Library of Congress v. Shaw*,
 478 U.S. 310 (1986) ................................................................................................ 21

*Losch v. Borough of Parkesburg*,
 736 F.2d 903 (3d Cir. 1984) ................................................................................... 17

*Lujan v. Defs. of Wildlife*,
 504 U.S. 555 (1992) .............................................................................................. 7, 8

*Malik v. Meissner*,
 82 F.3d 560 (2d Cir. 1996) ..................................................................................... 17

*McCall v. City of Philadelphia*,
 396 F. Supp. 3d 549 (E.D. Pa. 2019) ..................................................................... 17

*McNair v. Synapse Grp. Inc.*,
 672 F.3d 213 (3d Cir. 2012) ................................................................................. 9, 11

*McTernan v. City of York*,
 564 F.3d 636 (3d Cir. 2009) ............................................................................. 16, 17

*Merritt v. Shuttle, Inc.*,
 187 F.3d 263 (2d Cir. 1999) ............................................................................. 11, 12

*Monell v. Department of Social Services*,
 436 U.S. 658 (1978) ................................................................................................ 16

*Norton v. S. Utah Wilderness All.*,
   542 U.S. 55 (2004) ................................................................................................. 13

*Raines v. Byrd*,
   521 U.S. 811 (1997) ................................................................................................. 8

*Ruskai v. Pistole*,
   775 F.3d 61 (1st Cir. 2014) ..................................................................................... 11

*Timoney v. Loughery*,
   670 F. App'x 47 (3d Cir. 2016) ............................................................................... 16

*U.S. Parole Comm'n v. Geraghty*,
   445 U.S. 388 (1980) ................................................................................................. 21

*United States v. Aukai*,
   497 F.3d 955 (9th Cir. 2007) ................................................................................... 14

*United States v. Bein*,
   214 F.3d 408 (3d Cir. 2000) ..................................................................................... 21

*United States v. Craig*,
   694 F.3d 509 (3d Cir. 2012), *as modified* (Oct. 5, 2012) .................................. 21, 22

*United States v. Hartwell*,
   436 F.3d 174 (3d Cir. 2006) ..................................................................................... 14

*United States v. Virgin Islands*,
   363 F.3d 276 (3d Cir. 2004) ..................................................................................... 21

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & States, Inc.*,
   454 U.S. 464 (1982) ................................................................................................. 7

*Warth v. Seldin*,
   422 U.S. 490 (1975) ................................................................................................. 8

**STATUTES**

5 U.S.C. § 551 ............................................................................................................ 13

5 U.S.C. § 701 ............................................................................................................ 13

5 U.S.C. § 702 ............................................................................................................ 13

5 U.S.C. § 704 ............................................................................................................ 13

5 U.S.C. § 706 ............................................................................................................ 15

18 U.S.C. § 983 .......................................................................................................... 4

28 U.S.C. § 1331 ........................................................................................... 7, 21, 22

49 U.S.C. § 114 ................................................................................................... 15

49 U.S.C. § 46110 ......................................................................................... 11, 12

49 U.S.C. § 44901 ............................................................................................... 15

**REGULATIONS**

28 C.F.R. § 8.9 ...................................................................................................... 4

49 C.F.R. § 1540.5 .............................................................................................. 15

**RULES**

Fed. R. Civ. P. 12 ........................................................................................ *passim*

Fed. R. Civ. P. 23 ................................................................................................. 6

Fed. R. Crim. P. 41 ........................................................................................ 21, 22

**U.S. CONSTITUTION**

U.S. Const. amend. IV ......................................................................................... 17

U.S. Const. art. III ............................................................................................... 21

Defendants Transportation Security Administration; David P. Pekoske, Administrator, Transportation Security Administration, in his official capacity; Drug Enforcement Administration; Uttam Dhillon, Acting Administrator, Drug Enforcement Administration, in his official capacity; and the United States of America (collectively, "the Government Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Procedure.[1]

## INTRODUCTION

The Court should dismiss Counts I, II, and III of the Complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted. The Court should dismiss Count IV for lack of subject matter jurisdiction.

Counts I and II allege that TSA has a "policy or practice of seizing travelers' currency, carry-on luggage, personal effects, and/or persons—based on the presence of currency on their person or in their carry-on luggage—after the transportation security screening has concluded," Complaint, ECF No. 1 ("Compl.") ¶ 272; *see also id.* ¶ 256. Plaintiffs assert that this purported policy is "ultra vires" and violates the Fourth Amendment. Count III, similarly, alleges that the DEA has a "policy or practice of seizing currency from travelers at U.S. airports without probable cause based solely on the presence of the currency itself." *Id.* ¶ 285. All three counts seek declaratory and injunctive relief. However, Plaintiffs lack standing to raise these claims because, even if they had plausibly alleged that any such policy or practice exists, neither Plaintiff has plausibly alleged he or she is currently being injured or is likely to be injured in the future by that purported policy or practice. In addition, the Court lacks jurisdiction over Counts I and II because

---

[1] The Plaintiffs also assert a claim against a "Steve" Last Name Unknown, who is represented separately and will be filing his own motion to dismiss the claim against him on today's date.

the courts of appeals have exclusive jurisdiction over challenges to TSA policies and procedures. Moreover, Plaintiffs have not plausibly alleged the existence of the purported unlawful policies or practices, and therefore have not stated a claim upon which relief may be granted.

Count IV, which seeks the return of seized currency, is moot because the money at issue has already been returned to Plaintiffs by the DEA. Further, to the extent Count IV seeks interest on the seized currency, it must be dismissed for lack of subject matter jurisdiction because the United States has not waived its sovereign immunity with respect to such claims for interest.

Accordingly, the Court should dismiss the claims against the Government Defendants pursuant to Rules 12(b)(1) and 12(b)(6).

## BACKGROUND

### I.      Factual Background

For the purposes of this motion to dismiss only, the Court may assume the veracity of the well-pleaded factual allegations in the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Except where otherwise indicated, the following facts are derived from the allegations in the complaint, documents incorporated by reference in the complaint, and items of which judicial notice may be taken. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

### A.  Plaintiffs' Experience.

Plaintiff Rebecca Brown ("Brown") is the daughter of Plaintiff August Terrance Rolin ("Rolin"). Compl. ¶¶ 28-29, 32-33. On August 26, 2019, Brown was traveling back to her home in Boston, Massachusetts after visiting her father in Pittsburgh, Pennsylvania. *Id.* ¶¶ 88-89, 100. At the Pittsburgh International Airport, she did not check any luggage. *Id.* ¶ 102. Her carry-on luggage, a beach bag, contained a purse in which Brown had packed $82,373. *Id.* ¶¶ 4-5, 34, 102.

Plaintiffs allege that when Brown went through the TSA checkpoint, a TSA Screener was alerted to the presence of the cash in Brown's luggage. *Id.* ¶ 104. Brown's carry-on luggage was pulled aside by TSA Screeners, but no TSA Screener ever opened or physically inspected Brown's carry-on luggage. *Id.* ¶ 105. After Brown's carry-on luggage was pulled aside, TSA Screeners questioned Brown about the cash inside. *Id.* ¶¶ 8, 109, 111. Brown stated that she was taking the cash to deposit in a bank account for her father, who had accumulated the cash in savings. *Id.* ¶ 13, 109. A TSA Screener asked Brown for her ID and proof of her travel arrangements to and from Pittsburgh, and Brown provided her ID and boarding passes. *Id.* ¶ 110. A TSA Screener took the documents Brown provided and photocopied them. *Id.* Brown asserts that she did not feel free to leave the security screening checkpoint; she believed that both she and her luggage were being held by TSA, and TSA Screeners also had her ID and boarding passes. *Id.* ¶ 114.

TSA Screeners called a Pennsylvania state trooper to the scene, and Brown waited approximately 10-20 minutes for the state trooper to arrive. *Id.* ¶¶ 117-118. When the state trooper arrived, he questioned Brown, and she repeated her explanation of the origin, purpose, and destination of the cash in her luggage. *Id.* ¶ 121. The state trooper then called his supervisor, a lieutenant, and Brown waited an additional 10-15 minutes after which she repeated her explanation to the lieutenant. *Id.* ¶ 122. After this questioning, TSA Screeners permitted Brown to retrieve her carry-on luggage, cash, and other possessions, and resume her trip. *Id.* ¶ 123.

Despite her delay at the screening checkpoint, Plaintiffs allege that Brown made it to her gate with time to spare and began working on her laptop. *Id.* ¶ 126. Soon after she reached the gate, Brown was approached by the state trooper who had questioned her earlier, accompanied by another man in a blue polo shirt. *Id.* ¶ 127. The man in the blue polo shirt said that his name was Steve, that he was a DEA agent, and that he had some questions for her. *Id.* ¶ 128. Brown felt like

she had no choice but to comply with his demand. *Id.* ¶ 129. The trooper and Steve escorted Brown to a less crowded part of the gate area to question her. *Id.* ¶ 130. Brown did not feel free to leave, and she needed to remain near the gate to board her flight. *Id.* ¶ 131. Steve asked Brown to show him the cash in her purse in her carry-on luggage, and Brown felt like she had to comply with this demand and showed Steve the cash. *Id.* ¶ 132. Steve questioned Brown about why she was traveling with the cash, and Rebecca again explained the origins of the cash and why she was traveling with it. *Id.* ¶ 134. After hearing Brown's explanation, Steve asked to speak with Brown's father, Rolin, to verify what Brown had told him. *Id.* ¶ 135. Brown informed Steve that her father was elderly, would still be asleep at 7:00 a.m., and would likely be confused by the call, but Steve insisted that Brown call Rolin so that he could verify Brown's explanation of the cash's purported origin and use. *Id.* ¶ 136. Rolin had difficulty answering all of Steve's questions. *Id.* ¶ 139.

After speaking with Rolin, Steve told Brown that "your answers don't match." *Id.* ¶ 140. Steve then took the cash and searched the rest of Brown's bag. *Id.* ¶ 141. Steve seized the $82,373 cash. *Id.* ¶ 142. Brown was not arrested or charged with a crime, and was permitted to board her flight to Boston. *Id.* ¶ 143.

Rolin and Brown subsequently received CAFRA notices for the $82,373 dated October 11, 2019, from the DEA. *Id.* ¶ 146.

Pursuant to 28 C.F.R. § 8.9(a), the DEA posted notice of the seizure of these funds on Forfeiture.gov, an official internet government forfeiture website, for a period of 30 consecutive days beginning on October 28, 2019, and ending on November 26, 2019.  Decl. of Vicki L. Rashid ("Rashid Decl.") ¶ 3. The internet posting and mailed notices explained the option of filing a claim with the DEA Forfeiture Counsel in order to contest the forfeiture action in United States District Court.  *Id.* ¶ 4 & Exs. A-C. Pursuant to 18 U.S.C. § 983(a)(2)(B), the mailed notices stated that the

deadline to file a claim was November 15, 2019.  *Id.* ¶ 4 & Exs. A-B. If the mailed notice was not received, the internet posting stated that the deadline to file a claim was December 26, 2019. *Id.* ¶ 4 & Ex. C. In addition, the internet posting and mailed notices explained the option of filing a petition for remission or mitigation. *Id.* ¶ 4 & Exs. A-C.

The DEA received claims from both Brown and Rolin on November 12, 2019. *Id.* ¶ 5.

On November 27, 2019, the DEA referred these claims to the Office of the United States Attorney for the Western District of Pennsylvania, requesting the commencement of judicial forfeiture proceedings. *Id.* ¶ 6. The United States Attorney for the Western District of Pennsylvania declined to initiate civil judicial forfeiture proceedings against the $82,373 on February 7, 2020. *Id.* ¶ 7.

On February 28, 2020, the DEA notified the counsel for Brown and Rolin of the decision to return the currency.  *Id.* ¶ 8 & Ex. D. The DEA also requested information from the owner of the currency in order to effect the electronic transfer of the funds.  *Id.*

Counsel for the plaintiffs provided the requested information for August Terrence Rolin on March 5, 2020.  *Id.* ¶ 9 & Ex. E.

On March 23, 2020, a deposit of $82,373 was made to the account identified by Rolin's counsel.  *Id.* ¶ 10 & Ex. F.

**B.  DEA Currency Seizures**

Each year, DEA conducts tens of thousands of seizures of currency, including at least hundreds of seizures of currency from travelers at U.S. airports. Compl. ¶ 219. DEA has operated an "airport interdiction task force" at one or more U.S. airports since at least 1975. *Id.* ¶ 223. DEA sometimes refers to its airport interdiction activities as "Operation Jetway." *Id.* ¶ 224. Operation Jetway is also the name of DEA's transportation interdiction training course. *Id.* The Operation

Jetway interdiction program was established in 1993 with DEA as the lead agency, to provide standardized training and to collect and analyze arrest and seizure data from federal, state, and local drug interdiction units working at airports and other mass transportation facilities. *Id.* ¶ 225. A 2017 report by the DOJ Office of Inspector General ("OIG") reviewed a sample of 100 DEA currency seizures that "appeared to have occurred without a court-issued warrant and without the presence of narcotics" and "found that 85 of the 100 seizures occurred as a result of interdiction operations at transportation facilities, such as airports." U.S. Dept. of Justice, Office of the Inspector General, *Review of the Department's Oversight of Cash Seizure and Forfeiture Activities* at iii (Mar. 2017) ("2017 OIG Report"), https://oig.justice.gov/reports/2017/e1702.pdf (last visited May 28, 2020) (cited in Compl. ¶ 228). Of the 85 DEA interdiction seizures reviewed by the OIG at transportation facilities, 46 occurred at airports. 2017 OIG Report at 22. The OIG Report found that "DEA agents and task force officers may also initiate contacts that lead to seizures after receiving information from airport security screeners that a large volume of currency was packaged within an individual's carry-on or checked luggage." *Id.* at 23.

## II.     Procedural History

On January 15, 2020, Plaintiffs filed their complaint (the "Complaint") in this case, naming as Defendants TSA, the TSA Administrator in his official capacity, DEA, the Acting DEA Administrator in his official capacity, the United States, and a DEA agent named "Steve" (Last Name Unknown) in his individual capacity. ECF No. 1.

The Complaint seeks certification of a nationwide class under Rule 23(b)(2), and brings three claims seeking declaratory and injunctive relief on behalf of the putative class. First, Plaintiffs assert a putative Administrative Procedure Act ("APA") claim alleging that TSA took action outside the scope of its statutory authority by adopting a "policy or practice" of "having

TSA Screeners seize travelers' currency, carry-on luggage, personal effects, and/or their person, based on the presence of currency on their person or in their carry-on luggage, after the transportation security screening has concluded." Compl. ¶ 256. Second, Plaintiffs bring a claim under the APA and the U.S. Constitution's Fourth Amendment alleging that TSA has a "policy or practice" of "seizing travelers' currency, carry-on luggage, personal effects, and/or persons— based on the presence of currency on their person or in their carry-on luggage—after the transportation security screening has concluded, and without reasonable suspicion or probable cause." *Id.* ¶ 272. Third, Plaintiffs bring a claim under the APA and the Fourth Amendment alleging that the DEA "follows a policy or practice of seizing currency from travelers at U.S. airports without probable cause based solely on the presence of the currency itself." *Id.* ¶ 285.

Plaintiffs bring an individual return-of-property claim against the United States, the DEA, and Acting DEA Administrator in his official capacity pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure and 28 U.S.C. § 1331, seeking "return of their cash . . . in the amount of $82,373, plus interest." *Id.* ¶ 297.

## ARGUMENT

### I. The Court Should Dismiss Counts I-III for Lack of Subject Matter Jurisdiction and Failure to State a Claim Upon Which Relief May Be Granted.

### A. Plaintiffs Lack Standing To Raise the Claims in Counts I-III.

"[T]he 'judicial power' of the United States" is limited by Article III of the Constitution "to the resolution of 'cases' and 'controversies.'" *Valley Forge Christian Coll. v. Ams. United for Separation of Church & States, Inc.*, 454 U.S. 464, 471 (1982); *see DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006); *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 244 (3d Cir. 2012). A plaintiff's standing to sue "is an essential and unchanging part of the case-or-controversy requirement," *Lujan v. Defs. of Wildlife*, 504 U.S. 555,

560 (1992), without which the court lacks jurisdiction to entertain the suit. *Warth v. Seldin*, 422 U.S. 490, 498 (1975); *Kerchner v. Obama*, 612 F.3d 204, 207 (3d Cir. 2010). The Supreme Court "ha[s] always insisted on strict compliance with this jurisdictional standing requirement." *Raines v. Byrd*, 521 U.S. 811, 819 (1997).

To establish Article III standing, a plaintiff must seek relief for an injury that is (1) "concrete, particularized, and actual or imminent"—i.e. an "injury in fact"; (2) "fairly traceable to the challenged action"; and (3) "redressable by a favorable ruling." *Clapper v. Amnesty Int'l*, 568 U.S. 398, 409 (2013) (citation omitted). The alleged injury must be "distinct and palpable," not "abstract or conjectural or hypothetical." *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 291 (3d Cir. 2005). Speculative claims of injury will not support Article III standing. *Amnesty Int'l*, 568 U.S. at 409. As the "party invoking federal jurisdiction," a plaintiff "bears the burden of establishing these elements" of standing. *Defs. of Wildlife*, 504 U.S. at 561.

"[A] plaintiff must demonstrate standing separately for each form of relief sought." *DaimlerChrysler Corp.*, 547 U.S. at 352 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)). "In order to obtain standing for prospective relief, the plaintiff must 'establish a real and immediate threat that he would again be [the victim of the allegedly unconstitutional practice].'" *Brown v. Fauver*, 819 F.2d 395, 400 (3d Cir. 1987) (quoting *City of L.A. v. Lyons*, 461 U.S. 95, 105 (1983)). Accordingly, a plaintiff is not entitled to declaratory or injunctive relief merely on the basis that he or she was injured by past unlawful conduct. *See, e.g.*, *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 98 (2013) ("[W]e have never held that a plaintiff has standing to pursue declaratory relief merely on the basis of being 'once bitten.' Quite the opposite." (citing *Lyons*, 461 U.S. at 109)); *Lyons*, 461 U.S. at 105-07 (holding that plaintiff alleging that he had been injured by illegal police conduct had no standing to seek declaratory or

8

injunctive relief because he had not made a sufficient showing that he was likely to be wronged again in a similar way). This standard is not relaxed in a putative class action. *See McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 223 (3d Cir. 2012) ("In the class action context, [the Article III standing] requirement must be satisfied by at least one named plaintiff.").

"A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). In reviewing a facial challenge to standing, the court "appl[ies] the same standard as on review of a motion to dismiss under Rule 12(b)(6)." *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017). Accordingly, the court accepts the well-pleaded factual allegations of the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Id.* "Nevertheless, '[t]hreadbare recitals of the elements of [standing], supported by mere conclusory statements, do not suffice.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Here, Plaintiffs lack standing for their claims for declaratory and injunctive relief based on alleged unlawful TSA and DEA "policies" or "practices" because they have not alleged any injury that is likely to be redressed by such relief. Specifically, even if Plaintiffs had plausibly alleged that such policies or practices exist, and that they were harmed by these policies or practices in the past, they have not plausibly alleged that they will again be harmed by such policies or practices in the future.

Plaintiffs' claims against TSA, for example, are based on their allegation that TSA has a policy or practice of "seizing travelers' currency, carry-on luggage, personal effects, and/or persons at transportation security screening checkpoints—based on the presence of currency on their person or in their carry-on luggage—after the transportation security screening has concluded." Compl. ¶ 209; *see also id.* ¶¶ 45, 207, 208, 256, 272. Plaintiffs allege that on August

9

26, 2019, a TSA screener at Pittsburgh International Airport "pulled aside" Brown's carry-on luggage" and "questioned [Brown] about the cash inside," *id.* ¶ 109, asked Brown for her "ID and proof of her travel arrangements," *id.* ¶ 116, and photocopied those documents, that TSA Screeners "held" Brown's luggage "until law enforcement arrived," *id.* ¶ 112, and that Brown "did not feel free to leave," *id.* ¶ 114. Plaintiffs allege that these actions constituted seizure of Brown's person and belongings, *see id.* ¶ 119, and that "TSA was pursuing no transportation security objectives" in conducting these purported seizures, *id.* ¶ 112. But Plaintiffs do not allege—let alone plausibly allege—that they or their property will be subject to any such purported seizures in the future. Indeed, Plaintiffs identify no future plans—let alone concrete, imminent plans— to travel by air carrying large amounts of cash, much less plausibly allege that they will be subject to unlawful seizures in the course of such travel.

Similarly, with respect to DEA, Plaintiffs allege that Brown was questioned by a DEA agent at the airport, *id.* ¶¶ 128-136, that Brown "felt like she had no choice but to comply with his demands," *id.* ¶ 129, that the DEA agent ultimately "seized all of [Plaintiffs'] cash," *id.* ¶ 142, and that "[u]pon information and belief," the DEA agent "decided to seize the cash as soon as he saw the amount, pursuant to DEA's policy or practice of seizing currency totaling more than $5,000 when found in the possession of travelers at airports regardless of whether there is probable cause," *id.* ¶ 133. But Plaintiffs do not allege—let alone plausibly allege—that they will be injured by this purported policy or practice in the future. For example, neither Plaintiff plausibly alleges that he or she has future plans to transport a large amount of cash via a U.S. airport, let alone that the DEA will unlawfully seize such cash.

Because Plaintiffs have not plausibly alleged that they are "'likely to suffer future injury' from the [Government Defendants'] conduct," they lack standing to raise their claims in Counts I-

III of the Complaint. *McNair*, 672 F.3d at 223 (quoting *Lyons*, 461 U.S. at 105). Accordingly, the Court should dismiss Counts I, II, and III under Rule 12(b)(1).

### B.  The Court Lacks Jurisdiction To Review Claims Challenging TSA Policies and Procedures.

To the extent Plaintiffs challenge purported TSA airport security policies or procedures, Counts I and II also must be dismissed for lack of subject matter jurisdiction because jurisdiction over such claims lies exclusively in the Court of Appeals. With certain exceptions not applicable here, under 49 U.S.C. § 46110, a person "disclosing a substantial interest" in a covered order issued by TSA "may apply for review of the order by filing a petition for review" in an appropriate court of appeals, 49 U.S.C. § 46110(a), and that court has exclusive jurisdiction with respect to such review, *id.* § 46110(c).

TSA's security protocols for airport security checkpoints constitute an order under 49 U.S.C. § 46110. *See, e.g., Ruskai v. Pistole*, 775 F.3d 61, 65 (1st Cir. 2014) (agreeing with the parties that "TSA's security protocol[s]" for airport security screening constitute a final order under 49 U.S.C. § 46110). Moreover, when an individual challenges such an order, the court of appeals has exclusive jurisdiction not only over a claim brought pursuant to 49 U.S.C. § 46110, but also over other claims that are "inescapably intertwined" with the order at issue. *See, e.g.*, *Merritt v. Shuttle, Inc.*, 187 F.3d 263, 270-71 (2d Cir. 1999) (citation and quotation marks omitted) (holding that § 46110 deprived the district court of jurisdiction over *Bivens* claim because the claim was an improper collateral attack on an order falling within the scope of § 46110).

Here, to the extent Plaintiffs challenge an existing TSA policy or procedure regarding airport security, this court lacks jurisdiction over their claims against TSA because any such policy or procedure would constitute an order falling within the scope of 49 U.S.C. § 46110. Further, to the extent Plaintiffs are alleging that TSA follows some unwritten "policy or practice" in

11

conjunction with its airport security protocols, their claim is still subject to the jurisdictional limitation in § 46110 because any such policy or practice would be "inescapably intertwined" with the policies and procedures adopted by the Secretary. *Merritt*, 187 F.3d at 270-71. Plaintiffs cannot evade the application of § 46110 simply by conjuring unwritten policies or practices that are untethered from TSA's promulgated policies related to airport security protocols.

Accordingly, the Court should dismiss Counts I and II for lack of subject matter jurisdiction.

### C.  Counts I-III Fail To State A Claim on Which Relief May Be Granted.

In the event the Court finds it has jurisdiction over Plaintiffs' claims, it should dismiss Counts I, II, and III under Rule 12(b)(6) because Plaintiffs have not plausibly alleged that either TSA or DEA has taken action that violates the Fourth Amendment, nor have they plausibly alleged that TSA has acted in excess of its statutory authority. Plaintiffs therefore have not stated a claim upon which relief may be granted.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim [for] relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678-79. In reviewing a Rule 12(b)(6) motion, the court accepts as true all well pleaded facts in the complaint, but disregards legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678. As the Supreme Court explained in *Ashcroft v. Iqbal*, while "[t]he plausibility standard is not akin to a 'probability requirement,'" a plaintiff does not survive a Rule 12(b)(6) motion by pleading facts that are "merely consistent" with a defendant's liability. *Id.* Rather, the factual allegations

must "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When a plaintiff's claims are based on a contention that the government has adopted a certain policy, a "bare assertion[ ]" that the government has adopted the policy is not enough to satisfy *Iqbal*'s "facial plausibility" standard. *Id.* at 681. Rather, the plaintiff must allege specific facts that demonstrate the adoption of such a policy, as illustrated in *Iqbal* itself. In *Iqbal*, the plaintiffs alleged, among other things, that the defendants had a policy of subjecting detainees to harsh conditions based on race, religion, and national origin. *Id.* at 666. The Supreme Court held that the assertion should be set aside because the plaintiffs did not allege specific facts that would "nudg[e]" the plaintiffs' claim of a discriminatory policy "across the line from conceivable to plausible." *Id.* at 682–83.

Further, Plaintiffs purport to bring Counts I-III under the APA, which provides for judicial review of certain agency actions. *See* 5 U.S.C. § 702. APA review is limited to "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." *Id.* § 704. To bring a claim under the APA, the claimant must challenge a "circumscribed [and] discrete" federal "agency action." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004); *see also* 5 U.S.C. § 551(12); *id.* § 701(b)(2); *id.* § 702. Moreover, review under the APA is limited to "final" agency actions. 5 U.S.C. § 704. To be "final," an agency action must (1) "mark the 'consummation' of the agency's decisionmaking process," and (2) "be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow,'" *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citation omitted). Thus, "generalized complaints about agency behavior" are not reviewable under the APA. *Cobell v. Kempthorne*, 455 F.3d 301, 307 (D.C. Cir. 2006); *see, e.g.*, *Bark v. U.S. Forest Serv.*, 37 F. Supp. 3d 41, 50–51 (D.D.C. 2014)

13

(rejecting challenge to purported Forest Service "policies" where claim rested on an "amorphous description of the Forest Service's practices").

### 1. Plaintiffs Have Not Plausibly Alleged *Ultra Vires* or Unconstitutional Action by TSA.

Neither Count I nor Count II states a plausible claim against TSA. As an initial matter, Plaintiffs notably do *not* claim that it is unconstitutional or in excess of TSA's statutory authority for TSA Screeners to contact appropriate state or federal law enforcement personnel if the TSA Screeners identify items indicative of criminal activity beyond objects and materials that pose a threat to airport security. Nor would Plaintiffs have any legal basis to raise such a claim. Indeed, courts have repeatedly rejected such claims in ruling on suppression motions by criminal defendants. *See, e.g.*, *United States v. Hartwell*, 436 F.3d 174, 181 n.13 (3d Cir. 2006) (affirming denial of motion to suppress drugs located during search at airport security checkpoint); *United States v. Aukai*, 497 F.3d 955, 959-61 (9th Cir. 2007) (en banc) (affirming denial of motion to suppress drugs located after law enforcement officer was summoned by a TSA Screener).

Rather, Plaintiffs claim that TSA is violating the Fourth Amendment and acting in excess of its statutory authority by following a "policy or practice" of *seizing* travelers' luggage, personal effects, or persons after the airport security screening has concluded, based solely on a traveler's possession of a large amount of cash or currency. *See* Compl. ¶¶ 256-257, 272. As set forth below, Plaintiffs have not plausibly alleged any such policy or practice.

### a. Plaintiffs Have Not Plausibly Alleged *Ultra Vires* Action by TSA.

With respect to Count I, Plaintiffs have failed to state a claim upon which relief may be granted because Plaintiffs have not plausibly alleged that TSA has taken any final agency action that is in excess of its statutory authority.

14

Under 5 U.S.C. § 706(2)(C), a court may "hold unlawful and set aside agency action . . . found to be . . . in excess of statutory jurisdiction, authority or limitations, or short of statutory right." When plaintiffs bring claims under this provision of the APA, "courts sometimes characterize these statutorily-based assertions as 'ultra vires' claims." *Adamski v. McHugh*, 304 F. Supp. 3d 227, 236 (D.D.C. 2015) (citing cases).[2]

Pursuant to its statutory authority, TSA is "responsible for security in all modes of transportation," 49 U.S.C. § 114(d), including the authority to conduct air transportation security screening operations, *id.* § 114(e). TSA also is charged with developing "policies, strategies, and plans for dealing with threats to transportation security." *Id.* § 114(f)(3). "Screening" in the context of TSA's statutory authority with respect to air cargo on passenger aircraft "means a physical examination or non-intrusive methods of assessing whether cargo poses a threat to transportation security." *Id.* § 44901(g)(4). The scope of TSA transportation security screenings is limited to "the inspection of individuals and property for weapons, explosives, and incendiaries." 49 C.F.R. § 1540.5.

Plaintiffs claim that TSA has acted in excess of its statutory authority because it has a "policy or practice" of "seizing travelers' currency, carry-on luggage, personal effects, and /or persons after the transportation screening has concluded." Compl. ¶¶ 207-08, 199. In other words, Plaintiffs allege that TSA has acted in excess of its statutory authority by having a policy or practice of conducting screenings that are not "related to transportation security" and are not limited to "the inspection of individuals and property for weapons, explosives, and incendiaries." *Id.* ¶ 207. This allegation, however, is merely a conclusion—effectively, a recitation of the

---

[2] As explained in *Adamski*, this kind of statutory claim, brought here under APA § 706(2)(C), is distinct from a judicially created, non-statutory *ultra vires* claim. 304 F. Supp. 3d at 236.

elements of Plaintiffs' claim. Plaintiffs have not pointed to any policy or directive that exceeds TSA's statutory authority. Indeed, the only purported TSA policies that Plaintiffs do identify—a TSA Operations Directive and a TSA Management Directive—are entirely consistent with that authority. *See* Compl. ¶¶ 189-194; TSA Operations Directive 400-54-6 (Oct. 9, 2009); TSA Management Directive No. 100.4 (Sept. 1, 2009). As Plaintiffs acknowledge, "[n]either TSA Operations Directive 400-54-6 . . . nor TSA Management Directive No. 100.4 . . . purports to expand TSA Screeners' authority or duties beyond their statutory and regulatory bounds—i.e., administrative screenings limited to threats to transportation security." Compl. ¶ 194. Accordingly, Plaintiffs have not plausibly alleged that TSA has adopted any policy or practice that exceeds its statutory authority. *See, e.g.*, *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009) ("To satisfy the pleading standard, McTernan must identify a custom or policy, and specify what exactly that custom or policy was."); *Timoney v. Loughery*, 670 F. App'x 47, 49 (3d Cir. 2016) (unpublished) (allegation that "Defendants had a policy to enforce unlawful evictions without notice under color of State law" was merely a recitation of the elements of a claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and thus insufficient to survive a motion to dismiss).

Nor do Brown's allegations regarding her individual August 26, 2019, experience at the Pittsburgh International Airport suffice to allege a TSA "policy or practice," even if those allegations could be deemed to plausibly allege that TSA screeners exceeded the scope of their transportation screening authority in that particular instance. Plaintiffs' allegation that "TSA Screeners frequently . . . temporarily seize [a] traveler's currency, carry-on luggage, personal effects, and/or their person after the transportation security screening has concluded," Compl. ¶ 213(i), is entirely conclusory, and unsupported by factual allegations regarding travelers' actual

experiences other than Brown's August 26, 2019 encounter. Accordingly, these allegations are insufficient to allege any *ultra vires* action by the TSA, *see, e.g.*, *McCall v. City of Philadelphia*, 396 F. Supp. 3d 549, 561 (E.D. Pa. 2019) (noting that "[a] policy cannot ordinarily be inferred from a single instance of illegality such as a first arrest without probable cause" (quoting *Losch v. Borough of Parkesburg*, 736 F.2d 903, 911 (3d Cir. 1984))), let alone an unlawful final agency action under the APA.

### b. Plaintiffs Have Not Plausibly Alleged That TSA Is Violating the Fourth Amendment.

Plaintiffs likewise have failed to plausibly allege any action by TSA that violates the Fourth Amendment. The Fourth Amendment assures the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV, cl. 1. In support of their Fourth Amendment claim, Plaintiffs rely on the same conclusory allegation that forms the basis for their *ultra vires* claim—that TSA has a "policy or practice of seizing travelers' currency, carry-on luggage, personal effects, and/or persons after the transportation screening has concluded," appending the additional conclusion "without reasonable suspicion or probable cause." Compl. ¶ 208; *see also id.* ¶¶ 215(b)(iii), 272. This allegation, again, is no more than a recitation of the elements of Plaintiffs' cause of action. Further, the only purported TSA policies actually identified in the Complaint, *see id.* ¶¶ 189-194, in no way conflict with the Fourth Amendment's prohibition on unreasonable searches and seizures. Accordingly, Plaintiffs have failed to state a Fourth Amendment claim as to TSA. *See, e.g.*, *McTernan*, 564 F.3d at 658 (holding that an allegation that plaintiff's rights "were violated 'due to the City's policy of ignoring First Amendment rights" was not sufficient to allege a constitutional violation). *Cf. Malik v. Meissner*, 82 F.3d 560, 562-63 (2d Cir. 1996) (holding that conclusory allegations that alleged mistreatment was "consistent with an unlawful and unconstitutional pattern and practice" were insufficient to

state a claim that agency "generally use[d] unconstitutional procedures or standards" in denying certain applications).

### 2.   Plaintiffs Have Not Plausibly Alleged a Fourth Amendment Violation by the DEA.

Like Plaintiffs' claims against TSA, Plaintiffs' putative Fourth Amendment claim for declaratory and injunctive relief against DEA relies on a conclusory allegation that the agency is pursuing an unconstitutional "policy or practice," and thus fails to state a claim upon which relief may be granted.

Plaintiffs' well-pleaded allegations regarding DEA amount to the following: DEA conducts hundreds or thousands of seizures of currency from travelers at U.S. airports each year, Compl. ¶ 219, and DEA operates an airport interdiction program at many U.S. airports, *id.* ¶¶ 223-227.

Plaintiffs also incorporate by reference into their Complaint a 2017 OIG Report which reviewed 100 DEA currency seizures that "appeared to have occurred without a court-issued warrant and without the presence of narcotics." 2017 OIG Report at iii. That report found, *inter alia*, that 85 of these 100 seizures occurred at transportation facilities, and that DEA could verify that "only 29 of the 85 interdiction seizures had (1) advanced or been related to ongoing investigations, (2) resulted in the initiation of new investigations, (3) led to arrests, or (4) led to prosecutions." *Id.* Plaintiffs also note the report's findings that of the 85 seizures that occurred at transportation facilities, 46 occurred at airports. Compl. ¶ 230 (quoting 2017 OIG Report at 22). The report noted that the reviewed sample "showed that DEA agents and task force officers reported establishing reasonable suspicion to initiate questioning of an individual suspected of illegal cash couriering based on factors consistent with those described in the DEA's Interdiction Manual," including, but not limited to, "traveling to or from a known source city for drug

trafficking, purchasing a ticket within 24 hours of travel, purchasing a ticket for a long flight with an immediate return, purchasing a one-way ticket, and traveling without checked luggage." 2017 OIG Report at 22-23.

The OIG's "evaluation of seizure narratives and . . . discussions with DEA agents and task force officers indicate[d] that they often learn about a traveler's ticket purchase method and travel itinerary from confidential sources who work for airlines, airports, or bus or rail companies." *Id.* at 23. As Plaintiffs note, Compl. ¶ 231, the OIG Report states that "DEA agents and task force officers may also initiate contacts that lead to seizures after receiving information from airport security screeners that a large volume of currency was packaged within an individual's carry-on or checked baggage." 2017 OIG Report at 23. However, these observations merely describe aspects of some encounters leading to DEA currency seizures;[3] they do not indicate the existence of some DEA currency seizure policy, let alone that DEA has adopted a policy of seizing currency if a "threshold amount of currency" is present. Compl. ¶ 233. Nor does the report conclude that the DEA has adopted any policy or practice that violates the Fourth Amendment. To the contrary, the OIG simply concluded that Department of Justice managers failed to use aggregate data to

---

[3] A law enforcement officer's mere initiation of contact with a person does not implicate the Fourth Amendment's prohibition on unreasonable searches and seizures. *See, e.g.*, *Florida v. Bostick*, 501 U.S. 429, 434-35 (1991) (noting that "even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual, . . . ask to examine the individual's identification, . . . and request consent to search his or her luggage, . . . as long as the police do not convey a message that compliance with their requests is required" (internal citations omitted)); *Florida v. Royer*, 460 U.S. 491, 497 (1983) (explaining that "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions").

determine whether seizures benefit criminal investigations or the extent to which seizures may pose potential risks to civil liberties. 2017 OIG Report at ii, 38.

Indeed, Plaintiffs identify no DEA policy of seizing currency from travelers at U.S. airports based on a "threshold amount of currency" and "regardless of probable cause. Compl. ¶ 233. Nor do Plaintiffs allege any facts that would allow a plausible inference that the agency has adopted a "practice" of seizing currency without probable cause, based solely on the amount of currency.

Accordingly, Plaintiffs have not stated a plausible Fourth Amendment claim against the DEA. *See, e.g.*, *Iqbal*, 556 U.S. at 682-83 (holding that bare assertions that government officials had "adopted a policy of classifying post-September-11 detainees as 'of high interest' because of their race, religion, or national origin" were insufficient to state a claim); *Argueta v. U.S. Immigration & Customs Enf't*, 643 F.3d 60, 72-73 (3d Cir. 2011) (explaining that *Iqbal*'s "'plausibility' standard does not require probability, but it does demand more than a sheer possibility that the defendant acted unlawfully" and that "a complaint pleading facts that are merely consistent with liability is insufficient").

## II.     The Court Should Dismiss Count IV for Lack of Subject Matter Jurisdiction.

### A.  Plaintiffs' Return of Property Claim Is Moot.

Plaintiffs' fourth claim, which seeks return of the $82,373 seized by the DEA under Federal Rule of Criminal Procedure 41(g) and 28 U.S.C. § 1331, is moot because the DEA has already returned that money to Plaintiffs.

A court may "decide legal questions only in the context of actual 'Cases' or 'Controversies,'" *Alvarez v. Smith*, 558 U.S. 87, 92 (2009) (citing U.S. Const., Art. III, § 2), and "[a]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed," *id.* (citations and quotation marks omitted). Mootness is "the doctrine of standing set in

a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (citation omitted). "If a claim does not present a live case or controversy, the claim is moot, and a federal court lacks jurisdiction to hear it." *United States v. Virgin Islands*, 363 F.3d 276, 285 (3d Cir. 2004).

In Count IV, Plaintiffs allege that they are "aggrieved . . . by the . . . seizure of their property—the seized cash—and by the continued deprivation of that property," Compl. ¶ 295, and seek "the return of their seized cash (or an equivalent amount in U.S. currency)," *id.* ¶ 294. However, as set forth above, the DEA returned the money at issue to Plaintiffs on March 23, 2020. Rashid Decl. ¶ 10 & Ex. F. Accordingly, Plaintiffs Claim for "Return of Property" is moot, and the Court should dismiss that claim for lack of subject matter jurisdiction.

### B.  Sovereign Immunity Bars Plaintiffs' Claim for Interest.

To the extent Count IV seeks interest on the $82,373 seized by the DEA, *see* Compl. ¶ 297, the Court should dismiss the claim for lack of subject matter jurisdiction because the federal government has not waived its sovereign immunity with respect to such claims for interest.

"[F]ederal courts do not have jurisdiction over suits against the United States unless Congress, via a statute, expressly and unequivocally waives the United States' immunity to suit." *United States v. Bein*, 214 F.3d 408, 412 (3d Cir. 2000). "Furthermore, the Supreme Court's 'no-interest rule' dictates that, '[i]n the absence of express congressional consent to the award of interest separate from a general waiver of immunity to suit, the United States is immune from an interest award.'" *United States v. Craig*, 694 F.3d 509, 512 (3d Cir. 2012), *as modified* (Oct. 5, 2012) (quoting *Library of Congress v. Shaw*, 478 U.S. 310, 314 (1986), *superseded on other grounds by* Civil Rights Act of 1991, Pub. L. No. 102–166, § 114, 105 Stat. 1079).

Plaintiffs bring their claim for return of property under Rule 41(g) of the Federal Rules of Criminal Procedure and 28 U.S.C. § 1331. In neither of these provisions has Congress consented to the award of interest sought by Plaintiffs. *See* Fed. R. Crim. P. 41(g) (providing that a person "aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return" in the district where the property was seized); 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); *Craig*, 694 F.3d at 512 (holding that Rule 41(g) does not waive the federal government's sovereign immunity with respect to a claim for interest on seized funds).

Accordingly, to the extent Count IV seeks an award of interest, it should be dismissed for lack of subject matter jurisdiction.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the claims against the Government Defendants pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Dated: May 29, 2020

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

SCOTT W. BRADY
United States Attorney

BRIGHAM J. BOWEN
Assistant Director

/s/ Elizabeth Tulis
ELIZABETH TULIS
Trial Attorney
Federal Programs Branch
U.S. Department of Justice, Civil Division
1100 L Street, NW
Washington, DC 20005

22

Tel: (202) 514-9237
Fax: (202) 616-8470
E-mail: elizabeth.tulis@usdoj.gov

*Attorneys for the Government Defendants*