# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| REBECCA BROWN, AUGUST TERRENCE ROLIN, STACY JONES-NASR, and MATTHEW BERGER on behalf of themselves and all others similarly situated, | ) ) ) ) ) |  |
|  | ) |  |
| Plaintiffs, | ) |  |
|  | ) |  |
| v. | ) | CASE NO. 2:20-cv-00064-MJH-LPL |
|  | ) |  |
| TRANSPORTATION SECURITY ADMINISTRATION; DAVID P. PEKOSKE, Administrator, Transportation Security Administration, in his official capacity; DRUG ENFORCEMENT ADMINISTRATION; TIMOTHY J. SHEA, Acting Administrator, Drug Enforcement Administration, in his official Capacity; "STEVE" LAST NAME UNKNOWN, Agent, Drug Enforcement Administration, in his individual capacity; and UNITED STATES OF AMERICA, | ) ) ) ) ) ) ) ) ) ) ) ) |  |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE GOVERNMENT DEFENDANTS' MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 1

I.      Plaintiffs Have Not Demonstrated Standing ....................................................... 1

II.     Plaintiffs Have Not Demonstrated That Their Claims Against TSA Fall Within the Court's Jurisdiction ...................................................................................... 4

III.    Plaintiffs Have Not Plausibly Alleged Any Unlawful Action by TSA or DEA. ................ 7

       A.  Plaintiffs Have Not Plausibly Alleged *Ultra Vires* or Unconstitutional Action by TSA ............................................................................................. 7

       B.  Plaintiffs Have Not Plausibly Alleged Unconstitutional Action by DEA. ................. 11

IV.    Plaintiffs Brown and Rolin Concede That Their Claim for Interest Has No Legal Basis .................................................................................................... 14

CONCLUSION ............................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Abbott Laboratories v. Gardner*,
   387 U.S. 136 (1967) ............................................................................................... 3

*Afifi v. Lynch*,
   101 F. Supp. 3d 90 (D.D.C. 2015) .......................................................................... 1

*Amadei v. Nielsen*,
   348 F. Supp. 3d 145 (E.D.N.Y. 2018) .................................................................. 10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................... 12, 13, 14

*Avia Dynamics, Inc. v. FAA*,
   641 F.3d 515 (D.C. Cir. 2011) ................................................................................ 7

*Aviators for Safe & Fairer Regulation, Inc. v. F.A.A.*,
   221 F.3d 222 (1st Cir. 2000) ................................................................................... 6

*Babbitt v. United Farm Workers Nat'l Union*,
   442 U.S. 289 (1979) ................................................................................................ 3

*Baraka v. McGreevey*,
   481 F.3d 187 (3d Cir. 2007) .................................................................................... 9

*Bhd. of Loc. Eng'rs & Trainmen v. Fed. R.R. Admin.*,
   972 F.3d 83 (D.C. Cir. 2020) .................................................................................. 9

*Beins v. United States*,
   695 F.2d 591 (D.C. Cir. 1982) ................................................................................ 4

*Blitz v. Napolitano*,
   700 F.3d 733 (4th Cir. 2012) .......................................................................... 5, 6, 7

*Corbett v. United States*,
   458 F. App'x 866 (11th Cir. 2012) .......................................................................... 5

*Foster v. Skinner*,
   70 F.3d 1084 (9th Cir. 1995) .................................................................................. 4

*Free Speech Coalition, Inc. v. Attorney General of the United States*,
   825 F.3d 149 (3d Cir. 2016) .................................................................................... 3

*Gilmore v. Gonzales*,
   435 F.3d 1125 (9th Cir. 2006) ............................................................................ 5, 6

ii

*Grand Canyon Trust v. Public Service Co. of New Mexico*,
   283 F. Supp. 2d 1249 (D.N.M. 2003) ..................................................... 10

*Haase v Sessions*,
   835 F.2d 902 (D.C. Cir. 1987) ............................................................. 4

*Mace v. Skinner*,
   34 F.3d 854 (9th Cir. 1994) ............................................................. 4, 5

*McNair v. Synapse Grp. Inc.*,
   672 F.3d 213 (3d Cir. 2012) ............................................................. 1

*McNary v. Haitian Refugee Center, Inc.*,
   498 U.S. 479 (1991) ............................................................. 5

*Meese v. Keene*,
   481 U.S. 465 (1987) ............................................................. 2

*Merritt v. Shuttle, Inc.* ("*Merritt I*"),
   187 F.3d 263 (2d Cir. 1999) ............................................................. 5, 6, 7

*Merritt v. Shuttle, Inc.* ("*Merritt II*"),
   245 F.3d 182 (2d Cir. 2001) ............................................................. 4

*N.H. Right to Life Pol. Action Comm. v. Gardner*,
   99 F.3d 8 (1st Cir. 1996) ............................................................. 3

*O'Shea v. Littleton*,
   414 U.S. 488 (1974) ............................................................. 2

*Reno v. Catholic Soc. Servs., Inc.*,
   509 U.S. 43 (1993) ............................................................. 5

*Ruskai v. Pistole*,
   775 F.3d 61 (1st Cir. 2014) ............................................................. 5, 6

*Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*,
   113 F.3d 405 (3d Cir.1997) ............................................................. 9

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) ............................................................. 3

*Velesaca v. Decker*,
   458 F. Supp. 3d 224 (S.D.N.Y. 2020) ............................................................. 10

*Venetian Casino Resort, LLC v. EEOC*,
   530 F.3d 925 (D.C. Cir. 2008) ............................................................. 10

*Washington v. DHS*,
   No. C19-2043 TSZ, 2020 WL 1819837 (W.D. Wash. Apr. 10, 2020)..................................... 10

**Statutes**

49 U.S.C. § 46110................................................................................................................... 4, 7

**Rules**

Fed. R. Civ. P. 11(b)(2)............................................................................................................. 14

## INTRODUCTION

The Government Defendants' motion to dismiss establishes that this action is subject to dismissal because, *inter alia*, Plaintiffs have failed to present any viable claims regarding TSA's or DEA's policies (actual or imagined) with respect to searches and seizures. In opposition, Plaintiffs offer bald conclusions, mischaracterize the Government Defendants' brief, misapply legal standards, and otherwise fail to rebut the Government's arguments. Accordingly, the Court should grant the Government Defendants' motion and dismiss Plaintiffs' claims under Rule 12(b)(1) and Rule 12(b)(6).

## ARGUMENT

### I.   Plaintiffs Have Not Demonstrated Standing.

Plaintiffs' arguments for why they have standing rest on two conflicting theories of injury, neither of which is sustainable.

Plaintiffs concede that standing for prospective relief requires a showing that the plaintiff is "'**likely to suffer future injury'** from the defendant's conduct." Pls.' Resp. in Opp'n to Gov't Defs.' Mot. to Dismiss ("Opp'n"), ECF No. 62, at 7 (emphasis in original) (quoting *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 223 (3d Cir. 2012)). Plaintiffs first suggest that they meet this standard because they are "realistically threatened by a repetition of [their] [alleged] experience[s]." *Id.* at 8 (quoting *Afifi v. Lynch*, 101 F. Supp. 3d 90, 108-09 (D.D.C. 2015)); *see also id.* at 9 (suggesting that Plaintiffs are "highly likely to be harmed again if they merely engage in . . . domestic air travel with a 'large' amount of cash"); *id.* at 13-14 (arguing that Plaintiffs have standing based on a likelihood of future injury). Yet, as noted in the Government Defendants' opening brief, none of the Plaintiffs have plausibly alleged future plans to travel through U.S. airports carrying large amounts of cash, let alone plausibly alleged that they will be subjected to

unlawful searches or seizures in the course of their travel. Mem. of Law in Supp. of Gov't Defs.' Mot. to Dismiss ("Gov't Def. Mem."), ECF No. 57, at 13. Plaintiffs do not dispute this. In the absence of such allegations, Plaintiffs cannot have standing based on "a real and immediate threat of repeated injury." *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974) (quoted in Opp'n at 13).

Plaintiffs attempt to pivot to a second theory of injury—that they are *currently* being harmed because they have chosen to *refrain* from traveling through U.S. airports with large amounts of cash. Opp'n at 8, 10, 12. However, this theory fares no better. As an initial matter, while Plaintiffs Brown, Rolin, and Jones-Nasr allege, effectively, that declining to travel via air with large amounts of cash inconveniences them, *see id.* at 12-13; Compl. ¶¶ 225-232, 278-283, they do not specifically identify any concrete harm—financial or otherwise—that they are purportedly suffering as a result of this choice. Moreover, none of the named Plaintiffs has shown that any alleged harms they are suffering are fairly traceable to the conduct of TSA or DEA. While Plaintiffs argue that their choices have been forced by "TSA's and DEA's airport seizure policies," Opp'n at 9, Plaintiffs have not even plausibly alleged the existence of any such policies, *see infra* Part III, let alone plausibly alleged that such policies have forced them to "take affirmative steps to avoid the risk of harm," *Meese v. Keene*, 481 U.S. 465, 475 (1987). Indeed, as noted in the Government Defendants' opening brief, *see* Gov't Def. Mem. at 14, at least some of the Plaintiffs apparently engaged in the conduct they now avoid for years, without any alleged harm, despite the supposed existence of the purported TSA and DEA policies that form the basis for this case. *See* Compl. ¶¶ 233, 280-283 (failing to allege that the purported agency policies caused any injury to Jones-Nasr before May 19, 2020, despite her recreational gambling hobby); *id.* ¶¶ 309-319 (failing to allege that the purported agency policies caused Berger to change his business practices until sometime after November 3, 2015). This fact eviscerates any causal connection between the

Plaintiffs' choices and purported DEA and TSA policies. Berger, moreover, does not allege that he has *ever* been subjected to an unlawful search or seizure by DEA while traveling through U.S. airports with "large" amounts of cash. Thus, Plaintiffs have no more plausibly alleged that they face a "substantial risk" of harm, Opp'n at 8, than that they face injury that is certainly impending.

The cases Plaintiffs principally rely on in support of their "substantial risk" argument are inapposite, as they involved statutes or regulations that proscribed certain conduct. For example, in *Free Speech Coalition, Inc. v. Attorney General of the United States*, 825 F.3d 149 (3d Cir. 2016), the Third Circuit found standing for a Fourth Amendment claim when the plaintiffs were "suffering real costs as a condition of compliance with a *regulation* that they urge[d] [was] unconstitutional." *Id.* at 166 (emphasis added). Similarly, *Abbott Laboratories v. Gardner* addressed a situation in which a "*regulation requires* an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to *non-compliance*." 387 U.S. 136, 153 (1967) (emphasis added); *see also Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) ("A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement."); *N.H. Right to Life Pol. Action Comm. v. Gardner*, 99 F.3d 8, 13 (1st Cir. 1996) (explaining that an Article III injury can be based on "a credible threat of present or future prosecution" when a case involves a pre-enforcement challenge to a statute). *Cf. Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159, 162 (2014) (finding Article III injury where plaintiffs "allege[d] an intention to engage in a course of conduct arguably affected with a constitutional interest" and their "intended future conduct [was] arguably proscribed by the statute they wish[ed] to challenge" (alterations and quotation marks omitted)). Here, as set forth above, Plaintiffs have identified no statute or regulation proscribing the conduct they have chosen to avoid, and Plaintiffs' contention that TSA and DEA policies will

subject them to unlawful seizures if they engage in "entirely lawful conduct," Opp'n at 5, 15, is wholly speculative. *Cf. Haase v Sessions*, 835 F.2d 902, 911 (D.C. Cir. 1987) (explaining that "more than a nebulous assertion of the existence of a 'policy' is required to establish standing").

## II.     Plaintiffs Have Not Demonstrated That Their Claims Against TSA Fall Within the Court's Jurisdiction.

Plaintiffs' argument that the Court should exercise jurisdiction over their claims against TSA on the basis that the review-channeling provisions in 49 U.S.C. § 46110 only extend to review of dated final orders issued after administrative adjudicative proceedings, Opp'n at 16, is unsupported by the relevant case law and at the same time underscores the substantive feebleness of Plaintiffs' claims.

First, Plaintiffs cite no Supreme Court or Third Circuit authority suggesting that they can avoid the statutory mandate in § 46110 on the basis that they are raising a "broad constitutional challenge." Opp'n at 16. Moreover, even the cases they cite do not purport to announce a rule that a plaintiff can remove a claim from the reach of § 46110 merely by characterizing it as a "broad constitutional challenge." *See, e.g.*, *Merritt v. Shuttle, Inc.* ("*Merritt II*"), 245 F.3d 182, 191 (2d Cir. 2001) (addressing a negligence claim under the Federal Tort Claims Act); *Beins v. United States*, 695 F.2d 591, 598 & n.11 (D.C. Cir. 1982) (same), *Foster v. Skinner*, 70 F.3d 1084, 1087-88 (9th Cir. 1995) (per curiam) (addressing claims challenging FAA suspensions and revocations of pilots' certificates); *Mace v. Skinner*, 34 F.3d 854, 859 (9th Cir. 1994) (addressing claims regarding FAA revocations of aircraft mechanics' certificates and related practices). The "broad constitutional challenge" language that Plaintiffs invoke comes from *Mace v. Skinner*, which held that § 46110's predecessor statute did not apply to broad-based constitutional claims challenging the FAA's power to revoke licenses and other agency practices. 34 F.3d at 858-59. In *Mace* however, the court relied in part on the fact that the plaintiff sought money damages, which were

4

unavailable in the court of appeals. 34 F.3d at 858. Moreover, the Ninth Circuit subsequently clarified that the exception for broad-based constitutional claims recognized in *Mace* does not apply where a plaintiff's constitutional challenge is inescapably intertwined with the merits of an order governed by § 46110, such as a TSA Security Directive. *See Gilmore v. Gonzales*, 435 F.3d 1125, 1133 & n.9 (9th Cir. 2006).

Plaintiffs' contention that the Supreme Court's holding in *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991), demonstrates that the jurisdictional requirements set forth in § 46110 are inapplicable in this case, Opp'n at 17, ignores crucial distinctions between § 46110 and the judicial review provisions at issue in *McNary*, which the Supreme Court construed "partly in order to avoid an interpretation that would amount to 'the practical equivalent of a total denial of judicial review of generic constitutional and statutory claims.'" *Blitz v. Napolitano*, 700 F.3d 733, 742 (4th Cir. 2012) (quoting *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 64 (1993) (quoting *McNary*, 498 U.S. at 497)). Indeed, in *Blitz*, the Fourth Circuit explicitly rejected the argument Plaintiffs make here, noting that *McNary* involved a "judicial review provision very different from 49 U.S.C. § 46110," and holding that the district court properly dismissed the plaintiffs' challenge to TSA's standard operating procedures for checkpoint screening ("Checkpoint Screening SOP") for lack of jurisdiction. *See id.* at 740-43; *see also Corbett v. United States*, 458 F. App'x 866, 871 (11th Cir. 2012) (per curiam) (unpublished) (distinguishing § 46110 from the statutory text in *McNary*).

Second, Plaintiffs' suggestion that *Ruskai v. Pistole*, 775 F.3d 61 (1st Cir. 2014), and *Merritt v. Shuttle, Inc.* ("*Merritt I*"), 187 F.3d 263, 270 (2d Cir. 1999), only recognize the applicability of § 46110 in instances where there was a prior "administrative adjudication" misconstrues those cases. *Ruskai* involved a constitutional challenge to certain TSA airport

5

security screening protocols brought by a plaintiff who was subject to pat-down searches under those protocols due to having a metal replacement joint. 775 F.3d at 62-64. Ruskai challenged the security protocol after TSA denied her request for an accommodation, *see id.* at 65-66, and the court found that "TSA's security protocol and refusal to grant Ruskai's requested accommodation constitute a final order reviewable by this court," *id.* at 65. However, the court nowhere suggested that the applicability of § 46110 hinged on the fact that Ruskai had submitted a request for accommodation that was adjudicated by the agency or that § 46110 would be inapplicable if a petitioner challenged TSA's adoption of a certain airport screening procedure without first seeking an exemption from that procedure. Indeed, in noting § 46110's applicability, the First Circuit cited cases emphasizing the broad meaning of the term "order" in § 46110. *See id.* (citing *Blitz*, 700 F.3d at 739-40; *Gilmore*, 435 F.3d at 1133; *Aviators for Safe & Fairer Regulation, Inc. v. F.A.A.*, 221 F.3d 222, 225 (1st Cir. 2000)).

*Merritt I*, in turn, stands for the proposition that the exclusive jurisdiction provision in § 46110 extends to claims that are "inescapably intertwined" with a challenge to an "order" under that provision. Gov't Def. Mem. at 15-16 (quoting *Merritt I*, 187 F.3d at 270). *Merritt I* nowhere suggested that this holding was limited to the specific kind of order addressed in that case. As set forth above and in the Government Defendants' opening brief, because a TSA airport security protocol is an "order" within the meaning of § 46110, Plaintiffs' claim that TSA has adopted an unlawful policy or practice regarding seizures of persons or property identified in airport security screenings is outside this Court's jurisdiction. *See* Gov't Def. Mem. at 15-16.

Third, Plaintiffs' argument that § 46110 cannot apply because their APA claims are not based on a "specific, dated final order" and there is no "administrative record" is an attempt to use the substantive defects in their claims to evade a jurisdictional limitation. The term "order" as used

in § 46110 is broader than that term's meaning under the APA—or even elsewhere in Chapter 461 of Title 49, including § 46105. *See, e.g.*, *Avia Dynamics, Inc. v. FAA*, 641 F.3d 515, 520 (D.C. Cir. 2011) (collecting authority). As noted above, Plaintiffs bring claims that purport to challenge some TSA policy regarding airport screening procedures. If any such policy existed, it would be "inescapably intertwined" with TSA's airport security protocols, *Merritt I*, 187 F.3d at 270, which courts have uniformly recognized fall within the scope of § 46110, *see, e.g.*, *Blitz*, 700 F.3d 739-40 (holding that Checkpoint Screening SOP constituted an "order" under § 46110). Plaintiffs emphasize that they cannot point to a "final order" adopting such a policy, and that they do not contend that there exists any administrative record of such agency action. Opp'n at 18. However, the elusiveness of the purported seizure policy that Plaintiffs challenge merely underscores the substantive non-viability of their claims. The fact that Plaintiffs have not plausibly alleged the existence of any order, directive, or other agency action adopting such a policy means that, if a court reaches the merits, their claims must fail under Rule 12(b)(6), but it does not provide them with an escape hatch from the jurisdictional limitations set forth in § 46110.

### III.   Plaintiffs Have Not Plausibly Alleged Any Unlawful Action by TSA or DEA.

Plaintiffs fail to identify any allegations that would support the reasonable inference that TSA has taken action in violation of the Fourth Amendment or in excess of its statutory authority, or that DEA has taken any action violating the Fourth Amendment.

### A.   Plaintiffs Have Not Plausibly Alleged *Ultra Vires* or Unconstitutional Action by TSA.

In defending their claims against TSA, Plaintiffs begin with a mischaracterization of Defendants' argument, asserting that TSA "does not contest that . . . it exceeded its statutory authority and violated the Fourth Amendment with respect to the Named Plaintiffs" and other

individuals identified in the Complaint. Opp'n at 19. Plaintiffs' suggestion that TSA has conceded engaging in unlawful action is flatly wrong.

TSA set forth in detail how Plaintiffs have failed to plausibly allege any *ultra vires* or unconstitutional action by TSA. Gov't Def. Mem. at 19-22. In so doing, TSA explained, *inter alia*, that Plaintiffs' allegations did not even identify any final agency action by TSA, but rather rested on a handful of anecdotes regarding encounters between airport travelers and particular individual TSA screeners. *Id.* at 21. TSA noted that such allegations would not be sufficient to state a claim against TSA *even if* they sufficed to allege unlawful actions by individual TSA screeners in particular instances. *Id.* Plaintiffs have not brought *Bivens* claims against individual TSA screeners but rather APA claims against the agency itself, and Plaintiffs' repeated attempts to elide the difference between TSA and individual TSA employees, *see, e.g.*, Opp'n at 19, are merely rhetorical mischief. Regardless, TSA at no point conceded that Plaintiffs had plausibly alleged that individual agency employees engaged in unlawful conduct, let alone that any such conduct would constitute unconstitutional or *ultra vires* action by TSA. *See* Gov't Def. Mem. at 18-22.

Plaintiffs' assertion that TSA's sole argument is that "redress against the agency is unavailable because there is no final agency action," Opp'n at 19, is also wrong. As TSA explained, Plaintiffs have not plausibly alleged that TSA has adopted any "policy or practice" of seizing travelers' luggage, personal effects, or persons after the airport security screening has concluded, based solely on a traveler's possession of a large amount of cash or currency. Gov't Def. Mem. at 19-22. Plaintiffs have not plausibly alleged that TSA has "exceeded [the] scope of [its] authority with respect to the Named Plaintiffs" or any other individual identified in the Complaint, Opp'n at 19, because they have not plausibly alleged that TSA has adopted any *ultra vires* or unconstitutional policy or procedure.

Plaintiffs' suggestion that TSA's "written materials" demonstrate the existence of an unlawful policy, Opp'n at 20-23, is contradicted by the documents they invoke. As Plaintiffs concede, "[n]either TSA Management Directive No. 100.4 . . . nor TSA Operations Directive 400-54-6, purports to expand TSA Screeners' authority or duties beyond their statutory and regulatory bounds." Compl. ¶ 345; *see also* Opp'n at 21 (admitting that TSA's written policy does not "say[]" anything unlawful). In arguing that the Court should nonetheless infer the existence of an unlawful "de facto" policy on the basis of these same written materials, Opp'n at 21, Plaintiffs insist that portions of the materials "suggest[ ]" to TSA screeners that they should unlawfully seize "travelers with 'large' amounts of cash," *id.* at 20.  However, as Plaintiffs do not dispute, none of the passages that Plaintiffs point to in support of this argument directs or authorizes any such seizures; rather, the guidance directs that law enforcement personnel be notified in cases where criminal activity is suspected. *See* Opp'n at 22-23; Compl. ¶¶ 341, 352, 355-357.[1] Plaintiffs do not even attempt to argue that such guidance is unlawful, nor could they. *See* Gov't Def. Mem. at 18-19.

Plaintiffs' argument that agency action "need not be committed to writing to be final and judicially reviewable," Opp'n at 21 (quoting *Bhd. of Loc. Eng'rs & Trainmen v. Fed. R.R. Admin.*, 972 F.3d 83, 100 (D.C. Cir. 2020)), attacks a straw man: Regardless of whether a challenged agency action is committed to writing or not, a plaintiff's claim cannot rest on speculation and conjecture. *See, e.g.*, *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (in deciding a Rule 12(b)(6) motion, the court need not credit "unsupported conclusions and unwarranted inferences" (quoting *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997))). Plaintiffs identify no governing precedent suggesting that they have alleged sufficient facts to state

---

[1] In addition, Plaintiffs admit that their interpretation of the cited passage from Operations Directive 400-54-6 is based on a redacted version of that document, *see* Compl. ¶ 352; their characterization of the document thus rests on speculation about the content of the redacted text.

an APA claim against TSA. Nor do the district court and extra-Circuit cases they cite support such a conclusion. *See* Opp'n at 21-23. For example, in *Venetian Casino Resort, LLC v. EEOC*, 530 F.3d 925 (D.C. Cir. 2008), a case at the summary judgment stage, the court found that the government's argument that a particular manual was not a final agency action was "misdirected" because the plaintiff did not challenge the manual, but rather the agency's adoption of a certain policy. *See id.* at 931. The existence of the challenged policy was not at issue. *See id.* In *Velesaca v. Decker*, 458 F. Supp. 3d 224 (S.D.N.Y. 2020), *appeal filed*, No. 20-2153 (2d Cir. July 9, 2020), the court found that the plaintiffs had demonstrated that U.S. Immigration and Customs Enforcement ("ICE") had adopted a new detention policy within a specific time-period based on data showing a stark change in the percentage of alien arrestees released. *See id.* at 241. In *Amadei v. Nielsen*, 348 F. Supp. 3d 145 (E.D.N.Y. 2018), in turn, the plaintiffs' allegations were deemed sufficient in part because of the agency's "numerous acknowledgements of the existence of a policy." *Id.* at 165. In *Grand Canyon Trust v. Public Service Co. of New Mexico*, 283 F. Supp. 2d 1249 (D.N.M. 2003), another case at the summary judgment stage, the issue was not whether a complaint plausibly alleged that an agency had adopted a particular policy, but rather whether a decision by the agency could constitute a "final" action if not in writing. *See id.* at 1252.

Finally, Plaintiffs' suggestion that TSA "has done nothing to disassociate itself" from a purported practice of detaining air travelers based solely on possession of a large amount of cash, Opp'n at 23 (quoting *Washington v. DHS*, No. C19-2043 TSZ, 2020 WL 1819837, at *5 (W.D. Wash. Apr. 10, 2020)), is contradicted by the agency guidance documents Plaintiffs cite. *See* Compl. ¶¶ 341-344. As Plaintiffs themselves allege, a TSA Operations Directive states explicitly that "[t]raveling with large amounts of currency is not illegal" and that such behavior is relevant to security screenings only because "[l]arge amounts of currency ('bulk currency') can . . . conceal

. . . items that may pose a threat to transportation security," Compl. ¶ 341, and a TSA Management Directive states that "[s]creening may not be conducted to detect evidence of crimes unrelated to transportation security," *id.* ¶ 344. Further, Plaintiffs fail to identify any legal requirement that an agency defendant repudiate purported practices alleged in litigants' pleadings and briefs, and indeed, there is none.

In sum, Plaintiffs have failed to identify allegations that would support a reasonable inference that TSA has adopted a "policy or practice" of seizing travelers' luggage, personal effects, or persons after the airport security screening has concluded, based solely on a traveler's possession of a large amount of cash or currency.

### B.  Plaintiffs Have Not Plausibly Alleged Unconstitutional Action by DEA.

As in their arguments with respect to TSA, Plaintiffs attempt to gloss over the absence of any plausible allegation of unconstitutional conduct by DEA with conclusory assertions, rhetorical feints, and mischaracterizations of the Government Defendants' brief.

As an initial matter, contrary to Plaintiffs' suggestion, Opp'n at 26, 28, DEA has not conceded the existence of any "personal seizure and cash seizure policies" alleged by Plaintiffs. In its motion, DEA set forth in detail why Plaintiffs' allegations were insufficient to state a plausible Fourth Amendment claim against DEA. Gov't Def. Mem. at 23-28. In so doing, DEA both explained why Plaintiffs' allegations regarding the existence of an unconstitutional seizure policy were based on speculation and conjecture, *see, e.g.*, *id.* at 13, 23, 27-28, and also noted that Plaintiffs' claim appeared to rest on an incorrect understanding of Fourth Amendment doctrine, *id.* at 23-24, 25. Plaintiffs' suggestion that in highlighting the legal errors underlying Plaintiffs' claim, DEA was offering a defense of "its cash seizure policy," Opp'n at 26, blatantly mischaracterizes the agency's argument. As DEA set forth clearly in its opening brief, Plaintiffs

have not plausibly alleged that DEA has adopted the purported "cash seizure policy" that forms the basis for Plaintiffs' claim.

Plaintiffs respond indignantly to DEA's characterization of their claim as resting on the alleged experiences of a "handful of individual travelers." Opp'n at 24 (quoting Gov't Def. Mem. at 28). But they do not dispute that, beyond Brown and Jones-Nasr, they offer allegations regarding only 14 travelers over the course of many years, *see id.*, many of which are scant in detail and appear not to be based on personal knowledge, *see* Compl. ¶¶ 441-451. Further, in opposition to the Government Defendants' motion, Plaintiffs have not explained why their allegations regarding these individual encounters support an inference that DEA has adopted an unconstitutional seizure policy, merely insisting in a conclusory manner that they "have alleged more than enough for the Court to plausibly infer" that those incidents "are not a mere coincidence." Opp'n at 24; *see also id.* at 25 (baldly asserting that "the unconstitutional personal and cash seizure practices detailed in the FAC are the result of DEA policy"); *id.* at 26 (baldly asserting that "the agency is treating lawful and innocuous activity as a basis for seizing people and property"). A suggestion of the possibility of non-coincidence is a far cry from a plausible allegation of the existence of an actual governmental policy. *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 682-83 (2009) (holding that bare assertions that government officials had "adopted a policy of classifying post-September-11 detainees as 'of high interest' because of their race, religion, or national origin" were insufficient to state a claim).

Plaintiffs lean heavily on their allegation that Anthony DiGiovanni, the DEA agent who allegedly interacted with Jones-Nasr, is an Operation Jetway instructor, Opp'n at 25, but that allegation does not lift their claim out of the realm of conjecture. Even if Plaintiffs had plausibly alleged that Mr. DiGiovanni seized Jones-Nasr or her property without probable cause, based

solely on Jones-Nasr's possession of a "large" amount of cash, such allegations would at best be merely *consistent* with Plaintiffs' claim rather than plausibly allege that the encounter resulted from an unlawful DEA policy.  As the Supreme Court has emphasized, "[t]he plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. The allegation that Mr. DiGiovanni is an Operation Jetway instructor likewise is "merely consistent" with Plaintiffs' theory of liability, rather than establishing "plausibility of 'entitlement to relief.'" *Id.* (citation omitted). Beyond Mr. DiGiovanni's alleged background as an Operation Jetway instructor, Plaintiffs identify no facts underlying their conclusion that "DEA is training its interdiction agents to (1) treat cash alone as reasonable suspicion of criminality justifying the seizure of travelers and (2) treat 'large' amounts of cash as presumptively subject to seizure for civil forfeiture." Opp'n at 25. Contrary to Plaintiffs' suggestion, *id.* at 25, 26, the DOJ OIG report cited in the Complaint makes no findings that DEA is training its agents in this manner, and, indeed, Plaintiffs do not identify any language in the report that supposedly supports such a conclusion. Indeed, if anything, the absence of such a finding by the OIG undermines Plaintiffs' contention that such a policy exists.

Plaintiffs' argument that the Court can reasonably infer the existence of an unlawful DEA policy based on "[t]he consistency and similarity of DEA's practices at airports across the country," *id.* at 25, is question-begging, as Plaintiffs fail to point to allegations in the Complaint that would support such an inference. Indeed, as in their arguments with respect to TSA, Plaintiffs attempt to elide the gaps in the Complaint with bald conclusions. *See, e.g.*, Opp'n at 27 (citing a 10-paragraph section of the Complaint in support of a characterization of "[t]he personal seizure policy at issue," but not identifying any specific allegations supporting an inference that DEA has adopted such a policy); *id.* at 24 (citing a 5-paragraph section of the Complaint without explaining

13

how these paragraphs support a reasonable inference that DEA has adopted the alleged policy). However, conclusory allegations in a complaint are not entitled to a presumption of truth, *Iqbal*, 556 U.S. at 678, and Plaintiffs cannot evade dismissal by offering such conclusions in opposition to the Government Defendants' motion.

**IV.    Plaintiffs Brown and Rolin Concede That Their Claim for Interest Has No Legal Basis.**

Plaintiffs Brown and Rolin admit that there is no legal basis for the Court to find that it has jurisdiction over their claim for interest, conceding that any such claim is foreclosed by governing Third Circuit precedent. Opp'n at 30. Further, Plaintiffs cite no authorities and offer no substantial argument for overturning that precedent. Accordingly, for the reasons set forth in the Government Defendants' opening brief, the claim must be dismissed for lack of subject matter jurisdiction, and Plaintiffs have identified no proper basis for their continued pursuit of this count. *Cf.* Fed. R. Civ. P. 11(b)(2) (presenting a pleading or written motion to the court entails a certification that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law").

## CONCLUSION

For the foregoing reasons, and the reasons set forth in the Government Defendants' opening memorandum, the Court should dismiss the claims against the Government Defendants pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

14

Dated: November 20, 2020               Respectfully submitted,

                                       JEFFREY BOSSERT CLARK
                                       Acting Assistant Attorney General

                                       SCOTT W. BRADY
                                       United States Attorney

                                       BRIGHAM J. BOWEN
                                       Assistant Director

                                       /s/ Elizabeth Tulis
                                       ELIZABETH TULIS
                                       Trial Attorney
                                       Federal Programs Branch
                                       U.S. Department of Justice, Civil Division
                                       1100 L Street, NW
                                       Washington, DC 20005
                                       Tel: (202) 514-9237
                                       Fax: (202) 616-8470
                                       E-mail: elizabeth.tulis@usdoj.gov

                                       *Attorneys for the Government Defendants*