IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| REBECCA BROWN and AUGUST TERRENCE ROLIN, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> TRANSPORTATION SECURITY ADMINISTRATION, et al., <br><br> Defendants. | Civil Action No. 2:20-cv-64-MJH-LPL <br><br> **STEVEN DAWKIN'S OBJECTIONS TO REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO DISMISS** |

**STEVEN DAWKIN'S OBJECTIONS TO REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO DISMISS**

The Report and Recommendation on Defendants' Motions to Dismiss, ECF No. 66 ("R&R" or "Report"), recommends granting DEA Agent Steven Dawkin's motion to dismiss, ECF No. 47. That bottom-line conclusion is undoubtedly correct; all claims against Agent Dawkin should be dismissed as a matter of law. Because the Report did not accept all the bases for dismissal urged by Agent Dawkin, he submits these objections for the limited purposes identified below and in an abundance of caution to avoid waiver. See 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); LCvR 72.D.2.

**STANDARD OF REVIEW**

When a party files objections to a magistrate judge's findings and recommendations on a dispositive motion, a district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The district judge may then "accept, reject, or modify, in whole or in

part, the findings or recommendations made by the magistrate judge." Id.; see also Fed. R. Civ. P. 72(b)(3); LCvR 72.D.2. The authority specifies that "any party" may file objections. 28 U.S.C. § 636(b)(1)(C); LCvR 72.D.2. Thus, a prevailing party can object to an adverse finding on one issue even if ultimately prevailing on another. Cf. Camreta v. Greene, 563 U.S. 692, 702 (2011) (authorizing appeal by prevailing party).

## DISCUSSION

For the reasons set forth in his briefing, ECF No. 48 ("MTD Br."); ECF No. 61 ("Reply Br."), Dawkin agrees with the Report's recommendation that this Court not imply a novel Bivens remedy stemming from the forfeiture-related seizure of $82,373 in cash and any incidental detention of Rebecca Brown's person at the Pittsburgh International Airport. The Magistrate Judge's determination that qualified immunity barred Plaintiffs' claim related to the alleged detention of Ms. Brown was also correct as a matter of law. Agent Dawkin files these objections for the limited purposes of: (1) clarifying the legal framework relevant to the Bivens inquiry, and (2) highlighting certain points of error in the Report's qualified immunity analysis regarding Plaintiffs' seizure-of-cash claim. He respectfully requests that this Court "modify" these findings, "in whole or in part," 28 U.S.C. § 636(b)(1)(C), for the reasons set forth below.

I.   **Availability of a Bivens Remedy**

   A.   **The Two-Step Framework.**

A Bivens remedy is a constitutional-tort claim against a federal officer in his or her individual capacity. No statute authorizes this cause of action. Rather, the availability of any such claim hinges on a plaintiff satisfying a "restrictive two-step framework" that courts apply whenever, as here, confronted with a putative Bivens claim. Mack v. Yost, 968 F.3d 311, 317. (3d Cir. 2020). The two steps in the framework are distinct. At step one, the court determines if

a case presents a "new context."  This is a low bar: a "modest extension" or "meaningful difference" from Bivens, including one that is "small, at least in practical terms," is enough.  MTD Br. at 7-8 (quotations omitted).  Upon finding a difference in context, the court moves to the second step, separately evaluating if any special factors counsel hesitation against implying a damages remedy in the context at issue.  Id. at 9.  A "special factor counseling hesitation" is merely a "reason to pause" before extending Bivens to the setting at bar.  Id. (quoting Hernández v. Mesa, 140 S. Ct. 735, 743 (2020) (Hernández I)).  Because somewhat different standards apply at each sequential step, whether a case presents a "new context" is an assessment independent of whether "special factors counsel hesitation."  MTD Br. at 6-7, and cases cited therein. That said, as a practical matter, there are often overlapping factors of consideration in both the "new context," and "special factors" inquiries.

  **B.**  **Objections to the Report's Application of the Two-Step Framework.**

    **1.**  **The New-Context Analysis.**

Here, at step one, the Report found Plaintiffs' allegations against Agent Dawkin—that, at the Pittsburgh International Airport, he "detained [Ms.] Brown without reasonable suspicion, and seized $82,373 in cash belonging to [her and her father] without probable cause"— present a "classic Bivens case."  R&R at 14-15, 18.  Dawkin objects to that characterization, which is contrary to law.

The Supreme Court's "understanding of a 'new context' is broad," and the "inquiry is easily satisfied."  MTD Br. at 7 (quotations omitted).  Allegations only need present a "modest extension" or "small" differences from Bivens itself.  Id. at 8 (quotations omitted).  Bivens, as the Third Circuit just recently observed, "involved a Fourth Amendment claim against federal narcotics agents who conducted a warrantless search of a man's home, and allegedly arrested the

3

man without probable cause and threatened to arrest his entire family." Mack, 968 F.3d at 318 (emphasis added); see also Ahmed v. Weyker, 984 F.3d 564, 568 (8th Cir. 2020) ("The focus in Bivens was on an invasion into a home and the officers' behavior once they got there.") (emphasis added). The allegations here—of a "forfeiture-related seizure of $82,373 cash at an airport (and any alleged temporary 'seizure' of Ms. Brown in that context)"—present a significantly different context. MTD Br. at 7-8; see also Reply Br. at 2-3.[1]

In reaching a contrary finding, the R&R discounted the importance of the airport setting where the encounter between Dawkin and Ms. Brown took place, stating, "[a] mere change in location [from Bivens] would not ordinarily constitute a meaningful difference in a law enforcement search-and-seizure context." R&R at 16. That is incorrect. Where the allegations arose can be and often is a salient aspect of the new-context analysis,[2] particularly so here, as an international airport is no ordinary setting. MTD Br. at 7; Reply Br. at 3. Indeed, every court confronted with a putative Bivens claim arising in an airport has appreciated the significance of that setting in finding the new-context inquiry met.[3] The same should be true here.

---

[1] To the extent that the Report leaves any ambiguity, the analysis as to whether to imply a remedy applies equally to the seizure of cash and alleged temporary detention of Ms. Brown's person, which appeared "incidental to the central theme of attempted asset forfeiture." R&R at 17; see also R&R at 14 (framing claim for purposes of the Bivens analysis as an allegation "that Dawkin detained Brown without reasonable suspicion, and seized $82,373 in cash belonging to Rolin and Brown without probable cause, in violation of the Fourth Amendment.").

[2] See, e.g., Oliva v. Nivar, 973 F.3d 438, 441-43 (5th Cir. 2020) (finding that, although involving "excessive-force, unreasonable-seizure claims[,]" case presented a new context because, among other differences, it "arose in a government hospital, not a private home.").

[3] See Vanderklok v. United States, 868 F.3d 189, 199-200 (3d Cir. 2017); see also Mengert v. TSA, No. 19-cv-304, 2020 WL 7029893, at *8 (N.D. Okla. Nov. 30, 2020); Scruggs v. Nielsen, No. 18-cv-2109, 2019 WL 1382159, at *5 (N.D. Ill. Mar. 27, 2019); Memorandum and Recommendation, Osmon v. United States, No. 20-cv-31 (W.D.N.C. Dec. 7, 2020), ECF No. 21, at 20-21; Linlor v. Polson, 263 F. Supp. 3d 613, 620 (E.D. Va. 2017).

The Report also considers this a "classic Bivens case" because it "involves the same rank, constitutional right, specificity, judicial guidance, legal mandate, and inter-branch intrusion as Bivens." R&R at 15.[4] As to the "constitutional right," however, the Supreme recently warned against framing that at too high a level of generality. Hernández I, 140 S. Ct. at 743-44 ("A claim may arise in a new context even if it is based on the same constitutional provision as a claim in which a damages remedy was previously recognized."). So it is not enough that Plaintiffs (as in Bivens) allege Fourth Amendment violations. The relevant question is whether Bivens involved alleged violations of a right to be free from unlawful seizures of property (more specifically, cash), or any claimed infringement of the right to be free from temporary detentions at an international airport (where "reasonable privacy expectations are of significantly lesser magnitude"). Reply Br. at 3 n.4 (quoting Florida v. Rodriguez, 469 U.S. 1, 6 (1984)). Neither was at issue in Bivens. As to "inter-branch intrusion," moreover, the Supreme Court has never extended Bivens where Congress had created a comprehensive statutory scheme (like CAFRA) or the challenged actions were allegedly carried out pursuant to a purported federal policy (a proposition the R&R appears to accept, R&R at 17). This, then, is no "classic Bivens case." Id. at 16. Rather, the new-context inquiry is readily met, MTD Br. at 7-8, Reply Br. at 2-3, and, as the R&R ultimately held, Plaintiffs seek to extend Bivens to a novel setting.[5]

---

[4] Although the Supreme Court has provided "some examples [that] might prove instructive" in the new-context inquiry (i.e., the right at issue; the legal mandate the officer operated under; and the risk of inter-branch intrusion), that list is not exhaustive. Ziglar v. Abbasi, 137 S. Ct. 1843, 1859 (2017). As the Court emphasized, even a case with "significant parallels to" Bivens presents a new context if, as noted, it has a "modest extension," id. at 1864, from the narrow "search-and-seizure context in which [that case] arose" – i.e., a claim against agents for "handcuffing a man in his own home without a warrant." Id. at 1856, 1860.

[5] Despite framing this as a "classic Bivens case," the R&R found "potential special factors not previously considered" made the claims "meaningfully different from Bivens itself." R&R at 15-17. As the R&R correctly held, this factor, too, warrants a finding of new context.

### 2. The "Special Factors" Analysis.

A finding that a case presents a new context triggers the analytically distinct step of determining "whether there are any special factors that counsel hesitation about granting the extension." Hernández I, 140 S. Ct. at 743 (quotations and alterations omitted). Here, the multiple special factors outlined in the briefing, MTD Br. at 9-19; Reply Br. at 4-9, many of which the Report accepted (R&R at 16-18), provide ample reason to pause before extending Bivens. Those factors include: (1) the presence of CAFRA's comprehensive scheme, MTD Br. at 10-11; (2) the availability of other forms of relief, id. at 12-13; (3) that, despite "frequent and intense" oversight of asset forfeiture and related seizures, Congress did not entertain and, in at least one statute, limited the availability of consequential damages, id. at 13-15; (4) the national security concerns at play in the arena of drug interdiction efforts at international airports, id. at 16;[6] (5) the attempt to use Bivens to challenge actions allegedly taken according to federal policy, id. at 17-18; and (6) additional practical or "forward-looking" concerns, id. at 18-19. Given these multiple (some overlapping) special factors, this Court should—as the R&R ultimately recommends—refrain from implying a damages remedy in the novel setting of a forfeiture-related seizure of cash at an international airport and any incidental temporary seizure of person associated with it. See MTD Br. at 9-19; Reply Br. at 4-9.

## II. Qualified Immunity as to Plaintiffs' Cash-Seizure Claim

Because the availability of a Bivens remedy is a threshold inquiry "antecedent to the other questions presented," it is "appropriate" for this Court "to address the Bivens question in

---

[6] The Report (in its new-context discussion) appears to reject this factor, stating such "considerations are simply not applicable to Plaintiffs' claims against Dawkin, a trained law enforcement officer who was not engaged in airport security screening." R&R at 16. It is simply incorrect, however, to limit the national security implications at issue here (drug interdiction efforts at an international airport) to the "airport security screening" context.

the first instance," prior to (and without the need for) resolving qualified immunity. Hernández v. Mesa, 137 S. Ct. 2003, 2006-07 (2017) (Hernández II).  Here, then, this Court could find no Bivens remedy exists and dismiss the claims against Agent Dawkin on that basis, without deciding if Plaintiffs adequately allege Fourth Amendment claims or the violation of any clearly established Fourth Amendment right.  That approach is in line with the principle of constitutional avoidance, which "generally counsel[s] against resolving constitutional issues when the parties' dispute can be resolved on other grounds."  United States v. Norwood, 819 F. App'x 124, 125-26 (3d Cir. 2020).

Nonetheless, in the event this Court were to alternatively address qualified immunity, as the R&R did, Agent Dawkin objects to the denial of such immunity on the seizure-of-cash claim. See R&R at 13-14.  In denying Dawkin qualified immunity on that claim, the R&R does not reconcile Plaintiffs' failure to adhere to the "longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'"  White v. Pauly, 137 S. Ct. 548, 552 (2017) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011)).  That is incorrect.

For purposes of the "clearly established" inquiry, a plaintiff "must define the right allegedly violated at the appropriate level of specificity."  Sharp v. Johnson, 669 F.3d 144, 159 (3d Cir. 2012).  That is, "at a particularized level."  Walker v. Coffey, 905 F.3d 138, 144 (3d Cir. 2018).  There must be "controlling authority" or a "robust consensus of cases of persuasive authority," al-Kidd, 563 U.S. at 742, demonstrating that "an officer acting under similar circumstances" as Dawkin "violated the Fourth Amendment."  District of Columbia v. Wesby, 138 S. Ct. 577, 590 (2018) (quotation).  Here, Plaintiffs offer neither.  Nevertheless, the Report recommends denying Dawkin qualified immunity on the cash-seizure claim, based largely on three propositions.  R&R at 13.  Each one, identified below, Dawkin objects to.

7

- First, the Report cites <u>United States v. Ten Thousand Seven Hundred Dollars in U.S. Currency</u>, 258 F.3d 215 (3d Cir. 2001), to say that "seizures for civil forfeiture require a warrant or probable cause." R&R at 13. As discussed in the briefing, however, Dawkin did not seize the cash "for civil forfeiture." <u>See</u> Reply Br. at 14. What's more, the decision cited, <u>Ten Thousand Seven Hundred Dollars</u>, does not address the constitutionality of the officers' underlying cash seizure; the Third Circuit expressly declined to do so. 258 F.3d at 218. Rather, the Third Circuit limited its analysis to the discrete question of whether the government "met its burden of establishing probable cause to <u>initiate forfeiture proceedings</u>" pursuant to a federal statute, 21 U.S.C. § 881. <u>Id.</u> (emphasis added). That is a different type of conduct, relying on a different legal standard entirely, than what is at issue here. <u>See</u> Reply Br. at 13-14 (seizing property for investigation requires reasonable suspicion, while initiating forfeiture requires probable cause).

- Second, the Report notes that the "possession of a large amount of cash does not give rise to probable cause." R&R at 13 (citing <u>United States v. Law</u>, 384 F. App'x 121, 122-23 (3d Cir. 2010); <u>Ten Thousand Seven Hundred Dollars</u>, 258 F.3d 215 (3d Cir. 2001)). Yet, as the R&R observes elsewhere, Dawkin never argued he had "probable cause" to seize the cash. <u>Id.</u> at 13-14. Nor did he contend he seized the cash based on its presence alone.[7] As alleged, Dawkin was confronted with various forms of explanation for why Ms. Brown had over $82,000 cash with her, ECF No. 43, First Amended Complaint ("FAC"), at ¶¶ 158, 171-73, and attempted unsuccessfully to corroborate her story before reasonable suspicion to seize the cash ripened. <u>Id.</u> at ¶¶ 188-92. Whether "possession of a large amount of cash," by itself, gives rise to "probable

---

[7] Dawkin seized "the cash pending further investigation based on reasonable suspicion, not probable cause." Reply Br. at 13. And the unpublished opinion in <u>United States v. Law</u> concerned a plain-view seizure of cash inside a home as officers responded to a domestic disturbance. 384 F. App'x 121. Those are not "similar circumstances" to what Plaintiffs allege Dawkin confronted here. <u>Wesby</u>, 138 S. Ct. at 590; <u>see</u> Reply Br. at 12 (distinguishing <u>Law</u>).

cause" does not control prong two of the qualified-immunity question here: whether the particular cash seizure, at the moment it occurred at the airport, violated clearly established law.

- Third, the R&R indicated that "temporary seizure[s] based on reasonable suspicion must be investigative and of short duration." R&R at 13.  Again, this general statement of law frames the clearly established inquiry at far too high a level of generality.  See Pauly, 137 S. Ct. at 552.  Consistent with Supreme Court and Third Circuit precedent, a denial of qualified immunity must consider if existing law "clearly prohibits [Dawkin]'s conduct in the particular circumstances before him."  Wesby, 138 S. Ct. at 590 (emphasis added); Zaloga v. Borough of Moosic, 841 F.3d 170, 175 (3d Cir. 2016) (qualified immunity looks to "the state of the existing law at the time of the alleged violation and the circumstances confronting [the officer]" and "whether a reasonable state actor could have believed his [or her] conduct was lawful." (quotation omitted)).

Here, as noted in the briefing, Plaintiffs have not offered a single case finding an officer constitutionally liable in circumstances analogous to those alleged here.  See MTD Br. at 24-25; Reply Br. at 14.  Specifically, seizing for investigation tens of thousands of dollars in cash at an international airport after the officer first called the alleged co-owner of the cash, who could not corroborate the traveler's story.  The failure to identify any "existing precedent" that "place[d] the lawfulness of the particular" cash seizure "beyond debate" entitles Dawkin to qualified immunity.  Wesby, 138 S. Ct. at 590 (quotation omitted).

At minimum, Agent Dawkin is entitled to qualified immunity for the separate reason that Plaintiffs affirmatively allege he acted "in accordance," FAC at ¶ 115, with a purported policy that no court has declared unconstitutional.  See MTD Br. at 24-25, and cases cited therein.  In such circumstances, where there is no way for an officer to "have known for certain" the alleged policy "was unlawful," Abbasi, 137 S. Ct. at 1867, it is axiomatic that it was not "sufficiently

9

clear" that "every reasonable official" in Dawkin's shoes "would have understood that what he [or she] is doing violates" the Fourth Amendment.  al-Kidd, 563 U.S. at 741.  For the foregoing reasons, Dawkin objects to the denial of qualified immunity on the cash-seizure claim.

## CONCLUSION

Agent Dawkin agrees with the conclusion that he should be dismissed from this lawsuit. For the above reasons, and those set forth in the briefing, this Court should hold that Plaintiffs lack a viable Bivens remedy against Dawkin to challenge the forfeiture-related seizure of $82,373 in cash and any alleged temporary detention of Ms. Brown at the Pittsburgh International Airport; and, in any event, Dawkin is entitled to qualified immunity, and therefore all claims against him should be dismissed with prejudice.

Dated:  February 11, 2021

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General
Civil Division

C. SALVATORE D'ALESSIO, JR.
Acting Director
Torts Branch, Civil Division

MARY HAMPTON MASON
Senior Trial Counsel, Torts Branch

/s/ David Inkeles
DAVID W. INKELES
Trial Attorney (NY Bar No. 5511068)*
United States Department of Justice
Torts Branch, Civil Division
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044-7146
Tel: (202) 305-0401 / Fax: (202) 616-4314
E-mail:  david.w.inkeles@usdoj.gov

*Counsel for Steven Dawkin*

*Admitted Pro Hac Vice