**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

REBECCA BROWN, *et al.*,

    *Plaintiffs*,

v.

TRANSPORTATION SECURITY
ADMINISTRATION, *et al.*,

    *Defendants.*

Civil Action No. 2:20-cv-64

**PLAINTIFFS' OBJECTIONS TO
REPORT AND RECOMMENDATION
[ECF 66]**


**PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO DISMISS**

Dan Alban,* Lead Attorney
VA Bar No. 72688

Jaba Tsitsuashvili*
DC Bar No. 1601246

INSTITUTE FOR JUSTICE
901 North Glebe Rd., Suite 900
Arlington, VA 22203
(703) 682-9320
(703) 682-9321 (fax)
dalban@ij.org
jtsitsuashvili@ij.org

Attorneys for Plaintiffs

*Admitted *Pro Hac Vice*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ....................................................................................................... ii

INTRODUCTION .................................................................................................................... 1

ARGUMENT ........................................................................................................................... 1

I.  Standards of Review ..................................................................................................... 1

II. Factual Objections ....................................................................................................... 2

III. Legal Objections .......................................................................................................... 2

    A.  The magistrate judge correctly first held that Dawkin's suspicionless seizure of
    Rebecca violated the Fourth Amendment, but incorrectly held that this personal
    seizure did not violate clearly established law. .................................................... 2

        1.  The magistrate judge correctly held that Dawkin unconstitutionally seized
        Rebecca, but incorrectly held that he did not violate clearly established law. ...... 3

        2.  Even if the Court rejects Plaintiffs' objections on the clearly established
        prong of the qualified immunity analysis, the Court should not skip
        prong one—it should hold that Dawkin violated the Fourth Amendment. ....... 6

    B.  The magistrate judge reached the wrong conclusion about the availability of a
    *Bivens* remedy by conducting the two-step *Bivens* analysis incorrectly. ........................... 7

        1.  The magistrate judge correctly found that Terry's and Rebecca's *Bivens*
        claims do not arise in a new context, which should end the *Bivens* inquiry. ........ 8

        2.  By conducting a superfluous "special factors" analysis, the magistrate judge
        failed to follow established Supreme Court doctrine. ............................................. 9

    C.  The magistrate judge incorrectly held that "special factors" preclude Rebecca's
    personal seizure claim and Terry's and Rebecca's cash seizure claim. .......................... 11

        1.  The irrelevant CAFRA statutory scheme should not foreclose redress for
        the harms that Dawkin caused to Terry and Rebecca. ...................................... 11

        2.  Injunctive relief claims against DEA for its own conduct should not
        foreclose redress for the harms Dawkin caused to Terry and Rebecca
        with his conduct. .................................................................................................. 14

CONCLUSION ........................................................................................................................ 15

CERTIFICATE OF SERVICE ................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ashcroft v. al-Kidd,*
    563 U.S. 731 (2011) ........................................................................................................... 5

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ........................................................................................................... 2

*Bistrian v. Levi,*
    912 F.3d 79 (3d Cir. 2018) ...................................................................................... 9, 10, 15

*Bivens v. Six Unknown Named Agents,*
    403 U.S. 388 (1971) ................................................................................................... *passim*

*Carlson v. Green,*
    446 U.S. 14 (1980) ............................................................................................................ 15

*Davenport v. Borough of Homestead,*
    870 F.3d 273 (3d Cir. 2017) ............................................................................................... 7

*Davis v. Samuels,*
    962 F.3d 105 (3d Cir. 2020) ......................................................................................... 9, 10

*El v. City of Pittsburgh,*
    975 F.3d 327 (3d Cir. 2020) ............................................................................................... 7

*Fields v. City of Philadelphia,*
    862 F.3d 353 (3d Cir. 2017) ............................................................................................... 7

*Florida v. Bostick,*
    501 U.S. 429 (1991) ....................................................................................................... 4, 5

*Francis v. Miligan,*
    530 F. App'x 138 (3d Cir. 2013) ...................................................................................... 12

*Harper v. United States,*
    No. 1:15-cv-4833, 2016 WL 4994996 (E.D.N.Y. Aug. 3, 2016) ...................................... 13

*Hernandez v. Mesa,*
    140 S. Ct. 735 (2020) ................................................................................................. 7, 8, 9

*Kedra v. Schroeter,*
    876 F.3d 424 (3d Cir. 2017) ............................................................................................... 1

*Mack v. Yost,*
968 F.3d 311 (3d Cir. 2020) ......................................................................................... 7, 8, 9, 15

*McLean v. Gutierrez,*
No. 5:15-cv-275, 2017 WL 6887309 (C.D. Cal. Sept. 28, 2017) ..................................... 15

*O'Donnell v. Knott,*
283 F. Supp. 3d 286 (E.D. Pa. 2017) ................................................................................ 7

*Pearson v. Callahan,*
555 U.S. 223 (2009) ....................................................................................................... 6, 7

*Porter v. Pennsylvania Department of Corrections,*
974 F.3d 431 (3d Cir. 2020) .............................................................................................. 7

*Rankin v. United States,*
556 F. App'x 305 (5th Cir. 2014) ............................................................................... 12, 13

*Sauers v. Borough of Nesquehoning,*
905 F.3d 711 (3d Cir. 2018) .............................................................................................. 7

*Starnes v. Butler County Court of Common Pleas,*
971 F.3d 416 (3d Cir. 2020) .............................................................................................. 7

*United States v. Brown,*
448 F.3d 239 (3d Cir. 2006) .............................................................................................. 5

*United States v. Crandell,*
668 F. Supp. 2d 635 (D.N.J. 2009) ................................................................................ 4, 5

*United States v. Drayton,*
536 U.S. 194 (2002) ........................................................................................................... 5

*United States v. Jones,*
678 F.3d 293 (4th Cir. 2012) ............................................................................................. 5

*United States v. Mendenhall,*
446 U.S. 544 (1980) ........................................................................................................... 4

*United States v. Puga,*
No. 5:19-cr-1346-1, 2019 WL 7170623 (S.D. Tex. Dec. 24, 2019) ................................... 5

*United States v. Thame,*
846 F.2d 200 (3d Cir. 1988) ............................................................................................ 4, 5

*Vanderklok v. United States,*
868 F.3d 189 (3d Cir. 2017) .............................................................................................. 8

*Williams v. FBI*,
No. 3:19-cv-418, 2019 WL 5295465 (D. Or. Oct. 18, 2019) .............................................13

*Williams v. O'Donnell*,
No. 3:19-cv-418, 2020 WL 6686416 (D. Or. Nov. 12, 2020) ..........................................13

*Williams v. Secretary of Pennsylvania Department of Corrections*,
848 F.3d 549 (3d Cir. 2017) .................................................................................................6, 7

*Ziglar v. Abbasi*,
137 S. Ct. 1843 (2017) ....................................................................................................*passim*

**RULES**

Fed. R. Civ. P. 72(b)(3).................................................................................................................1

**STATUTES**

28 U.S.C. § 636(b)(1)(C)..............................................................................................................1

# INTRODUCTION

Named Plaintiffs Terry Rolin and Rebecca Brown bring individual claims for (1) the return of interest on their unconstitutionally seized cash against DEA (Count IV) and (2) damages under *Bivens* against DEA task force officer Dawkin for his unconstitutional seizures of (a) Rebecca and her phone and (b) Terry's and Rebecca's cash (Count V). ECF 43, First. Am. Compl. ("FAC"). Terry and Rebecca preserve for appellate review their return of interest claim but discuss it no further. *See* ECF 62 at 30. They object here to the magistrate judge's erroneous recommendation to grant Dawkin's motion to dismiss their Fourth Amendment *Bivens* claims. ECF 66, Report & Recommendation ("R&R").

The magistrate judge made three errors of law. ***First***, the magistrate judge incorrectly held that Dawkin's violation of Rebecca's Fourth Amendment right to be free of suspicionless seizures was not clearly established, either when he initially approached her or when he forced her, over her objections, to call Terry and hand over her phone. ***Second***, the magistrate judge incorrectly applied the two-step framework for determining whether to apply or extend *Bivens* liability. After correctly holding that this case does not present a new *Bivens* context, the magistrate judge was required by Supreme Court precedent to let the claims proceed without a "special factors" analysis. ***Third***, although the magistrate judge should not have conducted a special factors analysis, the magistrate judge also erred in assessing special factors. Neither an irrelevant statute nor claims against other defendants for their conduct should foreclose *Bivens* relief against Dawkin for his otherwise irremediable unconstitutional conduct.

# ARGUMENT

## I.     Standards of Review

This Court "shall make a de novo determination of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made," and the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3) (same).

The Court "must accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [Plaintiffs]." *Kedra v. Schroeter*, 876 F.3d 424, 434 (3d Cir. 2017) (quotation marks and citation omitted). The motion to dismiss must be denied if the

complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted).

## II.    Factual Objections

The facts relevant to Terry's and Rebecca's *Bivens* claims are recounted in their opposition to Dawkin's motion to dismiss. ECF 53 at 4–8; *see also* FAC ¶¶ 119–232, 523–528. Plaintiffs do not contend that the magistrate judge made errors of fact, but they do contest the legal import, significance, and ramifications of certain facts relied upon or overlooked by the magistrate judge.

## III.    Legal Objections

The magistrate judge made three errors of law in dismissing Terry's and Rebecca's Fourth Amendment *Bivens* claims against Dawkin (Count V).

*First*, the magistrate judge incorrectly held that Dawkin's violation of Rebecca's right to be free from suspicionless seizures was not clearly established—whether at the outset of their interaction or at least when Dawkin forced Rebecca, over her objections, to call Terry and hand over her phone.

*Second*, the magistrate judge incorrectly conducted the *Bivens* analysis by conflating the two steps of the inquiry and erroneously conducting a superfluous special factors analysis after correctly holding that Terry's and Rebecca's Fourth Amendment claims do not present a new *Bivens* context.

*Third*, the magistrate judge incorrectly held that special factors (which should not even be assessed in this case) preclude Terry's and Rebecca's *Bivens* claims. Neither the irrelevant statutory scheme nor the claims against other defendants for their own conduct relied upon by the magistrate judge should bar Terry's and Rebecca's *Bivens* claims for Dawkin's otherwise irremediable conduct.

Rectifying these errors should result in the denial of Dawkin's motion to dismiss in its entirety.

### A.    The magistrate judge correctly first held that Dawkin's suspicionless seizure of Rebecca violated the Fourth Amendment, but incorrectly held that this personal seizure did not violate clearly established law.

The magistrate judge correctly recognized that Terry's and Rebecca's *Bivens* claim encompasses two Fourth Amendment violations: (1) Dawkin's seizure of Rebecca and her phone without reasonable suspicion (the "personal seizure claim," for which the magistrate judge recommended granting qualified immunity, despite correctly finding a Fourth Amendment violation); and (2)

Dawkin's seizure of Terry's and Rebecca's cash without probable cause (for which the magistrate judge correctly recommended denying qualified immunity, and is therefore not discussed any further here).

In granting qualified immunity on Rebecca's personal seizure claim, R&R 13, the magistrate judge erred in holding that Dawkin's suspicionless seizure of Rebecca, while unconstitutional, did not violate clearly established law. Knowing only that she was traveling with cash, Dawkin did not have reasonable suspicion to seize Rebecca. *See* ECF 53 at 22–23. Nevertheless, his conduct and statements made obvious to Rebecca that she was the subject of an individualized investigation for wrongdoing and that she was not free to terminate the encounter or refuse to answer Dawkin's questions. For those reasons, the magistrate judge rightly found that Dawkin violated the Fourth Amendment. And this Court should hold that the violation is clearly established. The Third Circuit and others have explained why Dawkin's conduct amounted to a seizure of Rebecca—whether at the outset of their interaction or when, over her objections, he demanded that she call Terry and took her phone.

However, the magistrate judge was right to conduct the qualified immunity analysis in order— first assessing whether Dawkin violated the Fourth Amendment (prong one) and then assessing whether the violation is clearly established (prong two). Because these claims present recurring police conduct and important Fourth Amendment questions, this Court should conduct the analysis in the same order—adopting the holding that Dawkin violated the Fourth Amendment (prong one) but rejecting the holding that the violation is not clearly established (prong two).

### 1. The magistrate judge correctly held that Dawkin unconstitutionally seized Rebecca, but incorrectly held that he did not violate clearly established law.

In assessing Rebecca's personal seizure claim, the magistrate judge correctly recognized that (1) Dawkin had no reasonable suspicion to seize Rebecca and (2) that he seized her anyway, in violation of the Fourth Amendment. R&R 13. Nevertheless, the magistrate judge granted Dawkin qualified immunity on Rebecca's personal seizure claim, holding that "in light of extensive caselaw indicating that no seizure occurs when officers approach people at airports or other transportation facilities and ask them to submit to questions or permit searches of their effects, . . . it is not clear that Dawkin should have understood that his conduct amounted to a seizure" of Rebecca. R&R 13. To reach this

conclusion, the magistrate judge erroneously credited Dawkin's reliance on cases where officers approached individuals *without* indicating to them that they were *already individually suspected of some wrongdoing*—including cases in which the individual was approached in a broad sweep. R&R 13.

But the Third Circuit and others have explained why those cases are inapposite. *See* ECF 53 at 20–22. In *United States v. Thame*, 846 F.2d 200, 203 (3d Cir. 1988), the Third Circuit adopted the distinction made by the Fifth and Seventh Circuits (all in airport or transportation settings) between instances where the person approached is "positively identified . . . as a suspect" (and thus seized) and those where she is not so identified (and thus not seized). A crucial difference is: "[s]tatements which intimate that an investigation has focussed on a specific individual easily could induce a reasonable person to believe that failure to cooperate would only lead to formal detention." *Id.* (collecting cases).

Dawkin's conduct toward Rebecca clearly fell on the "positively identified as a suspect" and "investigation has focused on a specific individual" side of this Fourth Amendment divide. Approaching her directly *with another officer who had already questioned her about her cash*, Dawkin identified himself as a DEA agent *and told Rebecca he had questions for her about the cash he knew was in her possession (even though it was not openly displayed)—indicating from the get-go that Rebecca was suspected of some wrongdoing.* Rebecca did not feel free to walk away or to decline to answer his questions in the face of this targeted approach by a federal law enforcement officer at the airport, particularly given the similarity of his questions to those already asked of her by his companion. *See Thame*, 846 F.2d at 203 ("the number of officers involved is certainly a relevant factor in deciding whether an individual has been detained") (citing *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). Dawkin's actions and words made clear that this was a targeted investigation of Rebeca for some (unexplained) wrongdoing—not a routine or random check to which others might be subjected on a non-individualized basis. FAC ¶¶ 177–180.

If—as the qualified immunity inquiry requires the Court to assume—Dawkin is intimately familiar with Fourth Amendment caselaw, then *Thame* and the decisions of other courts of appeals and district courts obviously put Dawkin on notice that he seized Rebeca when he "effectively told [her] that [she] was a suspect in a crime." *United States v. Crandell*, 668 F. Supp. 2d 635, 647–48 (D.N.J. 2009) (distinguishing two of the cases credited by the magistrate judge—*Florida v. Bostick*, 501 U.S. 429

(1991) and *United States v. Drayton*, 536 U.S. 194 (2002)—on these bases; relying on *United States v. Brown*, 448 F.3d 239, 245 (3d Cir. 2006)); *id.* at 647 ("There is a notable difference between an encounter where a defendant is among a group of people to whom the police are addressing questions, in furtherance of a random drug interdiction effort; and here, where Crandell was sought out by name by a group of officers … ."); *see also United States v. Puga*, No. 5:19-cr-1346-1, 2019 WL 7170623, at *4 n.9 (S.D. Tex. Dec. 24, 2019) ("The Government's reliance on [*Bostick*]—which held that random drug and immigration sweeps do not implicate the Fourth Amendment—is misplaced. As the Fourth Circuit has explained in rejecting a similar argument, those cases did not involve 'particularized suspicion of wrongdoing among any of the [individuals] questioned[.]'") (quoting *United States v. Jones*, 678 F.3d 293, 304 (4th Cir. 2012)); *Drayton*, 536 U.S. at 203 ("The officers gave the passengers no reason to believe that *they* were required to answer the officers' questions.") (emphasis added). These cases, with *Thame* and the other transportation cases it discussed from the Fifth and Seventh Circuits, demonstrate a "consensus of cases of persuasive authority," *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011), illustrating what constitutes a seizure by law enforcement and what does not—and illustrating that Dawkin's conduct does.

At the very least, even if the Court holds (though it should not) that Dawkin's initial conduct and statements did not constitute a clearly established seizure, it should hold that Dawkin conducted a clearly established unconstitutional seizure of Rebecca and her phone minutes later. Without reasonable suspicion—and despite Rebecca's clearly stated objections—Dawkin demanded to speak with Terry on Rebecca's phone. FAC ¶¶ 181–188. This was such a clear indication that Rebecca and her property were seized against her will (because Dawkin had "positively identified [Rebecca] as a suspect" and "intimate[d] that an investigation ha[d] focused on" her, *Thame*, 846 F.2d at 203) that, in the absence of reasonable suspicion, the only officer who would not recognize this as an unconstitutional seizure is one who is incompetent or knowingly violating the Fourth Amendment—either of which precludes granting qualified immunity, *al-Kidd*, 563 U.S. at 743.

In light of the caselaw and his obvious suspicionless seizures, this Court should conclude that Dawkin's violations were clearly established.

**2. Even if the Court rejects Plaintiffs' objections on the clearly established prong of the qualified immunity analysis, the Court should not skip prong one—it should hold that Dawkin violated the Fourth Amendment.**

In addressing Dawkin's qualified immunity arguments with respect to Rebecca's personal seizure claim, the magistrate judge first assessed whether the allegations of the complaint are sufficient to allege a Fourth Amendment violation and then assessed whether that violation is clearly established. Accordingly, the magistrate judge held first that Dawkin's conduct amounted to an unconstitutional seizure of Rebecca. R&R 13 ("Considering allegations and reasonable inferences in the light most favorable to Brown, a reasonable person in her position would not feel free to disregard Dawkin's demands."). Only then did the magistrate judge hold that that constitutional violation is not clearly established. R&R 13 ("[I]t is not clear that Dawkin should have understood that his conduct amounted to a seizure.").

For the reasons explained in the preceding section, Plaintiffs object to the magistrate judge's holding that the unconstitutionality of Dawkin's seizure of Rebecca and her phone is not clearly established. But even if the Court disagrees with Plaintiffs' arguments on the clearly established prong of the qualified immunity analysis, the Court should—as the magistrate judge did—first assess whether Dawkin's conduct was unconstitutional (and adopt the magistrate judge's holding that it was).

To be sure, the Court has the discretion to assess first the clearly established prong of the qualified immunity analysis and—if it finds a lack of clearly established law—leave unsettled whether Dawkin's suspicionless seizure of Rebecca and her property was unconstitutional. *Pearson v. Callahan*, 555 U.S. 223, 242 (2009). But the Court should not leave the law unsettled. "[I]t is often appropriate and beneficial to define the scope of a constitutional right. Doing so 'promotes the development of constitutional precedent[.]'" *Williams v. Sec'y Pa. Dep't of Corr.*, 848 F.3d 549, 558 (3d Cir. 2017) (quoting *Pearson*, 555 U.S. at 236). By deciding whether the manner in which Dawkin conducted his interaction with Rebecca amounted to an unconstitutional suspicionless seizure, the Court "will clarify and elaborate upon . . . prior jurisprudence in important and necessary ways." *Id.* Critically, "defining rights when given the opportunity to do so not only inures to the benefit of potential plaintiffs, it also informs [law enforcement] personnel and others about what is appropriate." *Id.*

Given the pervasiveness of DEA's airport interdiction activities, *see, e.g.*, FAC ¶¶ 401–454, its officers "deserve clear statements about what the law allows." *Williams*, 848 F.3d at 558. Because DEA officers initiate airport encounters similar to Rebecca's (and Stacy's) so frequently, this is not a case where "the constitutional question is . . . so factbound that [the Court's] decision will provide little guidance for future cases." *Fields v. City of Philadelphia*, 862 F.3d 353, 358 (3d Cir. 2017) (cleaned up).

Indeed, the Third Circuit regularly addresses the constitutionality prong first, including in Fourth Amendment cases, to validate these principles of constitutional development and fair notice of the law to government officials. *See, e.g.*, *Davenport v. Borough of Homestead*, 870 F.3d 273, 280 (3d Cir. 2017); *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 437 (3d Cir. 2020); *Starnes v. Butler Cnty. Ct. of Common Pleas*, 971 F.3d 416, 425–26 (3d Cir. 2020); *El v. City of Pittsburgh*, 975 F.3d 327, 337–39 (3d Cir. 2020); *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 723 (3d Cir. 2018) (pointing out the importance of establishing the law even when granting qualified immunity in the case at hand); *see also O'Donnell v. Knott*, 283 F. Supp. 3d 286, 296 (E.D. Pa. 2017) ("[I]t will often be appropriate to address the constitutional violation first.") (citing *Pearson*, 555 U.S. at 236).

Under these principles, regardless of how the Court rules on whether the unconstitutionality of the seizure was clearly established, it should hold that Dawkin violated the Fourth Amendment.

### B. The magistrate judge reached the wrong conclusion about the availability of a *Bivens* remedy by conducting the two-step *Bivens* analysis incorrectly.

The magistrate judge wrongly concluded that alternative remedies exist for Dawkin's Fourth Amendment violations which preclude a damages remedy under *Bivens*. *See infra*, Argument section III.C. But the magistrate judge should not even have reached that issue. This error occurred because the magistrate judge failed to follow the established two-step doctrine for analyzing whether to apply (or extend) *Bivens*, as prescribed by the Supreme Court in *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1859–60 (2017); clarified in *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020); and applied by the Third Circuit in *Mack v. Yost*, 968 F.3d 311, 317 (3d Cir. 2020). Under that two-step test, a court first considers whether a claim arises in a "new context," and only if the answer is "yes" does it proceed to the second step,

considering whether there are any "special factors" counselling hesitation about extending the *Bivens* remedy to a new context. *Hernandez*, 140 S. Ct. at 743; *accord Mack*, 968 F.3d at 317.

Here, the magistrate judge correctly answered the first question in the negative, finding that Terry's and Rebecca's Fourth Amendment *Bivens* claims do not arise in a "new context" because "Count V of the FAC presents a 'classic' *Bivens* case—an asserted Fourth Amendment violation in a routine law enforcement context." R&R 15. Thus, under the established *Bivens* doctrine, the analysis should have concluded there. It makes no sense to consider whether *Bivens* should be extended or expanded (the very purpose of the "special factors" inquiry) after finding that this case does not arise in a new context and thus does not extend or expand *Bivens*. This Court should decline to follow this illogical and untrod path. Instead, it should follow established Supreme Court doctrine.

1. **The magistrate judge correctly found that Terry's and Rebecca's *Bivens* claims do not arise in a new context, which should end the *Bivens* inquiry.**

At the first step of the *Bivens* analysis, the magistrate judge correctly found that "Count V of the FAC presents a 'classic' *Bivens* case—an asserted Fourth Amendment violation in a routine law enforcement context." R&R 15. The magistrate judge considered all of the criteria set forth in *Abbasi* for "determining whether a case presents a new *Bivens* context," 137 S. Ct. at 1859–60, and correctly concluded that "[n]one of these considerations make Plaintiffs' claims against Dawkin meaningfully different from *Bivens* . . . . The present cases involves the same rank, constitutional right, specificity, judicial guidance, legal mandate, and inter-branch intrusion as *Bivens*." R&R 15.

The magistrate judge also correctly rejected Dawkin's argument that the "airport setting" made this case meaningfully different from *Bivens*, finding: "Dawkin's choice to initiate a law enforcement encounter within the confines of an airport does not imbue the encounter with any airport- or national-security attribute. A mere change in location would not ordinarily constitute a meaningful difference in a law enforcement search-and-seizure context." R&R 16. The magistrate judge rightly noted that Dawkin's reliance on *Vanderklok v. United States*, 868 F.3d 189 (3d Cir. 2017) was misplaced because *Vanderklok* involved claims against TSA screeners who do not receive law enforcement

training on probable cause or reasonable suspicion, in contrast to a trained law enforcement officer like Dawkin "who was not engaged in airport security screening." R&R 16.

For the same reasons, this Court should hold that Plaintiffs' claims against Dawkin arise in the same context as *Bivens*—which ends the *Bivens* inquiry.

> **2. By conducting a superfluous "special factors" analysis, the magistrate judge failed to follow established Supreme Court doctrine.**

Having correctly determined at step one that Count V arose in the same context as *Bivens*, the magistrate judge erred by considering "special factors" counselling hesitation to extend the *Bivens* remedy. This is not only logically inconsistent but also foreclosed by Supreme Court doctrine.

The framework for considering whether to extend *Bivens* is an explicit two-step process. A court must first consider if *Bivens* is even being extended before determining whether the extension is appropriate in light of "special factors counselling hesitation," as the Supreme Court explained in *Hernandez*: "When asked to extend *Bivens*, we engage in a two-step inquiry. We first inquire whether the request involves a claim that arises in a new context or involves a new category of defendants. . . . *When we find that a claim arises in a new context, we proceed to the second step* and ask whether there are any 'special factors that counsel hesitation' about granting the extension." 140 S. Ct. at 743 (cleaned up; citation omitted; emphasis added).

Likewise, the Third Circuit has made clear that considering step two is conditional on an affirmative answer at step one: "First, courts must determine whether the *Bivens* claim presents a 'new context.' . . . *If the case presents a new context, as in *Abbasi*, courts must then determine if there are* 'special factors counselling hesitation' in expanding *Bivens*." *Mack*, 968 F.3d at 317 (emphasis added); *see also Davis v. Samuels*, 962 F.3d 105, 112 (3d Cir. 2020) (same); *Bistrian v. Levi*, 912 F.3d 79, 91–92 (3d Cir. 2018) ("Since we conclude [the] claim does not present a new context, there is no need to address the second step and consider special factors.") (citing *Abbasi*, 137 S. Ct. at 1860).

To be sure, the magistrate judge accurately quoted *Abbasi*'s statement that "[a] case might differ in a meaningful way because of . . . potential special factors that previous *Bivens* cases did not consider," R&R 15 (quoting 137 S. Ct. at 1859–60), which suggests—though the Supreme Court has

never conducted the analysis this way—that some special factors may inform step one of the *Bivens* inquiry. But even if that could be so, the existence of supposed "alternative remedies" (the basis on which the magistrate judge recommended dismissal here) is a *step-two* special factor. The Third Circuit's explanation in *Bistrian* is illustrative and controlling. Relying on *Abbasi*, the Third Circuit explained: "If the case does present an extension of *Bivens* into a new context, we turn to the second step of *Abbasi* and ask whether any 'special factors counsel[] hesitation' in permitting the extension . . . [including] the existence of an alternative remedial structure." 912 F.3d at 90 (quoting 137 S. Ct. at 1857). And that is the supposed special factor upon which the magistrate judge (erroneously) recommended foreclosing relief for Terry's and Rebecca's constitutional damages. *See infra*, Argument section III.C; R&R 16–18.

Similarly, the Third Circuit has made clear that the magistrate judge's (again erroneous) reliance on (1) the possibility that Terry's and Rebecca's *Bivens* claims are "a challenge to 'large-scale policy decisions'" or (2) the ability to sue DEA for injunctive relief because of the agency's own conduct as special factors foreclosing *Bivens* claims, R&R 17–18, would also only be appropriate as *step-two* special factors (which the Court should not reach in this case). *Bistrian*, 912 F.3d at 90 ("whether a claim addresses individual conduct or a broader policy question" is a step-two inquiry); *id.* at 92 (possibility of suing others under the FTCA is a step-two inquiry); *Davis*, 962 F.3d at 112–13 (discussing "second step" special factors and noting that "[t]hose factors include . . . the potential availability of alternative remedies to the [plaintiffs], such as injunctive relief"); *cf. Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 410 (1971) (Harlan, J., concurring) ("It will be a rare case indeed in which an individual in Bivens' position will be able to obviate the harm by securing injunctive relief from any court.").

Indeed, the Supreme Court was clear in *Abbasi* that *Bivens* claims remain viable and necessary in the established search-and-seizure context of cases like this one: "this opinion is not intended to cast doubt on the continued force, or even the necessity, of *Bivens* in the search-and-seizure context in which it arose." 137 S. Ct. at 1856. As the Supreme Court further explained: "*Bivens* does vindicate the Constitution by allowing some redress for injuries, and it provides instruction and guidance to federal law enforcement officers going forward. The settled law of *Bivens* in this common and recurrent

sphere of law enforcement, and the undoubted reliance upon it as a fixed principle in the law, are powerful reasons to retain it in that sphere." *Id.* at 1856–57.

### C. The magistrate judge incorrectly held that "special factors" preclude Rebecca's personal seizure claim and Terry's and Rebecca's cash seizure claim.

The "special factors" inquiry is superfluous here for the reasons explained above. Worse yet, the magistrate judge erred in assessing Dawkin's special factors arguments. Even if the Court assesses special factors, it should reject the magistrate judge's holding that Plaintiffs' otherwise irremediable Fourth Amendment claims are precluded by "alternative remedies" in the form of an irrelevant statute or non-damages claims against other defendants for their own conduct. R&R 16–18.

### 1. The irrelevant CAFRA statutory scheme should not foreclose redress for the harms that Dawkin caused to Terry and Rebecca.

Any "remedial" provisions of CAFRA for the return of unconstitutionally seized property have nothing to do with either of Plaintiffs' two Fourth Amendment claims against Dawkin. *See* ECF 53 at 13–16 (explaining why CAFRA's forfeiture provisions have no deterrent or remedial effects for the harms and damages caused by unconstitutional seizures—especially unconstitutional seizures of the person). The ability to engage in a forfeiture proceeding that, in a best-case scenario, results in many months of unconstitutional deprivations of money that people (like Terry) need to survive cannot seriously be considered adequate to vindicate the "purpose of *Bivens*," which "is to deter the officer" who violates the Fourth Amendment. *Abbasi*, 137 S. Ct. at 1860 (emphasis omitted; citations omitted). Once CAFRA kicks in, the victim of the officer's unconstitutional conduct is dealing with a faceless agency that, even if it eventually returns the money, will do nothing to make the victim whole for being deprived of the money for many months and the attendant inability to pay bills. This is especially true if claimants may not obtain interest on their unconstitutionally seized cash unless the government files a CAFRA complaint, as Third Circuit caselaw currently dictates. *See* ECF 62 at 30.

The magistrate judge's answer was that CAFRA's irrelevant provisions bar Plaintiffs' *Bivens* claims because "DEA's alleged purpose to seize travelers' money for forfeiture is central to the events [*i.e.* the constitutional harms] which form the basis of Count V." R&R 16. But the magistrate judge did not explain why DEA's purpose for conducting unconstitutional seizures of people and their cash

has any bearing on whether CAFRA forecloses redress and accountability for agents' misconduct. After all, CAFRA provides no recourse for the harms caused by unconstitutional seizures of people and their property, nor for months of unconstitutional deprivations of one's life savings.

In fact, the magistrate judge's logic has no limiting principle, and if applied consistently would eliminate *Bivens* claims altogether. In *Bivens* itself, for example, the agents' purpose was to enforce criminal laws. And, in the words of the magistrate judge, that "purpose" was "central" to the harms they inflicted on Webster Bivens. But, under the test announced by the magistrate judge, those harms would be unredressable in damages, as long as Mr. Bivens could argue to a judge (whether successfully or not, and no matter how long down the road) that the agents' Fourth Amendment violations should preclude any criminal sanctions against him (just as victims of Dawkin's seizures can argue to the faceless agency that they should get their money back, or file a lawsuit to do so).

Luckily, that is not the law. Even the cases that Dawkin relies on recognize the distinction between a Fourth Amendment *Bivens* challenge to the *seizure of property* (the claim that Plaintiffs have brought, which the CAFRA process does not account for) versus a Fifth Amendment *Bivens* challenge for relief from an *unconstitutionally administered forfeiture proceeding* (which Plaintiffs have not brought, and could be raised through CAFRA's own mechanisms). *Francis v. Miligan*, 530 F. App'x 138, 138–39 (3d Cir. 2013); *Rankin v. United States*, 556 F. App'x 305, 310–11 (5th Cir. 2014).

That established difference between claims that implicate CAFRA and claims that do not is even more obvious with respect to Rebecca's challenge to the seizure of her person and her phone (which Dawkin unconstitutionally seized but did not keep for forfeiture). Even if the Court holds (though it should not) that CAFRA counsels hesitation regarding Terry's and Rebecca's claim arising from Dawkin's unconstitutional seizure of their cash, no such hesitation is warranted regarding Rebecca's claim arising from Dawkin's unconstitutional seizure of her and her phone.

CAFRA only provides an avenue to challenge civil forfeiture of property; it has nothing to say about the seizure of a person or of property other than that taken for forfeiture. *Rankin*, 556 F. App'x at 311 (CAFRA "provides a comprehensive statutory scheme for challenging a *civil forfeiture*" and "for protecting *property interests*" with respect to what the government seeks to forfeit) (emphases added).

Accordingly, courts have recognized that even if CAFRA precludes *Bivens* claims for "unconstitutional forfeiture of . . . property," *Rankin*, 556 F. App'x at 311, it is irrelevant to the unconstitutional seizure *of a person or temporary seizure of other property that was not taken for forfeiture*—including in the course of events that led to forfeiture proceedings. *Williams v. O'Donnell*, No. 3:19-cv-418, 2020 WL 6686416, at *10 (D. Or. Nov. 12, 2020) (declining to extend *Bivens* to claim seeking return of funds seized for forfeiture, but allowing *Bivens* claim to proceed for temporary seizure of phone that was not taken for forfeiture); *Williams v. FBI*, No. 3:19-cv-418, 2019 WL 5295465, at *8 (D. Or. Oct. 18, 2019) (declining to extend *Bivens* to claim "seek[ing] to litigate the seizure and forfeiture of [the plaintiff's] assets," but allowing *Bivens* claim to proceed "seek[ing] to litigate whether the agents' seizure of his person . . . violated his Fourth . . . Amendment rights");[1] *Harper v. United States*, No. 1:15-cv-4833, 2016 WL 4994996, at *13 (E.D.N.Y. Aug. 3, 2016), *report and recommendation adopted*, 2016 WL 4995077 (E.D.N.Y. Sept. 19, 2016) ("CAFRA-exclusion" of *Bivens* claim regarding property in forfeiture proceedings did not apply to property that "was not forfeited via administrative proceedings").

The magistrate judge's only justification for sweeping Rebecca's personal and phone seizure claim into the CAFRA-based reasoning for dismissing Terry's and Rebecca's cash seizure claim was the magistrate judge's view that "the principal injuries claimed by Brown and Rolin stem from the seizure of their cash," and "any injuries suffered by Brown from Dawkin's briefly detaining her, without physical force, to investigate her story and extract her cash appear to be incidental to the central theme of attempted asset forfeiture." R&R 17. But these statements lack any citation to authority, and there is no incidental-injury exception to *Bivens*. Even if Rebecca's Fourth Amendment claim for the unconstitutional seizure of herself and her phone must stand alone, it should proceed.

In short, if the Court assesses the claims that Terry and Rebecca have actually brought (rather than hypothetical claims that would actually implicate CAFRA, such as those in other cases), it is

---

[1] Unlike the claims dismissed in *Williams*, which sought to litigate the forfeiture issue and secure a return of the property via *Bivens*, Terry and Rebecca only seek *monetary damages from Dawkin* for the harms caused by their inability to use the money that he unconstitutionally seized for seven months.

indeed "damages or nothing." *Abbasi*, 137 S. Ct. at 1862. That is true of Terry's and Rebecca's cash seizure claim, and even more obvious regarding Rebecca's personal seizure and phone seizure claim.

### 2. Injunctive relief claims against DEA for its own conduct should not foreclose redress for the harms Dawkin caused to Terry and Rebecca with his conduct.

Relying on *Abbasi*, the magistrate judge also recommended the dismissal of Terry's and Rebecca's *Bivens* claims against line officer Dawkin because they have also brought injunctive relief claims against DEA for the agency's unconstitutional policies. That misconstrues *Abbasi*, where the Supreme Court warned against *Bivens* claims designed to overturn high-level national security policies enacted in response to the 9/11 attacks, because such claims would impose on the national security deliberations of the executive branch. 137 S. Ct. at 1860–61. The *Bivens* claims in *Abbasi* were not about day-to-day law enforcement, unlike the claims here against Dawkin—whose job, the magistrate judge correctly found, is "not imbue[d] with any airport- or national-security attribute." R&R 16.

Indeed, unlike here, the *Bivens* claims in *Abbasi* were not even about "individual instances of . . . law enforcement overreach"; instead, they directly "challenge[d] large-scale policy decisions concerning the conditions of confinement imposed on hundreds of prisoners." 137 S. Ct. at 1862. And the Court explicitly acknowledged the difference between those claims, which were brought against national security policymakers and therefore best calibrated by Congress, versus claims brought against standard law enforcement officers like Dawkin, "which due to their very nature are difficult to address except by way of damages actions after the fact." *Id.* Put simply, in *Abbasi*, the Court was concerned that a win for the plaintiffs would effectively enjoin post-9/11 national security policies and chill the deliberations of top-level national security decision-makers. A win against Dawkin, on the other hand, would simply be a win against Dawkin, who makes no policy decisions—national security or otherwise—for DEA. In *Abbasi*, there was no dispute that the *Bivens* claims and the policies were one and the same. Here, Plaintiffs still must prove that DEA has in place the policies alleged.

Finally, Terry's and Rebeca's damages claims against Dawkin are not foreclosed just because they also have injunctive relief claims pending against other defendants, as suggested by the magistrate judge, R&R 18. No authority supports such a proposition. To the contrary, the Supreme Court has

made "crystal clear" that *Bivens* claims co-exist "as parallel, complementary causes of action" with FTCA claims against other defendants arising from the same circumstances. *Carlson v. Green*, 446 U.S. 14, 20 (1980). If that is true regarding FTCA claims—which seek damages for the conduct of the *Bivens* defendant himself—it must be all the more true regarding injunctive relief claims, which do not seek damages at all and are based on the conduct and policies of DEA, not Dawkin.

As the Third Circuit explained in *Mack v. Yost*, to determine whether injunctive relief claims against other defendants or other supposed avenues of relief should bar *Bivens* claims, a crucial consideration is whether the plaintiff seeks retrospective relief for "any physical injuries with resulting monetary loss." 968 F.3d at 321; *id.* at n.9 (discussing the availability of a *Bivens* remedy in *Bistrian*, 912 F.3d at 92, because of physical injuries); *see also McLean v. Gutierrez*, No. 5:15-cv-275, 2017 WL 6887309, at *19 (C.D. Cal. Sept. 28, 2017), *report and recommendation adopted*, 2018 WL 354604 (C.D. Cal. Jan. 10, 2018) ("It is also unclear how defendants' suggestion of injunctive relief would fulfill plaintiff's goal to seek relief for Hernandez's past alleged wrong.").

Here, Dawkin's conduct caused Terry physical injury in the form of unnecessarily aggravated dental and health issues—including the need for a bone graft—due to the deprivation of his cash. FAC ¶ 217. Moreover, Terry and Rebecca suffered monetary losses, pain and suffering, and quality of life losses—including but not limited to Terry being forced to eat soft foods that do not require chewing for seven additional months, Terry's inability to fix his truck during that time, and Rebecca's inability to pay her tax debt while it accrued interest. FAC ¶¶ 215–224. Injunctive relief against DEA can remedy none of that. "It will be a rare case indeed in which an individual in Bivens' position will be able to obviate *the harm* by securing injunctive relief from any court." *Bivens*, 403 U.S. at 410 (Harlan, J., concurring) (emphasis added). This is not that rare case; no injunction against DEA will remedy "the harm" to Terry's gums and the other damages caused by Dawkin's constitutional violations.

## CONCLUSION

The Court should (1) sustain Plaintiffs' objections on the *Bivens* claims, (2) deny Dawkin's motion to dismiss Count V, and (3) preserve for appellate review the dismissal of Count IV.

Dated: February 11, 2021          Respectfully submitted,

/s/ Dan Alban
Dan Alban*
VA Bar No. 72688

Jaba Tsitsuashvili*
DC Bar No. 1601246

Institute for Justice
901 North Glebe Rd., Suite 900
Arlington, VA 22203
(703) 682-9320
(703) 682-9321 (fax)
dalban@ij.org
jtsitsuashvili@ij.org

*Attorneys for Plaintiffs*

*Admitted Pro Hac Vice

## CERTIFICATE OF SERVICE

I hereby certify that on February 11, 2021, a true and correct copy of the foregoing document was filed electronically with the Clerk of Court using the CM/ECF System, which will send a notice of electronic filing to all counsel of record.

/s/ Dan Alban