# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| REBECCA BROWN, et al., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 2:20-cv-00064-MJH-LPL<br>) |
| TRANSPORTATION SECURITY ADMINISTRATION, et al., | )<br>)<br>) |
| Defendants. | )<br>) |

## GOVERNMENT DEFENDANTS' OBJECTIONS TO REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO DISMISS

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

STANDARD OF REVIEW ................................................................................................... 1

ARGUMENT .......................................................................................................................... 1

I.  Plaintiffs Lack Standing To Raise the Claims in Counts I-III. ........................................ 3

II. The Court Lacks Jurisdiction To Review Counts I and II Challenging Alleged
    TSA Policies and Procedures. .......................................................................................... 7

III. Counts I-III Fail To State an APA Claim on Which Relief May Be Granted. ................ 10

CONCLUSION ...................................................................................................................... 15

## INTRODUCTION

The Government Defendants—the Transportation Security Administration (TSA), Drug Enforcement Agency (DEA), the heads of those agencies sued in their official capacities, and the United States—object to the Report and Recommendation on Defendants' Motions to Dismiss, ECF No. 66 (R&R or Report), to the extent that it recommends that Government Defendants' motion to dismiss, ECF No. 55, be denied as to Counts I-III.[1] Plaintiffs' claims against the Government Defendants should be dismissed for lack of subject matter jurisdiction and for failure to plausibly allege a claim upon which relief can be granted under the Administrative Procedure Act (APA).

## STANDARD OF REVIEW

When a party files objections to a magistrate judge's findings and recommendations on a dispositive motion, a district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *accord* Fed. R. Civ. P. 72(b)(3); LCvR 72.D.2. The district judge may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *accord* Fed. R. Civ. P. 72(b)(3); LCvR 72.D.2.

## ARGUMENT

Plaintiffs are four individuals whose cash was allegedly seized by DEA agents or other unidentified law enforcement personnel after the cash was detected by TSA screeners during routine airport security screenings. Based on these encounters with individual TSA screeners and DEA agents, Plaintiffs attempt to extrapolate claims that TSA and DEA have adopted agencywide

---

[1] Government Defendants support the Magistrate Judge's conclusion that Count IV must be dismissed because the United States has not waived sovereign immunity for claims to interest on seized funds. *See* R&R at 12; Gov't Defs.' Mem. in Supp. of Mot. to Dismiss (Gov't Mem.) at 28-29, ECF No. 57.

1

"policies or practices" beyond TSA's statutory authority and in violation of the Fourth Amendment. The Magistrate Judge erred in concluding that Plaintiffs' vague and speculative allegations of unlawful agency action state viable claims for relief.

All three counts against the Government Defendants are brought under the APA. Counts I and II allege that TSA has a "policy or practice of having TSA Screeners seize travelers' cash, carry-on luggage, personal effects, and/or their person—based on the presence of cash on their person or in their carry-on luggage—after the transportation security screening has concluded." 1st Am. Compl. (Compl.) ¶¶ 475, 492, ECF No. 43. Plaintiffs assert that this purported policy or practice is both "in excess of statutory . . . authority," 5 U.S.C. § 706(2)(C), and "contrary to constitutional right," *id.* § 706(2)(B). Count III similarly alleges DEA policies or practices "of conducting suspicionless non-consensual seizures of travelers at U.S. airports" and "of seizing cash without probable cause from travelers at U.S. airports for civil forfeiture based solely on the presence of a large amount of cash," contrary to constitutional rights under the Fourth Amendment. Compl. ¶¶ 505, 508.

The Magistrate Judge erred in recommending against dismissal of these counts for three reasons. First, Plaintiffs lack standing to raise these three claims because they have not plausibly alleged that they are currently being injured or are likely to be injured in the future by the purported policies or practices. The Magistrate Judge erred in accepting Plaintiffs' speculation that the agencies have adopted the alleged policies or practices, which is not sufficient to permit Plaintiffs to rely on future injuries that might occur only if those exact purported policies or practices were actually in effect.

Second, Counts I and II against TSA are outside the Court's subject matter jurisdiction because they fall outside the ambit of 49 U.S.C. § 46110, which expansively channels review of

2

TSA airport screening procedures to the courts of appeals. These counts present an un-threadable needle: Plaintiffs claim to discern an unofficial-but-systematic policy, one that is widely known and adhered-to by TSA screeners, and yet is not sufficiently official as to fall within the scope of § 46110. The Court lacks jurisdiction over these claims because even agency actions "inescapably intertwined" with TSA airport screening procedures lie within the exclusive jurisdiction of the courts of appeals.

Finally, the Amended Complaint fails to state a claim because it neither plausibly alleges that TSA and DEA have adopted the supposed policies or practices, nor identifies any unlawful final agency action cognizable under the APA. The Magistrate Judge erred in failing to address the APA's final agency action requirement, which highlights Plaintiffs' inability to muster a showing that TSA and DEA actually adopted these alleged policies and practices. Neither Plaintiffs' own experiences, nor the isolated and particular encounters of other travelers, are sufficient. Still less do the actual TSA and DEA policies cited by Plaintiffs and the Magistrate Judge support the proposed inferences. The Magistrate Judge also erred in disregarding the way Plaintiffs' misinterpretation of legal standards undermines their claims.

For these reasons, the Court should dismiss the claims against the Government Defendants pursuant to Rules 12(b)(1) and 12(b)(6).

## I. Plaintiffs Lack Standing To Raise the Claims in Counts I-III.

To establish Article III standing, a plaintiff must seek relief for an injury that is (1) "concrete, particularized, and actual or imminent"—i.e. an "injury in fact"; (2) "fairly traceable to the challenged action"; and (3) "redressable by a favorable ruling." *Clapper v. Amnesy Int'l*, 568

U.S. 398, 409 (2013) (citation omitted).[2] Here, with one exception,[3] Plaintiffs seek only prospective relief in the form of injunctive and declaratory relief against the Government Defendants. Thus, Plaintiffs agree that they "must show that [they are] likely to suffer future injury from the defendant's conduct," Pls.' Opp'n at 7, ECF No. 62 (emphasis omitted) (quoting *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 223 (3d Cir. 2012)); and that they are "realistically threatened by a repetition of [their] experience." *Id.* at 8 (quoting *Afifi v. Lynch*, 101 F. Supp. 3d 90, 108-09 (D.D.C. 2015)). *Cf. Lisowski v. Henry Thayer Co.*, No. 19-1339, 2020 WL 6743258, at *4 (W.D. Pa. Nov. 17, 2020) (similarly quoting *McNair*).

It is undisputed that Plaintiffs have no plans to travel through U.S. airports with large sums of cash, *see* Gov't Defs.' Mem. at 11-12, ECF No. 57; Compl. ¶¶ 225, 232, 280, 283, 310, 320; so Plaintiffs' standing turns on whether their avoidance of air travel based on the perceived risk of alleged TSA and DEA policies regarding travelers with large sums of cash constitutes an injury-in-fact traceable to Government Defendants and likely to be redressed by a favorable decision. *See Lisowski*, 2020 WL 6743258, at *4 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). The Magistrate Judge erred in concluding that Plaintiffs have met their burden to establish standing for three reasons.

First, the Magistrate Judge is mistaken that the Court "must at the pleading stage" accept Plaintiffs' allegations "that TSA and DEA have adopted policies or practices of seizing large sums of cash discovered in TSA screenings." R&R at 5. While, in evaluating facial Rule 12(b)(1) and 12(b)(6) motions, courts accept "well-pleaded factual allegations" as true, "there is a difference between allegations that stand on well-pleaded facts and allegations that stand on nothing more

---

[2] Hereinafter, internal alterations, citations, and quotations omitted unless otherwise stated.

[3] In Count IV, two Plaintiffs seek interest on cash that was returned to them, a claim which the Magistrate Judge correctly concluded lacked any waiver of sovereign immunity. *See* R&R at 12.

4

than supposition." *Finkelman v. Nat'l Football League*, 810 F.3d 187, 195, 201 (3d Cir. 2016); *see id.* at 195 ("Speculative or conjectural assertions are not sufficient."); *id.* at 202 ("[E]ven at the pleading stage, we need not accept as true unsupported conclusions and unwarranted inferences."). For the reasons discussed below, Plaintiffs have not plausibly alleged improper TSA and DEA policies and practices. *See infra*, Arg. § III. Rather, Plaintiffs allege a handful of incidents involving individual TSA screeners and DEA agents—from among more than 500 million airline passengers per year[4]—and speculate that those incidents necessarily imply a vaguely imagined agency "policy or practice." Moreover, Plaintiffs' own allegations show that some of the Plaintiffs traveled with large amounts of cash for years without being subjected to these alleged policies and practices, which further undermines their speculations. *See* Gov't Mem. at 14. These failures are key to the standing analysis because, once Plaintiffs' "unsupported conclusions and unwarranted inferences" are set aside, the alleged policies and practices are shown to be mere speculation and cannot support a showing of cognizable future injury. *See* Gov't Mem. at 19-20.

Second, the Magistrate Judge erred in dismissing the application of *Clapper*'s requirement that "threatened injury must be certainly impending to constitute injury in fact." *See Clapper*, 568 U.S. at 410 (concluding that Second Circuit's "objectively reasonable likelihood" standard was erroneous). *Clapper* rejected standing based on allegations that plaintiffs "incurred certain costs as a reasonable reaction to a risk of harm," because the Second Circuit's approach "improperly water[ed] down" the standing requirement; "respondents cannot manufacture standing merely by

---

[4] *See* Bureau of Transportation Statistics, TranStats, Passengers: All Carriers – All Airports, https://www.transtats.bts.gov/Data_Elements.aspx; *see* Fed. R. Evid. 201(b) (permitting judicial notice of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *Vanderklok v. United States*, 868 F.3d 189, 205 n. 16 (3d Cir. 2017) (taking judicial notice of public records available via a government agency website).

5

inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Id.* at 416. *Clapper* is dispositive here because Plaintiffs have failed to establish anything more than that they have modified their own behavior to avoid conjectured, speculative policies. The Magistrate Judge ignored these holdings and relied exclusively on *Clapper*'s Footnote 5, which addressed cases using the phrase "substantial risk." *See* R&R at 4-5. Third Circuit precedent applies *Clapper*'s "certainly impending" requirement and does not treat *Clapper* as cabined by that footnote.[5]

But even if *Clapper* left room for an alternative standard by observing that a cognizable "substantial risk" of injury may "prompt plaintiffs to reasonably incur costs to mitigate or avoid that harm," 568 U.S. at 414 n.5, the Magistrate Judge misapplied that standard in two ways. At the threshold, the Magistrate Judge simply assumed that the avoidance costs Plaintiffs allege are sufficient to confer standing. *See* R&R at 5-6. Government Defendants have shown, however, that three of the four Plaintiffs merely allege inconvenience from declining to travel with large amounts of cash and identify no concrete harm from their avoidance. *See* Gov't Reply at 2. Indeed, given the plentiful ways technology now permits money to be transferred, exchanged, and deposited, it is implausible that avoidance of traveling with cash is costly enough to confer standing. More importantly, *Clapper* emphasizes that "plaintiffs bear the burden of pleading . . . facts showing that the defendant's *actual action* has caused the substantial risk of harm." 568 U.S. at 414 n.5 (emphasis added). Because this is not a case where a statute or regulation plainly proscribes or penalizes Plaintiffs' desired actions, *see* Gov't Reply at 3, Plaintiffs' obligation to trace their

---

[5] *See, e.g.*, *Schaller v. Social Security Admin.*, _ F. App'x _, 2021 WL 237273, at *4 (3d Cir. Jan. 25, 2021); *Thorne v. Pep Boys Manny, Moe & Jack, Inc.*, 980 F.3d 879, 893 (3d Cir. 2020); *Bognet v. Sec'y, Commonwealth of Pennsylvania*, 980 F.3d 336, 348, 361-62 (3d Cir. 2020); *Williams v. Governor*, 552 F. App'x 158, 161-62 (3d Cir. 2014).

6

injuries to actual TSA and DEA policies is key.[6] *Cf. Haase v Sessions*, 835 F.2d 902, 911 (D.C. Cir. 1987) ("[M]ore than a nebulous assertion of the existence of a 'policy' is required to establish standing."). The Magistrate Judge erred in accepting Plaintiffs' unwarranted inferences from a hodgepodge of "official promulgations"—none of which ban or impose any penalty for traveling with "large amounts of cash"—and a handful of "instances of actual seizures," R&R at 4-5, in place of factual allegations that would enable a plausible inference that TSA or DEA had adopted an unwritten "policy or practice." *Cf. Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 291 (3d Cir. 2005) (alleged injury cannot be "abstract or conjectural or hypothetical").

For these reasons, Plaintiffs lack standing for Counts I-III, and the Court should dismiss those claims under Rule 12(b)(1).

## II.  The Court Lacks Jurisdiction To Review Counts I and II Challenging Alleged TSA Policies and Procedures.

The Magistrate Judge erred in accepting Plaintiffs' formulation of their claims—alleging an informal, unwritten, but purportedly agency-condoned and widely adhered-to policy—as grounds for evading Congress's decision to assign exclusive jurisdiction to the Courts of Appeals over challenges to TSA airport security policies or procedures.

Under 49 U.S.C. § 46110(a), "a person disclosing a substantial interest in an order issued by . . . the Administrator of the Transportation Security Administration with respect to security duties and powers designated" may only "apply for review of the order by filing a petition for review" in an appropriate court of appeals. *See id.* § 46110(c) (making appellate jurisdiction exclusive). This provision reflects the congressional judgment "that coherence and economy are best served if all suits pertaining to designated agency decisions are segregated in particular

---

[6] The Magistrate Judge misunderstood this traceability argument, which did not imply that "costs incurred to avoid non-statutory, non-regulatory risks are less injurious," R&R at 6, but that Plaintiffs' alleged need to incur avoidance costs was "wholly speculative." Gov't Reply at 3-4.

7

courts." *City of Rochester v. Bond*, 603 F.2d 927, 936 (D.C. Cir. 1979); *see also Scherfen v. DHS*, No. 08-1554, 2010 WL 456784, at *12 (M.D. Pa. 2010) (same). Contrary to the Magistrate Judge's narrow approach, the term "order" under this jurisdictional statute must be "read expansively." *Safe Extensions, Inc. v. FAA*, 509 F.3d 593, 598 (D.C. Cir. 2007); *Aviators for Safe & Fairer Regulation v. FAA,* 221 F.3d 222, 225 (1st Cir. 2000); *Scherfen*, 2010 WL 456784, at *12. It "need not be a formal order, the product of a formal decision-making process, or be issued personally by the Administrator." *Aerosource, Inc. v. Slater*, 142 F.3d 572, 578 (3d Cir. 1998).

Indeed, it is well established that TSA's security protocols for airport security checkpoints constitute an order under § 46110. *See, e.g., Ruskai v. Pistole*, 775 F.3d 61, 65 (1st Cir. 2014) (concluding that "TSA's security protocol[s]" for airport security screening constitute a final order under 49 U.S.C. § 46110); *Muir v. TSA*, No. 20-1280, 2021 WL 231733, at *12-13 (C.D. Ill. Jan. 22, 2021) ("[C]ourts have routinely held constitutional challenges to TSA screening procedures lie within the exclusive jurisdiction of the courts of appeals under § 46110.").[7] For their claims regarding speculated "policies or practices," Plaintiffs acknowledge—and indeed rely in part on— actual TSA security procedures that address discoveries of bulk currency at airport checkpoints, and the Magistrate Judge invoked these procedures in her findings. *See, e.g.*, R&R at 10 (concluding that Counts I and II state a claim, in part because "Plaintiffs identify TSA Operations and Management Directives, Operating Procedures and other TSA documents" addressing how to handle travelers with large amounts of currency).

While Plaintiffs claim that § 46110 is "irrelevant" because they do not challenge "the

---

[7] *See also Blitz v. Napolitano*, 700 F.3d 733, 740-41 (4th Cir. 2012) (holding that TSA standard operating procedure was order subject to § 46110); *Roberts v. Napolitano,* 463 F. App'x 4, 5 (D.C. Cir. 2012) (same); *Corbett, v. United States*, 458 F. App'x 866, 871 (11th Cir. 2012) (same); *Gilmore v. Gonzalez*, 435 F.3d 1125, 1133 (9th Cir. 2006) (holding that TSA Security Directive was order subject to § 46110).

*process* that led to the *promulgation* of [specific TSA] directives," Pls.' Opp'n at 18, ECF No. 62 (emphasis added), it is well established that § 46110 extends to all claims that implicate an "order" as expansively understood, including attacks where review is "inescapably intertwined" with the such an order. *See, e.g.*, *Gilmore v. Gonzalez*, 435 F.3d 1125, 1133 n.9 (9th Cir. 2006); *Merritt v. Shuttle, Inc.*, 245 F.3d 182, 187 (2d Cir. 2001); *Merritt v. Shuttle, Inc.*, 187 F.3d 263, 270-71 (2d Cir. 1999). Thus, the Magistrate Judge erred in suggesting that *ultra vires* policy and practice claims inherently fall outside § 46110, *see* R&R at 8, because actions that allegedly exceed an agency's jurisdiction must still be channeled to the courts of appeals where intertwined with TSA directives and procedures. The Magistrate Judge also erred in dismissing intertwinement without serious consideration. *See* R&R at 8-9. Here, judicial review of any hypothetical "policy or practice" that was applied by TSA Screeners at airport security checkpoints would necessarily be intertwined with the actual protocols that address the same topic and that courts have uniformly held constitute "orders" under § 46110. As but one example, setting aside the vague and speculative nature of the purported policy that forms the basis for Plaintiffs' claims, the injunctive and declaratory relief Plaintiffs seek would have the effect of altering TSA's directives to expressly prohibit additional actions, Am. Compl., Req. for Relief ¶¶ C-F, even though district courts lack jurisdiction to "amend [or] modify" TSA's established checkpoint protocols. *See* 49 U.S.C. § 46110(c). In sum, the Court plainly lacks jurisdiction to hear Plaintiffs' claims against TSA. *Cf. El Bey v. Hilton*, 2017 WL 3842596, at *5 (E.D.N.Y. Sep. 1, 2017) (explaining that whether a plaintiff "recognizes it or not," a claim seeking relief from application of a screening procedure at a TSA checkpoint "must take head-on the SOP protocols" or, "[a]t a minimum," raise issues that are "inextricably intertwined with the SOP"); *Scherfen*, 2010 WL 456784, at *11-13 (finding claim "inescapably intertwined" where challenged action has "interrelationship" with TSA directives on

which the challenged action depend for "operational effect").

### III. Counts I-III Fail To State an APA Claim on Which Relief May Be Granted.

The Magistrate Judge likewise erred in rejecting the Government Defendants' Rule 12(b)(6) arguments. Plaintiffs have failed to plausibly allege that TSA adopted policies that exceeded its statutory authority or that TSA and DEA adopted policies that violated Fourth Amendment protections from unreasonable seizures.

At the threshold, the Magistrate Judge failed to apply the appropriate statutory standard. She noted that Counts I-III are brought under the APA, *see* R&R at 1-2; Compl. ¶¶ 466, 482, 501, but failed to acknowledge or apply the APA's requirement that a plaintiff challenge a "final agency action," 5 U.S.C. § 704, without which there is no APA cause of action. *See Wayne Land & Min. Grp. LLC v. Delaware River Basin Comm'n*, 894 F.3d 509, 525 n.10 (3d Cir. 2018). Having failed to show that the alleged TSA and DEA policies or practices exist, Plaintiffs have not shown (and cannot show) that these alleged policies are the "consummation of the agency's decisionmaking process" and "one by which rights or obligations have been determined or from which legal consequences will flow," *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). Indeed, a "final agency action" requires more than "attach[ing] a 'policy' label to [plaintiffs] own amorphous description of [an agency's] practices." *Bark v. U.S. Forest Serv.*, 37 F. Supp. 3d 41, 50-51 (D.D.C. 2014); *Lillemoe v. USDA*, No. 15-cv-2047, 2020 WL 1984256, at *7 n.4 (D.D.C. Apr. 27, 2020) (same); *see also Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004) (claimant must challenge a "circumscribed [and] discrete" federal "agency action"); *Cobell v. Kempthorne*, 455 F.3d 301, 307 (D.C. Cir. 2006) ("generalized complaints about agency behavior" not reviewable under the APA).

When viewed through the lens of an APA final agency action, the Magistrate Judge's conclusion that Plaintiffs had plausibly alleged unlawful TSA and DEA policies is clearly unsupported. While one district court characterized a series of cases as "inferring from a course of

agency conduct that the agency has adopted a general policy," *Velesaca v. Decker*, 458 F. Supp. 3d 224, 237 n.7 (S.D.N.Y. 2020), Plaintiffs have not mustered allegations comparable to relevant facts in any of those cases. *Cf. id.* at 241-42 (relying on abrupt change evident from data regarding more than 20,000 cases over five year period); Gov't Reply at 9-10 (describing facts of other cases Plaintiffs cite). Plaintiffs conjure the alleged policies at issue here primarily from their three personal encounters, plus one-sided descriptions of a dozen instances involving TSA's questioning of travelers about cash between 2011 and 2020, Compl. ¶¶ 371-383; ten instances in which the DEA allegedly seized cash from U.S. airport travelers between 2015 and 2020, *id.* ¶ 441-450; three additional incidents as far back as 2008 in which DEA agents questioned travelers about cash, *id.* ¶ 451; and a handful of police reports mentioning cash detected during airport screenings at Buffalo Niagara International Airport between 2016 and 2019, *id.* ¶¶ 384-385. However, Plaintiffs' claims assume that the encounters with TSA agents all resulted from a TSA-adopted policy of conducting searches or seizures (1) in the absence of any transportation security purpose, (2) after the security screening itself has concluded, and that in all the encounters, TSA and/or DEA personnel were acting pursuant to an agency-adopted policy of seizing travelers and/or their property (3) in the absence of reasonable suspicion of criminality. *See* Pls.' Opp'n at 3-4. The facts pleaded about these few encounters, out of the billions of passengers that have transited airports over those 10-plus years, do not permit inference that either TSA or DEA adopted a policy with these specific elements. *Cf. Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 72-73 (3d Cir. 2011) (explaining that, under *Iqbal*, "a complaint pleading facts that are merely consistent with liability is insufficient"). For example, the Magistrate Judge erred in accepting Plaintiffs conclusion that each of the TSA encounters was "for the purpose of seizing the travelers' currency," R&R at 10, as that is Plaintiffs' unsupported conclusion, not a well-pleaded fact. Nor

11

do the isolated incidents identified by Plaintiffs provide grounds for the Magistrate Judge to infer "[TSA] Screeners' consistent practice" or "persistent course of conduct" that reflects an institutional position by TSA itself on how to deal with discoveries of bulk currency, R&R at 10, let alone one that would be cognizable under the APA. And, even if Plaintiffs' allegations were sufficient to plausibly allege that individual TSA screeners engaged in unlawful conduct in certain instances, those allegations would be equally consistent with an inference that those individuals exceeded their authority or acted in conflict with agency guidance rather than acts in furtherance of and consistent with an agency order.

The Magistrate Judge also failed to require Plaintiffs to "identify a custom or policy and specify what exactly that custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). The Magistrate Judge concluded that Plaintiffs "allege[d] the salient elements of the TSA's alleged policy or practice," R&R at 11, but never actually identified those elements. *See, e.g.*, R&R at 9 (vaguely characterizing alleged policies of "TSA to detain domestic air travelers in possession of large sums of cash, despite the absence of a transportation security risk or probable cause or reasonable suspicion of criminal conduct" and of DEA "to extend or resume such detention in order to seize such cash for civil forfeiture, again without probable cause or reasonable suspicion of criminal conduct"); *id.* at 10-11 (providing different vague characterizations of the alleged policies). Government Defendants repeatedly explained how Plaintiffs' vagueness was fatal. *See* Gov't Mem. at 20-21; Gov't Reply at 11-14.

Similarly, the Magistrate Judge erred in finding support for Plaintiffs' allegations in TSA and DEA's actual policies. *See* R&R at 10 (relying on observation that "TSA continues to maintain written policies and standards governing TSA Screeners' encounters with travelers carrying large sums of cash"); *id.* at 11 (inferring that "DEA adopted policies and practices governing seizures

of cash at airports"). With regard to TSA, Plaintiffs acknowledge that the specific TSA directives discussed do not "purport[] to expand TSA Screeners' authority or duties beyond their statutory and regulatory bounds," Compl. ¶ 345.[8] Because it is plainly legitimate, when TSA screeners incidentally discover items that may be indicative of criminal activity, to refer that discovery to DEA or other law enforcement to resolve—*see, e.g.*, *United States v. Hartwell*, 436 F.3d 174, 181 n.13 (3d Cir. 2006) (rejecting motion to suppress drugs discovered in such circumstances); *United States v. Aukai*, 497 F.3d 955, 959-61 (9th Cir. 2007) (en banc) (same)—the existence of agency guidance on this topic does not make Plaintiffs' alleged unwritten policies more plausible. Still less can a current final agency action be rooted in what TSA's website said in "April, 2009," R&R at 10, where TSA removed that language and issued new directives later in 2009 that Plaintiffs acknowledge do not exceed statutory authority. *See* Compl. ¶¶ 368-369; *cf. Competitive Enter. Inst. v. EPA*, 67 F. Supp. 3d 23, 32 (D.D.C. 2014) (rejecting claim that agency was violating statute based on a "concealed" record-keeping policy that conflicted with the agency's written policy).

With regard to DEA, the Magistrate Judge improperly found support for an alleged policy of seizing cash without suspicion of criminal activity from the $5,000 threshold set by the DOJ Asset Forfeiture Policy Manual. *See* Compl. ¶ 439 (explaining that under manual's guidance "to forfeit cash, the 'minimum amount must be at least $5,000'"). When Government Defendants explained that under this guidance seizure of smaller cash amounts "would not be appropriate, absent a compelling law enforcement interest," Gov't Mem. at 27, the Magistrate Judge illogically characterized that observation as a "telling admission" that DEA might seize "cash based solely

---

[8] *See also id.* ¶ 341 (quoting TSA Operations Directive stating that "[t]raveling with large amounts of currency is not illegal" and that such behavior is relevant to security screenings only because "[l]arge amounts of currency ('bulk currency') can . . . conceal . . . items that may pose a threat to transportation security"); *id.* ¶ 344 (quoting TSA Management Directive stating that "[s]creening may not be conducted to detect evidence of crimes unrelated to transportation security").

13

on its amount." R&R at 11. This is a complete non sequitur, as DEA's general *disallowance* of forfeitures of cash in amounts below a certain threshold is plainly distinct from a policy authorizing forfeiture of any cash in an amount above that threshold, "based solely on its amount." Nor should the Magistrate Judge have simply adopted Plaintiffs' characterization of DEA agents' testimony as stating that cash over $5,000 was "presumptively subject to seizure," *see* R&R at 11 (quoting Compl. ¶ 438), when the actual quotations in the same paragraph of the complaint plainly refer to the manual's minimum threshold, not presumptive seizure. *See* Compl. ¶ 438; *id.* ¶ 439 (acknowledging the agents were "likely referencing" manual).

Moreover, contrary to the Magistrate Judge's approach, *see* R&R at 11, the existence a DEA interdiction program at many U.S. airports does not support an inference that DEA has an unconstitutional seizure policy. *See* R&R at 11. As set forth in a DOJ Office of Inspector General (OIG) report incorporated in Plaintiffs' complaint, "illegal cash couriering" of drug and criminal proceeds is a problem that DEA seeks to address under reasonable suspicion and probable cause requirements. *See* Gov't Mem. at 26 (quoting explanation in 2017 DOJ OIG report of factors giving rise to reasonable suspicion). Indeed, the 2017 OIG report did not cast doubt on whether DEA required reasonable suspicion or probable cause for cash seizures; instead it merely expressed concern that some of the 100 cases sampled (out of more than 80,000 DEA seizures) were not clearly connected to prosecutions or further investigations. *See* Compl. ¶¶ 410-412; R&R at 11. Accordingly, the Magistrate Judge lacked any grounds for concluding that Plaintiffs had alleged any unlawful DEA final agency action.

Finally, the Magistrate Judge erred in focusing exclusively on Plaintiffs' allegations that might buttress the existence of the alleged policies and practices. Government Defendants pointed out that Plaintiffs' putative *ultra vires* and Fourth Amendment claims not only relied on vague and

14

Case 2:20-cv-00064-MJH-KT   Document 72   Filed 02/11/21   Page 17 of 18

conclusory allegations of purported agency "policies or practices," but also appeared to rest on legal misconceptions. For example, Plaintiffs' contentions regarding seizures of persons turn on an unsupported assumption that any airport traveler will feel unable to walk away from a law enforcement encounter, and ignore controlling case law that holds that a law enforcement officer's mere initiation of contact does not implicate the Fourth Amendment. *See* Gov't Mem. at 23-24; *Florida v. Bostick*, 501 U.S. 429, 434-35 (1991); *Florida v. Royer*, 460 U.S. 491, 497 (1983). Similarly, Plaintiffs err insofar as they suggest that the Fourth Amendment prohibits temporary detention of airport travelers or their property on reasonable suspicion before probable cause is developed. *See* Gov't Mem. at 25; *Florida v. Rodriguez*, 469 U.S. 1, 5 (1984); *United States v. Place*, 462 U.S. 696, 706 (1983). The Magistrate Judge sidestepped these arguments by claiming that Government Defendants did "not dispute that the Seizure Policies, if established, would be *ultra vires* and unconstitutional." R&R at 9. This observation is meaningless because Government Defendants have pointed out that Plaintiffs' allegations regarding the nature of the purported policies consist of conclusory assertions of the elements of *ultra vires* and Fourth Amendment claims. *See* Gov't Mem. at 20. For example, while it is tautological that a policy of seizure without reasonable suspicious would violate the Fourth Amendment, Plaintiffs remain mistaken about what circumstances constitute seizure, making Plaintiffs' claims even less plausible.

In sum, the Magistrate Judge failed to analyze the claims under the relevant standard and credited conjecture, unsubstantiated conclusions, and unwarranted inferences in place of well-pleaded facts. Counts I, II, and III must be dismissed under Rule 12(b)(6) because Plaintiffs have not stated a claim upon which relief may be granted.

## CONCLUSION

For the foregoing reasons and those set forth in the briefing, the Court should dismiss the claims against the Government Defendants pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

15

Dated: February 11, 2021

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

SCOTT W. BRADY
United States Attorney

BRIGHAM J. BOWEN
Assistant Director
Civil Division, Federal Programs Branch

*/s/ Galen N. Thorp*
GALEN N. THORP (VA Bar # 75517)
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20530
Tel: (202) 514-4781 / Fax: (202) 616-8460
galen.thorp@usdoj.gov

*Counsel for Government Defendants*