IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| REBECCA BROWN and AUGUST TERRENCE ROLIN, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> TRANSPORTATION SECURITY ADMINISTRATION, et al., <br><br> Defendants. | Civil Action No. 2:20-cv-64-MJH-LPL <br><br> **STEVEN DAWKIN'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO THE REPORT AND RECOMMENDATION** |

**STEVEN DAWKIN'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO THE REPORT AND RECOMMENDATION**

DEA Agent Steven Dawkin submits this response to Plaintiffs' objections to the Report and Recommendation, ECF No. 71 ("Pl. Obj."), recommending dismissal of Count V, the sole claim asserted against him. ECF No. 66 ("R&R"). That recommendation is unassailable for two independent reasons. First, as the Magistrate Judge found, Plaintiffs cannot extend a <u>Bivens</u> remedy to the novel context presented here: a forfeiture-related seizure of $82,373 in cash at the Pittsburgh International Airport and any incidental detention of person preceding it. Second, qualified immunity bars any such claim. Plaintiffs do not plausibly allege a clearly established Fourth Amendment violation arising from either the "seizure" of Ms. Brown's person or the seizure of cash. Plaintiffs' objections to the R&R rest predominantly on mischaracterizing the Magistrate Judge's findings, basic misunderstandings of the relevant law, and, at times, both. This Court should reject those objections and dismiss any Fourth Amendment claim against Agent Dawkin in Count V with prejudice.

**I. The R&R Correctly Found No <u>Bivens</u> Remedy is Appropriate**

Though purporting to sue Agent Dawkin under <u>Bivens</u>, Plaintiffs have no "automatic entitlement" to do so. <u>Wilkie v. Robbins</u>, 551 U.S. 537, 550 (2007). Rather, they must satisfy a "restrictive two-step framework" to pursue any such claim. <u>Mack v. Yost</u>, 968 F.3d 311, 317 (3d Cir. 2020). At the first step, the analysis asks if Plaintiffs' allegations present a "new context;" and if so, at step two, whether any special factors counsel hesitation against extending <u>Bivens</u> to that context. <u>Hernández v. Mesa</u>, 140 S. Ct. 735, 743 (2020) (<u>Hernández I</u>). Here, the Magistrate Judge answered both in the affirmative, finding first that "the intended forfeiture setting and the alleged controlling policy are sufficiently meaningful differences to bring a novel aspect to an otherwise classic <u>Bivens</u> context;" and, second, "the associated prospect of administrative and/or injunctive relief constitutes a sufficiently weighty special factor to bar an implied damages remedy." R&R at 18. These conclusions are undoubtedly correct and require dismissal of Count V in its entirety with prejudice. <u>See</u> ECF No. 70 ("Biv. Obj."), at 1-6.

**A. As the R&R rightly found, Plaintiffs seek to extend <u>Bivens</u> to a new context.**

Attempting to avoid that result, Plaintiffs say the Magistrate Judge "answered the first question in the negative" and found that their putative Fourth Amendment claim does not present a new context. Pl. Obj. at 8. Plaintiffs mischaracterize the R&R. Although the Magistrate Judge did initially refer to their allegations as constituting a "classic <u>Bivens</u> case,"[1] R&R at 15, that passing reference did not change the bottom-line conclusion that Plaintiffs' claim presents a new context. As the Magistrate Judge expressly—and correctly—found, there were "sufficiently

---

[1] As Agent Dawkin explained in his own objections, while he disagreed with the characterization of this matter as presenting a "classic <u>Bivens</u> case," Biv. Obj. at 3-5, and that reference unfortunately appears to have created confusion for Plaintiffs, it was not germane to the fundamental conclusions that this is a new context and no remedy should be implied here.

meaningful differences [from Bivens] to bring a novel aspect" to Plaintiffs' claim. R&R at 18. Any lingering doubt on that point is eliminated by the fact that, in the sub-heading of the discussion encompassing this issue, the R&R reads, "the context of Plaintiffs' claims against Dawkin [is] novel." R&R at 14. That determination is correct. Bivens involved claims that multiple agents entered then "manacled" a man inside his home "in front of his wife and children and threatened to arrest the entire family" before "search[ing] the apartment from stem to stern," all without a warrant. Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 389 (1971). No similar allegations exist here. See ECF No. 43 ("FAC"). As a matter of law, the proposed Fourth Amendment claim against Agent Dawkin involves a "new context, i.e., one that is meaningfully different" from Bivens. Hernández I, 140 S. Ct. at 743.

Principal among those differences is the sensitive international airport setting—where the Supreme Court has never recognized a Bivens remedy—in which Plaintiffs' allegations arise. See ECF No. 48 ("MTD Br."), at 7; ECF No. 61 ("Reply Br."), at 3.[2] More distinctions include the fact that Plaintiffs' claim implicates asset forfeiture and, as a result, a comprehensive statutory scheme designed by Congress (CAFRA); and, separately, Plaintiffs challenge conduct allegedly taken pursuant to purported DEA policy or practice. Biv. Obj. at 5.[3]

---

[2] Plaintiffs themselves acknowledge that the context where the encounter between Ms. Brown and Agent Dawkin took place was a "high-security setting," see FAC at ¶¶ 180, 416-17, 424-25, 428-29, and on this point the R&R was simply mistaken in rejecting such an important contextual distinction. See Biv. Obj. at 4.

[3] More still, Plaintiffs challenge different conduct than what was at issue in Bivens (i.e., here, an alleged temporary "seizure" at a public airport and an investigatory detention of property), which means that another "meaningful difference" is the "extent of judicial guidance as to how an officer should respond" in the context at bar. Ziglar v. Abbasi, 137 S. Ct. 1843, 1859-60 (2017); see Cantú v. Moody, 933 F.3d 414, 423 (5th Cir. 2019) ("'Judicial guidance' differs across various kinds of Fourth Amendment violations —like seizures by deadly force, searches by wiretap, Terry stops, executions of warrants, seizures without process ('false arrest'), seizures with wrongful legal process ('malicious prosecution'), etc.").

Although there is no "exhaustive list of differences that are meaningful enough to make a given context a new one," the Supreme Court provides examples of ways in which a "case might differ in a meaningful way" and one of them is "the presence of potential special factors that previous Bivens cases did not consider." Abbasi, 137 S. Ct. at 1859-60. Consistent with that approach, the Magistrate Judge considered "the presence of potential special factors" as "sufficiently meaningful differences" that distinguished the context at issue, and rendered it novel. R&R at 15-18. Any notion that the Magistrate Judge erred finding the new context determination at step one informed by the presence of special factors at step two (see Pl. Obj. at 9-10) should be rejected—it is plainly wrong and directly at odds with Abbasi. See 37 S. Ct. at 1860 ("A case might differ in a meaningful way [and so present a 'new context'] because of . . . the presence of potential special factors that previous Bivens cases did not consider.").

Plaintiffs also mistakenly suggest that they could pigeonhole their allegations against Dawkin into the "same context as Bivens" simply because they sue a line-level officer under the Fourth Amendment. Pl. Obj. at 8-9; see Biv. Obj. at 5; see also Cantú v. Moody, 933 F.3d 414, 422 (5th Cir. 2019) ("Courts do not define a Bivens cause of action at the level of 'the Fourth Amendment' or even at the level of 'the unreasonable-searches-and-seizures clause.'" (quoting FDIC v. Meyer, 510 U.S. 471, 484 n.9 (1994)); accord Farah v. Weyker, 926 F.3d 492, 499-500 (8th Cir. 2019). As the Supreme Court emphasized just last year, "a claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." Hernández I, 140 S. Ct. at 743. Indeed, the plaintiffs in the two most recent Supreme Court cases to consider whether to imply a Bivens remedy (Hernández and Abbasi) sued, as here, under the Fourth Amendment (in Hernández a line-officer), yet in each case the Court found the "new context" inquiry satisfied. See id. at 740,

4

743-44; Abbasi, 137 S. Ct. at 1853-54.  Post-Abbasi, moreover, several courts of appeal have found the new context inquiry met for allegations of Fourth Amendment search-and-seizure violations against line-level defendants.  See Ahmed v. Weyker, 984 F.3d 564, 568-70 (8th Cir. 2020); Callahan v. Fed. Bureau of Prisons, 965 F.3d 520, 525 (6th Cir. 2020); Oliva v. Nivar, 973 F.3d 438, 442-43 (5th Cir. 2020); Farah, 926 F.3d at 499-500; Cantú, 933 F.3d at 422-23; Tun-Cos v. Perrotte, 922 F.3d 514, 517-18 (4th Cir. 2019).

In short, Plaintiffs' allegations "bear little resemblance" to those in Bivens.  Abbasi, 137 S. Ct. at 1860; see Farah, 926 F.3d at 498-99 (describing facts of Bivens in which agents "handcuffed and strip-searched the plaintiff and combed through his apartment, all without a warrant.").  Agent Dawkin did not enter Ms. Brown's home.  He did not search her person.  He did not arrest her.  Nor is he alleged to have even touched (much less "manacled") her.  See MTD Br. at 8; Reply Br. at 3.  Plaintiffs instead challenge the detention of $82,373 in cash; and, to the extent that they plausibly allege a "seizure" of Ms. Brown at all (which Dawkin disputes), Plaintiffs plead a temporary detention in public at an international airport.  These allegations easily satisfy the low bar required to meet the "new context" inquiry, and Plaintiffs' objections to the R&R's conclusion and analysis in that regard are wholly without merit.  See MTD Br. at 7-8; Reply Br. at 2-3; accord Biv. Obj. at 3-5; see also Abbasi, 137 S. Ct. at 1864 ("[E]ven a modest extension is still an extension" for purpose of new-context inquiry).

**B. The R&R correctly concluded that special factors counsel hesitation.**

Because the Magistrate Judge concluded that Plaintiffs' allegations had "sufficiently meaningful differences" from Bivens, R&R at 18, a special factors inquiry was necessary, not "superfluous." Pl. Obj. at 9-10 see, e.g., Hernández I, 140 S. Ct. at 743.  Pursuant to that inquiry, the Magistrate Judge found that there were indeed special factors present (CAFRA, the

5

availability of injunctive relief, and the policy-based nature of the allegations) and recommended dismissal of Plaintiffs' claim on that basis.  R&R at 18.  That determination was spot-on. Contrary to Plaintiffs' objections, ample precedent supports that each special factor the Magistrate Judge relied on is a sound, and independent, "reason to pause" before extending Bivens to the novel setting at bar.  Hernández I, 140 S. Ct. at 743-44.  This Court should adopt the R&R's findings in this regard, and refrain from extending a novel Bivens remedy to a forfeiture-related seizure of tens of thousands of dollars in cash at an international airport and any incidental temporary seizure of person associated with it. MTD Br. at 9-19; Reply Br. at 4-9.

**1. The R&R rightly found that CAFRA is a highly relevant process and factor here.**

As the Magistrate Judge concluded, CAFRA is "an important special factor" because it represents a comprehensive statutory scheme, the presence of which "alone may limit the power of the Judiciary to infer a new Bivens cause of action."  R&R at 17 (quoting Abbasi, 137 S. Ct. at 1858).  That scheme allows individuals who have had assets seized by the DEA or other federal agencies to, among other things, challenge the legality of an underlying seizure and seek return of a seized asset.  See MTD Br. at 4-5, 10; Reply Br. at 4-5.  Indeed, as the Magistrate Judge noted, Ms. Brown and Mr. Rolin availed themselves to CAFRA to recoup the seized funds at issue in this very case.  R&R at 17; see also Reply Br. at 4 (citing FAC at ¶¶ 200-01, 206).

Were Plaintiffs to be believed, CAFRA—the same statutory scheme under which they were able to file claims to receive their money back—is "irrelevant" to the special factors inquiry, since it lacks "deterrent or remedial effects for the harms and damages caused by unconstitutional seizures."  Pl. Obj. at 11-12.  This argument fundamentally misconstrues the nature of the relevant legal inquiry and is inconsistent with decades of Supreme Court precedent.

6

As to deterrence, Agent Dawkin (and the Supreme Court) have explained why the absence of a novel Bivens remedy here does not mean the absence of deterrence.  See MTD Br. at 15 n.12 (discussing OIG oversight, criminal prosecution, and adverse employment action as potential deterrents); see id. at 13 (noting possible state-law tort action against officer exceeding scope of employment provides another possible source of liability); see also Minneci v. Pollard, 565 U.S. 118, 120 (2012) (state tort law remains an alternative to Bivens actions that "provide[s] both significant deterrence and compensation").  Beyond that, to the extent that any concern over inadequate deterrence is a consideration to "balance," the "proper balance is one for the Congress, not the Judiciary, to undertake." Abbasi, 137 S. Ct. at 1863.  Indeed, if simple appeals to "deterrence" sufficed as a reason to extend Bivens, it is hard to fathom why Bivens would not be extended in nearly every case, which is clearly not the law.  See Hernández I, 140 S. Ct. at 743 (Supreme Court has "consistently rebuffed requests" to expand Bivens over past 40 years).

As to Plaintiffs' focus on whether CAFRA's provisions can provide "redress" or "recourse for harms" caused by the constitutional violations alleged, Pl. Obj. at 11-12, that is another misplaced argument that ignores rather clear standards articulated by the Supreme Court, and one which the Magistrate Judge rightly rejected.  See R&R at 17.  The Magistrate Judge correctly noted that CAFRA "need not provide an individual with complete relief in order to foreclose a damages remedy under Bivens." Schweiker v. Chilicky, 487 U.S. 412, 424-25 (1988).  Nor need it provide "statutory relief for a constitutional violation" either.  Id. at 421.[4]

---

[4] Plaintiffs' "distinction" between seizures under the Fourth Amendment and "unconstitutionally administered forfeiture proceeding[s]" under the Fifth Amendment, Pl. Obj. at 12, is of no moment.  See Reply Br. at 4-5.  As discussed, the complete "absence of statutory relief for a constitutional violation" under any provision "does not by any means necessarily imply that courts should award money damages." Schweiker, 487 U.S. at 421.  It is enough that Congress considered the issue of allegedly wrongful government seizures in the asset forfeiture context and, through CAFRA, created an elaborate scheme that "has not failed to provide

Rather, the proper inquiry looks to the presence of "alternative remedial structure[s]," not the sufficiency of relief those structures might provide in any given case. Abbasi, 137 S. Ct. at 1858; see also MTD Br. at 10 n.7, and cases cited therein; Reply Br. at 5. Where, as here, "Congress chose to provide certain remedies, and not others, as part of [a] complex statutory scheme," such as CAFRA vis-à-vis asset forfeiture, this Court "should exercise extreme caution" before implying a novel damages remedy. Shreiber v. Mastrogiovanni, 214 F.3d 148, 152-53 (3d Cir. 2000); see also Bush v. Lucas, 462 U.S. 367, 385-86 (1983); Schweiker, 487 U.S. at 424-25.

### 2. The R&R correctly found that other special factors counsel hesitation.

As to the additional special factors considered, the Magistrate Judge determined that this was not a case of "damages or nothing" and that the policy-based nature of Plaintiffs' putative claim represented another important factor. R&R at 18. Both determinations were correct. See MTD Br. at 12-13, Reply Br. at 6-7 (addressing potential alternatives to Bivens action); MTD Br. at 17-18, Reply Br. at 8 (discussing "policy" issues). As to the latter, Plaintiffs sue Agent Dawkin for actions he took "in accordance" with alleged "systematic nationwide policies or practices" that Plaintiffs seek to enjoin, via official-capacity claims, in this lawsuit. FAC at ¶¶ 58, 115, 184, 413, 427, 429, 430, 431-36. So Plaintiffs' attempt to distinguish between challenges to "day-to-day law enforcement" and "large-scale policy decisions," Pl. Obj. at 14, is contrary to the allegations they plead. Even "confined to the conduct of a particular Executive

---

meaningful safeguards or remedies" (even if short of an individual damages claim or direct claim for a constitutional violation per se). Id. at 424-25; see also MTD Br. at 13-15 (discussing separate special factor of congressional action regarding civil asset forfeiture).

Officer [Agent Dawkin] in a discrete instance," the putative Bivens claim would, if created, raise the same "policy" concerns the Supreme Court outlined in Abbasi.  See MTD Br. at 18.[5]

For these reasons, as well as others discussed in the briefing—such as Congressional action in the asset forfeiture field, MTD Br. at 13-15; the national security concerns at play in the arena of drug interdiction efforts at international airports, id. at 16; and the practical concerns Plaintiffs' proposed cause of action would create, id. at 18-19—the Magistrate Judge correctly concluded that special factors counsel hesitation and recommended dismissal of Count V on that basis.  See R&R at 18.

## II. Although Qualified Immunity is Unnecessary to Reach, this Court Could Dismiss the Claim against Agent Dawkin on that Basis

As the Magistrate Judge correctly recognized, the alleged "seizure" of Ms. Brown's person was incidental to Dawkin seizing the cash, R&R at 17, and this Court should analyze whether to imply a Bivens remedy for that entire course of conduct (i.e., the seizure of cash and any alleged detention of Ms. Brown that directly preceded it).  See Biv. Obj. at 4 n.1.  Because (as the R&R rightly found) no such remedy is appropriate here, this Court should dismiss the only cause of action against Agent Dawkin (Count V) on that basis, and need not engage in a qualified immunity analysis at all.  Id. at 6-7.

This is an appropriate approach for two reasons.  First, whether a plaintiff has a Bivens remedy (or any cause of action at all) is legally and logically an "antecedent" question to the

---

[5] Nor were the "policy" concerns articulated in Abbasi confined to the facts of that case, or to the post-9/11 national security realm.  See ECF Pl. Obj. at 14.  The line of Supreme Court cases that lead to Abbasi's "policy" discussion extends far beyond the national security context. See Meyer, 510 U.S. at 473–74 (savings-and-loan officer suing banking agency); Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 63 (2001) (prisoner suing private prison).  And of course, here, there are national security implications to drug interdiction efforts at international airports.  See MTD Br. at 16-17; Reply Br. at 7-8.

merits of any claim or qualified immunity defense.  Loumiet v. United States, 948 F.3d 376, 380 (D.C. Cir. 2020); accord Hernández v. Mesa, 137 S. Ct. 2003, 2006-07 (2017) (Hernández II); see also Vanderklok v. United States, 868 F.3d 189, 197 (3d Cir. 2017) (availability of Bivens action "is a threshold question of law").  Second, resolving Count V on the basis that Plaintiffs cannot maintain a Bivens action against Dawkin would "avoid reaching constitutional questions"—such as whether Plaintiffs plausibly allege a Fourth Amendment violation in this fact-specific context, or even the violation of a clearly established right—"in advance of the necessity of deciding them."  Camreta v. Greene, 563 U.S. 692, 705 (2011); see Biv. Obj. at 7.

If, on the other hand, this Court were to consider the immunity questions at all, it should find (as the R&R did) that Dawkin is entitled to qualified immunity on the alleged temporary detention of Ms. Brown's person, R&R at 12-13; and modify the portion of the R&R denying him qualified immunity for the seizure-of-cash claim, See Biv. Obj. at 6-10, because neither involved the violation of a clearly established constitutional right.

**A. The R&R correctly found that Dawkin is entitled to qualified immunity on any personal-seizure claim.**

Plaintiffs' seizure of person claim (FAC ¶ 525) fails for any of three separate grounds. Plaintiffs do not plausibly allege (1) that Agent Dawkin's words or actions amounted, objectively speaking, to a "seizure" of Ms. Brown's person, (2) nor an unreasonable seizure in violation of the Fourth Amendment, and (3) neither the principle that the seizure occurred nor the proposition that is was unreasonable were clearly established under the Fourth Amendment.  See MTD Br. at 20-23; Reply Br. at 9-13.  The Magistrate Judge ultimately concluded that the law on this point was not clearly established, R&R at 13, and this Court should do the same.

Plaintiffs' request that this Court reach prong one of qualified immunity, even if the law were not clearly established, is inappropriate in light of the Supreme Court's "usual adjudicatory

rules." See Camreta, 563 U.S. at 705-06 (explaining those rules favor resolving claims at second step of qualified-immunity inquiry if plain the violation was not "clearly established"). Indeed, this request amounts to seeking an "advisory dictum" on a constitutional question, Pearson v. Callahan, 555 U.S. 223, 240 (2009), which is particularly disfavored in this procedural posture, where the Court must necessarily consider one-sided and unproven factual allegations. See id. at 238-39 (giving courts discretion to resolve qualified immunity at "clearly established" prong, noting such approach can be beneficial "at the pleading stage" where "the precise factual basis for the plaintiff's claim or claims may be hard to identify.").

Relying on "extensive case law" from the Supreme Court and Third Circuit, the Magistrate Judge correctly found that Plaintiffs do not allege any clearly established seizure of Ms. Brown's person in violation of the Fourth Amendment. R&R at 13.[6] Although Plaintiffs disagree with that conclusion, Pl. Obj. at 3-5, they fail to identify a single case "where an officer acting under similar circumstances" as Agent Dawkin "was held to have violated the Fourth Amendment." District of Columbia v. Wesby, 138 S. Ct. 577, 590 (2018). Certainly, they do not cite any on-point case of controlling authority or robust consensus of cases pre-dating the conduct at issue. See Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011).[7] More still, Plaintiffs make the classic mistake of defining the "clearly established" right at far too abstract a level—i.e., "to be free from suspicionless seizures," Pl. Obj. at 2—when the Supreme Court has repeatedly

---

[6] Contrary to Plaintiffs' suggestions, Pl. Obj. at 2, 5, the Magistrate Judge never found that Dawkin "seized" Ms. Brown's cell phone. That claim—which Plaintiffs did not address in opposition to Dawkin's motion to dismiss—is meritless in any event. See MTD Br. at 23 n.18.

[7] Although Plaintiffs focus on United States v. Thame, 846 F.2d 200 (3d Cir. 1988), see Pl. Obj. at 4-5, the facts of that case and the Third Circuit's holding (that there was no seizure) actually support the point that Plaintiffs fail to establish a clearly established seizure of Ms. Brown's person in this case. See Reply Br. at 9-10 n.7.

warned against doing just that.  See San Francisco v. Sheehan, 135 S. Ct. 1765, 1776 (2015) (collecting cases and noting, "[q]ualified immunity is no immunity at all if 'clearly established' law can simply be defined as the right to be free from unreasonable searches and seizures.").

As the Magistrate Judge noted, "no seizure occurs when officers approach people at airports or other transportation facilities and ask them to submit to questions or permit search of their effects."  R&R at 13.  Here, however, that—not an "obvious" or "clearly established" Fourth Amendment violation, Pl. Obj. at 5—is precisely what Plaintiffs allege.  See MTD Br. at 21-22, and cases cited therein.  Plaintiffs insist otherwise, arguing "Dawkin's actions and words made clear that this was a targeted investigation" of Ms. Brown, so she "did not feel free to walk away" or "decline to answer his questions."  Pl. Obj. at 3-4.  The relevant constitutional test, however, is not whether Ms. Brown "perceived that [she] was being ordered to restrict [her] movement, but whether [Agent Dawkin]'s words and actions would have conveyed that to a reasonable person."  California v. Hodari D., 499 U.S. 621, 628 (1991); see also MTD Br. at 20-21.  Assessing those "words and actions," this Court should look to the well-pleaded allegations and disregard legal conclusions artfully pleaded as facts, which are of course not entitled to any presumption of the truth.  James v. City of Wilkes-Barre, 700 F.3d 675, 680 (3d Cir. 2012).

Turning to the allegations here, Agent Dawkin approached Ms. Brown with one other officer (the state trooper who previously questioned her) and identified himself as a DEA agent who "had some questions" about the cash.  FAC ¶¶ 177-78, 180.  He "escorted" Ms. Brown to another part of the public gate area; asked her to show him the cash (and she did); requested an explanation of why she was carrying $82,373 in cash with her (and she gave one); and asked that she call the co-owner of the cash, who was unsuccessful in corroborating the story.  Id. at ¶¶ 181, 183, 186-88, 191; see City of Wilkes-Barre, 700 F.3d at 681 (collecting cases and recognizing

12

"the Supreme Court has repeatedly rejected the notion that a seizure occurs when an officer approaches a citizen to ask questions or make requests."). All this happened publicly—in an airport, where "reasonable privacy expectations are of significantly lesser magnitude" Florida v. Rodriguez, 469 U.S. 1, 6 (1984)—while Dawkin was in plainclothes. He did not block Ms. Brown's path or otherwise control her movement by, for example, retaining her travel papers. See United States v. Lockett, 406 F.3d 207, 211 (3d Cir. 2005). He did not have a weapon drawn, and Plaintiffs do not allege that he presented himself in a "threatening" manner, with "several" other officers, or used "language or tone of voice indicating that compliance with [his] request might be compelled." United States v. Mendenhall, 446 U.S. 544, 554 (1980). Indeed, Plaintiffs do not allege any questions Agent Dawkin asked Ms. Brown (or anything he said to her for that matter), nor do their allegations support the inference those questions were somehow "targeted."[8] On these allegations, the R&R rightly concluded, Plaintiffs have not established a clearly established "seizure" of Ms. Brown. Id. at 555; see MTD Br. at 21-22, Reply Br. at 9-11.

But even assuming for the sake of argument there was a clearly established seizure, Agent Dawkin would be entitled to qualified immunity still, as Plaintiffs do not establish that any such seizure was clearly established to be unreasonable under the circumstances. See MTD Br. at 22-23; Reply Br. at 11-13; see also Vargas v. City of Philadelphia, 783 F.3d 962, 970 (3d Cir. 2015) (Fourth Amendment "only protects against those [seizures] that are unreasonable.").[9]

---

[8] For these reasons, Plaintiffs do not even allege a Fourth Amendment violation (and the Magistrate Judge's conclusion giving them the benefit of the doubt that they did was erroneous). See MTD Br. at 20-21. But again, any question on that point need not be resolved on this record, as the Magistrate correctly found that any constitutional violation was not clearly established and that, not any prong one finding, is dispositive.

[9] Plaintiffs say the Magistrate Judge found "Dawkin had no reasonable suspicion to seize" Ms. Brown, Pl. Obj. at 3, but the R&R includes no reasonable suspicion analysis, let alone a finding that Dawkin lacked such suspicion here. Nor does the R&R analyze whether any brief

Indeed, settled law made plain that it is reasonable to conduct a brief, investigatory stop upon reasonable suspicion that criminal activity may be afoot, provided the stop "was sufficiently limited in scope and duration." Florida v. Royer, 460 U.S. 491, 500 (1983). That is, the detention must be "no longer than is necessary to effectuate the purpose of the stop" and "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." Id. Here, based on the information alleged, Agent Dawkin had at least reasonable suspicion to conduct a brief, investigatory stop, and even assuming he in fact conducted such a stop he limited it to a minimally intrusive investigation (asking questions, viewing the cash, and seeking corroboration over the phone) that quickly confirmed his suspicions. MTD Br. at 22-23; Reply Br. at 11-13.

Accordingly, stripping away "bald assertions, subjective characterizations, [and] legal conclusions," Lexington Nat. Ins. Corp. v. Ranger Ins. Co., 326 F.3d 416, 419 (3d Cir. 2003), the amended complaint pleads no more than a consensual encounter at a public airport, not any "seizure" of Ms. Brown's person, and certainly not a clearly established violation of the Fourth Amendment. As the Magistrate Judge correctly determined, R&R at 13, Agent Dawkin is entitled to qualified immunity on Plaintiffs' personal-seizure claim.[10]

---

detention was reasonable under the circumstances. To be sure, the Magistrate Judge noted, albeit (as explained) erroneously, that "a reasonable person in [Ms. Brown's] position would not feel free to disregard Dawkin's demands." R&R at 13. But that only addresses part of the inquiry (whether a "seizure" occurred). It says nothing of the constitutionality of any underlying seizure.

[10] Agent Dawkin has objected to the R&R's erroneous recommendation to deny qualified immunity on the seizure-of-cash claim, and does not repeat that discussion here. See Biv. Obj. at 7-10. Again, this Court need not reach that issue or objection because no implied Bivens remedy is warranted here in the first instance. If it does, for the reasons set forth fully in prior briefing, this Court should modify that finding and determine Dawkin is entitled to qualified immunity on Plaintiffs' claim that he seized the cash in violation of the Fourth Amendment. Id.; see also MTD Br. at 23-25; Reply Br. at 13-14.

## CONCLUSION

This Court should reject Plaintiffs' objections to the Report and Recommendation, and hold, as the Magistrate Judge correctly found, that Plaintiffs lack a viable <u>Bivens</u> remedy against Agent Dawkin to challenge the forfeiture-related seizure of $82,373 in cash and any alleged temporary detention of Ms. Brown at the Pittsburgh International Airport.  Separately, Agent Dawkin is entitled to qualified immunity on all claims asserted against him.  For these reasons, discussed herein and in prior briefing, Count V against Agent Dawkin should be dismissed with prejudice.

|  |  |
|---|---|
| Dated: March 4, 2021 | Respectfully submitted, |
| | BRIAN M. BOYNTON<br>Acting Assistant Attorney General<br>Civil Division |
| | C. SALVATORE D'ALESSIO, JR.<br>Acting Director<br>Torts Branch, Civil Division |
| | MARY HAMPTON MASON<br>Senior Trial Counsel, Torts Branch |
| | /s/ *David Inkeles*<br>DAVID W. INKELES<br>Trial Attorney (NY Bar No. 5511068)*<br>United States Department of Justice<br>Torts Branch, Civil Division<br>P.O. Box 7146, Ben Franklin Station<br>Washington, D.C. 20044-7146<br>Tel: (202) 305-0401 / Fax: (202) 616-4314<br>E-mail: david.w.inkeles@usdoj.gov |
| | *Counsel for Steven Dawkin* |
| | *Admitted Pro Hac Vice |