**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

REBECCA BROWN, *et al.*,

     *Plaintiffs,*

v.

TRANSPORTATION SECURITY
ADMINISTRATION, *et al.*,

     *Defendants.*

Civil Action No. 2:20-cv-64

**PLAINTIFFS' RESPONSE TO
DAWKIN'S OBJECTIONS TO
REPORT AND RECOMMENDATION
[ECF 70]**

<u>**PLAINTIFFS' RESPONSE TO STEVEN DAWKIN'S OBJECTIONS
TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON DEFENDANTS' MOTIONS TO DISMISS**</u>

Dan Alban,* Lead Attorney
VA Bar No. 72688

Jaba Tsitsuashvili*
DC Bar No. 1601246

INSTITUTE FOR JUSTICE
901 North Glebe Rd., Suite 900
Arlington, VA 22203
(703) 682-9320
(703) 682-9321 (fax)
dalban@ij.org
jtsitsuashvili@ij.org

Attorneys for Plaintiffs

*Admitted *Pro Hac Vice*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................ii

INTRODUCTION ...................................................................................................................1

ARGUMENT...........................................................................................................................2

   I.   The authority Dawkin relies on does not support his extreme and untenable position
       that the mere location where he chose to commit his Fourth Amendment violations
       creates a new *Bivens* context, as the magistrate judge correctly recognized. .................................2

       1.   Dawkin's violations of Plaintiffs' Fourth Amendment seizure rights outside their
             homes do not create a new context....................................................................................3

       2.   Dawkin's violations of Plaintiffs' Fourth Amendment seizure rights in routine
             law enforcement at an airport do not create a new context. ...............................................4

       3.   Dawkin's violations of Plaintiffs' Fourth Amendment property seizure
             rights accompanying his unconstitutional seizure of Rebecca do not
             create a new context. ........................................................................................................5

       4.   Adjudicating Dawkin's run-of-the-mill Fourth Amendment violations is a core
             judicial function and does not encroach on legislative or executive authority..................5

  II.   Recently decided authority supports Plaintiffs' arguments against any special factors
       counseling hesitation in adjudicating their run-of-the-mill Fourth Amendment claims. ..........6

  III.  Dawkin's arguments against the clearly established nature of his Fourth Amendment
       violation in seizing Plaintiffs' cash without probable cause are based on misstatements
       of law and fact.........................................................................................................................8

  IV.  Dawkin cannot rely on Plaintiffs' allegations against DEA to avoid accountability for
       his own Fourth Amendment violations. ...................................................................................11

CONCLUSION.......................................................................................................................13

## TABLE OF AUTHORITIES

CASES                                                                                    Page(s)

*Ahmed v. Weyker,*
    984 F.3d 564 (8th Cir. 2020) ...................................................................................3

*Carey v. Nev. Gaming Control Bd.,*
    279 F.3d 873 (9th Cir. 2002) .................................................................................11

*Cooper v. Dillon,*
    403 F.3d 1208 (11th Cir. 2005) .............................................................................11

*Corr. Servs. Corp. v. Malesko,*
    534 U.S. 61 (2001) ...................................................................................................7

*Dyer v. Smith,*
    No. 3:19-cv-921, 2021 WL 694811 (E.D. Va. Feb. 23, 2021) ...................... 6, 7, 8

*Evans v. York Cnty. Adult Prob. & Parole Dep't,*
    No. 1:09-cv-1013, 2010 WL 5135890 (M.D. Pa. Dec. 10, 2010) .........................12

*Fazaga v. FBI,*
    965 F.3d 1015 (9th Cir. 2020) .................................................................................7

*Guillemard-Ginorio v. Contreras-Gómez,*
    490 F.3d 31 (1st Cir. 2007) ...................................................................................11

*Guyton v. Lappin,*
    No. 3:11-cv-1390, 2012 WL 2924016 (M.D. Pa. June 5, 2012) ...........................11

*Hicks v. Ferreyra,*
    965 F.3d 302 (4th Cir. 2020) ...................................................................................5

*Johnson v. Martinez,*
    No. 2:04-cv-1967, 2006 WL 208640 (E.D. Pa. Jan. 19, 2006) ............................12

*Kopec v. Tate,*
    361 F.3d 772 (3d Cir. 2004) ....................................................................................8

*Lawrence v. Reed,*
    406 F.3d 1224 (10th Cir. 2005) .............................................................................11

*Lederman v. United States,*
    291 F.3d 36 (D.C. Cir. 2002) .................................................................................11

*Leonard v. Robinson,*
    477 F.3d 347 (6th Cir. 2007) .................................................................................11

*Linlor v. Polson,*
  263 F. Supp. 3d 613 (E.D. Va. 2017) ...............................................................4

*Mack v. Yost,*
  968 F.3d 311 (3d Cir. 2020) ..............................................................................3

*Mengert v. TSA,*
  No. 4:19-cv-304, 2020 WL 7029893 (N.D. Okla. Nov. 30, 2020)...................4

*Minneci v. Pollard,*
  565 U.S. 118 (2012)............................................................................................8

*Muth v. Woodring,*
  666 F. App'x 137 (3d Cir. 2016) .......................................................................8

*Oliva v. Nivar,*
  973 F.3d 438 (5th Cir. 2020)..............................................................................3

*Osmon v. United States,*
  No. 1:20-cv-31 (W.D.N.C. Dec. 7, 2020) .........................................................4

*People of Three Mile Island v. Nuclear Regul. Comm'rs,*
  747 F.2d 139 (3d Cir. 1984) ..............................................................................8

*Scruggs v. Nielsen,*
  No. 1:18-cv-2109, 2019 WL 1382159 (N.D. Ill. Mar. 27, 2019) ....................4

*Terry v. Ohio,*
  392 U.S. 1 (1968)..............................................................................................10

*Tolan v. Cotton,*
  572 U.S. 650 (2014)............................................................................................8

*United States v. Frost,*
  999 F.2d 737 (3d Cir. 1993) ..............................................................................9

*United States v. Law,*
  384 F. App'x 121 (3d Cir. 2010) .......................................................................9

*United States v. Mathurin,*
  561 F.3d 170 (3d Cir. 2009) ............................................................................10

*United States v. Place,*
  462 U.S. 696 (1983)............................................................................................9

*United States v. Sokolow,*
  490 U.S. 1 (1989)..........................................................................................9, 10

*Vanderklok v. United States,*
   868 F.3d 189 (3d Cir. 2017) ............................................................................................. 3, 4, 5

*Vives v. City of New York,*
   405 F.3d 115 (2d Cir. 2005) ................................................................................................11

*Wiggins v. Bledsoe,*
   No. 3:11-cv-1298, 2017 WL 5900572 (M.D. Pa. Nov. 30, 2017) ........................................8

*Ziglar v. Abbasi,*
   137 S. Ct. 1843 (2017) ................................................................................................4, 5, 6, 7

**OTHER AUTHORITIES**

Petition for a Writ of Certiorari, *Oliva v. Nivar,*
   No. 20-1060 (S. Ct. Jan. 29, 2021) .......................................................................................4

## INTRODUCTION

The Court should reject Officer Dawkin's objections to the magistrate judge's Report and Recommendation.

First, his arguments regarding the availability of Fourth Amendment *Bivens* claims are premised on extreme and unsupported positions of law regarding what does and does not constitute a "new context," in conflict with Supreme Court and Third Circuit precedent. Contrary to Dawkin's assertions, the location in which he chose to commit his run-of-the-mill Fourth Amendment violations does not suffice to create a new context. His reliance on inapposite cases only confirms as much. Nor does the fact that he seized Rebecca's property as a follow-on to seizing her person create a new *Bivens* context. And his expressed concern of "inter-branch intrusion" does not explain how adjudicating Plaintiffs' common Fourth Amendment claims (a foundational judicial function) would usurp any congressional authority or disrupt the functioning of any statutory scheme. In short, he cannot escape the reality that, just like in *Bivens*, Plaintiffs' claims arise in the settled sphere of recurrent law enforcement operations and seek to deter the same kind of Fourth Amendment violations.

Second, his "special factors" arguments (to which his objections add nothing new) are premised entirely on hypotheticals and irrelevancies. A recent decision by the Eastern District of Virginia succinctly bolsters Plaintiffs' arguments and the magistrate judge's holdings as to why Dawkin's arguments on national security, absence of statutory damages, practicality, and alternative remedies are untethered from the actual circumstances of this case.

Third, Dawkin's arguments seeking qualified immunity from Plaintiffs' cash seizure claim are premised entirely on misstatements of law and facts. The cases relied on by the magistrate judge— regarding the constitutional standards and requirements for seizing cash from travelers, i.e., the very circumstances of this case—would put any reasonable officer on notice that (1) without probable cause, seizing cash for more than a brief investigatory period violates the Fourth Amendment and (2) possession of a large amount of cash does not give rise to probable cause. Dawkin's attempts to manufacture reasonable suspicion (which is not even the right constitutional standard) by distorting the facts surrounding his seizures of Rebecca, her phone, and her cash are transparent and unavailing.

Finally, the Court should reject the gambit of Dawkin and DEA to point the finger at each other to avoid constitutional scrutiny and accountability. Regardless of the unconstitutionality of DEA's policies, the relevant inquiry is whether clearly established law put Dawkin on notice that *his own conduct* violated the Fourth Amendment. For the reasons already briefed and discussed further below, the law—and Dawkin's violations—were clearly established.

The Court should deny in its entirety Dawkin's motion to dismiss Count V of the First Amended Complaint, ECF 43.

## ARGUMENT

**I.      The authority Dawkin relies on does not support his extreme and untenable position that the mere location where he chose to commit his Fourth Amendment violations creates a new *Bivens* context, as the magistrate judge correctly recognized.**

Dawkin asserts that just because he chose to commit his run-of-the-mill Fourth Amendment violations at an airline gate (long after TSA security screening found no cause for concern), the Court must find that Plaintiffs' unconstitutional-seizure claims present a new *Bivens* context. For the reasons explained in Plaintiffs' opposition to Dawkin's motion to dismiss, the magistrate judge correctly rejected Dawkin's extreme and unsupported argument. Pls.' Opp. Dawkin Mot. Dismiss ("Pls.' Opp. Dawkin MtD"), ECF 53 at 9–13; Report and Recommendation ("R&R"), ECF 66 at 15–16.[1]

Dawkin's objections are untenable. He responds to Plaintiffs' arguments and the magistrate judge's findings by arguing that: (1) a Fourth Amendment *Bivens* claim that arises outside the plaintiff's home presents a new context; (2) a Fourth Amendment *Bivens* claim that arises anywhere in an airport presents a new context; and (3) a Fourth Amendment *Bivens* claim that involves the unconstitutional seizure of property as a follow-on to the unconstitutional seizure of a person presents a new context. *See* Dawkin's Objs. to R&R ("Dawkin Objs."), ECF 70 at 4–5. These are extreme positions that are squarely at odds with Supreme Court and Third Circuit precedent. Finally, his assertion of "inter-

---

[1] Dawkin seems to agree with Plaintiffs that the magistrate judge's *Bivens* inquiry erred by assessing "special factors" at step one of the analysis. *See* Dawkin Objs. at 2–3; Pls.' Objs. to R&R ("Pls.' Objs."), ECF 71 at 7–11. The magistrate judge should have ended the *Bivens* inquiry (and let the claims proceed) upon correctly finding that the claims do not present a new context. Pls.' Objs. at 7–11. In any event, no special factors (at either step of the analysis) warrant ignoring Dawkin's Fourth Amendment violations, for the reasons already briefed and further discussed in section II below.

branch intrusion," *id.* at 5, misunderstands the Supreme Court's explanation of that inquiry. Dawkin does not (and cannot) explain how this Court's adjudication of his common Fourth Amendment violations threatens to usurp congressional authority or throw a wrench in the proper functioning of the irrelevant CAFRA statutory scheme.

1.  **Dawkin's violations of Plaintiffs' Fourth Amendment seizure rights outside their homes do not create a new context.**

Dawkin cites three cases in support of his assertion that any Fourth Amendment *Bivens* claim arising outside of the plaintiff's home presents a new context. Dawkin Objs. at 4 & n.2. The first two cases do not support his position. The third is an extreme outlier from another jurisdiction, and it clearly conflicts with binding Third Circuit law.

First, *Mack v. Yost* says nothing to imply that the location of a case outside the home presents a new context. The passage from the opinion that Dawkin quotes simply describes the facts of *Bivens*; it provides no reason to think that the Third Circuit gives any credence to Dawkin's idiosyncratic position that all *Bivens* claims present a new context if they do not arise under precisely those same facts. Rather, the Third Circuit found a new context in *Mack* because it was faced with a *First* Amendment retaliation claim, which—unlike Plaintiffs' *Fourth* Amendment seizure claims—the Supreme Court has yet to recognize; the non-home location had nothing to do with the Third Circuit's new-context finding. 968 F.3d 311, 320 (3d Cir. 2020).

Second, *Ahmed v. Weyker* does not say (or imply) that any non-home location presents a new context. That question was not even before the court. Rather, the opinion distinguishes the "lying and manipulation" at issue there as "simply not the same as the physical invasions that were at the heart of *Bivens*." 984 F.3d 564, 568 (8th Cir. 2020). By contrast, Plaintiffs' claims here clearly present "physical invasions"—of Rebecca's person and phone, and of Terry's and Rebecca's cash.

Third, *Oliva v. Nivar*, 973 F.3d 438, 441–43 (5th Cir. 2020)—which does suggest that any non-home location presents a new *Bivens* context in the Fifth Circuit—is an extreme outlier that conflicts with Third Circuit precedent. For example, if all that was necessary to deem a case a new context was its occurrence outside the home, then in *Vanderklok v. United States*, the Third Circuit would simply

have said so, and could have dispensed with its "rigorous inquiry." 868 F.3d 189, 200 (3d Cir. 2017). *See also* Pet. for Writ of Cert. at 8–21, *Oliva v. Nivar*, No. 20-1060 (S. Ct. Jan. 29, 2021) (explaining how the Fifth Circuit's decision disregards *Ziglar v. Abbasi* and breaks with the consensus of seven other Circuits).

### 2. Dawkin's violations of Plaintiffs' Fourth Amendment seizure rights in routine law enforcement at an airport do not create a new context.

Next, Dawkin tries another version of his argument that location is determinative for finding a new context, arguing that Plaintiffs' claims present a new context merely because he violated their Fourth Amendment rights somewhere in an airport. He posits that "every court confronted with a putative *Bivens* claim arising in an airport has appreciated the significance of that setting in finding the new-context inquiry met." Dawkin Objs. at 4. But his assertion is misleading. None of the cases he cites in support, *id.* at n.3, found a new context because the claims arose in an airport.

Rather, they all relied on the *category of defendant* and the *statutory mandate* at issue. In all of those cases, the defendants were TSA screeners—whose job is to conduct administrative searches at security checkpoints for purposes of transportation security and national security, not (like Dawkin's job) to conduct general law enforcement anywhere in an airport or elsewhere. *See Vanderklok*, 868 F.3d at 199–200 ("We must look at the issue anew in this particular context, airport security, and as it pertains to this particular category of defendants, TSA screeners."); *Mengert v. TSA*, No. 4:19-cv-304, 2020 WL 7029893, at *8–9 (N.D. Okla. Nov. 30, 2020) (distinguishing "traditional law-enforcement" from "*administrative search at the security checkpoint* of a public airport," and distinguishing the "statutory mandate" of TSA screeners from that of drug enforcement officers); *Scruggs v. Nielsen*, No. 1:18-cv-2109, 2019 WL 1382159, at *5 n.9 (N.D. Ill. Mar. 27, 2019) (finding a new context because of TSA screeners' "administrative, special-needs searches"); Mem. & Recommend., *Osmon v. United States*, No. 1:20-cv-31, ECF 21 at 20–21 (W.D.N.C. Dec. 7, 2020) ("this case involves an airport security screening by a TSA screener *rather than the type of law enforcement activity present in Bivens*") (emphasis added); *Linlor v. Polson*, 263 F. Supp. 3d 613, 620 (E.D. Va. 2017) ("[T]his case does not concern the *type of law enforcement activity at issue in a typical Fourth Amendment Bivens suit*, but rather an airport security screening

by a [TSA officer]. Under the test outlined in *Abbasi*, this difference in setting *and class of [d]efendant* is sufficient to create a new 'context' for purposes of the *Bivens* analysis.") (emphases added).

In short, unlike the TSA screeners who were defendants in all of the cases Dawkin relies on, Dawkin is a "line-level agent[] of a federal criminal law enforcement agency" who violated the Fourth Amendment "in the course of a routine law-enforcement action"—just like the officers in *Bivens*. *Hicks v. Ferreyra*, 965 F.3d 302, 311 (4th Cir. 2020); *cf. Vanderklok*, 868 F.3d at 194 (finding a new context because the claim arose "in the context of airport *security screenings*"—not because the location was an airport) (emphasis added). And as the magistrate judge correctly found in rejecting Dawkin's airport-based new-context arguments, "Dawkin's choice to initiate a law enforcement encounter within the confines of an airport [at the boarding gate, long after the TSA security screening concluded without incident] does not imbue the encounter with any airport- or national-security attribute." R&R 16.

### 3. Dawkin's violations of Plaintiffs' Fourth Amendment property seizure rights accompanying his unconstitutional seizure of Rebecca do not create a new context.

For his third attempt to manufacture a new context, Dawkin relies on the fact that Plaintiffs' claims involve the unconstitutional seizure of property as a result of his unconstitutional seizure of Rebecca. Dawkin Objs. at 5. Unsurprisingly, he cites no authority for this contention. To the contrary, Plaintiffs have already pointed out that the Third Circuit and other courts have recognized the viability of Fourth Amendment *Bivens* claims for property seizures. Pls.' Objs. at 12–13.

### 4. Adjudicating Dawkin's run-of-the-mill Fourth Amendment violations is a core judicial function and does not encroach on legislative or executive authority.

Finally, Dawkin posits that Plaintiffs' claims present a new context because they risk "inter-branch intrusion." Dawkin Objs. at 5. But he does not explain how Plaintiffs' claims threaten to encroach upon the authority of Congress to legislate. Nor does he claim that Plaintiffs' claims threaten the operation of CAFRA.

The inescapable fact is that Plaintiffs' claims for common Fourth Amendment violations lie at the heart of the judicial function. Therefore, this case is wholly unlike *Ziglar v. Abbasi*, where the Supreme Court cautioned against courts' "intrud[ing] upon the authority of the Executive in military and national security affairs." 137 S. Ct. 1843, 1861 (2017) (internal quotes omitted). Instead, this case

presents routine Fourth Amendment questions of the sort that courts answer every day in the "common and recurrent sphere of law enforcement," a context in which *Bivens* claims remain a "fixed principle in the law." *Id.* at 1857. And it is particularly in "domestic cases" like this one that the Supreme Court warned against abstract and irrelevant arguments to evade constitutional accountability of the sort Dawkin throws against the wall and hopes will stick. *Id.* at 1861–62. As recognized by the magistrate judge, this Court should not "cast doubt on the continued force, or even the necessity, of *Bivens* in the search-and-seizure context in which it arose." R&R 15 (quoting *Abbasi*, 137 S. Ct. at 1856). Plaintiffs' personal seizure and cash seizure claims fall squarely in that common, settled, and necessary context.

## II. Recently decided authority supports Plaintiffs' arguments against any special factors counseling hesitation in adjudicating their run-of-the-mill Fourth Amendment claims.

Plaintiffs have briefed why the Court should not consider special factors at all, given that their common Fourth Amendment claims do not present a new *Bivens* context. Pls.' Objs. at 7–11. They have also explained why none of the purported special factors argued by Dawkin or relied on by the magistrate judge holds water in this case. Pls.' Opp. Dawkin MtD at 13–20; Pls.' Objs. at 11–15; *see also* R&R 15–18 (correctly rejecting most of Dawkin's special factors arguments). In his objections, Dawkin rehashes the same arguments, without any further support or elaboration. Dawkin Objs. at 6. Because Plaintiffs' Fourth Amendment claims do not present a new context, the Court need not consider these arguments. *See* Dawkin Objs. at 2–3 (noting that "[t]he two steps in the [*Bivens*] framework are distinct" and describing the second step as only occurring "[u]pon finding a difference in context" at step one). In any event, they fail for the reasons already briefed. In addition, Plaintiffs bring to the Court's attention recently decided supplemental authority that further supports their arguments against special factors and undercuts Dawkin's arguments.

In *Dyer v. Smith*, No. 3:19-cv-921, 2021 WL 694811 (E.D. Va. Feb. 23, 2021), the court assessed Fourth Amendment seizure claims (and First Amendment claims) against TSA screeners who seized the plaintiff traveler and his phone, *id.* at *2—just like Dawkin did to Rebecca. Even in that context— which, unlike this case, occurred at the transportation security checkpoint—the court held that the

case did "not implicate the national security concerns that have counselled against implying a damages remedy in other cases." *Id.* at *4. For the reasons already extensively briefed (and found by the magistrate judge), that is all the more true of Dawkin's routine law enforcement actions.

The court went on to hold that "the absence of a statutory damages remedy" did not counsel hesitation, rightly explaining that "if congressional failure to enact a statutory damages remedy alone constituted a special factor that counselled hesitation, that would preclude all expansions of *Bivens* and would undermine the implied rights of action the Supreme Court recognized in *Bivens*" and its progeny. *Id.* The court also rejected the defendants' "practicality" argument, which was premised on their assertion that TSA screeners do not receive constitutional training. *Id.* at *5. Dawkin's own practicality arguments are therefore even less availing, because unlike the TSA screeners in *Dyer*, Dawkin is "a trained law enforcement officer who was not engaged in airport security screening." R&R 16.

Finally, the court held that no "alternative remedy" existed warranting a refusal to adjudicate the defendants' constitutional violations, because the purported alternative remedy identified by the defendants did not address the same issues as the plaintiff's allegations. *Dyer*, 2021 WL 694811, at *5. In other words, the purported alternative remedy was not designed to provide relief for the class of individuals to which the plaintiff belonged. *Id.* Therefore, that remedy could not deter the same conduct as *Bivens* claims do. *See Abbasi*, 137 S. Ct. at 1863 ("There is a persisting concern, of course, that absent a *Bivens* remedy there will be insufficient deterrence to prevent officers from violating the Constitution.") The same is true here. Declining to adjudicate Plaintiffs' claims for Fourth Amendment violations that are neither related to CAFRA proceedings nor remediable except in damages would fail to serve the "purpose of *Bivens*[:] to deter individual federal officers from committing constitutional violations." *Fazaga v. FBI*, 965 F.3d 1015, 1055 (9th Cir. 2020) (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001)). As Plaintiffs have already explained, the Third Circuit and several other courts have recognized that CAFRA is only relevant to *Bivens* claims implicating the CAFRA proceeding itself, and that CAFRA has no bearing on any claims of unconstitutional seizure of person or property (like Plaintiffs') that precede the CAFRA proceeding or seek relief not available in that proceeding. Pls.' Opp. Dawkin MtD at 13–16 (collecting cases); Pls.'

Objs. at 11–14 (same). Therefore, Dawkin's purported alternative remedy of CAFRA provides *neither* "significant deterrence" to officers *nor* "compensation" to victims—two factors which the Supreme Court has held might provide an adequate alternative remedy *in combination*. *Minneci v. Pollard*, 565 U.S. 118, 120 (2012).

In short, *Dyer* is the latest in a mounting line of cases that reject the irrelevant special factors arguments offered by Fourth Amendment *Bivens* defendants, much like those submitted by Dawkin here, most of which the magistrate judge rightly rejected.

### III.   Dawkin's arguments against the clearly established nature of his Fourth Amendment violation in seizing Plaintiffs' cash without probable cause are based on misstatements of law and fact.

Dawkin objects to the magistrate judge's correct holding that he is not entitled to qualified immunity on the cash seizure aspect of Plaintiffs' Fourth Amendment claims. Dawkin Objs. at 6–10. For the reasons already briefed, the magistrate judge got this right. Pls.' Opp. Dawkin MtD at 23–25; R&R 13–14. Dawkin has the "burden to establish that he is entitled to qualified immunity." *Muth v. Woodring*, 666 F. App'x 137, 139 (3d Cir. 2016) (citing *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004)). Based on his prior briefing and his objections, he has failed to meet that burden.

At bottom, Dawkin's qualified immunity objections are similar to those he makes in the *Bivens* new-context analysis: he asserts that unless prior Fourth Amendment cases involved facts identical to this case, a constitutional violation cannot be clearly established. But that is not the law. To establish his entitlement to qualified immunity, Dawkin must show that "general, well developed, legal principles," *Wiggins v. Bledsoe*, No. 3:11-cv-1298, 2017 WL 5900572, at *10 (M.D. Pa. Nov. 30, 2017) (citing *People of Three Mile Island v. Nuclear Regul. Comm'rs*, 747 F.2d 139, 144–45 (3d Cir. 1984)), would not provide "fair warning . . . that [his] conduct was unconstitutional," *Muth*, 666 F. App'x at 139 (quoting *Tolan v. Cotton*, 572 U.S. 650, 656 (2014)). He has failed to make that showing. Pls.' Opp. Dawkin MtD at 23–25.

To the contrary, the cases cited by the magistrate judge clearly establish the very principles that Dawkin violated, in circumstances that also addressed seizures of cash or other property in the transportation setting: (1) without probable cause, seizing cash for more than a brief investigatory

period (of even ninety minutes) violates the Fourth Amendment and (2) possession of a large amount of cash does not give rise to probable cause. R&R 13–14 & nn.9–11 (citing Supreme Court and Third Circuit cases addressing these particular issues in the airport setting).

To evade these well-established Fourth Amendment principles regarding seizures of cash, Dawkin distorts the facts and misstates the law.

He argues that his seizure of Plaintiffs' cash required only reasonable suspicion (rather than probable cause) because his seizure was "for investigation." Dawkin Objs. at 8. But that is not what happened. Dawkin seized the cash and then sent Rebecca on her way to catch her flight to Boston *without* her father's money. It was clear that this was no short deprivation. Indeed, the approximately two-hour flight from Pittsburgh to Boston is itself longer than the ninety-minute seizure of luggage without probable cause that the Supreme Court held was unreasonable in *United States v. Place*, 462 U.S. 696, 710 (1983). And Dawkin ultimately separated Rebecca from her cash for seven months. FAC ¶¶ 193–199, 207. The caselaw makes clear that such a seizure "for a long period of time" is well beyond the bounds of a short deprivation authorized by reasonable suspicion. *United States v. Frost*, 999 F.2d 737, 740 (3d Cir. 1993) (citing *Place*, 462 U.S. at 702); *Place*, 462 U.S. at 702, 709–10 (authorizing only short investigatory seizures of property based on reasonable suspicion in a manner "that would quickly confirm or dispel the authorities' suspicion," and holding that a ninety-minute seizure of an air traveler's luggage without probable cause was "sufficient to render the seizure unreasonable").

In any event, Dawkin's unsupported argument that his prolonged, seven-month seizure of Rebecca's cash was appropriate because he only needed, and had, reasonable suspicion (rather than the requisite probable cause) is ultimately a red herring. His assertion *of even reasonable suspicion* is belied by the law and the facts. At the time of the seizure, "neither Terry nor Rebecca was under investigation for any criminal activity," and Dawkin seized the cash "based solely on . . . the amount." FAC ¶¶ 192–199. It is beyond debate that traveling with a large amount of cash at an airport—an entirely lawful activity—does not give rise even to reasonable suspicion (let alone reasonable suspicion of any particular or articulable crime). *United States v. Sokolow*, 490 U.S. 1, 8–9 (1989); *United States v. Law*, 384 F. App'x 121, 122–23 (3d Cir. 2010). The law is clearly established that this is not even a

"close call." *United States v. Mathurin*, 561 F.3d 170, 179 (3d Cir. 2009) (deeming reasonable suspicion a "close call" based on traveling with cash *and additional individualized factors* giving rise to a "particularized and objective basis for suspecting [a particular individual] of criminal activity").

To overcome this reality, Dawkin simply conjures up a new factual record.

First, he claims that he was "confronted with various forms of explanation for why [Rebecca] had over $82,000 cash with her." Dawkin Objs. at 8. Reading the complaint paragraphs he cites for this assertion, FAC ¶¶ 158, 171–173, one is at a loss to discern that Rebecca provided anything other than a consistent explanation for the cash to everyone who asked. To the contrary, Rebecca "repeat[ed] herself" four times, including to Dawkin. FAC ¶¶ 168, 171, 172, 186.

Finally, *contra* Dawkin Objs. at 8, no reasonable suspicion (and certainly no probable cause, which is the actual standard under which Dawkin's cash seizure must be evaluated, as discussed above) "ripened" during Dawkin's call with Terry (a call that should never even have occurred, because Dawkin did not have reasonable suspicion in the first place to force Rebecca to make the call and to give him her phone over her clear objections, FAC ¶¶ 187–188). Terry's potential confusion during the call that woke and disoriented him was *entirely consistent with what Rebecca told Dawkin to expect*. FAC ¶¶ 181–191. And nothing in the record—including in Dawkin's attempts to rewrite the facts of the FAC, which must be accepted as true and construed in Plaintiffs' favor—indicates that Dawkin had any reason to think Rebecca was involved in criminal activity *or* that she was lying about anything. *See Mathurin*, 561 F.3d at 179 (reasonable suspicion requires both (1) a "particularized and objective basis" for suspecting an individual of criminal activity *and* (2) a reason to doubt her explanations *based on something the officer knows about her*). In short, Dawkin had, *at best*, an "inchoate hunch"; but that is neither reasonable suspicion nor probable cause. *Sokolow*, 490 U.S. at 7 (cleaned up) (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)). Indeed, his hunch was objectively *un*reasonable, given Rebecca's consistent story to everyone she spoke with and the fact that Dawkin's call with Terry only *confirmed* the veracity of what Rebecca told him to expect—and contradicted none of her explanations regarding the *source* of the cash.

The magistrate judge already rightly rejected Dawkin's legal arguments regarding his entitlement to qualified immunity on Plaintiffs' cash seizure claim. This Court need only reject Dawkin's invented factual record and adopt the magistrate judge's legal and factual findings.

## IV. Dawkin cannot rely on Plaintiffs' allegations against DEA to avoid accountability for his own Fourth Amendment violations.

Dawkin argues that he "is entitled to qualified immunity for the separate reason that Plaintiffs affirmatively allege he acted 'in accordance,' FAC at ¶ 115, with a purported policy that no court has declared unconstitutional." Dawkin Objs. at 9. This argument misses the point. The question is not whether any court has held unconstitutional the DEA *policy* at issue in Plaintiffs' claims against the agency. Rather, the question is whether a reasonable officer would understand that *the conduct he engaged in* violated the Fourth Amendment. *See Guyton v. Lappin*, No. 3:11-cv-1390, 2012 WL 2924016, at *11 (M.D. Pa. June 5, 2012) ("it is well-settled that the doctrine of qualified immunity looks to the state of constitutional case law when determining whether *specific rights* were clearly established") (emphasis added). As the magistrate judge rightly explained, "the mere alleged existence of an agency policy does not automatically immunize patently unlawful conduct that may be consistent with that policy." R&R 14.[2] For the reasons already briefed, that standard is met with respect to both (1) Dawkin's seizure of Rebecca and her phone without reasonable suspicion and (2) his seizure of Terry's and Rebecca's cash without probable cause. Pls.' Opp. Dawkin MtD at 20–25; Pls.' Objs. at 2–7. And the magistrate judge correctly rejected Dawkin's arguments regarding the cash seizure (but erred in accepting his arguments regarding the personal and phone seizures). R&R 12–14; Pls.' Objs. at 2–7.

The Court should also reject Dawkin's argument for the separate reason that DEA, in its briefing, repeatedly paints him as a rogue actor. *See* Agency Defs.' MtD, ECF 57 at 23; Agency Defs.' Reply ISO MtD, ECF 65 at 11–13; Agency Defs.' Objs., ECF 72 at 11. DEA and Dawkin cannot have

---

[2] At least seven circuits recognize some form of the magistrate judge's "patently unlawful" rule for rejecting qualified immunity based on officials' reliance on an unconstitutional statute; the same should be true for Dawkin's reliance on DEA's patently unlawful policy of seizing travelers and property without reasonable suspicion or probable cause. *See, e.g., Guillemard-Ginorio v. Contreras-Gómez*, 490 F.3d 31, 40–41 (1st Cir. 2007); *Leonard v. Robinson*, 477 F.3d 347, 359, 361 (6th Cir. 2007); *Lawrence v. Reed*, 406 F.3d 1224, 1232 (10th Cir. 2005); *Cooper v. Dillon*, 403 F.3d 1208, 1220–21 (11th Cir. 2005); *Vives v. City of New York*, 405 F.3d 115, 117–19 (2d Cir. 2005); *Lederman v. United States*, 291 F.3d 36, 47 (D.C. Cir. 2002); *Carey v. Nev. Gaming Control Bd.*, 279 F.3d 873, 881 (9th Cir. 2002).

it both ways; the Court should reject their tails-we-win, heads-you-lose approach to Plaintiffs' constitutional rights. In the face of a potential fact dispute regarding the relationship between an official's conduct and an agency's policy, qualified immunity cannot be granted. *See, e.g.*, *Evans v. York Cnty. Adult Prob. & Parole Dep't*, No. 1:09-cv-1013, 2010 WL 5135890, at *5 (M.D. Pa. Dec. 10, 2010) ("A factual dispute [regarding the defendant's compliance with agency policy] prevents the court from concluding that [the defendant's] conduct is entirely cloaked by qualified immunity."); *Johnson v. Martinez*, No. 2:04-cv-1967, 2006 WL 208640, at *4 (E.D. Pa. Jan. 19, 2006) ("[A]lthough it may be the case that Defendants merely followed [agency] policy, the Court lacks an adequate factual foundation upon which to assess that ground for qualified immunity. Defendants' argument is better addressed on summary judgment after full discovery.").

The magistrate judge correctly held that "considering the factual allegations in the light most favorable to Plaintiffs, it is reasonably inferable that the DEA adopted policies and practices governing seizure of cash at airports, and that the DEA agents' persistent practice of detaining travelers and seizing their cash based solely on its amount is consistent with and revelatory of the agency's policy." R&R 11. But at this early stage of the case (on a motion to dismiss), there is no guarantee that Plaintiffs will ultimately prevail against DEA (though they have more than adequately alleged DEA's policies and practices). As the magistrate judge recognized, "unless Plaintiffs (or Dawkin) can establish the policy's existence and applicability, there will be no basis to conclude that Dawkin reasonably relied on the policy in seizing Brown's and Rolin's cash." R&R 14; *see also id.* at n.12 ("To the extent that Count V could be barred by establishment of the DEA Seizure Policy, an element of Count III, it is appropriate to consider Count V as an alternative claim to Count III.").

If Dawkin comes to believe that the record at summary judgment supports his argument that he is entitled to qualified immunity because he was acting consistent with DEA policy, he is free to raise this defense at that stage, and even again at trial. But the two Defendants cannot point the finger at each other as a clever tactic to evade constitutional accountability for them both.

## CONCLUSION

The Court should (1) sustain Plaintiffs' objections on their *Bivens* claims, (2) reject Dawkin's objections, and (3) deny Dawkin's motion to dismiss Count V of the First Amended Complaint.

Dated: March 4, 2021                     Respectfully submitted,

                                        /s/ Dan Alban
                                        Dan Alban*
                                        VA Bar No. 72688

                                        Jaba Tsitsuashvili*
                                        DC Bar No. 1601246

                                        INSTITUTE FOR JUSTICE
                                        901 North Glebe Rd., Suite 900
                                        Arlington, VA 22203
                                        (703) 682-9320
                                        (703) 682-9321 (fax)
                                        dalban@ij.org
                                        jtsitsuashvili@ij.org

                                        *Attorneys for Plaintiffs*

                                        *Admitted *Pro Hac Vice*

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2021, a true and correct copy of the foregoing document was filed electronically with the Clerk of Court using the CM/ECF System, which will send a notice of electronic filing to all counsel of record.

                                        /s/ Dan Alban