**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

REBECCA BROWN, *et al.*,

    *Plaintiffs,*

v.

TRANSPORTATION SECURITY
ADMINISTRATION, *et al.*,

    *Defendants.*

Civil Action No. 2:20-cv-64

**PLAINTIFFS' RESPONSE TO
GOVERNMENT DEFENDANTS'
OBJECTIONS TO
REPORT AND RECOMMENDATION
[ECF 72]**

**PLAINTIFFS' RESPONSE TO GOVERNMENT DEFENDANTS'
OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON DEFENDANTS' MOTIONS TO DISMISS**

Dan Alban,* Lead Attorney
VA Bar No. 72688

Jaba Tsitsuashvili*
DC Bar No. 1601246

INSTITUTE FOR JUSTICE
901 North Glebe Rd., Suite 900
Arlington, VA 22203
(703) 682-9320
(703) 682-9321 (fax)
dalban@ij.org
jtsitsuashvili@ij.org

Attorneys for Plaintiffs

*Admitted *Pro Hac Vice*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................................ii

INTRODUCTION ...............................................................................................................................1

ARGUMENT ......................................................................................................................................1

   I.   The magistrate judge correctly held that Plaintiffs have standing. ..................................1

        1.   Plaintiffs plausibly allege the challenged agency policies or practices. ...............................3

        2.   The magistrate judge correctly applied *Clapper*'s "substantial risk" standard. .....................4

   II.   The magistrate judge correctly held that this Court has jurisdiction over Plaintiffs' claims against TSA..........................................................................................................................7

        1.   Plaintiffs plainly do not challenge a TSA "order" under 49 U.S.C. § 46110. ......................8

        2.   Plaintiffs do not challenge TSA's security screening procedures, nor are those procedures "inescapably intertwined" with the policies or practices they challenge..........9

   III. The magistrate judge correctly held that Plaintiffs bring valid APA claims................................11

CONCLUSION..................................................................................................................................15

# TABLE OF AUTHORITIES

CASES                                                                 Page(s)

*Aerosource, Inc. v. Slater*,
    142 F.3d 572 (3d Cir. 1998) .......................................................................8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................... 3, 7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2006) ......................................................................... 3, 14

*Brotherhood of Locomotive Eng'rs & Trainmen v. Fed. R.R. Admin.*,
    972 F.3d 83 (D.C. Cir. 2020) .................................................................11

*Burtch v. Milberg Factors, Inc.*,
    662 F.3d 212 (3d Cir. 2011) .....................................................................6

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ..................................................................1, 2, 4, 5, 6

*Foster v. Skinner*,
    70 F.3d 1084 (9th Cir. 1995) ..................................................................10

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009) .................................................................. 3, 7

*Gilmore v. Gonzales*,
    435 F.3d 1125 (9th Cir. 2006) ............................................................... 9, 10

*Grand Canyon Trust v. Pub. Serv. Co. of N.M.*,
    283 F. Supp. 2d 1249 (D.N.M. 2003) .......................................................12

*M.B. v. Quarantillo*,
    301 F.3d 109 (3d Cir. 2002) ...................................................................12

*Mace v. Skinner*,
    34 F.3d 854 (9th Cir. 1994) ...................................................................11

*McTernan v. City of York*,
    564 F.3d 636 (3d Cir. 2009) ...................................................................13

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S.118 (2007) ...............................................................................2

*Meese v. Keene*,
    481 U.S. 465 (1987) ...............................................................................2

*Merritt v. Shuttle, Inc.*,
     187 F.3d 263 (2d Cir. 1999) ................................................................................................10

*Merritt v. Shuttle, Inc.*,
     245 F.3d 182 (2d Cir. 2001) ..................................................................................................9

*Minard Run Oil Co. v. U.S. Forest Serv.*,
     670 F.3d 236 (3d Cir. 2011) ................................................................................................12

*PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*,
     139 S. Ct. 2051 (2019) ...........................................................................................................9

*Phillips v. County of Allegheny*,
     515 F.3d 224 (3d Cir. 2008) ................................................................................................14

*Rodriguez v. United States*,
     575 U.S. 348 (2015) .............................................................................................................15

*Safe Extensions, Inc. v. FAA*,
     509 F.3d 593 (D.C. Cir. 2007) ..............................................................................................8

*Schaller v. U.S. Soc. Sec. Admin.*,
     No. 20-1876, 2021 WL 237273 (3d Cir. Jan. 25, 2021) .......................................................5

*Scherfen v. DHS*,
     No. 3:08-cv-1554, 2010 WL 456784 (M.D. Pa. Feb. 2, 2010) ..........................................10

*Thorne v. Pep Boys Manny Moe & Jack Inc.*,
     980 F.3d 879 (3d Cir. 2020) ..............................................................................................5, 6

*United States v. Law*,
     384 F. App'x 121 (3d Cir. 2010) .........................................................................................15

*United States v. Sokolow*,
     490 U.S. 1 (1989) .................................................................................................................15

*Velesaca v. Decker*,
     458 F. Supp. 3d 224 (S.D.N.Y. 2020) ................................................................................12

*Venetian Casino Resort, LLC v. EEOC*,
     530 F.3d 925 (D.C. Cir. 2008) ......................................................................................11, 12

*Washington v. DHS*,
     No. 2:19-cv-2043, 2020 WL 1819837 (W.D. Wash. Apr. 10, 2020) ..................................13

**STATUTES**

5 U.S.C. §§ 701–706 ................................................................................................................12

28 U.S.C. § 2344 ........................................................................................................................9

49 U.S.C. § 46110 ...........................................................................................................7, 8, 10, 11

**OTHER AUTHORITIES**

Complaint, *State v. $12,986 in American Currency*,
  No. 49CIV20-1996 (S.D. 2d Jud. Cir. July 13, 2020) ........................................................15

**INTRODUCTION**

The Court should reject the Government Defendants' Objections ("Agency Objs."), ECF 72, to the magistrate judge's Report and Recommendation ("R&R"), ECF 66, on Counts I–III of the First Amended Complaint ("FAC"), ECF 43.

In their objections, the agencies rehash their arguments on standing, jurisdiction, and whether Plaintiffs have brought claims upon which relief can be granted under the APA. Plaintiffs respond to each of these arguments in turn, demonstrating that the magistrate judge reached the correct conclusion on each of these issues. Throughout their objections, the agencies wrongly attempt to shift the burden to Plaintiffs to *prove* their case before any chance to take discovery, mischaracterizing the detailed, exhaustive allegations in Plaintiffs' 528-paragraph FAC as "speculative" and "conjectural." But Plaintiffs' well-pleaded factual allegations demonstrate an oft-repeated pattern of strikingly similar airport cash seizures by TSA and/or DEA buttressed by agency documents, evidence about agency training, and OIG reports criticizing the very agency practices that Plaintiffs challenge. These allegations are more than sufficient for this court to draw a reasonable inference that the agencies have adopted de facto policies of treating "large" amounts of cash as suspicious and seizing air travelers and their property solely on that basis. That the agencies may not have adopted *written* policies regarding their unlawful and unconstitutional policies or practices does not insulate them from suit because agency action does not need to be committed to writing to be final and reviewable by this Court.

For the reasons stated below and in Plaintiffs' prior briefing, the Court should deny TSA's and DEA's motion to dismiss Counts I–III of the First Amended Complaint, ECF 57, and should adopt the magistrate judge's R&R on those claims.

**ARGUMENT**

**I.    The magistrate judge correctly held that Plaintiffs have standing.**

The magistrate judge correctly held that Plaintiffs have standing to bring their class claims against TSA and DEA, challenging the agencies' policies or practices of engaging in suspicionless seizures of air travelers and their cash. R&R 3–7. The magistrate judge rightly rejected the agencies' attempt to analogize this case to *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013), where the Supreme Court found that lawyers and journalists did not have standing to challenge a foreign surveillance

1

program because their fears of harm were so highly speculative that they could not even demonstrate that they had ever been targeted, or were likely to be targeted, by the program. R&R 4–5. Instead, as the magistrate judge recognized, *Clapper* does not require Plaintiffs to show that future harm is literally certain, but that there is a substantial risk of harm. *Id.* at 4. The magistrate judge correctly found that not only have Plaintiffs alleged they were previously targeted by the policies or practices they challenge, R&R 1, but they have plausibly alleged policies or practices that demonstrate substantial risk of harm from traveling with cash supported by detailed allegations, including "official agency promulgations, investigative findings, and numerous instance of actual seizures" of cash at airports nationwide. R&R 4–5. The magistrate judge also rejected the agencies' attempt to argue that Plaintiffs' avoidance of this threatened harm (by not flying with cash until these policies or practices end) nullified their standing, correctly noting that "the need to take . . . affirmative steps to avoid the risk of harm . . . constitutes a cognizable injury," R&R 5 (quoting *Meese v. Keene*, 481 U.S. 465, 475 (1987)). The magistrate judge rightly recognized that Plaintiffs' decision to "eliminate[] the threat of harm by simply not doing what [they] claim[] the right to do" does not negate standing because "the threat-eliminating behavior was effectively coerced." R&R 5 (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S.118, 129 (2007)).

In their objections, the agencies reiterate their arguments on Plaintiffs' standing, focusing on two main points. First, the agencies argue that the magistrate judge was wrong to accept Plaintiffs' allegations about the existence of the policies or practices they challenge because, the agencies claim, they are not plausibly alleged. Agency Objs. at 4–5. Second, the agencies argue that the magistrate judge incorrectly applied *Clapper* and improperly relied on *Clapper*'s footnote five, Agency Objs. at 5–7, in which the Supreme Court recognized that: "Our cases do not uniformly require plaintiffs to demonstrate that it is literally certain that the harms they identify will come about. In some instances, we have found standing based on a 'substantial risk' that the harm will occur, which may prompt plaintiffs to reasonably incur costs to mitigate or avoid that harm." 568 U.S. at 414 n.5 (citing four prior Supreme Court cases in support). Neither of these objections should give this Court any pause in adopting the magistrate judge's recommendation that Plaintiffs have standing on these claims.

### 1. Plaintiffs plausibly allege the challenged agency policies or practices.

The agencies' argument that Plaintiffs have not plausibly alleged the policies or practices they challenge is a transparent attempt to improperly shift the burden to Plaintiffs to *prove* the existence of these policies or practice at this pre-discovery stage. Instead, Plaintiffs must state a "plausible" claim for relief: "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Even post-*Twombly* . . . a plaintiff is not required to establish the elements of a prima facie case but instead, need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quotations omitted). And, as the agencies acknowledge, courts must accept "well-pleaded factual allegations" at the motion-to-dismiss stage. Agency Objs. at 4.

With the correct standard in mind, the agencies' attempt to label all of Plaintiffs' allegations as "speculative" or "conjectural" is fatally flawed, because Plaintiffs do not have the burden of proving their case at this stage; they must just plausibly allege the existence of the challenged policies. Plaintiffs have done so. Their detailed allegations of the agencies' patterns of conduct, written materials, and other evidence allow this Court to draw the reasonable inference (as the magistrate judge did) that the agencies have adopted policies of treating "large" amounts of cash as suspicious and detaining travelers and seizing their property solely on that basis. While addressed further in section III, *infra*, the weakness of the agencies' argument is revealed by their continued mischaracterization of the detailed allegations in the FAC as alleging only a "handful" of incidents involving cash seizures by TSA screeners and DEA agents. Agency Objs. at 5, 7, 11. The magistrate judge rejected this same argument when the agencies raised it in their motion to dismiss: "Plaintiffs relate dozens of incidents of travelers being detained by the TSA after completion of security screening, and/or then being detained by the DEA, for the purpose of seizing the travelers' currency. FAC ¶¶ 148–196, 244–272, 284–305, 364, 372–385, 441–451. That is more than a 'handful'." R&R 10. Indeed, elsewhere in their objections, the agencies count a total of nearly 40 examples in the FAC documenting a pattern of airport cash seizures by TSA and/or DEA. *See* Agency Objs. at 11 (identifying 28 specific seizures plus "a handful of police

reports" summarized at FAC ¶¶ 384(a)–(i), 385(a)–(b), which total an additional ten seizures.) In conjunction with the FAC's many allegations documenting various aspects of the agencies' cash seizures policies and practices, including from agency manuals, training, depositions, and OIG reports, FAC ¶¶ 321–400 (TSA), ¶¶ 401–464 (DEA), Plaintiffs have plausibly alleged the existence of the challenged policies or practices. *See also* Pls.' Opp. Agency MtD, ECF 62, at 19–30.

The agencies also try to suggest that Plaintiffs lack standing because airport cash seizures are rare—a point that, notably, is not even relevant to whether the challenged policies or practices exist— by relying on the fact that there are "more than 500 million passengers per year." Agency Objs. at 5. But that factoid is both irrelevant and suggests a false denominator, asking this Court to consider not the total number of persons who travel with "large" amounts of cash, but simply the total number of air travelers. To state the obvious, cash seizures cannot be made from travelers who are not traveling with cash. Moreover, Plaintiffs' allegations are not dependent on the total number of cash seizures per year; instead, Plaintiffs allege that TSA's and DEA's airport cash-seizure policies create a substantial risk of having one's cash seized when a traveler flies with a "large" amount of cash.[1]

### 2.  The magistrate judge correctly applied *Clapper*'s "substantial risk" standard.

The agencies argue that the magistrate judge did not faithfully apply the injury-in-fact standing requirement described in *Clapper*, i.e. that "threatened injury must be certainly impending to constitute injury in fact." Agency Objs. at 5–7. But this really amounts to a suggestion that this Court should only read and follow one aspect of *Clapper*'s guidance on what satisfies the injury-in-fact prong of the standing requirement (the "certainly impending" standard), to the exclusion of another (the

---

[1] Similarly unavailing is the agencies' suggestion that Named Plaintiff Stacy Jones-Nasr has previously traveled to gamble at casinos without having her cash seized, so the challenged cash seizure policies must not exist. Seizure of cash is obviously dependent on that cash being detected, so the fact that TSA may not always detect travelers' cash does not call into question the existence of the challenged policies or practices. It also does not indicate there is low risk to traveling with "large" amounts of cash while these policies or practices continue—again, the harm does not have to be "literally certain"; instead, there must be a "substantial risk" of harm. *See Clapper*, 568 U.S. at 414 n.5. Having already had a "large" amount of cash seized at an airport, Stacy's allegations of future harm are not speculative or conjectural like the *Clapper* plaintiffs' (who had no idea if they ever had been or would be targeted by the surveillance program they challenged); Stacy's allegations are based in the reality of her actual personal experience coupled with her knowledge of other airport cash seizures, such as those documented in the FAC, and her desire to fly with cash in the future to pursue her gambling hobby.

"substantial risk" standard). But both standards are discussed in *Clapper*, and both *Clapper* and the R&R cite several Supreme Court cases that apply the "substantial risk" standard. 568 U.S. at 414 n.5; R&R 4–7. Specifically, the agencies argue that "*Clapper* is dispositive here because Plaintiffs have failed to establish anything more than that they have modified their own behavior to avoid conjectured, speculative policies." Agency Objs. at 6. The agencies wrongly claim that the magistrate judge "ignored" *Clapper*'s holdings on the "certainly impending" standard by relying exclusively on *Clapper*'s footnote five. Not so. *See* R&R 5 (discussing how *Clapper* recognized that the "certainly impending" standard is not the only method for determining injury-in-fact and explaining why the "substantial risk" standard is more appropriate here). The agencies thus fail to identify how the magistrate judge's standing analysis departs from either *Clapper* or Third Circuit precedent. Instead, their argument boils down to an attempt to label the very real harms to Plaintiffs as "speculative" or "implausible," Agency Objs. at 6, by again mischaracterizing Plaintiffs' detailed, thorough allegations as a "handful" of seizures and a "hodgepodge" of official promulgations. *Id.* at 7.

First, the agencies contend that the magistrate judge was wrong to rely on footnote five of *Clapper* in determining whether Plaintiffs have satisfied the injury-in-fact prong of the standing requirement. Agency Objs. at 5. But *Clapper*'s footnote five simply acknowledges a line of Supreme Court cases holding that plaintiffs have standing even when harm is not "literally certain," so long as there is a "substantial risk" of harm (which the Court acknowledged may not even be truly distinct from the "certainly impending" standard). 568 U.S. at 414 n.5. Attempting to overcome this, the agencies cite four Third Circuit cases they claim demonstrate that the Third Circuit "does not treat *Clapper* as cabined by that footnote." Agency Objs. at 6. But the very cases they cite demonstrate that the Third Circuit *does* recognize "substantial risk" of harm as sufficient to satisfy the injury-in-fact prong of the standing requirement, relying on *Clapper*'s footnote five. *See Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 893 (3d Cir. 2020) ("there must be at least a 'substantial risk' that the harm will occur") (quoting *Clapper*, 568 U.S. at 409, 414 n.5); *Schaller v. U.S. Soc. Sec. Admin.*, No. 20-1876, 2021 WL 237273, at *4 (3d Cir. Jan. 25, 2021) (same, quoting *Thorne* and footnote five of *Clapper*).

The cases cited by the agencies only serve to highlight that, as the Third Circuit has explained, "the third prong of injury-in-fact analysis . . . is intended to weed out claims that are nothing more than an ingenious academic exercise in the conceivable." *Thorne*, 980 F.3d at 893 (cleaned up). The claims in this case are anything but "an ingenious academic exercise in the conceivable"—each Named Plaintiff has *already had their cash seized* pursuant to the policies or practices they challenge. And they have plausibly alleged the challenged policies or practices exist based on not just their own experiences, but dozens of similar incidents that fit the same pattern, along with corroborating information from official agency documents, training, deposition testimony, and OIG reports. *See* FAC ¶¶ 321–400 (TSA), ¶¶ 401–464 (DEA); Pls.' Opp. Agency MtD at 19–30.

Next, the agencies argue that "even if *Clapper* left room for an alternative standard by observing that a cognizable 'substantial risk' of injury may 'prompt plaintiffs to reasonably incur costs to mitigate or avoid that harm,' . . . the Magistrate Judge misapplied that standard in two ways." Agency Objs. at 6 (quoting *Clapper*, 568 U.S. at 414 n.5). They argue the R&R erred by (a) assuming the avoidance costs alleged by Plaintiffs are sufficient to confer standing, and (b) accepting "Plaintiffs' unwarranted inferences . . . in place of factual allegations that would enable a plausible inference that TSA or DEA had adopted an unwritten 'policy or practice.'" Agency Objs. at 6–7.

However, the magistrate judge correctly credited Plaintiffs detailed allegations of ongoing harm and was right to reject the agencies' arguments that "Plaintiffs merely allege inconvenience" or that "given the plentiful ways technology now permits money to be transferred, exchanged, and deposited, it is implausible that avoidance of traveling with cash is costly enough to confer standing." Agency Objs. at 6. Named Plaintiffs' well-pleaded allegations about their ongoing injuries from not being able to travel with cash due to the challenged policies or practices—*see* Pls.' Opp. Agency MtD at 12–13, FAC ¶¶ 225–232, 278–283, 306–320—are entitled to a presumption of veracity. *Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 220–21 (3d Cir. 2011). Moreover, it is absurd on its face to suggest that Named Plaintiffs would not have standing to challenge government action preventing them from exercising their right to travel with cash—a perfectly legal activity—merely because alternative

financial technologies exist (however inadequate they may be for Plaintiffs' intended business purposes and other legitimate pursuits, as Named Plaintiffs explain in detail in the FAC).

The magistrate judge also correctly recognized that Plaintiffs are not required to prove their case at this early stage and must only state a plausible claim for relief that permits this Court to draw reasonable inferences that TSA and DEA are liable for the misconduct alleged. *See Iqbal*, 556 US. at 678. Plaintiffs' allegations need only raise a reasonable expectation that discovery will show the agencies have adopted the policies or practices that Plaintiffs challenge. *See Fowler*, 578 F.3d at 213. Plaintiffs have done so. *See* section III, *infra*; Pls.' Opp. Agency MtD at 19–30.

The Court should adopt the R&R's holding that Plaintiffs have standing on Counts I–III.

## II.    The magistrate judge correctly held that this Court has jurisdiction over Plaintiffs' claims against TSA.

The magistrate judge correctly held that this Court has jurisdiction to adjudicate Plaintiffs' claims against TSA, R&R 7–9, fully considering the agency's claim that 49 U.S.C. § 46110 vests jurisdiction exclusively in the Court of Appeals and rejecting it: "Because Plaintiffs are not directly or indirectly challenging an administrative order under § 46110, this Court is not divested of subject-matter jurisdiction over their claims." *Id.* at 9. As the magistrate judge rightly ruled, the statutory text precludes the agency's position because (1) "the statute contemplates an actual *order* issued by the TSA Administrator, rather than an informal policy or practice. The requisite formality is reinforced by the statute's contemplation of a date of *issuance*, administrative *proceedings* and a *record*."; and (2) "the statute is limited to orders *with respect to security duties and designated powers* of the TSA," while Plaintiffs allege that the challenged policy "is *ultra vires* precisely because it is unrelated to the TSA's security duties or other designated powers." R&R 7–8 (emphases in original). The magistrate judge also rightly rejected the TSA's suggestion that the agency's de facto policy or practice must be "inescapably intertwined" with TSA security protocols or policies for airport security screening, noting that the agency had "not identified any security-related (or otherwise *intra vires*) policy, procedure, or order that is even arguably 'attacked' by Plaintiffs' challenge to the TSA's Seizure Policy." *Id.* at 9.

7

The agency recites the same arguments here, claiming that (1) the term "order" in the statute must be read expansively, (2) that TSA's security protocols for airport security checkpoints constitute an "order" under § 46110, and (3) the policy and practices that Plaintiffs challenge are inescapably intertwined with these TSA security screening protocols. Agency Objs. at 7–10. Each of these arguments is unavailing for the same reasons the magistrate judge rejected them. In addition, several Circuits have rejected the agency's position that the "exclusive" jurisdiction of § 46110 applies to broad constitutional challenges or other claims that do not seek review of specific administrative orders. *See* Pls.' Opp. Agency MtD 16–17.

### 1. Plaintiffs plainly do not challenge a TSA "order" under 49 U.S.C. § 46110.

Plaintiffs plainly do not challenge an "order" under § 46110. However expansively the term "order" may be read under § 46110, it must also satisfy the other terms of § 46110, which require it to have a date of issuance, administrative proceedings, and a record, as the magistrate recognized. R&R 8. The cases the agency cites in support of an expansive reading of the term "order," Agency Objs. at 8, only establish that various types of *written* orders, *issued* on specific dates, may satisfy this requirement. S*ee, e.g.*, *Aerosource, Inc. v. Slater*, 142 F.3d 572, 577 (3d Cir. 1998) (listing specific "letters and other communications," including a consent decree, found to be orders); *Safe Extensions, Inc. v. FAA*, 509 F.3d 593, 597 (D.C. Cir. 2007) ("The FAA issued the final version of AC–42F on October 17, 2006"). The agency identifies no example of an unwritten agency policy or practice constituting an "order" under § 46110, and Plaintiffs are aware of none. Moreover, "to be appealable, the 'order' must be predicated on an administrative record sufficient to allow a court to engage in a meaningful review of the order." *Aerosource, Inc.*, 142 F.3d at 578. In the absence of any administrative record or prior proceeding before the agency, much less any written order issued on a particular date, it makes no sense for these claims to be subject to original appellate jurisdiction under § 46110.[2] *See* Pls.' Opp. Agency MtD 16, 18.

---

[2] In addition, a holding that Plaintiffs must satisfy § 46110's requirement to file a petition for review "not later than 60 days after the order is issued" would violate due process by failing to provide notice and an adequate opportunity to be heard to Plaintiffs, who are unaware of any such order and could not have timely challenged it even if such an order exists. This indicates that the APA challenge

**2.  Plaintiffs do not challenge TSA's security screening procedures, nor are those procedures "inescapably intertwined" with the policies or practices they challenge.**

Plaintiffs are not challenging TSA's security screening procedures. Indeed, as the magistrate judge recognized, "Plaintiffs allege that the TSA Seizure Policy they seek to challenge applies only "*after* TSA Screeners have concluded the transportation security screening." R&R 7 (quoting FAC ¶ 90, emphasis in both FAC and R&R). The agency suggests that Plaintiffs' citation to these procedures indicates that Plaintiffs' challenge is "inescapably intertwined" with them, but Plaintiffs cite these procedures to demonstrate what occurs *prior* to the seizures they challenge, as well as the history of how these procedures developed in response to prior challenges. *See* FAC ¶¶ 330–370. TSA screeners become aware of "large" amounts of cash in travelers' luggage because travelers go through the transportation security screening, but it is what happens *after* that screening concludes—and TSA screeners have determined that travelers pose no security threat—that is at issue here. *See* FAC ¶¶ 90, 330–370. As Plaintiffs allege, the TSA cash seizure policies or practices they challenge are "not instructed or authorized . . . by these written policies." FAC ¶ 354; *see also* ¶ 356.

Claims are also not "inextricably intertwined" with TSA orders merely because they reference "orders," as the agency implies. Rather, a review of the cases cited by the agency reveals that courts only find orders are "inextricably intertwined" when a lawsuit *directly challenges* policies implemented pursuant to those orders. "A claim is inescapably intertwined . . . if it alleges that the plaintiff was injured by such an order and that the court of appeals has authority to hear the claim on direct review of the agency order." *Merritt v. Shuttle, Inc.*, 245 F.3d 182, 187 (2d Cir. 2001) ("*Merritt II*"); *see also Gilmore v. Gonzales*, 435 F.3d 1125, 1133 n.9 (9th Cir. 2006) (finding, in a challenge to a TSA policy requiring airline passengers to identify themselves before boarding a plane, "Gilmore's due process vagueness challenge is 'inescapably intertwined' with a review of the order because it squarely attacks the orders

---

Plaintiffs brought here is the more appropriate avenue, even if there was an "order" or record. *See PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051, 2056 (2019) (questioning "whether the Hobbs Act's exclusive-review provision, which requires certain challenges to FCC final orders to be brought in a court of appeals 'within 60 days after' the entry of the order in question, 28 U.S.C. § 2344, afforded [plaintiff a 'prior' and 'adequate' opportunity for judicial review of the Order. If the answer is 'no,' it may be that the Administrative Procedure Act permits [plaintiff] to challenge the validity of the Order in this enforcement proceeding . . .").

issued by the TSA with respect to airport security"); *Scherfen v. DHS*, No. 3:08-cv-1554, 2010 WL 456784, at *12 (M.D. Pa. Feb. 2, 2010) ("screening lists are effectively parts of the [TSA] Security Directives," because "TSA Security Directives cannot be given operational effect without the watch list" and are thus "orders" subject to review under § 46110).

In contrast, despite the agency's unexplained claim that relief in this lawsuit would necessarily "have the effect of altering TSA's directives to expressly prohibit additional actions," Agency Objs. at 9, Plaintiffs do not seek any change to existing TSA *security screening protocols*—only the unconstitutional conduct that comes after the security screening concludes. Contrary to TSA's claims, *id.*, the agency would not need to change any of those protocols to comply with the relief sought in Paragraphs C–F of the FAC's Request for Relief. Indeed, every single one of those paragraphs seeks relief related to behavior that occurs "after the transportation security screening has concluded." FAC, Req. Relief ¶¶ C–F. A simple directive regarding *post-screening* practices—along with training and enforcement of the same—could provide that relief without any changes to TSA's security screening protocols.

Finally, TSA ignores the fact that several circuits—including in cases relied on by TSA in its Objections—have rightly concluded that § 46110 does not apply to broad-based, facial constitutional and *ultra vires* challenges to agency policy or procedure, as in this case. *See, e.g.*, *Gilmore*, 435 F.3d at 1133 n.9 (noting that, despite § 46110, "the district court maintains jurisdiction to hear broad constitutional challenges to Defendants' actions"); *see also* Pls.' Opp. Agency MtD at 16–18. This is because § 46110 "provides no remedy for such claims." *Foster v. Skinner*, 70 F.3d 1084, 1088 (9th Cir. 1995). Indeed, the very purpose of § 46110 is to provide review of administrative orders; a court of appeals may only "affirm, amend, modify, or set aside any part of the order" under 49 U.S.C. § 46110(c), and may not award equitable relief or monetary damages. Pls.' Opp. Agency MtD 18. The purpose of exclusive review by circuit courts is to prevent a collateral attack on "the procedures and reasons behind the agency action," so that a plaintiff cannot challenge "the conduct of [agency] officials in *adjudicating a specific individual claim*." *Merritt v. Shuttle, Inc.*, 187 F.3d 263, 270, 272 (2d Cir. 1999) (emphasis added). But those circumstances are not relevant here; there is no administrative order "to affirm, amend, modify, or set aside," so it makes no sense to try to fit the square peg of a

facial constitutional and *ultra vires* challenge through the round hole of § 46110 review. Instead, district court review is appropriate where, as here, Plaintiffs claims "are not based on the merits of [their] individual situation, but constitute a broad challenge to allegedly unconstitutional [TSA] practices . . . [and] any examination of the constitutionality of [TSA's conduct] should logically take place in the district courts, as such an examination is neither peculiarly within the agency's 'special expertise' nor an integral part of its 'institutional competence.'" *Mace v. Skinner*, 34 F.3d 854, 859 (9th Cir. 1994).

Accordingly, Plaintiffs do not challenge any TSA "orders" under § 46110, and this Court should adopt the R&R's holding that this Court has jurisdiction to hear Plaintiffs' claims.

**III.   The magistrate judge correctly held that Plaintiffs bring valid APA claims.**

The magistrate judge correctly held that Plaintiffs have adequately pleaded their claims against TSA and DEA for the agencies' unlawful and unconstitutional policies and practices. R&R 9–12.

For the reasons already briefed, *see* Pls.' Opp. Agency MtD at 19–30, and explained again below, Plaintiffs' claims meet the APA's final agency action requirement. The allegations are neither speculative nor vague. They are based on dozens of consistent Fourth Amendment violations throughout the country, demonstrating a course of conduct that plausibly evinces the agencies' authorization, adoption, or ratification. The agencies' characterizations of their conduct—both in the field and in their briefing—confirm as much. And their attempt to justify their conduct as consistent with the Fourth Amendment fails.

First, *contra* Agency Objs. at 10, the magistrate judge correctly applied the legal standard for pleading final agency action; the agencies are simply dissatisfied *that the facts of this case as pleaded do not fit* the "amorphous description" standard of the cases they cite. As courts around the country have held, agency conduct can satisfy the final agency action requirement even in the absence of a written directive mandating the precise unconstitutional acts of agency personnel at issue in the case. Pls.' Opp. Agency MtD at 20–26. Indeed, the rule is that agency action "*generally need not* be committed to writing to be final and judicially reviewable." *Brotherhood of Locomotive Eng'rs & Trainmen v. Fed. R.R. Admin.*, 972 F.3d 83, 100 (D.C. Cir. 2020) (emphasis added) (citing *Venetian Casino Resort, LLC v.*

*EEOC*, 530 F.3d 925, 930–31 (D.C. Cir. 2008)). And nowhere does the APA say that only actions arising from administrative rulemaking or adjudication are subject to review. *See* 5 U.S.C. §§ 701–706.

These rules are rooted in the understanding that the final agency action inquiry is a "pragmatic" one. *Minard Run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 236, 249 (3d Cir. 2011); *see M.B. v. Quarantillo*, 301 F.3d 109, 112 (3d Cir. 2002) ("The Supreme Court has read the [APA] as embodying a basic presumption of judicial review."). So, as a matter of "[b]oth law and logic," agencies may not "shield [their] decisions from judicial review simply by refusing to put those decisions in writing." *Grand Canyon Trust v. Pub. Serv. Co. of N.M.*, 283 F. Supp. 2d 1249, 1252 (D.N.M. 2003).

Accordingly, courts regularly hold that a pattern of conduct suffices. Pls.' Opp. Agency MtD at 21–23. The agencies inaccurately state that Plaintiffs' arguments on this issue rely on "one district court." Agency Objs. at 10. But Plaintiffs cited at least seven cases explaining why a pattern of conduct meets the final agency action requirement—two of which were accompanied by "collecting cases" parentheticals. Pls.' Opp. Agency MtD at 21–23; *e.g.*, *Velesaca v. Decker*, 458 F. Supp. 3d 224, 237 n.7 (S.D.N.Y. 2020) ("Thus, a number of cases have involved courts inferring from a course of agency conduct that the agency has adopted a general policy, even in the face of agency denials of such policies existing.") (collecting cases).

The agencies' response is to suggest that some minimum number of incidents is necessary, and that Plaintiffs' allegations fall short. Agency Objs. at 11. But that is not what the courts say. And the agencies' attempt to downplay the pervasiveness of their conduct is based on misleading statements, faulty math, and unwarranted assumptions.[3] First, what the agencies call a "handful of incidents," *id.* at 5, is actually nearly 40—as confirmed by their own tally. *Id.* at 11; *see supra* section I.1. Second, the agencies rely on an obviously irrelevant denominator in purporting to assess the relative pervasiveness of their Fourth Amendment violations. *See* Agency Objs. at 11 ("billions of passengers"). The question is not how many passengers fly. Nor is it even how many fly with cash. The question is how many fly with what the agencies deem "large" amounts of cash. That is obviously

---

[3] In essence, here and throughout their briefing, the agencies ask the Court to invert the law regarding motions to dismiss and construe all inferences in *their* favor. The Court should decline the invitation.

going to be a significantly smaller number of passengers. And third, the plausible inference to draw (reading the facts in the light most favorable to Plaintiffs, as the Court must) is that Plaintiffs' collection of incidents—though significant, particularly for their consistency and similarity over time and geography—represents a drop in the bucket of all such unconstitutional seizures of persons and property by the agencies, further evincing the agencies' regular course of conduct.

In reading Plaintiffs' descriptions of the agencies' consistency of behavior across the country, the plausible inference is that the conduct is attributable to the agencies. It is evidence of "prior, formal authorization." *Washington v. DHS*, No. 2:19-cv-2043, 2020 WL 1819837, at *5 (W.D. Wash. Apr. 10, 2020). Even crediting the agencies' implications (never explicitly stated) that all of these agency personnel are simply going rogue over and over and over (which, again, would violate the precept against construing the facts in Defendants' favor), the agencies' failure to stop these ongoing unconstitutional seizures plausibly amounts—at a minimum—to the agencies' "adopt[ion]" or "ratif[ication]" of the unconstitutional patterns. *Id.* Further indications—if any were needed—of the agencies' adoption and ratification of these patterns come by way of their *decisions to do nothing* in the face of OIG reports *raising the very constitutional concerns at issue here. See* FAC ¶¶ 355–357, 410–412, 438–440, 452–454.

And there is nothing "vague[]," Agency Objs. at 12, about Plaintiffs' pleaded facts. Plaintiffs have described in detail *the consistent experiences of dozens of individuals across the country*—themselves and many others, some identified by the OIG—who were seized and/or had their cash seized by one or both agencies simply for traveling with "large" amounts of cash. FAC ¶¶ 152–174, 244–260, 284–300, 371–385 (TSA seizures); 177–197, 263–277, 437–454 (DEA seizures). As the magistrate judge explained in rejecting the agencies' arguments, "merely labeling allegations conclusory does not make them so. Here, Plaintiffs allege much more than mere conclusions tracking the elements of their claims." R&R 10 (going on to explain why); *see also* R&R 11 ("Plaintiffs' FAC, in contrast [to *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009)], explicitly alleges the salient elements of the TSA's alleged policy or practice, and its *extensive factual allegations provide ample notice* of 'what the . . . claim is

and the grounds upon which it rests.'") (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2006) and *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)).

 To overcome these legal and factual barriers, the agencies mischaracterize the magistrate judge's findings as relying on "the existence [of] a DEA interdiction program at many U.S. airports." Agency Objs. at 14. That is not what the magistrate judge did. Rather, the magistrate judge found that *several allegations—taken together*, and read "in the light most favorable to Plaintiffs"—make it "reasonably inferable that the DEA adopted policies and practices governing seizure of cash at airports, and that the DEA agents' *persistent practice* of detaining travelers and seizing their cash based solely on its amount is consistent with *and revelatory of* the agency's policy." R&R 11 (emphases added). Four of Plaintiffs' allegations are particularly "revelatory" of both DEA's cash seizure and personal seizure policies: (1) "DEA Agent DiGiovanni, who seized over $40,000 from Plaintiff Jones-Nasr allegedly without probable cause or reasonable suspicion, served as a DEA *instructor for Operation Jetway*," *id.* at n.7 (emphasis added); (2) when seizing over $10,000 from a traveler at the Minneapolis-St. Paul International Airport in May 2020, DEA agents told him, "You have to have a legitimate reason to travel with a large amount of currency," FAC ¶ 441—a legally and constitutionally untrue assertion that these DEA interdiction officers must have learned in their training; (3) the deposition testimony of a DEA airport interdiction agent at the Cincinnati airport that, pursuant to his interdiction training, "my understanding was anything over $5,000 was subject to seizure," FAC ¶ 438; and (4) the OIG's finding that because most airport seizures are not based on indicia of criminality, DEA "risks the reality[] that [it] is more interested in seizing and forfeiting cash than advancing an investigation or prosecution," FAC ¶ 411—a problem that the agency chose not to fix.[4]

 The agencies also tip their hand and provide further evidence of their institutional (and unconstitutional) treatment of traveling with cash as alone sufficient to constitute reasonable suspicion meriting seizure of the traveler and/or their cash. In their objections, the agencies characterize seeing

---

[4] Plaintiffs highlight these four facts as illustrative. The full bases for their arguments are detailed in their prior briefing. *See* Pls.' Opp. Agency MtD at 19–30; FAC ¶¶ 371–390 (examples of TSA's nationwide policies and practices), 437–454 (examples of DEA's nationwide policies and practices).

cash in luggage as "incidentally discover[ing] items *that may be indicative of criminal activity.*" Agency Objs. at 13 (emphasis added). Under well-settled law, merely traveling with cash is *not* indicative of criminal activity. *See, e.g.*, *United States v. Sokolow*, 490 U.S. 1, 8–9 (1989); *United States v. Law*, 384 F. App'x 121, 122–23 (3d Cir. 2010). But the agencies admit that they treat it as such, further bolstering the viability of Plaintiffs' claims. *See also* R&R 10 (noting TSA's policy of requesting travelers to "remain accessible" for law enforcement, including DEA, to interrogate them—solely because they are traveling with cash); Complaint, *State v. $12,986 in American Currency*, No. 49CIV20-1996 (S.D. 2d Jud. Cir. July 13, 2020) (state prosecutor stating that "[TSA] agents detained [a traveler] because of a large sum of currency in his carry-on luggage").

Finally, the magistrate judge's finding that Plaintiffs allege viable Fourth Amendment violations did not "rest on legal misconceptions," Agency Objs. at 15, and Plaintiffs are not "mistaken about what circumstances constitute seizure," *id.* First, the experiences of Plaintiffs and other travelers with TSA described in the FAC demonstrate that TSA is consistently detaining people and their property beyond the duration of TSA's limited administrative-search authority, based solely on the presence of "large" amounts of cash—which is not reasonable suspicion. *See Rodriguez v. United States*, 575 U.S. 348, 354–55 (2015) (detention of a person exceeding its original "mission" requires at least reasonable suspicion); Pls.' Opp. Agency MtD at 19–20; FAC ¶¶ 52–174, 244–260, 284–300, 371–385 (TSA seizures). Second, the experiences of Plaintiffs and other travelers with DEA described in the FAC demonstrate that DEA is consistently conducting more than just "consent encounters"—the agency is seizing people and their cash solely because they are traveling with "large" amounts of cash. *See* Pls.' Opp. Agency MtD at 26–30; FAC ¶¶ 177–197, 263–277, 437–454 (DEA seizures).

## CONCLUSION

The Court should adopt the magistrate judge's Report & Recommendation, ECF 66, as to Counts I–III and should deny the Government Defendants' motion to dismiss those claims.

Dated:  March 4, 2021          Respectfully submitted,

<u>/s/ Dan Alban</u>
Dan Alban*
VA Bar No. 72688

Jaba Tsitsuashvili*
DC Bar No. 1601246

INSTITUTE FOR JUSTICE
901 North Glebe Rd., Suite 900
Arlington, VA 22203
(703) 682-9320
(703) 682-9321 (fax)
dalban@ij.org
jtsitsuashvili@ij.org

*Attorneys for Plaintiffs*

*Admitted Pro Hac Vice*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 4, 2021, a true and correct copy of the foregoing document was filed electronically with the Clerk of Court using the CM/ECF System, which will send a notice of electronic filing to all counsel of record.

<u>/s/ Dan Alban</u>

16