## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| REBECCA BROWN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:20-cv-00064-MJH-LPL |
| | ) | |
| TRANSPORTATION SECURITY | ) | |
| ADMINISTRATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## **ANSWER**

The Government Defendants—the Transportation Security Administration (TSA), Drug

Enforcement Administration (DEA), the heads of those agencies sued in their official capacities,

and the United States—answer the First Amended Complaint on information and belief as

follows:

1.      This paragraph consists of a characterization of this lawsuit, to which no response

is required. To the extent a response is deemed required, the allegations are denied.

2.      This paragraph consists of a characterization of this lawsuit, to which no response

is required. To the extent a response is deemed required, the allegations are denied.

3.      This paragraph consists of a characterization of this lawsuit, to which no response

is required. To the extent a response is deemed required, the allegations are denied.

4.      Deny.

5.      Deny.

6.      Lack knowledge or information sufficient to form a belief as to the truth of the

allegations in this paragraph.

7.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

8.     Deny.

9.     Deny.

10.     Admit that a TSA screener requested Brown's ID and proof of travel arrangements in order to photocopy them.  The allegations are otherwise denied.

11.     Lack knowledge or information sufficient to form a belief as to the truth of what Rebecca Brown "fe[lt]." The allegations in this paragraph are otherwise denied.

12.     Admit.

13.     Deny.

14.     The allegations in third sentence of the paragraph consist of a legal conclusion, to which no response is required. The allegations are otherwise denied.

15.     Admit that Brown was questioned by a Pennsylvania State Trooper.  The allegations in this paragraph are otherwise denied.

16.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

17.     Admit that DEA Task Force Officer (TFO) Steve Dawkin had an encounter with Plaintiff Brown at the Pittsburgh International Airport. Lack knowledge or information sufficient to form a belief as to the truth of the allegations about how Brown did or did not "feel." The allegations in this paragraph are otherwise denied.

18.     Deny.

19.     Deny.

20.     Deny.

21.     Admit that Brown was not arrested or charged with any crime by the federal government. Lack knowledge or information sufficient to form a belief as to whether Brown was otherwise arrested or charged with a crime. The allegations in this paragraph are otherwise denied.

22.     Deny.

23.     Admit that neither Brown nor Rolin has been arrested or charged with a crime related to the August 26, 2019 cash seizure. Otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

24.     Lack knowledge or information sufficient to form a belief as to the truth of the allegation that Terry Rolin was unable to replace his teeth, repair  his truck or "pay[ ] for other expenses." The allegations are otherwise denied.

25.     Deny.

26.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

27.     Admit that DEA seized $43,167.00 kept in air-sealed clear bags from Jones-Nasr and her husband at the Wilmington International Airport on May 19, 2020. The allegations are otherwise denied.

28.     Admit that Jones-Nasr's carry-on luggage was opened due to an unidentified organic mass observed by a TSA screening while x-raying the carry-on luggage. The allegations are otherwise denied.

29.     Lack knowledge or information sufficient to form a belief as to the truth of the allegation that Jones-Nasr "had no illegal drugs or any other contraband." The allegations are

otherwise denied.

30.    Deny.

31.    Deny.

32.    Lack knowledge or information sufficient to form a belief as to the truth of the
allegations about what Jones-Nasr and her husband did or did not "feel." The allegations are
otherwise denied.

33.    The allegations in the first two sentences of this paragraph are denied. The third
sentence consists of a legal conclusion, to which no response is required.

34.    Deny that TSA had custody of Jones-Nasr, her husband, their carry-on luggage, or
their cash. Otherwise lack knowledge or information sufficient to form a belief as to the truth of
the allegations in this paragraph.

35.    Admit that DEA agents had an encounter with Jones-Nasr and her husband on
May 19, 2020, and seized $43,167.00 from them, and that they did not seize $500 in a bank
envelope with ATM receipt in the fanny pack. The allegations in this paragraph are otherwise
denied.

36.    Admit that DEA seized $43,167.00 kept in air-sealed clear bags from Jones-Nasr
and her husband at the Wilmington International Airport on May 19, 2020. The allegations in
this paragraph are otherwise denied.

37.    Admit that neither Jones-Nasr nor her husband were charged with a federal crime
on May 19, 2020, and that they did leave the Wilmington International Airport. Otherwise lack
knowledge information sufficient to form a belief as to the truth of the allegations in the first two
sentences of the paragraph. The allegations are otherwise denied.

38.    Deny. Aver that the funds were electronically returned to Jones-Nasr on February

10, 2021.

39.    Admit.

40.    Deny.

41.    Admit that neither Jones-Nasr nor her husband has been arrested for or charged

with a federal crime related to the May 19, 2020 cash seizure. Otherwise lack knowledge or

information sufficient to form a belief as to the truth of the allegations in this paragraph.

42.    Lack knowledge or information sufficient to form a belief as to the truth of the

allegations.

43.    Admit that on November 3, 2015, Berger was flying domestically and was

travelling with approximately $55,000 inside his carry-on luggage. Otherwise lack knowledge or

information sufficient to form a belief as to the truth of the allegations.

44.    Lack knowledge or information sufficient to form a belief as to the truth of the

allegations.

45.    Lack knowledge or information sufficient to form a belief as to the truth of the

allegations.

46.    Admit.

47.    Admit that a TSA screener opened Berger's carry-on luggage in order to clear an

unidentified bulk mass that was found during x-ray screening of the carry-on luggage.  Lack

knowledge or information sufficient to form a belief as to the truth of the allegations regarding

what the TSA screener said.

48.    Deny.

49.    Deny.

50.    Admit that Berger stated that he was carrying $55,000.  Lack knowledge or

information sufficient to form a belief as to the truth of the allegation regarding Berger's

subjective feelings. The allegations in are otherwise denied.

51.    Lack knowledge or information sufficient to form a belief as to the truth of the

allegation regarding Berger's subjective feelings.  The allegations are otherwise denied.

52.    Deny.

53.    Admit that law enforcement officers were called and that Berger was taken to a

private screening area for questioning by the law enforcement officer. Otherwise lack knowledge

or information sufficient to form a belief as to the truth of the allegations.

54.    Lack knowledge or information sufficient to form a belief as to the allegations in

the first sentence of this paragraph. The allegations are otherwise denied.

55.    Lack knowledge or information sufficient to form a belief as to the truth of the

allegations.

56.    Lack knowledge or information sufficient to form a belief as to the truth of the

allegations in the first sentence of this paragraph. The allegations are otherwise denied.

57.    The allegations in the first sentence of this paragraph are denied. Otherwise lack

knowledge or information sufficient to form a belief as to the truth of the allegations.

58.    Deny.

59.    This paragraph consists of a legal conclusion regarding the Court's jurisdiction, to

which no response is required.

60.    This paragraph consists of a description of the putative legal basis for Plaintiffs'

putative class claims, to which no response is required.

61.    This paragraph consists of a description of the putative jurisdictional basis for

Plaintiffs Brown's and Rolin's now-dismissed individual claim, to which no response is required.

6

62.     This paragraph consists of a description of the putative legal basis for Plaintiffs Brown's and Rolin's now-dismissed individual claim, to which no response is required.

63.     This paragraph consists primarily of a legal conclusion regarding proper venue, to which no response is required. The allegations are otherwise denied.

64.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

65.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

66.     Lack knowledge or information sufficient to form a belief as to the truth of the allegation that Brown has "joint ownership" of and a "possessory interest" in the specified cash. Otherwise deny.

67.     This paragraph consists of a characterization of Plaintiff Brown's claims, to which no response is required. To the extent a response is deemed required, the allegations are denied.

68.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

69.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

70.     Lack knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiff Rolin has "joint ownership" of the specified cash. The allegations are otherwise denied.

71.     This paragraph consists of a characterization of Plaintiff Rolin's claims, to which no response is required. To the extent a response is deemed required, the allegations are denied.

72.     Lack knowledge or information sufficient to form a belief as to the truth of the

allegations.

73.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

74.     Lack knowledge or belief sufficient to form a belief as to the truth of the allegation that Jones-Nasr has "joint ownership" of and a "possessory interest in" the specified funds. The allegations in this paragraph are otherwise denied.

75.     This paragraph consists of a characterization of Plaintiff Jones-Nasr's claims, to which no response is required. To the extent a response is deemed required, the allegations are denied.

76.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

77.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

78.     Deny the allegation that "TSA seized" Berger's cash. Otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations.

79.     Deny the allegation that "TSA seized" Berger's cash. Otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations.

80.     This paragraph consists of a characterization of Plaintiff Berger's claims, to which no response is required. To the extent a response is deemed required, the allegations are denied.

81.     Admit that TSA is a federal agency charged with protecting the nation's transportation systems. Respectfully refers the Court to the cited statutory section for a true and complete statement of its contents.

82.     Admit.

83.    Admit.

84.    This paragraph consists of legal conclusions, to which no response is required.

85.    Deny.

86.    This paragraph consists of a legal conclusion, to which no response is required.

To the extent a response is deemed required, the allegations are denied.

87.    Admit.

88.    Admit.

89.    This paragraph consists of legal conclusions, to which no response is required.

90.    Deny.

91.    Deny.

92.    Deny.

93.    Deny.

94.    Deny.

95.    Deny

96.    Deny.

97.    Deny.

98.    Deny.

99.    Deny.

100.    Admit.

101.    Deny.

102.    This paragraph consists of a characterization of Plaintiffs' claims, to which no response is required.

103.    Admit that DEA is a federal agency that enforces controlled substances laws and

regulations in the United States. This paragraph otherwise consists of a legal conclusion, to which no response is required.

104.    Admit.

105.    Deny.

106.    Deny.

107.    Deny.

108.    Deny.

109.    Deny.

110.    Admit that Steven Dawkin was operating as a DEA TFO on August 26, 2019. The allegations in this paragraph are otherwise denied.

111.    Deny.

112.    Deny that Shea is currently Acting Administrator. This paragraph otherwise consists of a legal conclusion, to which no response is required.

113.    This paragraph consists of a characterization of Plaintiffs' claims, to which no response is required.

114.    Admit that Steven Dawkin was operating as a DEA TFO on August 26, 2019. The allegations in this paragraph are otherwise denied.

115.    Deny.

116.    This paragraph consists of a characterization of the now-dismissed claim against Defendant Steven Dawkin, to which no response is required.

117.    This paragraph consists of a legal conclusion, to which no response is required.

118.    This paragraph consists of a legal conclusion, to which no response is required. To the extent a response is deemed required, the allegations are denied.

10

119.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

120.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

121.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

122.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

123.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

124.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

125.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

126.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

127.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

128.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

129.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

130.    Lack knowledge or information sufficient to form a belief as to the truth of the

allegations.

131.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

132.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

133.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

134.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

135.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

136.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

137.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

138.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

139.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

140.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

141.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

142.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

143.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

144.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

145.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

146.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

147.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations. The allegations under heading "C" are denied.

148.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

149.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

150.     Admit that cash was inside Brown's carry-on luggage. Otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations.

151.     Lack knowledge or information sufficient to form a belief as to the allegations in this paragraph.

152.     Deny.

153.     Admit that a TSA screener found an unidentifiable organic mass while x-raying Brown's luggage. The allegations are otherwise denied.

154.    Admit that a TSA screener found an unidentifiable organic mass while x-raying Brown's luggage. The allegations are otherwise denied.

155.    Admit that Brown's carry-on luggage was pulled aside for additional screening. The allegations are otherwise denied.

156.    Deny.

157.    Deny.

158.    Lack knowledge or information sufficient to form a belief as to the truth of the allegation about how Plaintiff Brown "fe[lt]." The allegations in this paragraph are otherwise denied.

159.    Admit that a TSA Screener requested Brown's I.D. and boarding pass in order to photocopy them. Lack knowledge or information sufficient to form a belief as to the truth of the allegations about what Brown "fe[lt]" and "believed." The allegations are otherwise denied.

160.    Deny.

161.    Deny.

162.    Deny.

163.    Deny.

164.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations about what Plaintiff Brown "fe[lt]" and "believed." The allegations in this paragraph are otherwise denied.

165.    Deny.

166.    Admit that TSA Screeners determined that Brown did not have prohibited items on her person. The allegations are otherwise denied.

167.    Deny.

14

168.    Deny.

169.    Deny.

170.    Deny.

171.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

172.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

173.    Deny.

174.    Deny.

175.    Lack knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiff Brown felt embarrassed. The allegations in this paragraph are otherwise denied.

176.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph. The allegations under heading "D" are denied.

177.    Admit that Brown was approached by DEA TFO Steve Dawkins on August 26, 2019. Otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

178.    Admit that Brown was approached by DEA TFO Steve Dawkin on August 26, 2019, and that Dawkin introduced himself, indicated that he was a DEA agent, and stated that he had some questions for Brown. Otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

179.    Deny the allegations in the first sentence of this paragraph. The second and third sentences consist of legal conclusions, to which no response is required. To the extent a response

15

is deemed required, the allegations in the second and third sentences are denied. The allegations are otherwise denied.

180.    Lack knowledge or information sufficient to form a belief as to the truth of the allegation about what Plaintiff Brown "fe[lt]." The allegations are otherwise denied.

181.    Admit that Brown accompanied DEA TFO Steve Dawkin to a less crowded part of the public gate area.  Lack knowledge or information sufficient to form a belief as to the truth of the allegation about what Plaintiff Brown "fe[lt]." The allegations are otherwise denied.

182.    Lack knowledge or information sufficient to form a belief as to the allegations about how Brown "fe[lt]" and what she believed she "needed." The allegations are otherwise denied.

183.    Lack knowledge or information sufficient to form a belief as to the allegations about how Brown "fe[lt]."  The allegations are otherwise denied.

184.    Deny.

185.    Deny.

186.    Admit that DEA TFO Steve Dawkin had an encounter with Brown on August 26, 2019. The allegations are otherwise denied.

187.    Admit that DEA TFO Steve Dawkin spoke with Rolin over the phone on August 26, 2019. The allegations are otherwise denied.

188.    Admit that DEA TFO Steve Dawkin spoke with Rolin over the phone on August 26, 2019. Admit that Brown stated that Rolin was 78 years old.  The allegations are otherwise denied.

189.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

190.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

191.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

192.    Admit that Brown's and Rolin's stories were inconsistent. The allegations are otherwise denied.

193.    Admit that DEA TFO Steve Dawkin searched Brown's personal items. The allegations are otherwise denied.

194.    Admit.

195.    Deny.

196.    Lack knowledge or information sufficient to form a belief as to the truth of the allegation that "neither Terry nor Rebecca was under investigation for any criminal activity." The allegations are otherwise denied.

197.    Admit that Brown was not arrested or charged with a federal crime. Otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of this paragraph, and as to the truth of the allegation that Brown felt "deeply embarrassed." The allegations in this paragraph are otherwise denied.

198.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

199.    Admit.

200.    Admit that Brown and Rolin received CAFRA notices dated October 11, 2019, and respectfully refer the Court to those documents for a true and complete statement of their contents.

201.    Admit.

202.    Admit that the U.S. Attorney's Office declined to prosecute a forfeiture proceeding. The allegations are otherwise denied.

203.    Admit that DEA returned the seized funds. The allegations are otherwise denied.

204.    Admit that DEA sent a letter to Plaintiffs' counsel dated February 28, 2020, and respectfully refer the Court to that document for a true and complete statement of its contents.

205.     This paragraph contains allegations concerning the reasons that Department of Justice attorneys decided not to file a civil forfeiture complaint. Because the Department of Justice attorneys' reasoning is privileged under the attorney work product doctrine and deliberative process privilege, the Government Defendants can neither admit nor deny the allegations in this paragraph.

206.    Admit.

207.    The allegations in the first and second sentence of this paragraph are denied. The third sentence consists of legal conclusions, to which no response is required.

208.    Lack knowledge or information sufficient to form a belief as to the truth of the allegation that Brown and Rolin have "joint ownership." The allegations in this paragraph are otherwise denied.

209.    Lack knowledge or information sufficient to form a belief as to the allegation that Brown has a "possessory interest." The allegations are otherwise denied.

210.    Deny.

211.    Deny.

212.    Deny.

213.    Deny.

214.    Deny.

215.    Admit.

216.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

217.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

218.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

219.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

220.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

221.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

222.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

223.    Deny.

224.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

225.    Deny.

226.    Deny.

227.    Deny.

228.    Lack knowledge or information sufficient to form a belief as to the truth of the

allegations.

229.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first and second sentences of this paragraph. The allegations in the third sentence are denied.

230.    Deny.

231.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in the second and third sentences of this paragraph. The allegations in this paragraph are otherwise denied.

232.    Deny. Lack knowledge or information sufficient to form a belief as to the truth of the allegations under heading "H."

233.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

234.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

235.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

236.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

237.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

238.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

239.    Lack knowledge or information sufficient to form a belief as to the truth of the

allegations.

240.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

241.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

242.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

243.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations. The allegations under heading "I" are denied.

244.    Deny.

245.    Admit that a TSA screener found an unidentifiable organic mass while x-raying Brown's luggage. The allegations are otherwise denied.

246.    Admit that a TSA screener found an unidentifiable organic mass while x-raying Brown's luggage. The allegations are otherwise denied.

247.    Deny.

248.    Deny.

249.    Admit that TSA did not locate prohibited items in Jones-Nasr's and her husband's carry-on luggage or on their persons. The allegations are otherwise denied.

250.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations about what Jones-Nasr and her husband "fe[lt]." The allegations in this paragraph are otherwise denied.

251.    Admit that a TSA screener did not find weapons, explosives, incendiaries, or other prohibited items in Brown's carry-on luggage. The allegations in this paragraph are

otherwise denied.

252.   Deny.

253.   Deny.

254.   Lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding Jones-Nasr's subjective thoughts and feelings. The allegations in this paragraph are otherwise denied.

255.   Admit that the TSA Screener placed Jones-Nasr's bag on the manual diverter rollers to conduct a bag check. The allegations are otherwise denied.

256.   Deny.

257.   Admit that the TSA Screener placed a phone call while Nasr-Jones and her husband were in the transportation screening area. The allegations are otherwise denied.

258.   Admit that a sheriff's deputy was present when the screening of Jones-Nasr's and her husband's carry-on luggage was completed, and that the sheriff's deputy took the bag to another area to speak with Jones-Nasr and her husband. Otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations.

259.   Deny.

260.   Admit that the TSA screener did not find weapons, explosives, incendiaries, or other prohibited items in Jones-Nasr's carry-on luggage The allegations in this paragraph are otherwise denied. The allegations under heading "J" are denied.

261.   Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

262.   Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

263.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations.

264.    Admit that DEA agents interviewed Jones-Nasr and her husband. Lack knowledge or information sufficient to form a belief as to the truth of the allegations about what Jones-Nasr and her husband "fe[lt]." The allegations in this paragraph are otherwise denied.

265.    Admit that DEA TFO Anthony DiGiovanni and DEA Special Agent Mike Freeman had a conversation with Plaintiff Jones-Nasr on May 19, 2020, at the Wilmington, NC International Airport. Lack knowledge or information sufficient to form a belief as to the allegations regarding how a "DEA agent appeared" to Jones-Nasr. The allegations are otherwise denied.

266.    The first sentence in this paragraph describes the content of a LinkedIn profile, and the Government Defendants respectfully refer the Court to that document for a true and complete statement of its contents. The allegations in this paragraph are otherwise denied.

267.    Deny.

268.    Admit.

269.    Admit.

270.    Admit the allegations in the first and second sentence of the paragraph. Admit that TFO Anthony DiGiovanni told Jones-Nasr that a receipt would be mailed to her, but that a receipt was not mailed to Jones-Nasr. The allegations are otherwise denied.

271.    Admit that neither Jones-Nasr nor her husband has been arrested or charged with a federal crime related to the cash seized by DEA on the day at issue. Otherwise lack knowledge or information sufficient to form a belief as to the allegations in the first, second, and fourth sentences of this paragraph. The allegations in this paragraph are otherwise denied.

272.    Deny.

273.    Deny.

274.    Deny.

275.    Admit that no receipt was provided to Jones-Nasr at the time of the airport encounter and that no receipt was mailed to her. The allegations in this paragraph are otherwise denied.

276.    Deny.

277.    Admit that neither Jones-Nasr nor her husband has been arrested for or charged with a federal crime related to the seizure of their cash. Otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations.

278.    Lack knowledge or information sufficient to form a belief as to the truth of the allegation that Jones-Nasr's "airline employer has suspended her and may fire her." The allegations in this paragraph are otherwise denied.

279.    Deny.

280.    Lack knowledge or information sufficient to form a belief as to the truth of the allegation that Jones-Nasr and her husband "no longer travel commercially with 'large' amounts of cash." The allegations in this paragraph are otherwise denied.

281.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

282.    Deny.

283.    Deny. The allegations at heading "M" are denied.

284.    Admit that TSA had an encounter with Mr. Berger on November 3, 2015 at Charlotte Douglas International Airport (CLT).  The allegations in this paragraph are otherwise

24

denied.

285.     Admit that a TSA screener found an unidentifiable organic mass while x-raying Mr. Berger's luggage.  The allegations in this paragraph are otherwise denied.

286.     Admit that a TSA screener found an unidentifiable organic mass while x-raying Mr. Berger's luggage.   The allegations in this paragraph are otherwise denied.

287.     Deny.

288.     Admit that a TSA screener opened Mr. Berger's carry-on luggage in order to clear an unidentified bulk mass that was found during x-ray screening of the plaintiff's carry-on luggage. Lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding what the TSA screener said.  The allegations in this paragraph are otherwise denied.

289.     Admit that the TSA screener located no prohibited items in Mr. Berger's luggage or on his person.  Lack knowledge or information sufficient to form a belief as to the truth of the allegation that Mr. Berger had no prohibited items at the checkpoint.  The allegations in this paragraph are otherwise denied.

290.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations about (i) Mr. Berger's subjective feelings, (ii) what the TSA screener said.  The allegations in this paragraph are otherwise denied.

291.     Deny.

292.     It is admitted that cash itself is not a threat to transportation security or air travel safety; Defendants aver that large amounts of cash can conceal such threats or be associated with behavior that threatens transportation security and air travel safety.

293.     Lack knowledge or information sufficient to form a belief as to the truth of the

allegations in this paragraph.

294.    Deny.

295.    Deny.

296.    Deny.

297.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations about Mr. Berger's subjective feelings.  The allegations in this paragraph are otherwise denied.

298.    Deny.

299.    Admit that the TSA Screener located no prohibited items in Mr. Berger's luggage or on his person.  The allegations in this paragraph are otherwise denied.

300.    Admit that TSA screeners contacted law enforcement officers who took Mr. Berger to their office, where Mr. Berger voluntarily went.  Lack knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence.  The allegations in this paragraph are otherwise denied.

301.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

302.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

303.    Deny.

304.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

305.    Deny.

306.    Deny.

307.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

308.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

309.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding Mr. Berger's subjective beliefs and motivations.  This paragraph is otherwise denied.

310.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

311.     Lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, except to deny that Mr. Berger has reasonable concerns about being harmed by TSA and DEA policies or practices.

312.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, except to deny that Mr. Berger has reasonable concerns about being harmed by TSA and DEA policies or practices.

313.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

314.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

315.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, except to deny that TSA and DEA policies or practices require Mr. Berger to take burdensome precautions.

316.    Lack knowledge or information sufficient to form a belief as to the truth of the

allegations in this paragraph.

317.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

318.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, except to deny that TSA and DEA policies or practices require Mr. Berger to take burdensome precautions.

319.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, except to deny that Mr. Berger has accurate knowledge of TSA and DEA policies or practices and to further deny that TSA and DEA policies or practices require Mr. Berger to take burdensome precautions.

320.    Deny.

321.    This paragraph characterizes 49 U.S.C. § 114 and states conclusions of law to which no response is required.  The court is respectfully referred to the statute for a complete and accurate statement of its contents.

322.    This paragraph characterizes 49 U.S.C. § 44903 and states conclusions of law to which no response is required.  The court is respectfully referred to the statute for a complete and accurate statement of its contents.

323.    This paragraph characterizes 49 U.S.C. § 44901 and states conclusions of law to which no response is required.  The court is respectfully referred to the statute for a complete and accurate statement of its contents.

324.    Deny.

325.    This paragraph states conclusions of law to which nor response is required.  To the extent a response is deemed required, Defendants admit that airport screenings at checkpoints

are an administrative search for the purpose of discovering and preventing potential threats to aviation security.

326.    Admit.

327.    This paragraph characterizes 49 C.F.R. § 1540.5 and states conclusions of law to which no response is required.  The court is respectfully referred to the regulation for a complete and accurate statement of its contents.

328.    This paragraph characterizes 49 C.F.R. § 1540.111 and states conclusions of law to which no response is required.  The court is respectfully referred to the regulation for a complete and accurate statement of its contents.

329.    This paragraph characterizes 70 Fed. Reg. 9878 (Mar. 1, 2005) and states conclusions of law to which no response is required.  The court is respectfully referred to the regulation for a complete and accurate statement of its contents.

330.    This paragraph consists of legal conclusions, to which no response is required. To the extent a response is deemed required, the allegations are denied.

331.    It is admitted that cash is not a weapon; Defendants aver that large amounts of cash can conceal a weapon.

332.    It is admitted that cash is not an explosive; Defendants aver that large amounts of cash can conceal an explosive.

333.    It is admitted that cash is not an incendiary; Defendants aver that large amounts of cash can conceal an incendiary.

334.    It is admitted that cash itself is not a threat to transportation security or air travel safety; Defendants aver that large amounts of cash can conceal such threats or be associated with behavior that threatens transportation security and air travel safety.

335.   Deny.

336.   This paragraph states conclusions of law to which no response is required.  To the extent a response is deemed required, the allegations are denied.

337.   This paragraph states conclusions of law to which no response is required.  To the extent a response is deemed required, the allegations are denied.

338.   This paragraph characterizes a TSA webpage.  The court is respectfully referred to this webpage for a complete and accurate statement of its contents.

339.   This paragraph characterizes a TSA webpage.  The court is respectfully referred to this webpage for a complete and accurate statement of its contents.

340.   This paragraph characterizes TSA directives issued in 2009 and states conclusions of law to which no response is required.  The court is respectfully referred to the directives for a complete and accurate statement of their contents.

341.   This paragraph characterizes TSA Operations Directive 400-54-6 (Oct. 29, 2009) and states conclusions of law to which no response is required.  The court is respectfully referred to the directive for a complete and accurate statement of its contents.

342.   This paragraph characterizes TSA Operations Directive 400-54-6 (Oct. 29, 2009) and states conclusions of law to which no response is required.  The court is respectfully referred to the directive for a complete and accurate statement of its contents.

343.   This paragraph characterizes TSA Operations Directive 400-54-6 (Oct. 29, 2009) and states conclusions of law to which no response is required.  The court is respectfully referred to the directive for a complete and accurate statement of its contents.

344.   This paragraph characterizes TSA Management Directive 100.4 (Sept. 1, 2009) and states conclusions of law to which no response is required.  The court is respectfully referred

to the directive for a complete and accurate statement of its contents.

345.    This paragraph characterizes TSA directives issued in 2009 and states conclusions of law to which no response is required.  The court is respectfully referred to the directives for a complete and accurate statement of their contents.

346.    This paragraph states conclusions of law to which no response is required.

347.    This paragraph states conclusions of law to which no response is required.  To the extent a response is deemed required, Defendants admit that TSA authority is provided by statute and regulation; the allegations in this paragraph are otherwise denied.

348.    This paragraph states conclusions of law to which no response is required.  To the extent a response is deemed required, Defendants admit that TSA authority is provided by statute and regulation; the allegations in this paragraph are otherwise denied.

349.    This paragraph states conclusions of law to which no response is required.  To the extent a response is deemed required, Defendants admit that TSA authority is provided by statute and regulation; the allegations in this paragraph are otherwise denied.

350.    This paragraph characterizes TSA Operations Directive 400-54-2 (May 9, 2005) and states conclusions of law to which no response is required.  The court is respectfully referred to the directive for a complete and accurate statement of its contents.

351.    This paragraph characterizes TSA Operations Directive 400-54-6 (Oct. 29, 2009) and states conclusions of law to which no response is required.  The court is respectfully referred to the directive for a complete and accurate statement of its contents.

352.    This paragraph characterizes TSA Operations Directive 400-54-6 (Oct. 29, 2009) and states conclusions of law to which no response is required.  The court is respectfully referred to the directive for a complete and accurate statement of its contents.

353.    Defendant admits that TSA provides direction to its screening workforce regarding when to contact law enforcement officers, but cannot confirm the accuracy of quotation from the document described herein as that document has been designated as Sensitive Security Information (SSI) pursuant to 49 U.S.C. § 114(r) and 49 C.F.R. part 1520.

354.    Deny.

355.    This paragraph characterizes TSA's Screen of Passengers by Observation Technique Referral Report Form and states conclusions of law to which no response is required. The court is respectfully referred to the form for a complete and accurate statement of its contents.

356.    Deny.

357.    This paragraph characterizes DHS Office of Inspector General Report 13-91 (May 2013).  The court is respectfully referred to the report for a complete and accurate statement of its contents.

358.    Deny.

359.    Deny.

360.    Deny the first sentence.  The second sentence states conclusions of law to which no response is required.  To the extent a response is deemed required, the allegations in the second sentence are denied.

361.    Deny.

362.    Deny.

363.    Deny.

364.    Admit that Steven Bierfeldt presented himself for screening at a checkpoint at St. Louis Lambert International Airport (STL) on March 29, 2009.  The allegations in this paragraph

are otherwise denied.

365.    This paragraph characterizes a TSA statement dated April 3, 2009.  The court is respectfully referred to this document for a complete and accurate statement of its contents.

366.    This paragraph characterizes a TSA statement dated April 14, 2009.  The court is respectfully referred to this document for a complete and accurate statement of its contents.

367.    This paragraph characterizes the complaint in *Bierfeldt v. Napolitano*, 1:090-cv-1117 (D.D.C. June 18, 2009).  The court is respectfully referred to this document for a complete and accurate statement of its contents.

368.    The first and second sentences characterize TSA directives issued in 2009 and states conclusions of law to which no response is required.  The court is respectfully referred to the directives for a complete and accurate statement of their contents.  Admit that Mr. Bierfeldt voluntarily dismissed his lawsuit on November 9, 2009 in lieu of responding to the government's motion to dismiss or alternatively motion for summary judgment.

369.    Admit that TSA Management Directive No. 100.4 (Sept. 1, 2009) and TSA Operations Directive 400-54-6 (Oct. 29, 2009) are consistent with constitutional and statutory requirements. Deny that this complaint describes ultra vires and unconstitutional seizures.

370.    Deny.

371.    Deny.

372.    Admit that Kamal Hawkins presented himself for screening at a checkpoint at Raleigh-Durham International Airport (RDU) on February 25, 2020.  Further admit that Mr. Hawkins' carry-on was searched by a TSA screener after an x-ray of the carry-on showed four unidentified organic masses inside the carry-on, and that the TSA screener located approximately $26,465 in Mr. Hawkins' carry-on.   Lack knowledge or information sufficient to form a belief

as to the truth of the allegations regarding (i) the source of the money in Mr. Hawkins'

possession, and (ii) what the TSA screener said.  The allegations in this paragraph are otherwise

denied.

373.    Admit that Boris Nulman presented himself for screening at a checkpoint at

Tampa International Airport (TPA) on September 20, 2019.  Further admit that Mr. Nulman's

bag was searched by a TSA screener after an x-ray of the carry-on showed an unidentified

organic mass inside the carry-on, and that the TSA screener located approximately $181,000 in

Mr. Nulman's carry-on.  Lack knowledge or information sufficient to form a belief as to the truth

of the allegations regarding (i) the source and purpose for the money in Mr. Nulman's

possession, (ii) whether Mr. Nulman had prohibited items in his luggage or on his person, and

(iii) what the TSA screener said.  The allegations in this paragraph are otherwise denied.

374.    Admit that an individual presented himself for screening at a checkpoint at

Eugene Airport (EUG) on November 13, 2018.  Further admit that this individual's bag was

searched by a TSA screener after an x-ray showed an unidentified organic mass inside the carry-

on, and that the TSA screener located approximately $100,000 in his carry-on.  Further admit

that DEA seized approximately $100,000 from this individual and that this money was returned

to him on June 18, 2019.  Lack knowledge or information sufficient to form a belief as to the

truth of the allegations regarding (i) this individual's subjective feelings, (ii) whether this

individual had prohibited items in his luggage or on his person, (iii) the terms of any fee

arrangement between this individual and an attorney.  The allegations in this paragraph are

otherwise denied.

375.    Admit that an individual presented himself for screening at a checkpoint at

Phoenix Sky Harbor International Airport (PHX) on November 9, 2018.  Further admit that this

34

individual's bag was searched by a TSA screener after an x-ray of the carry-on showed a large

unidentified organic mass inside the carry-on.  Further admit that Transportation Security

Manager Lori Barr interacted with the individual, who was carrying what is believed to be over

$400,000 in their carry-on bag.  Lack knowledge or information sufficient to form a belief as to

the truth of the allegations regarding (i) this individual's subjective feelings, (ii) whether this

individual had prohibited items in his luggage or on his person.  The allegations in this paragraph

are otherwise denied.

376.    Admit that an individual presented himself for screening at Clinton National

Airport (LIT) on June 11, 2018.  Further admit that this individual's bag was searched by a TSA

screener after an x-ray of the carry-on showed a large unidentified organic mass inside the carry-

on, and that the TSA screener located approximately $34,000 in his carry-on.  Further admit that

a Supervisory Transportation Security Officer questioned the individual as to why he was

carrying the cash.  Further admit that a law enforcement officer seized the money.  Lack

knowledge or information sufficient to form a belief as to the truth of the allegations regarding

(i) the purpose for the money in this individual's possession, (ii) this individual's subjective

feelings, (iii) whether this individual had prohibited items in his luggage or on his person, (iv)

whether the individual filed a Civil Asset Forfeiture Reform Act (CAFRA) claim, (v) whether

the money was later returned.  The allegations in this paragraph are otherwise denied.

377.    Admit that Tom Hill presented himself for screening at John F. Kennedy

International Airport (JFK) on March 26, 2018.  Further admit that Mr. Hill volunteered to a

TSA screener that he was carrying a large amount of cash.  Further admit that Mr. Hill's bag was

searched by a TSA screener after an x-ray showed a green unidentifiable mass inside the carry-

on, and that the TSA screener located approximately $61,000 in Mr. Hill's carry-on.  Further

admit that TSA did a secondary screening of Mr. Hill's carry-on.  Further admit that TSA

returned the items to Mr. Hill after they were cleared.  Further admit that DEA had a consensual

encounter with Mr. Hill on March 26, 2018, and that DEA seized $61,000 from him, and that

DEA returned $61,000 to him on May 15, 2019.  Lack knowledge or information sufficient to

form a belief as to the truth of the allegations regarding (i) the source of the money in Mr. Hill's

possession, (ii) Mr. Hill's subjective feelings, (iii) whether Mr. Hill had prohibited items in his

luggage or on his person, (iv) the amount, if any, of Mr. Hill's attorney's fees, (v) what the TSA

screeners said.  The allegations in this paragraph are otherwise denied.

378.    Lack knowledge or information sufficient to form a belief as to the truth of the

allegations in this paragraph.

379.    Admit that Charles Homan presented himself for screening at a checkpoint at

Baltimore/Washington International Airport (BWI) on February 14, 2017.  Further admit that

Mr. Homan's bag was searched by a TSA screener after an x-ray of the carry-on showed an

unidentified mass inside the carry-on, and that the TSA screener located approximately $155,000

in Mr. Homan's carry-on.  The allegations in this paragraph are otherwise denied.

380.    Admit that an individual presented himself for screening at a checkpoint at

Richmond International Airport (RIC) on June 30, 2015.  Further admit that this individual's bag

was searched by a TSA screener after an x-ray of the carry-on showed an organic mass and an

opaque area inside the carry-on, and that the TSA screener located approximately $60,000-

$75,000.  Further admit that Twitter account @TSAmedia_LisaF tweeted a photograph

accompanied by the quoted language.  The fourth sentence characterizes a news article dated

June 30, 2015, and the court is respectfully referred to that document for a complete and accurate

statement of its contents.  The allegations in this paragraph are otherwise denied.

36

381.    Admit that Damon Rasbury presented himself for screening at a checkpoint at Newark Liberty International Airport (EWR) on July 14, 2014.  Further admit that an x-ray of Mr. Rasbury's bag showed an organic mass, and upon a further search of the bag, the organic mass was identified as approximately $75,000 in cash.  Lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding what the TSA screener said. The allegations in this paragraph are otherwise denied.

382.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

383.    Admit that Michael Gordon presented himself for screening at a checkpoint at Logan International Airport (BOS) on August 11, 2011.  Further admit that an x-ray of Mr. Gordon's bag showed an organic mass, and upon a further search of the bag, the organic mas was identified as approximately $15,000.  Further admit that TSA contacted law enforcement officers.  The allegations in this paragraph are otherwise denied.

384.    This paragraph characterizes purported police reports from the Niagara Frontier Transportation Authority Policy Department.  The court is respectfully referred to the reports for a complete and accurate statement of their contents.  It is denied that these reports indicate that TSA Screeners ever exceeded their statutory authority.

385.    This paragraph characterizes purported police reports from the Niagara Frontier Transportation Authority Policy Department.  The court is respectfully referred to the reports for a complete and accurate statement of their contents.  It is denied that these reports indicate that TSA Screeners seize cash or have a $10,000 threshold for alerting law enforcement.

386.    Deny.

387.    Admit that passengers typically are asked to removed everything from their

pockets and are not allowed to carry anything on their person while going through the TSA

screening equipment.  Admit that among the items commonly included in carry-on luggage are

cell phones, laptop computers, tablets, wallets, identification documents, travel documents,

toiletries, medications, and clothes.  The allegations in this paragraph are otherwise denied.

388.    Deny.

389.    This paragraph contains legal conclusions to which no response is required, but to

the extent a response is deemed required, this paragraph is denied.

390.    This paragraph contains legal conclusions to which no response is required, but to

the extent a response is deemed required, this paragraph is denied.

391.    This paragraph contains Plaintiffs' characterization of the relief they seek, for

which no response is required.  To the extent a response is deemed required, it is denied that

Plaintiffs are entitled to any relief.

392.    This paragraph contains legal conclusions to which no response is required, but to

the extent a response is deemed required, this paragraph is denied.

393.    This paragraph contains Plaintiffs' proposed class definition, for which no

response is required.

394.    This paragraph contains legal conclusions to which no response is required, but to

the extent a response is deemed required, this paragraph is denied.

395.    This paragraph contains legal conclusions to which no response is required, but to

the extent a response is deemed required, this paragraph is denied.  With regard to the facts

alleged in the subparagraphs, admit that TSA typically screens passengers over 20,000 flights per

day at nearly 440 airports; admit that on average TSA screened 2 million passengers per day in

2018 and 813.8 million passengers over the course of the year; admit that on average TSA

screens more than 5.5 million carry-ons per day; admit that in 2018 TSA detected and seized 4,239 firearms at screening checkpoints; admit that in 2015 TSA seized more than 22,000 dangerous items at screening checkpoints.  Deny subparagraphs (h), (i), (j), (k).  Lack knowledge or information sufficient to form a belief as to the truth of the allegations in subparagraphs (f), (g), (l), (m).

396.    This paragraph contains legal conclusions to which no response is required, but to the extent a response is deemed required, this paragraph is denied.

397.    This paragraph contains legal conclusions to which no response is required, but to the extent a response is deemed required, this paragraph is denied.

398.    This paragraph contains legal conclusions to which no response is required, but to the extent a response is deemed required, this paragraph is denied.

399.    This paragraph contains legal conclusions to which no response is required, but to the extent a response is deemed required, this paragraph is denied.

400.    This paragraph contains legal conclusions to which no response is required, but to the extent a response is deemed required, this paragraph is denied.

401.    Deny.

402.    Admit.

403.    Admit.

404.    Admit.

405.    Admit.

406.    Admit that DEA sometimes refers to airport interdiction activities as Operation Jetway and that DEA has a training course for mass transportation facilities that is known as Operation Jetway.  Further admit that Operation Pipeline is a DEA interdiction program that

focuses on roadway interdiction.  The allegations in this paragraph are otherwise denied.

407.    Admit that Operation Jetway was a program established in 1993 by DEA to provide standardized training for federal, state, and local interdiction units working at airports and other mass transportation facilities.  The allegations in this paragraph are otherwise denied.

408.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

409.    Deny.

410.    This paragraph characterizes DHS Office of Inspector General Report 17-02 (March 2017).  The court is respectfully referred to this document for a complete and accurate statement of its contents.

411.    This paragraph characterizes DHS Office of Inspector General Report 17-02 (March 2017).  The court is respectfully referred to this document for a complete and accurate statement of its contents.  Deny that DEA's airport interdiction and seizure practices focus on seizing cash, not stopping crime.

412.    This paragraph characterizes DHS Office of Inspector General Report 17-02 (March 2017).  The court is respectfully referred to this document for a complete and accurate statement of its contents.

413.    Admit that TFO Anthony DiGiovanni has periodically served as an instructor for Operation Pipeline classes.  The allegations in this paragraph are otherwise denied.

414.    Deny.

415.    Deny.

416.    Admit that both TSA screeners and DEA agents operate at commercial airports in the United States. The allegations are otherwise denied.

417.    Admit that, pursuant to statute, there are security procedures operative at commercial airports in the United States. Further admit that TSA screeners and other government personnel operate at commercial airports as part of these security procedures. The allegations are otherwise denied.

418.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding what air travelers know. The allegations in this paragraph are otherwise denied.

419.    Deny.

420.    Admit the first sentence.  Deny the second sentence.

421.    The first and second sentence characterize TSA Management Directive No. 100.4 (Sept. 1, 2009).  The court is respectfully referred to this document for a complete and accurate statement of its contents.  Deny that law enforcement officers act at TSA's direction.  Deny the third sentence.

422.    This paragraph characterizes TSA Management Directive No. 100.4 (Sept. 1, 2009).  The court is respectfully referred to this document for a complete and accurate statement of its contents.

423.    This paragraph characterizes TSA Management Directive No. 100.4 (Sept. 1, 2009).  The court is respectfully referred to this document for a complete and accurate statement of its contents.

424.    Deny.

425.    Deny.

426.    Deny.

427.    Deny.

428.    Deny.

429.    The first sentence is denied.  The second sentence contains conclusions of law to which no response is required.  To the extent a response is deemed required, the second sentence is denied.

430.    Deny.

431.    Deny.

432.    Deny.

433.    Deny.

434.    Deny.

435.    This paragraph contains conclusions of law to which no response is required.  To the extent a response is deemed required, this paragraph is denied.

436.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, except to deny that Plaintiffs have accurate knowledge of DEA policies or practices.

437.    Deny.

438.    This paragraph characterizes the depositions of Christopher Boyd and William Conrad on January 20 and 21, 2016.  The court is respectfully referred to the deposition transcripts for a complete and accurate statement of their contents.

439.    This paragraph characterizes the Department of Justice Asset Forfeiture Policy Manual.  The court is respectfully referred to this document for a complete and accurate statement of its contents.  Lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding what Mr. Boyd and Mr. Conrad were "likely referencing."

440.    The first sentence is denied.  The second sentence characterizes the DHS Office

of Inspector General Report 17-02 (March 2017).  The court is respectfully referred to this document for a complete and accurate statement of its contents.

441.    Admit that DEA had an encounter with an individual at Minneapolis-Saint Paul International Airport (MSP) on May 26, 2020.  Admit that the individual consented to the interview, a search of his person, and a search of his bag.  Admit that DEA seized more than $10,000 from the individual.  Admit that DEA located no illegal drugs or contraband during this encounter.  Admit that the individual was not arrested or charged with a crime.  The allegations in this paragraph are otherwise denied.

442.    Admit that DEA had an encounter with Jordan Brooks at O'Hare International Airport (ORD) on March 11, 2019.  Admit that the individual consented to the interview, a search of his person, and a search of his bag.  Admit that DEA seized $16,000 from Mr. Brooks. Admit that DEA located no illegal drugs or contraband during this encounter.  Admit that Mr. Brooks was not arrested or charged with a crime.  The allegations in this paragraph are otherwise denied.

443.    Admit that DEA had an encounter with an individual at Eugene Airport (EUG) on November 13, 2018.  Admit that the individual consented to the interview.  Admit that DEA seized approximately $100,000 from the individual.  Admit that DEA located no illegal drugs or contraband during this encounter.  Admit that the individual was not arrested or charged with a crime.  Admit that DEA returned the money on July 18, 2019.  Lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding (i) this individual's subjective feelings, (ii) the terms of any fee arrangement between this individual and an attorney. The allegations in this paragraph are otherwise denied.

444.    Admit that DEA had an encounter with Youngmin Peter Han at Dallas Fort Worth

International Airport (DFW) on August 27, 2018.  Further admit that Mr. Han consented to the interview with three DEA agents, and consented to a search of his person and his bag.  Admit that DEA seized approximately $18,000 from Mr. Han.  Admit that DEA located no contraband or prohibited items during this encounter.  Admit that Mr. Han was not arrested or charged with a crime.  Admit that DEA returned the money on February 13, 2019.  Lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding (i) Mr. Han's subjective feelings and future intentions, (ii) the source of the money.  The allegations in this paragraph are otherwise denied.

445.    Admit that DEA had an encounter with Tom Hill at John F. Kennedy International Airport (JFK) on March 26, 2018.  Further admit that Mr. Hill consented to the interview and consented to a search of his person and his bag.  Admit that DEA seized $61,000 from Mr. Hill.  Admit that DEA located no contraband or prohibited items during this encounter.  Admit that Mr. Hill was not arrested or charged with a crime.  Admit that DEA returned the $61,000 on May 15, 2019.  Lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding (i) Mr. Hill's subjective feelings, (ii) the source and purpose of the money.  The allegations in this paragraph are otherwise denied.

446.    Admit that DEA had an encounter with Qui Ta at Detroit Metropolitan Wayne County Airport (DTW) on March 12, 2018.  Admit that DEA agents were stationed in the jetway interviewing passengers as they queued to board the flight.  Deny that DEA agents received information about Mr. Ta from TSA.  Admit that Mr. Ta consented to the interview.  Deny that Mr. Ta answered truthfully that he had $34,000.  Admit that Mr. Ta and his wife agreed to relocate to a private room and have their flight rebooked in order to answer questions.  Admit that DEA searched Mr. Ta's luggage and seized $34,000.  Admit that the couple's flight was

rebooked with their consent.  Admit that DEA located no contraband or prohibited items during

this encounter.  Admit that Mr. Ta was not arrested or charged with a crime.  Lack knowledge or

information sufficient to form a belief as to the truth of the allegations regarding (i) Mr. Ta's

subjective feelings, (ii) the source and purpose of the money, (iii) the terms of any settlement

regarding the seizure.  The allegations in this paragraph are otherwise denied.

447.    Admit that DEA had an encounter with Josh Gingerich at O'Hare International

Airport (ORD) on February 6, 2018.  Further admit that Mr. Gingerich consented to the

interview and consented to a search of his person and his bag.  Admit that DEA seized $29,000

from Mr. Gingerich.  Admit that DEA located no illegal drugs or contraband during this

encounter.  Admit that Mr. Gingerich was not arrested or charged with a crime.  Lack knowledge

or information sufficient to form a belief as to the truth of the allegations regarding (i) Mr.

Gingerich's subjective feelings, (ii) the source and purpose of the money.  The allegations in this

paragraph are otherwise denied.

448.    Deny.

449.    Admit that DEA had an encounter with Harlan Hunter III and his mother at

Philadelphia International Airport (PHL) on August 29, 2016.  Further admit that the travelers

consented to the interview and consented to a search of their persons and bags.  Admit that Mr.

Hunter stated that the approximately $45,000 he was traveling with was for a semi-trailer truck

that his step-father needed for his work.  Admit that DEA seized $45,000 from Mr. Hunter.

Admit that DEA located no illegal drugs or contraband during this encounter.  Admit that Mr.

Hunter and his mother were not arrested or charged with a crime.  Lack knowledge or

information sufficient to form a belief as to the truth of the allegations regarding (i) Mr. Hunter's

and his mother's subjective feelings, (ii) the source and purpose of the money.  The allegations in

this paragraph are otherwise denied.

450.    Admit that DEA had an encounter with Vu Do at John F. Kennedy International Airport (JFK) on February 19, 2015.  Further admit that Mr. Do consented to the interview and consented to a search of his person and bags.  Admit that DEA seized $43,923 from Mr. Do. Admit that DEA located no illegal drugs or contraband during this encounter.  Admit that Mr. Do was not arrested or charged with a crime.  Lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding (i) Mr. Do's subjective feelings, (ii) the source and purpose of the money.  The fifth, sixth, and seventh sentences characterize a complaint allegedly filed under the caption *Do v. Dep't of Justice*, No. 1:15-cv-3553 (June 17, 2015). Because Plaintiffs did not identify the court in which this case was filed, Defendants lack information sufficient to form a belief as to the truth of the allegations in these three sentences. The allegations in this paragraph are otherwise denied.

451.    This paragraph is denied.  Subparagraph (a) characterizes a complaint regarding an incident on August 8, 2006, *see* 1st Am. Compl., *Fiore v. Walden*, No. 2:07-cv-1674 (D. Nev. July 18, 2008), which was ultimately dismissed for lack of personal jurisdiction, *see Walden v. Fiore*, 571 U.S. 277 (2014).  The court is respectfully referred to this document for a comp [Do lete and accurate statement of its contents.  Subparagraph (b) characterizes a district court decision, *United States v. $29,540 in U.S. Currency*, No. 11-12172, 2013 WL 783052 (D. Mass. Feb. 28, 2013).  The court is respectfully referred to this document for a complete and accurate statement of its contents.  Subparagraph (c) characterizes a forfeiture complaint allegedly filed with the case number 2:17-cv-1439 (Nov. 3, 2017).  Because Plaintiffs did not provide a complete caption or identify the court in which the case was filed, Defendants lack information sufficient to form a belief as to the truth of the allegations in this subparagraph.

46

452.    This paragraph characterizes the DHS Office of Inspector General Report 17-02 (March 2017) and a DOJ Office of Inspector General Investigative Summary.  The court is respectfully referred to these documents for a complete and accurate statement of their contents.

453.    This paragraph characterizes the DOJ Office of Inspector General Report 15-28 (July 2015).  The court is respectfully referred to this document for a complete and accurate statement of its contents.  Defendants lack information sufficient to form a belief as to the truth of the allegations in the last sentence of this paragraph.

454.    Deny.

455.    This paragraph contains Plaintiffs' characterization of the relief they seek, for which no response is required.  To the extent a response is deemed required, it is denied that Plaintiffs are entitled to any relief.

456.    This paragraph contains legal conclusions to which no response is required, but to the extent a response is deemed required, this paragraph is denied.

457.    This paragraph contains Plaintiffs' proposed class definition, for which no response is required.

458.    This paragraph contains legal conclusions to which no response is required, but to the extent a response is deemed required, this paragraph is denied.

459.    This paragraph contains legal conclusions to which no response is required, but to the extent a response is deemed required, this paragraph is denied.  With regard to the facts alleged in the subparagraphs, admit that DEA engages in interdiction efforts at airports; further admit that from 2006 to 2016, DEA seizures at the nation's 15 busiest airports included more than $200 million from more than 5,200 people; further admit that DEA conducts interviews as a result of information from a variety of sources, including TSA personnel; the subparagraphs are

otherwise denied.

460.    This paragraph contains legal conclusions to which no response is required, but to the extent a response is deemed required, this paragraph is denied.

461.    This paragraph contains legal conclusions to which no response is required, but to the extent a response is deemed required, this paragraph is denied.

462.    This paragraph contains legal conclusions to which no response is required, but to the extent a response is deemed required, this paragraph is denied.

463.    This paragraph contains legal conclusions to which no response is required, but to the extent a response is deemed required, this paragraph is denied.

464.    This paragraph contains legal conclusions to which no response is required, but to the extent a response is deemed required, this paragraph is denied.

465.    Defendants incorporate by reference their response to paragraphs 1-464, above.

466.    This paragraph contains Plaintiffs' characterization of this action, to which no response is required.

467.    This paragraph contains Plaintiffs' characterization of this action, to which no response is required.

468.    This paragraph contains legal conclusions to which no response is required, but to the extent a response is deemed required, this paragraph is denied.

469.    This paragraph contains legal conclusions to which no response is required.

470.    This paragraph contains legal conclusions to which no response is required.

471.    This paragraph contains legal conclusions to which no response is required.

472.    This paragraph contains legal conclusions to which no response is required.

473.    This paragraph contains legal conclusions to which no response is required.

474.    This paragraph contains legal conclusions to which no response is required.

475.    Deny.

476.    Deny.

477.    Deny.

478.    Deny.

479.    Deny.

480.    This paragraph contains legal conclusions to which no response is required, but to the extent a response is deemed required, this paragraph is denied.

481.    Defendants incorporate by reference their response to paragraphs 1-480, above.

482.    This paragraph contains Plaintiffs' characterization of this action, to which no response is required.

483.    This paragraph contains Plaintiffs' characterization of this action, to which no response is required.

484.    This paragraph contains legal conclusions to which no response is required.

485.    This paragraph contains legal conclusions to which no response is required.

486.    This paragraph contains legal conclusions to which no response is required.

487.    This paragraph contains legal conclusions to which no response is required.

488.    This paragraph contains legal conclusions to which no response is required, but to the extent a response is deemed required, this paragraph is denied.

489.    This paragraph contains legal conclusions to which no response is required, but to the extent a response is deemed required, this paragraph is denied.

490.    This paragraph contains legal conclusions to which no response is required, but to the extent a response is deemed required, this paragraph is denied.

491.   Deny.

492.   Deny.

493.   Deny.

494.   Deny.

495.   Deny.

496.   Deny.

497.   Deny.

498.   This paragraph contains legal conclusions to which no response is required, but to the extent a response is deemed required, this paragraph is denied.

499.   Deny.

500.   Defendants incorporate by reference their response to paragraphs 1-499, above.

501.   This paragraph contains Plaintiffs' characterization of this action, to which no response is required.

502.   This paragraph contains Plaintiffs' characterization of this action, to which no response is required.

503.   This paragraph contains legal conclusions to which no response is required.

504.   This paragraph contains legal conclusions to which no response is required.

505.   Deny.

506.   Deny.

507.   Deny.

508.   Deny.

509.   Deny.

510.   Deny.

511.    Deny.

512.    Deny.

513.    This paragraph contains legal conclusions to which no response is required, but to the extent a response is deemed required, this paragraph is denied.

514.    Deny.

515.    This paragraph contains legal conclusions to which no response is required, but to the extent a response is deemed required, this paragraph is denied.

516.    Deny.

517.    This claim has been dismissed and therefore requires no response.

518.    This claim has been dismissed and therefore requires no response.

519.    This claim has been dismissed and therefore requires no response.

520.    This claim has been dismissed and therefore requires no response.

521.    This claim has been dismissed and therefore requires no response.

522.    This claim has been dismissed and therefore requires no response.

523.    This claim has been dismissed and therefore requires no response.

524.    This claim has been dismissed and therefore requires no response.

525.    This claim has been dismissed and therefore requires no response.

526.    This claim has been dismissed and therefore requires no response.

527.    This claim has been dismissed and therefore requires no response.

528.    This claim has been dismissed and therefore requires no response.

The remaining paragraphs set forth plaintiffs' prayer for relief to which no answer is required, but insofar as an answer is deemed required, Defendants deny that plaintiffs are entitled to the relief requested or to any relief at all.

Defendants hereby deny all allegations of the Complaint not otherwise specifically answered above.

Wherefore, having fully answered, Defendants respectfully request that the Court enter judgment dismissing the Complaint with prejudice, and awarding Defendants their costs and attorney's fees and such other relief as the Court deems just and proper.

Dated: May 27, 2021                            Respectfully submitted,

                                               BRIAN M. BOYNTON
                                               Acting Assistant Attorney General

                                               BRIGHAM J. BOWEN
                                               Assistant Director
                                               Civil Division, Federal Programs Branch

                                               */s/ Galen N. Thorp*
                                               GALEN N. THORP (VA Bar # 75517)
                                               Senior Trial Counsel
                                               ELIZABETH TULIS
                                               Trial Attorney
                                               United States Department of Justice
                                               Civil Division, Federal Programs Branch
                                               1100 L Street NW
                                               Washington, D.C. 20530
                                               Tel: (202) 514-4781 / Fax: (202) 616-8460
                                               galen.thorp@usdoj.gov

                                               *Counsel for Government Defendants*