**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| REBECCA BROWN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | 2:20-CV-00064-MJH-KT |
| | ) | |
| vs. | ) | |
| | ) | ECF No. 170 |
| TRANSPORTATION SECURITY | ) | ECF No. 173 |
| ADMINISTRATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

## I.   RECOMMENDATION

For the following reasons, it is respectfully recommended that Defendants' Motion for Summary Judgment, ECF No. 170, be granted insofar as this court lacks subject matter jurisdiction. It is further recommended that Plaintiffs' Motion for Summary Judgment, ECF No. 173, be denied.

## II.   REPORT

### A.  PROCEDURAL HISTORY

Rebecca Brown and Auguste Terrence Rolin[1], the original plaintiffs to this action, commenced this litigation on January 15, 2020, with the filing of a complaint "on behalf of themselves and all other similarly situated," seeking the return of confiscated cash and declaratory and injunctive relief against the Transportation Security Administration ("TSA") and Drug Enforcement Administration ("DEA"), their respective administrators and an individual DEA agent (collectively "Defendants"). ECF No. 1. All Defendants moved to dismiss the

---

[1] This individual is deceased and is no longer a party to this case. ECF No. 175 ¶ 15; ECF No. 171-3 at 5; ECF No. 171 at 16.

complaint, prompting the filing of an amended complaint on July 17, 2020, which remains the operative pleading.  ECF Nos. 33-37, 43.  In the Amended Complaint, in addition to Rebecca Brown and Auguste Terrence Rolin, Stacy Jones-Nasr[2] and Matthew Berger were added as plaintiffs (collectively "Plaintiffs"), all of whom allege that their persons and effects, including their cash, were wrongfully seized by Defendants based on policies and practices on the part of TSA to detain domestic air travelers found through security screenings to be in possession of large sums of cash, and on the part of DEA to continue or resume such detention in order to seize such cash for civil forfeiture.  ECF No. 43, *generally*.  Since the commencement of this action, agency administrators have changed, and pursuant to Federal Rule of Civil Procedure 25(d), Ha McNeill has recently been substituted for Adam Stahl, who was previously substituted for former TSA Administrator David P. Pekoske, and Acting Administrator of the Drug Enforcement Administration Derek S. Maltz was substituted for former Administrator Anne Milgram.  *See* ECF Nos. 55, 222.

In their Amended Complaint, Plaintiffs asserted the following five claims: a class claim under the Administrative Procedure Act, 5 U.S.C. §§ 701-06 ("APA") for *ultra vires* conduct against TSA, Pekoske and the United States (Count I); a class claim for unconstitutional conduct under the APA and the Fourth Amendment against TSA, Pekoske and the United States (Count II); a class claim for unconstitutional conduct under the APA and the Fourth Amendment against DEA, Shea and the United States (Count III); individual claims by Plaintiffs Brown and Rolin for return of interest on seized cash against DEA, Shea and the United States (Count IV); and individual damages claims by Plaintiffs Brown and Rolin under *Bivens v. Six Unknown Fed.*

---

[2]  Now Stacy Esposito.  ECF No. 171 at 16.

2

*Narcotics Agents*, 403 U.S. 388 (1971) against Defendant Dawkin (Count V). ECF No. 43. Following an initial round of motions to dismiss, Counts IV and V were dismissed, and Defendant Dawkin was terminated from the docket. *See* ECF Nos. 47, 55, 78. More recently, DEA Defendants moved to dismiss Count III against them for lack of jurisdiction. ECF No. 155. This Court recommended that the motion be granted. ECF No. 226.

Pending before the Court are the parties' cross motions for summary judgment. ECF Nos. 170, 173. In response to Defendants' motion, Plaintiffs filed a Consolidated Memorandum in Support of Cross-Motion for Summary Judgment and in Opposition to Defendants' Motion for Summary Judgment. ECF No. 174. By separate filing, Plaintiffs submitted their statement of material facts and included their responses to Defendants' statement of material facts. ECF No. 175. Defendants filed a reply, along with their opposition to Plaintiffs' motion, as well as a response to Plaintiffs' statement of material facts. ECF Nos. 179, 179-1. Plaintiffs submitted a reply to Defendants' response to Plaintiffs' statement of material facts. ECF No. 183. On February 5, 2026, the Court heard argument on the pending motions. ECF No. 225. The motions are fully briefed and ripe for review.

**B.    FACTUAL BACKGROUND**

In summarizing the material facts, the Court would be remiss not to mention the parties' failures to comply with Local Civil Rule 56.B.1, insofar as neither party's Concise Statement of Material Facts is concise, with Plaintiffs' submission alone spanning 128 pages. *See* ECF Nos. 172, 175. Long, argumentative, and at times, immaterial statements contradict the spirit of the Local Rule and provide little to no assistance to the Court in paring down the facts. With that said, only facts relevant to the undersigned's recommendation will be set forth below.

3

TSA promulgated Management Directive 100.4, Transportation Security Searches ("MD 100.4") to implement the screening required by statute and regulation, for purposes of maintaining transportation security.  ECF No. 172 ¶¶ 1, 3.  MD 100.4 has been implemented through certain standard operating procedures, specifically, Version 4 of Screening Policies for Standard Operating Procedures ("SOP").  ECF No. 169-2 at 12.  Per the SOP, "[t]he MD describes the legal authority for all TSA screening operations."  *Id*. at 120.  Pursuant to MD 100.4, a "screening" is "[a] search or appraisal of a person, place, document or thing, with or without assisting technologies, to determine compliance with TSA standards, regulations, and applicable laws in order to detect a threat. Not all screening activities are searches under the Fourth Amendment (e.g., BDO observations)."[3]   ECF No. 169-2 at 3.  An "administrative search" is "[a] search conducted without a warrant as part of a regulatory plan in furtherance of a specified non-law enforcement government purpose, such as to determine compliance with TSA regulations or to prevent the carriage of threat items or entry of an unauthorized person into the sterile area, or to screen passengers entering any public conveyance."  *Id*. at 1-2.  A "special needs search" is "[a] search conducted without a warrant and in furtherance of a special governmental need, beyond the ordinary needs of law enforcement. In the context of transportation security, special needs searches are designed to mitigate the risk to the public posed by the introduction of threats into the transportation system."  ECF No. 169-2 at 3.

Screenings are carried out by Transportation Security Officers ("TSOs"), overseen by Supervisory Transportation Security Officers ("STSOs"), and are conducted "in a manner

---

[3]  "Behavior Detection Officers (BDOs): Specially-trained TSA personnel and TSA contract personnel who execute TSA's Screening of Passengers by Observation Technique (SPOT) program."  ECF No. 169-2 at 2.

designed to be minimally intrusive, in light of current technology, to detect the presence of threat

items." *Id*. at 4, 6.  MD 100.4 defines "threat items" as:

> Any potentially hazardous items that pose a risk to transportation
> security, such as explosives, incendiaries, and items that could be
> used as weapons or otherwise transformed into a threat. Threat
> items may include items that are themselves benign, but that can be
> rapidly transformed into a security risk, including parts of weapons
> or explosives, and IED components, such as certain liquids and
> gels. Threat items may also be benign items that cannot be
> effectively and rapidly distinguished from dangerous items (e.g.,
> water from certain liquid explosives; or an ordinary laptop from an
> electronic triggering device) or items that on their face appear to be
> threat items, such as imitation firearms or grenades. In addition,
> threat items may also include items that have been used or altered
> to conceal threats or prohibited items, such as thermos bottles and
> certain electronics.

*Id*. at 4.

MD 100.4 limits the types of screenings to those which relate to transportation security

and provides that screenings "may not be conducted to detect evidence of crimes unrelated to

transportation security." *Id*. at 8.  Should TSOs discover evidence indicative of criminal activity,

such as "possession of illegal drugs, possession of child pornography, and money laundering

(i.e., transferring illegally gained money through legitimate channels so that its illegal source is

untraceable)," MD 100.4 instructs them to refer such findings "to a supervisor or a law

enforcement official for appropriate action." *Id*.

Traveling with large amounts of money is not illegal.  *Id*. at 9.  However, there are

instances when large amounts of currency may require additional screening to rule out possible

dangers.  *Id*.  Under MD 100.4, screeners discovering cash are instructed not to question

travelers about the cash unless needed for security purposes.  *Id*.  Where currency appears

indicative of criminal activity, either because of the "quantity, packaging, circumstances of

discovery, or method by which the cash is carried, including concealment . . . TSA will report the matter to the appropriate authorities." *Id*. "Although an individual may be requested to wait until law enforcement arrives, he or she is free to leave the screening checkpoint once applicable screening requirements have been completed successfully." *Id*. at 8. Each Plaintiff traveled with thousands of dollars in cash, prompting additional screenings and questions during security checkpoints at various airports across the country. ECF No. 179-1 ¶¶ 250-273, 275-289, 291.

### C. **LEGAL STANDARD**

Motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenge the Court's "very power to hear the case." *See Mortenson v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Under Fed. R. Civ. P. 12(b)(1), "a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). Rule 12(b)(1) motions can raise either a facial or factual challenge to the Court's subject-matter jurisdiction. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial attack challenges the sufficiency of the pleadings, while a factual attack challenges the sufficiency of jurisdictional facts. *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015). In resolving a facial attack, the Court must accept the plaintiff's well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017). When resolving a factual attack, however, the Court may weigh and consider evidence outside the pleadings. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). As the party asserting jurisdiction, it is Plaintiffs'

burden to show that this Court has jurisdiction over their claims.  *See Dev. Fin. Corp. v. Alpha Housing & Health Care*, 54 F.3d 156, 158 (3d Cir. 1995).

Federal Rule of Civil Procedure 56(a) requires the district court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Under this standard "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome under applicable substantive law.  *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether a genuine issue of material fact remains for trial, the court must view the record and all reasonable inferences to be drawn therefrom in favor of the nonmoving party.  *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988).  To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings.  Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must go beyond his or her pleadings with affidavits, depositions, answers to

interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

### D.  <u>DISCUSSION</u>

### <u>Jurisdiction</u>

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). Federal courts cannot exercise jurisdiction where Congress has not given it, even if all parties assume subject matter jurisdiction exists.  *Hartig Drug Co., v. Senju Pharmaceutical Co. Ltd.*, 836 F.3d 261, 267 (3d Cir. 2016).

Here, the parties emphatically disagree on the issue of jurisdiction.  Defendants argue that under 49 U.S.C. § 46110[4], jurisdiction over the instant matter lies exclusively with the court of appeals.  ECF No. 171 at 24-27; ECF No. 179 at 10-16.  Plaintiffs counter that since the disputed

---

[4]  **(a) Filing and Venue.**  Except for an order related to a foreign air carrier subject to disapproval by the President under section 41307 or 41509(f) of this title, a person disclosing a substantial interest in an order issued by the Secretary of Transportation (or the Administrator of the Transportation Security Administration with respect to security duties and powers designated to be carried out by the Administrator of the Transportation Security Administration or the Administrator of the Federal Aviation Administration with respect to aviation duties and powers designated to be carried out by the Administrator of the Federal Aviation Administration) in whole or in part under this part, part B, or subsection (l) or (r) of section 114 may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business. The petition must be filed not later than 60 days after the order is issued. The court may allow the petition to be filed after the 60th day only if there are reasonable grounds for not filing by the 60th day.  49 U.S.C. § 46110(a).

policies and SOPs are not "orders" as contemplated by 49 U.S.C. § 46105[5], jurisdiction properly lies with this Court.  ECF No. 174 at 35-39; ECF No. 182 at 11-17.

Defendants initially raised subject matter jurisdiction at the motion to dismiss stage.  *See* ECF No. 57 at 21-22.   In recommending denial of their motion to dismiss, this Court distinguished the present case from *Blitz v. Napolitano*, 700 F.3d 733 (4th Cir. 2012), which Defendants relied on to argue their point.  *See* ECF Nos. 66, 78.  As part of its analysis, this Court provided that "in *Blitz*, the TSA Administrator submitted a Declaration providing the SOP's dates of revision and implementation, and affirming that the SOP was approved by him and constituted 'TSA's final agency decision' governing the conduct at issue. 700 F.3d at 736." ECF No. 66 at 8.  As part of the developed summary judgment record, the benefit of which Defendants did not have at the motion to dismiss stage, Defendants submitted a declaration authored by Paul J. Leyh, Senior Advisor within the Enterprise Support Component of the Transportation Security Administration, wherein he affirms that the documents in the Administrative Record include "the materials that constitute TSA's policies and final agency decisions regarding the discovery of bulk currency at airport security screening checkpoints between January 2014 and January 2020, which are the subject of this litigation, along with the policies currently in effect."  ECF No. 169 ¶ 2.

In her Opinion adopting in part and rejecting in part the undersigned's predecessor's report and recommendation, and overruling Defendants' objections relative to jurisdiction,

---

[5]   **(b) Contents and service of orders.**--An order of the Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration shall include the findings of fact on which the order is based and shall be served on the parties to the proceeding and the persons affected by the order.  49 U.S.C. § 46105(b).

District Judge Horan provided that "[w]hile 49 U.S.C. § 46110 confers jurisdiction to the Circuit Courts of Appeals for judicial review of a TSA order, this statute contemplates jurisdiction over **formal** administrative orders rather than **informal** policies or practices. **The Plaintiffs' First Amended Complaint challenges an *informal* TSA policy rather than any formal administrative order**. (ECF No. 66, 7-8)."  ECF No. 78 at 4 (emphasis added).

Notwithstanding this prior disposition, the Court now has the benefit of a developed record at the summary judgment stage which conclusively establishes that Plaintiffs are challenging the TSA's formal policies, which include SOPs.  ECF No. 179-1 ¶ 15.  The decision in *Muir v. United States Transportation Sec. Admin.*, 2021 WL 231733 (C.D. Ill. Jan. 22, 2021), *aff'd sub nom. Muir v. Transportation Sec. Admin.*, 2021 WL 3780089 (7th Cir. Aug. 26, 2021), is instructive.  There, as here, the plaintiff lodged, *inter alia*, constitutional challenges to TSA policies related to security screenings of airline passengers.  *Id*.  Specifically, Mr. Muir was subjected to two pat-down searches, at two airports, after his preexisting hernia appeared suspicious on the body-scan portion of the screening process, which caused him physical and emotional pain.  *Muir*, 2021 WL 231733, at *1.  TSA successfully argued that Mr. Muir's challenge to the relevant TSA policy is beyond the district court's jurisdiction as such challenges must be presented to a court of appeals.  *Id*. at *11-12.  The Court explained:

> TSA's screenings are conducted pursuant to, *inter alia*, its Standard Operating Procedures (SOP), which set forth the threat assessment procedures central to this lawsuit. The SOP has been widely and uniformly held to be a final order within the meaning of § 46110(a), and challenges to the SOP therefore lie within the exclusive jurisdiction of the courts of appeals. *See Blitz v. Napolitano*, 700 F.3d 733, 740 (4th Cir. 2012); *Corbett v. United States*, 458 F. App'x 866, 869–71 (11th Cir. 2012); *Roberts v. Napolitano*, 463 F. App'x 4, 4–5 (D.C. Cir. 2012); *Redfern v.*

> *Napolitano*, 727 F.3d 77, 83 n.3 (1st Cir. 2013); *Scruggs v. McAleenan*, No. 18-CV-2109, 2019 WL 4034622, at *1 (N.D. Ill. Aug. 27, 2019)."

*Id.  See also Ruskai v. Pistole*, 775 F.3d 61, 65 (1st Cir. 2014) (challenges to TSA screening procedures were within the exclusive jurisdiction of the court of appeals); *Roberts v. Napolitano*, 798 F. Supp. 2d 7, 12 (D.D.C. 2011), *aff'd*, 463 F. App'x 4, 4–5 (D.C. Cir. 2012) ("TSA's Screening Checkpoint SOP is an "order" in the meaning of 49 U.S.C. § 46110.")

While six other circuit courts have held that TSA policies are final orders for purposes of Section 46110, the Third Circuit has not expressly so held.  *See* cases cited *supra*; *see also Gilmore v. Gonzales*, 435 F.3d 1125, 1131 (9th Cir. 2006).  It has, however, held that "to be reviewable under section 46110(a), an 'order' must be final, ***but need not be a formal order, the product of a formal decision-making process***, or be issued personally by the Administrator. Of course, it also must impose an obligation, deny a right, or fix some legal relationship." *Aerosource, Inc. v. Slater*, 142 F.3d 572, 578 (3d Cir. 1998) (emphasis added); *see Gilmore*, 435 F.3d at 1132 (also construing "order" broadly and emphasizing that finality is determinative; an agency action qualifies as an "order" if it imposes obligations, denies rights, or fixes legal relationships warranting review under Section 46110).

Here, the challenged TSA policies related to travelers carrying cash are squarely within the types of policies held to constitute final orders within other circuits, and is consistent with the definition of a final order as contemplated in *Aerosource*.  As such, it is respectfully recommended that this case be dismissed pursuant to Federal Rule of Civil Procedure 12(h)(3) for want of subject matter jurisdiction as jurisdiction over such challenges lies exclusively with a

11

court of appeals.[6]  *See Auster v. Ghana Airways Ltd.*, 514 F.3d 44, 48 (D.C. Cir. 2008) (the

district court's grant of summary judgment for defendants was vacated, and the case was

remanded with instructions to dismiss for lack of subject matter jurisdiction).[7]

---

[6]  Under Fed. R. Civ. P. 12(h)(3), "[i]f the court determines *at any time* that it lacks subject-matter jurisdiction, the court must dismiss the action." (emphasis added).  The recommendation to dismiss this case for lack of subject matter jurisdiction obviates the need to address Defendants' other arguments or reach the merits of the case.

[7]  During oral argument, Defendants argued that if Section 46110 applies, then this case should be dismissed and not transferred, because Plaintiffs failed to timely raise the issue of a transfer. In support of their position, they cited to *Hayes v. Silvers*, 441 F.Supp. 3d 62 (E.D. Pa. 2020) which provided that issues raised in a reply are waived.  *Id.* at 67 n.5.  Here, contrary to Defendants' position, Plaintiffs requested that the case be transferred in their opposition to Defendants' motion for summary judgment and reiterated their request in their reply.  *See* ECF No. 174 at 39 and ECF No. 182 at 16.  Yet, it is rule 12(h)(3) that bars transfer.

## III.    <u>CONCLUSION</u>

For the above reasons, it is respectfully recommended that Defendants' Motion for Summary Judgment be granted, and Plaintiffs' Motion for Summary Judgment be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties may file written objections within fourteen days of the date of this Report and Recommendation, or seventeen days for unregistered ECF Users.  Objections are to be submitted to the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219.  Any party opposing objections may respond to the objections within 14 days in accordance with Local Civil Rule 72.D.2.  Failure to timely file objections will waive the right to appeal.  *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).


Dated: February 11, 2026                                  **BY THE COURT**


                                                          s/_Kezia O. L. Taylor_____
                                                          KEZIA O. L. TAYLOR
                                                          United States Magistrate Judge

13