**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

REBECCA BROWN, *et al.*,

     *Plaintiffs*,

v.

TRANSPORTATION SECURITY
ADMINISTRATION, *et al.*,

     *Defendants.*

Civil Action No. 2:20-cv-64-MJH-KT

**PLAINTIFFS' OBJECTIONS TO THE REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT
AND REQUEST FOR ORAL ARGUMENT**

**INSTITUTE FOR JUSTICE**

Dan Alban*
VA Bar No. 72688
dalban@ij.org

Jaba Tsitsuashvili*
DC Bar No. 1601246
jtsitsuashvili@ij.org

Robert Fellner*
DC Bar No. 90027493
rfellner@ij.org

Nick DeBenedetto*
NJ Bar No. 382442021
ndebenedetto@ij.org

901 North Glebe Road, Suite 900
Arlington, VA 22203
(703) 682-9320

Marco Vasquez Jr.*
TX Bar No. 24115892
mvasquez@ij.org

816 Congress Avenue, Suite 970
Austin, TX 78701
(512) 480-5936

*Admitted *Pro Hac Vice*

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

**Page**

Table of Authorities..........................................................................................................................iii

Introduction...........................................................................................................................................1

Argument ...............................................................................................................................................3

 I.  Standard of Review .......................................................................................................................3

 II. Legal Objections.............................................................................................................................4

   A. The challenged policies are generally applicable "rules," not adjudicative "orders" subject to claim-channeling under Section 46110. ...........................................................4

     1. Generally applicable rules developed through rule making—like the challenged cash-screening policies—are not "orders" under Chapter 461, the APA, or binding precedent. ...........................................................................................................................6

       a. The challenged cash-screening policies are not "orders" as described in Section 46110 or Chapter 461...........................................................................................................7

       b. The APA's definitions of order, rule, adjudication, and rule making foreclose TSA's proposed interpretation, as confirmed by Third Circuit precedent......................11

       c. The magistrate judge wrongly focused on the "finality" of the challenged cash-screening policies, which is a necessary but insufficient quality of agency "orders."....................................................................................................................12

     2. The out-of-circuit precedent cited by the magistrate judge is unpersuasive, offering cursory reasoning that fails to engage with the text of the statute, the statutory scheme, and the APA. ..........................................................................................................14

     3. The unavailability of an adequate factual record for review—the jurisdictional touchstone for § 46110 according to circuits who embrace the expansive definition of "order"—also confirms this Court's jurisdiction. ...........................................................17

     4. Even if all "final agency actions" by TSA were subject to claim-channeling under § 46110, parties may still bring general collateral challenges to unconstitutional policies in district court. ..................................................................................................20

   B. Even if this Court now concludes that Section 46110 strips it of jurisdiction, it would be in the interest of justice to transfer this case to the court of appeals, and Rule 12(h)(3) does not "bar[] transfer." ...................................................................................21

 III. Plaintiffs Request That This Court Decide This Case on the Merits. .........................................25

Conclusion ........................................................................................................................25

Certificate of Service..........................................................................................................27

Certificate of Compliance ...................................................................................................27

# TABLE OF AUTHORITIES

**CASES**                                                                      **Page(s)**

*Abbott Lab'ys v. Gardner*,
    387 U.S. 136 (1967)................................................................................................4

*Aerosource, Inc. v. Slater*,
    142 F.3d 572 (3d Cir. 1998)..........................................................................2, 12–13, 18

*Amerijet Int'l, Inc. v. DHS*,
    43 F. Supp. 3d 4 (D.D.C. 2014)............................................................................24

*Blitz v. Napolitano*,
    700 F.3d 733 (4th Cir. 2012)................................................................................16

*Brown v. Gardner*,
    513 U.S. 115 (1994)..............................................................................................9

*Califano v. Sanders*,
    430 U.S. 99 (1977)................................................................................................4

*CFPB v. Nat'l Collegiate Master Student Loan Tr.*,
    96 F.4th 599 (3d Cir. 2024)...........................................................................7, 17

*Chavez v. Dole Food Co.*,
    836 F.3d 205 (3d Cir. 2016)................................................................................22

*Christianson v. Colt Indus. Operating Corp.*,
    486 U.S. 800 (1988)............................................................................................24

*City of Rochester v. Bond*,
    603 F.2d 927 (D.C. Cir. 1979)............................................................................18

*Commc'ns Workers of Am. v. Beck*,
    487 U.S. 735 (1988)..............................................................................................9

*Corbett v. United States*,
    458 F. App'x 866 (11th Cir. 2012)......................................................................15

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
    603 U.S. 799 (2024)............................................................................................11

*Danziger & De Llano, LLP v. Morgan Verkamp LLC*,
    948 F.3d 124 (3d Cir. 2020)................................................................................24

*Deutsche Lufthansa Aktiengesellschaft v. Civ. Aeronautics Bd.*,
    479 F.2d 912 (D.C. Cir. 1973)............................................................................17

*Farber v. Tennant Truck Lines, Inc.*,
84 F. Supp. 3d 421 (E.D. Pa. 2015) ................................................................................ 22, 24

*Fischer v. United States*,
603 U.S. 480 (2024) ................................................................................................................ 7

*Gilmore v. Gonzales*,
435 F.3d 1125 (9th Cir. 2006) ....................................................................................... 14, 16

*Goldstein v. SEC*,
451 F.3d 873 (D.C. Cir. 2006) ............................................................................................ 10

*Hughes Aircraft Co. v. Jacobson*,
525 U.S. 432 (1999) ......................................................................................................... 7, 17

*Mace v. Skinner*,
34 F.3d 854 (9th Cir. 1994) ............................................................................................ 20–21

*McLaughlin v. Arco Polymers, Inc.*,
721 F.2d 426 (3d Cir. 1983) ................................................................................................ 23

*McNary v. Haitian Refugee Ctr., Inc.*,
498 U.S. 479 (1991) ............................................................................................................. 20

*Merritt v. Shuttle, Inc.*,
187 F.3d 263 (2d Cir. 1999) ................................................................................................ 21

*Miller v. Hambrick*,
905 F.2d 259 (9th Cir. 1990) ............................................................................................... 22

*Muir v. TSA*,
857 F. App'x 251 (7th Cir. 2021) ....................................................................................... 17

*Muir v. TSA*,
2021 WL 231733 (C.D. Ill. Jan. 22, 2021) ................................................................... 16–17

*Nat'l Fed'n of Blind v. U.S. Dep't of Transp.*,
78 F. Supp. 3d 407 (D.D.C. 2015) ..................................................................................... 24

*Paul v. INS*,
348 F.3d 43 (2d Cir. 2003) .................................................................................................. 22

*Pellegrino v. TSA*,
937 F.3d 164 (3d Cir. 2019) ................................................................................................. 9

*Pension Benefit Guar. Corp. v. Saint-Gobain Corp. Benefits Comm.*,
2013 WL 5525693 (E.D. Pa. Oct. 4, 2013) ........................................................................ 12

*Phillips v. Seiter*,
 173 F.3d 609 (7th Cir. 1999) ................................................................................. 23

*Rake v. Wade*,
 508 U.S. 464 (1993) ............................................................................................... 10

*Reno v. Cath. Soc. Servs., Inc.*,
 509 U.S. 43 (1993) ............................................................................................ 4, 20

*Robert W. Mauthe MD PC v. Millennium Health LLC*,
 58 F.4th 93 (3d Cir. 2023) .......................................................................... 2, 11–12

*Roberts v. Napolitano*,
 463 F. App'x 4 (D.C. Cir. 2012) ........................................................................... 15

*Robinson v. Shell Oil Co.*,
 519 U.S. 337 (1997) ............................................................................................... 10

*Ruskai v. Pistole*,
 775 F.3d 61 (1st Cir. 2014) ................................................................................... 16

*S. Cal. Aerial Advertisers' Ass'n v. FAA*,
 881 F.2d 672 (9th Cir. 1989) ........................................................................... 13, 18

*Safari Club Int'l v. Zinke*,
 878 F.3d 316 (D.C. Cir. 2017) .............................................................................. 12

*San Diego Air Sports Ctr., Inc. v. FAA*,
 887 F.2d 966 (9th Cir. 1989) ................................................................................ 18

*Shea v. Off. of Thrift Supervision*,
 934 F.2d 41 (3d Cir. 1991) .......................................................................... 2, 11–12

*Sima Prods. Corp. v. McLucas*,
 612 F.2d 309 (7th Cir. 1980) ................................................................................ 18

*Steinfield v. EmPG Int'l, LLC*,
 97 F. Supp. 3d 606 (E.D. Pa. 2015) ..................................................................... 24

*Thunder Basin Coal Co. v. Reich*,
 510 U.S. 200 (1994) ............................................................................................... 20

*Tootle v. Sec'y of Navy*,
 446 F.3d 167 (D.C. Cir. 2006) .............................................................................. 24

*TRE Aviation Corp. v. FAA*,
 2015 WL 1538075 (D. Ariz. Apr. 7, 2015) .......................................................... 24

*Vanderklok v. United States,*
   868 F.3d 189 (3d Cir. 2017) ..................................................................................10

*W & T Offshore, Inc. v. Bernhardt,*
   946 F.3d 227 (5th Cir. 2019) .................................................................................12

*Yesler Terrace Cmty. Council v. Cisneros,*
   37 F.3d 442 (9th Cir. 1994) ...................................................................................12

**CODES AND STATUTES**

5 U.S.C.
   § 551(4) ........................................................................................................... 2, 11, 13
   § 551(5) ............................................................................................................... 2, 11
   § 551(6) ............................................................................................................ 2, 10–13
   § 551(7) ............................................................................................................... 2, 11
   § 702 ........................................................................................................................ 4
   § 703 ........................................................................................................................ 4
   § 704 ........................................................................................................................ 3

28 U.S.C.
   § 636(b)(1)(C) ........................................................................................................... 4
   § 1331 ....................................................................................................................... 4
   § 1631 ................................................................................................................. *passim*

49 U.S.C.
   § 1486(a) ................................................................................................................. 18
   § 46101 ..................................................................................................................... 5
   § 46101(a) ................................................................................................................. 8
   § 46102(a) .............................................................................................................. 7, 9
   § 46102(b) ................................................................................................................. 8
   § 46102(c) .............................................................................................................. 8–9
   § 46102(d) ................................................................................................................. 8
   § 46103(a)–(c) .......................................................................................................... 8
   § 46104(a)–(c) ....................................................................................................... 8–9
   § 46104(e) .............................................................................................................. 7–9
   § 46105(b) ............................................................................................................. 9–10
   § 46109 ..................................................................................................................... 9
   § 46110 ............................................................................................................... *passim*
   § 46110(a) ............................................................................................................. 9, 12
   § 46110(b) .............................................................................................................. 2, 9
   § 46110(c) .............................................................................................................. 2, 9
   § 46110(d) ........................................................................................................... 2, 7–9

**RULES**

Fed R. Civ. P.
    12(h)(3) ................................................................................................................ 3–4, 21, 23–24
    72(b)(3) ........................................................................................................................................4

**OTHER AUTHORITIES**

Antonin Scalia & Bryan A. Garner,
    *Reading Law: The Interpretation of Legal Texts* (2012).................................................................9

**INTRODUCTION**

Plaintiffs have presented this Court with undisputed evidence demonstrating that TSA is engaged in nationwide violations of air travelers' Fourth Amendment rights and exceeding its statutory authority pursuant to its secret written policies directing TSA Screeners to investigate and seize travelers with "large" amounts of cash. *See* ECF 173.

TSA has urged this Court to ignore this evidence and to reject its prior ruling at the motion-to-dismiss stage that this Court has jurisdiction to hear this case. TSA effectively argues that *all cases* involving challenges to TSA policies must be filed in federal circuit courts of appeal pursuant to 49 U.S.C. § 46110's claim-channeling of appeals of TSA "orders."

But TSA, and the magistrate judge's report and recommendation, reads § 46110 far more broadly than the text allows, turning a standard claim-channeling statute into a jurisdictional bar. For § 46110 to apply, there must be an underlying TSA "order" which is described and defined as the result of an adjudication where parties or their attorneys are heard and evidence is presented which results in findings of fact, a record of the proceeding, and an order deciding the dispute, followed by service of that order on the parties to the proceeding. Section 46110 does not apply here because Plaintiffs are not challenging the result of any adjudication; Plaintiffs are instead challenging a set of generally applicable screening policies (rules) developed via (secret) TSA rule making. There was no underlying adjudication, nor was any evidence presented by any parties at any proceeding, nor were there any findings of fact issued by TSA, nor was there any record of any proceeding, nor was any "order" issued deciding any dispute, nor was any "order" served on parties to any nonexistent proceeding. That's why extensive discovery was needed in this case to establish a factual record.

TSA's sweeping interpretation of § 46110 requires this Court to ignore the text of the statute and the text of the surrounding statutes in Chapter 461 ("Investigations and Proceedings"). It jettisons the baseline meaning of two fundamental administrative law terms: "order" and "rule." An "order"—

1

which § 46110 reaches—is an individualized determination resulting from an "adjudication." 5 U.S.C. § 551(6)–(7). A "rule"—which § 46110 does not reach—is generally applicable and the result of "rule making" designed to "implement, interpret, or prescribe law or policy." 5 U.S.C. § 551(4)–(5). *This case is a challenge to TSA rules*—specifically, the portions of TSA's generally applicable MD 100.4 and screening SOPs that address travelers with cash—so § 46110 does not take effect.

TSA effectively asks this Court to interpret § 46110 in complete isolation, as though the APA and its companion statutes in Chapter 461 do not exist. Meanwhile, TSA also asks this Court to ignore that § 46110 itself repeatedly makes reference to adjudicative proceedings, such as when it directs TSA to "file with the court a record of any proceeding in which the order was issued," states that "[f]indings of fact by [TSA], if supported by substantial evidence, are conclusive," and permits courts to consider objections to such an order "only if the objection was made in the proceeding conducted by [TSA] or if there was a reasonable ground for not making the objection in the proceeding." § 46110(b), (c), (d).

The magistrate judge's conclusion embracing this argument runs squarely against the existing Third Circuit precedent, which suggests courts should look to the APA definition of "order" when interpreting § 46110, *see Aerosource, Inc. v. Slater*, 142 F.3d 572, 577 n.8 (3d Cir. 1998), and which has repeatedly recognized that "'[o]rders' are generally issued as a result of an adjudicatory proceeding[.]" *Shea v. Off. of Thrift Supervision*, 934 F.2d 41, 43 (3d Cir. 1991)*; see also Robert W. Mauthe MD PC v. Millennium Health LLC*, 58 F.4th 93, 100–01 (3d Cir. 2023) (Phipps, J., concurring) ("[I]n administrative law, orders are not rules; the two are mutually exclusive. . . . The rule-order distinction is a fault line in administrative law").

Previously, this Court rightly rejected TSA's § 46110 arguments in its March 30, 2021 order denying TSA's motion to dismiss. *See* ECF 78 at 4. But on February 11, 2026, the magistrate judge accepted TSA's arguments and recommended that the Court grant TSA's Motion for Summary Judgment and deny Plaintiffs' Motion for Summary Judgment based on a lack of subject matter

2

jurisdiction. *See* ECF 227 at 1, 13. The magistrate judge reasoned that the summary judgment record had established that TSA's challenged cash-screening policies were formal, written policies rather than informal or unwritten policies. *Id.* at 10. Then, the magistrate judge focused on these policies' finality, specifically whether these challenged cash-screening policies were "final orders," *id.* at 11, apparently conflating the term "order" from § 46110 with "final agency action" from § 704 of the APA. *See also id.* at 9 (noting the SOPs constitute TSA's "final agency decision[s]"). Following nonbinding authorities that largely disregard the text of § 46110 and its companion statutes—as well as the APA's distinction between an "order" and a "rule"—the magistrate judge determined that the challenged TSA screening policies "are squarely within the types of policies held to constitute final orders within other circuits." ECF 227 at 11. The magistrate judge then recommended that the case be dismissed pursuant to Fed R. Civ. P. 12(h)(3) and further held that Rule 12(h)(3) "bars transfer" to an appellate court under 28 U.S.C. § 1631, rejecting Plaintiffs' alternative argument. *Id.* at 11–12 & n.7.

This Court should reject the magistrate judge's recommendation as to jurisdiction. In the alternative, if the Court agrees with the magistrate judge's conclusion that this Court now lacks jurisdiction, it should transfer venue to a federal court of appeal in the interest of justice in order to not waste the extensive discovery that has already been conducted regarding TSA's cash-screening practices and to prevent further delay in this case reaching a final resolution on the merits.

The Court should also rule on the merits of the parties' cross-motions for summary judgment, to avoid yet further delay in this case. To assist the Court's review, Plaintiffs request an in-person hearing before this Court on the merits of the parties' cross-motions for summary judgment.

## ARGUMENT

### I.   Standard of Review

This Court "shall make a de novo determination of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made," and "may

accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3) (same).

## II. Legal Objections

Plaintiffs object to the magistrate judge's conclusion that the Court lacks subject matter jurisdiction under 49 U.S.C. § 46110 and its resulting recommendation that Defendants' Motion for Summary Judgment, ECF 170, be granted and Plaintiffs' Motion for Summary Judgment, ECF 173, be denied. *See* ECF 227 at 1, 12.

In the alternative, if this Court believes it now lacks jurisdiction, Plaintiffs object to the magistrate judge's recommendation that the case be dismissed rather than transferred to a court of appeals. Contrary to the magistrate judge's conclusion, Rule 12(h)(3) does not bar transfer and there are several examples of cases being transferred in this same posture. Further, it would be in the interest of justice to transfer this case under 28 U.S.C. § 1631 to ensure the extensive discovery already taken in this case does not go to waste and to avoid further delay in reaching a final resolution on the merits.

### A. The challenged policies are generally applicable "rules," not adjudicative "orders" subject to claim-channeling under Section 46110.

Absent a claim-channeling provision, the default is that parties can challenge a final rule in district court under the APA. *See* 28 U.S.C. § 1331 (federal question jurisdiction); 5 U.S.C. §§ 702–704. As the Supreme Court explained, "28 U.S.C. § 1331, generally granting federal question jurisdiction, 'confer[s] jurisdiction on federal courts to review agency action.'" *Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 56 (1993) (quoting *Califano v. Sanders*, 430 U.S. 99, 105 (1977)). It further noted that the APA "embodies the basic presumption of judicial review to one 'suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute.'" *Id.* at 56–57 (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 140 (1967), and 5 U.S.C. § 702). Specifically, § 703 of the APA states that claims against agencies may be brought in any "court of competent jurisdiction" in the absence of a "special statutory review proceeding relevant to the subject matter in

4

a court specified by statute."

Therefore, unless TSA's challenged cash-screening policies are an "order," they are not subject to the special statutory review provision of § 46110, which only applies to "order[s]." Plaintiffs are not attempting to re-litigate any agency adjudication that resulted in an "order" (and there was none), so § 46110 does not apply. Instead, Plaintiffs challenge a generally applicable "rule," and this Court thus has jurisdiction.

As the report and recommendation accurately describes TSA's screening policies, *see* ECF 227 at 4–6, they are broadly and generally applicable to all air travelers, with the challenged cash-screening policies applicable to any air traveler with a "large" amount of currency. *Id.* at 5–6. The magistrate judge even quotes the SOP as stating that "[t]he MD describes the legal authority for *all* TSA screening operations." *Id.* at 4 (emphasis added). The magistrate judge never suggests that the challenged cash-screening policies were formulated through any adjudication, nor that there was ever any proceeding to develop them, nor any findings of fact, nor any record of any such proceeding, nor that the Plaintiffs ever even filed any sort of complaint directly with TSA pursuant to 49 U.S.C. § 46101. Indeed, the record would not support any of those findings. Rather, the magistrate judge aptly describes Management Directive (MD) 100.4 as having been "promulgated" to "implement the screening required by statute and regulation" and rightly notes that MD 100.4 is "implemented" by the latest version of the SOPs. *Id.* at 4.

As explained below, (1a) the challenged cash-screening policies are not "orders" resulting from adjudications as described in § 46110 and Chapter 461. But by its text, § 46110 only applies to orders, not rules. Nor are the challenged policies (1b) "orders" under the APA; they are instead generally applicable "rules" developed through (secret) TSA "rule making" and not individualized "orders" developed through "adjudication." In finding otherwise, (1c) the magistrate judge wrongly focused on the "finality" of the challenged cash-screening policies rather than whether they are "orders" or "rules"

5

under the APA. There are final rules and final orders; Plaintiffs here challenge a final rule. There is no dispute that the challenged policies are "final agency actions" for purposes of APA review. But finality is merely a *necessary* condition that needs to be satisfied before deeming agency action an "order." Finality is not *sufficient* for such a finding because finality does not differentiate between final orders and final rules. Based on the plain language of the APA and Chapter 461, as well as the controlling case law, the challenged cash-screening policies are final rules, not final orders. Therefore, § 46110 does not apply to strip this court of jurisdiction. Moreover, (2) the nonbinding authorities cited by the magistrate judge are simply not persuasive because they fail to meaningfully engage with the text of § 46110 or Chapter 461, fail to harmonize their interpretation with the meaning of the term "order" in the APA, and simply handwave any discrepancies by reciting case law declaring that the term "order" should be interpreted broadly. But (3), if the Court does embrace the holdings of those circuits, the absence of factual findings or any factual record in TSA's thin administrative record is itself dispositive—even the circuits relied on by TSA and the magistrate judge for their capacious interpretation of "order" in § 46110 have held that *the availability of a factual record for review is the jurisdictional touchstone* for § 46110. Finally, (4) even if all challenges brought against TSA were subject to § 46110 (they are not), binding precedent permits general collateral challenges to unconstitutional agency policies or practices to be brought in district courts, notwithstanding applicable claim-channeling provisions, so this Court would still retain jurisdiction even if the challenged cash-screening policies are "orders" under § 46110.

1. **Generally applicable rules developed through rule making—like the challenged cash-screening policies—are not "orders" under Chapter 461, the APA, or binding precedent.**

Whether reading the text of § 46110 alone, or as part of the unified statutory scheme in Chapter 461, or within the broader context of administrative law using terms defined by the APA, the generally applicable screening policies challenged by Plaintiffs are not the sorts of adjudicative orders

described in § 46110. The Third Circuit's binding precedents on both § 46110 and the meaning of "order" under the APA further serve to confirm this.

First, an analysis of the text of both § 46110 and its broader statutory scheme in Chapter 461 of Title 49 makes clear that "orders" are issued by TSA after adjudicative proceedings involving parties, production of evidence, and findings of fact, none of which happened here. Second, the APA's definitions make clear that rules like the challenged cash-screening policies are not orders because, unlike rules, "orders" are developed through adjudication, not rule making. And Third Circuit precedent confirms this bright-line distinction, directing courts to look at the APA for guidance in interpreting § 46110 and making clear that "rules" are not "orders" and vice-versa.

### a. The challenged cash-screening policies are not "orders" as described in Section 46110 or Chapter 461.

This Court must "begin [its] analysis with the plain language of the statute." *See CFPB v. Nat'l Collegiate Master Student Loan Tr.*, 96 F.4th 599, 609 (3d Cir. 2024); *accord Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999). Here, the text of the statute and the normal meaning of the word "order" establish that the challenged TSA policies do not fall under Section 46110.

Start with context. "[A] word is given more precise content by the neighboring words with which it is associated" to "avoid[ ] ascribing to one word a meaning so broad that it is inconsistent with the company it keeps." *Fischer v. United States*, 603 U.S. 480, 487 (2024) (cleaned up).

The text of the statute itself and its accompanying statutory scheme in Chapter 461 of Title 49 establish that Congress intended for § 46110 to be limited to channeling appeals of "orders" issued after adjudicative proceedings that:

- are "conduct[ed]" by the Secretary of the Department of Transportation (DOT), the Administrator of TSA, the Administrator of FAA, or one of their designees, *see* §§ 46102(a), 46104(e), 46110(d);

7

- are initiated by "fil[ing] a complaint in writing" with DOT, TSA, or FAA (or an investigation initiated by DOT, TSA, or FAA), *see* § 46101(a);

- involve persons "appear[ing] and be[ing] heard" either "in person or by an attorney[,]" *see* § 46102(b);

- require that "[o]fficial action" taken by DOT, TSA, or FAA "shall be recorded," *see* § 46102(c);

- "shall be open to the public on the request of an interested party[,]" *see id.*;

- prohibit conflicts of interest such as participating in a proceeding "in which the individual has a pecuniary interest[],]" *see* § 46102(d);

- require "service of notice and process" by specified methods, and on designated agents (for corporate entities), *see* § 46103(a)–(c);

- develop evidence based on discovery procedures such as "subpoena[ing] witnesses and records," "administer[ing] oaths," "examin[ing] witnesses," and "receiv[ing] evidence," including "testimony by deposition" that is "under oath" and wherein "the party or the attorney of the party proposing to take the deposition must give reasonable notice in writing to the opposing party or the attorney of record of that party . . . stat[ing] the name of the witness and the time and place of taking the deposition[,]" *see* § 46104(a)–(c);

- "[o]n request of a party," involve DOT, TSA, or FAA "hear[ing] or receiv[ing] argument[,], *see* § 46104(e);

- require the parties to making timely "objection[s] . . . in the proceeding conducted by [DOT, TSA, or FAA]," *see* § 46110(d);

- permit a "person interested in or affected by a matter under consideration" to "be

8

joined as a party or permitted to intervene in the proceeding," *see* § 46109;

- results in an "order" of the DOT, FAA, or TSA, *see* §§ 46105(b), 46110(a), that is:

  o "issued," *see* § 46110(a);

  o supported by "findings of fact" that are "conclusive" if they are "supported by substantial evidence," *see* §§ 46105(b), 46110(c);

  o accompanied by "a record[,]" *see* § 46110(b); *see also* § 46102(c);

  o subject to review "not later than 60 days after the order is issued" by filing a petition for review in the D.C. Circuit or the court of appeals where the person resides or has their principal place of business, *see* § 46110(a).

Further, a common-sense understanding that the term "order" means the same thing in each subsection of Chapter 461 is buttressed by a foundational canon of statutory construction: "there is a presumption that a given term is used to mean the same thing throughout a statute." *Brown v. Gardner*, 513 U.S. 115, 118 (1994); *see also Comm'ns Workers of Am. v. Beck*, 487 U.S. 735, 754 (1988) ("In the face of such statutory congruity, only the most compelling evidence could persuade us that Congress intended the nearly identical language of these two provisions to have different meanings."); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 252 (2012) (confirming same). Therefore, there is only one type of order described in Chapter 461, and it is the type of individualized, adjudicative order described in both §§ 46105(b) and 46110(c) as being based on "[f]indings of fact," after "the proceeding conducted by [the TSA administrator],"§ 46110(d); *see also* 46102(a), in which both "argument[s]" and "objection[s]" can be made, §§ 46104(e), 46110(d), and evidence may be subpoenaed, records may be ordered produced, and witnesses examined under oath in deposition or otherwise. § 46104(a)–(c).

These statutory "[w]ords matter," especially since "Congress provided an expressly local definition" of the words at issue here, *Pellegrino v. TSA*, 937 F.3d 164, 178, 180 (3d Cir. 2019) (en banc),

9

including a detailed description of "order" in § 46105(b) that, without explicitly labeling itself as a "definition," provides a clear working definition consistent with the APA: "An order of the [TSA Administrator] shall include the findings of fact on which the order is based and shall be served on the parties to the proceeding and the persons affected by the order." And "[w]here the statutory language is clear, [a court's] sole function is to enforce it according to its terms." *Rake v. Wade*, 508 U.S. 464, 471 (1993) (cleaned up). But even "[t]he lack of a statutory definition of a word does not necessarily render the meaning of a word ambiguous, just as the presence of a definition does not necessarily make the meaning clear." *Goldstein v. SEC*, 451 F.3d 873, 878 (D.C. Cir. 2006). Rather, "[t]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). And we have such context from both Chapter 461 as a whole and the fact that "orders" are formally defined in the APA, 5 U.S.C. § 551(6), *see infra* subsection (b).

None of what is described in § 46110 or its Chapter 461 companion statutes as an "order" remotely resembles the generally applicable cash-screening policies challenged by Plaintiffs in this lawsuit. Not even one of the steps detailed above was followed for the challenged portions of MD 100.4 or the SOPs. That's not because of sloppiness or corner-cutting by either side; it's because TSA (secretly) developed a rule, not an order. And Plaintiffs never filed any underlying complaint with TSA nor subjected themselves to any adjudication before TSA about these challenged policies (nor were they required to do so). So TSA could not have formulated an order based on (non-existent) proceedings, nor made "the findings of fact on which the order is based." § 46105(b). That is particularly problematic for TSA because the Third Circuit has noted that "the findings of fact made by the TSA" are a defining feature of "such orders" under § 46110. *Vanderklok v. United States*, 868 F.3d 189, 208 (3d Cir. 2017). And that is why such extensive discovery was necessary in this case—

10

there was never any underlying adjudication, no findings of fact, no record of proceedings. Instead, because the challenged cash-screening policies were not "orders," but rules developed via secret rule-making, Plaintiffs had to conduct discovery just to obtain the actual written policies in the SOPs regarding cash that implement MD 100.4, as well as take depositions of numerous TSA officials to establish how TSA interprets and implements those policies.

In short, § 46110 only applies where there is an underlying agency adjudication to appeal, but neither TSA nor the magistrate judge could identify *any* adjudication related to the cash-screening policies. That's because there is no such adjudicative proceeding in the record. The magistrate judge's recommendation thus "hits the immutable obstacle of [§ 46110's] text." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 814 (2024).

### b. The APA's definitions of order, rule, adjudication, and rule making foreclose TSA's proposed interpretation, as confirmed by Third Circuit precedent.

The APA governs administrative law, such as how rules and orders are issued, challenged, and potentially overturned. Aiding in that process, § 551 of the APA provides definitions for terms frequently used in administrative law regarding how agencies develop and issue rules and rulings. The APA definitions make clear that "'order' means the whole or part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but including licensing," 5 U.S.C. § 551(6), while "'adjudication' means agency process for the formulation of an order." § 551(7); *accord Shea*, 934 F.2d at 43 ("'Orders' are generally issued as a result of an adjudicatory proceeding[.]"). These terms are defined in contrast to "rule" ("the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency . . .") and "rule making." 5 U.S.C. § 551(4)–(5).

Like other circuits, the Third Circuit recognizes the bright-line distinction between "orders" and "rules": "[I]n administrative law, orders are not rules; the two are mutually exclusive." *Robert W.*

11

*Mauthe MD PC*, 58 F.4th at 100–01 (Phipps, J., concurring) ("The rule-order distinction is a fault line in administrative law: it separates two adjacent concepts that together comprise a continental foundation for regulation by administrative agencies."); *see Shea,* 934 F.2d at 43; *Pension Benefit Guar. Corp. v. Saint-Gobain Corp. Benefits Comm.*, 2013 WL 5525693, at *3 n.2 (E.D. Pa. Oct. 4, 2013) ("An 'order' is formulated by an agency through an 'adjudication.'").[1]

Moreover, the Third Circuit has applied this understanding to § 46110, noting with approval that "[i]n interpreting the term 'order' as used in this section, some courts have looked to the use of the term in the [APA]," which "broadly defines 'order' as 'the whole or part of a final disposition . . . of an agency in a matter other than rulemaking[.]'" *Aerosource,* 142 F.3d at 577 n.8 (quoting 5 U.S.C. § 551(6)). In the same opinion, the Third Circuit again noted that "the courts have looked to the [APA] in defining the term 'order' for purposes of appeal under section 1486 [the predecessor to §46110(a)]," *id.* at 574 n.1, and recognized that "similar principles apply under both statutes." *Id.* at 581. The Court should follow the Third Circuit's guidance and not the recommendation of the magistrate judge.

### c. The magistrate judge wrongly focused on the "finality" of the challenged cash-screening policies, which is a necessary but insufficient quality of agency "orders."

Plaintiffs do not dispute that the challenged cash-screening policies are final agency actions. Crucially, though, they are final rules, not final orders. Nonetheless, the report and recommendation focuses exclusively on whether the challenged policies were "final" and sufficiently formal, ECF 227 at 10–11, noting that "to be reviewable under section 46110(a), an 'order' must be final, *but need not be a formal order, the product of a formal decision-making process*, or be issued personally by

---

[1] *See also W & T Offshore, Inc. v. Bernhardt*, 946 F.3d 227, 237, 239 (5th Cir. 2019) (agency action was a rule—even though the agency labeled it an "order"—because it involved the "creation and uniform application of a new methodology"); *Safari Club Int'l v. Zinke*, 878 F.3d 316, 333 (D.C. Cir. 2017) ("determination" about importing ivory was a "rule" because it "applied to all potential imports of sport-hunted elephant trophies from Zimbabwe" and did not "adjudicate any dispute between specific parties"); *Yesler Terrace Cmty. Council v. Cisneros*, 37 F.3d 442, 448 (9th Cir. 1994) (agency action was a rule because it "affected the rights of a broad category of individuals not yet identified").

the Administrator. Of course, it also must impose an obligation, deny a right, or fix some legal relationship." *Id.* at 11 (emphasis in original) (quoting *Aerosource*, 142 F.3d at 578). But the magistrate judge seems to have failed to consider that finality might be a necessary but insufficient condition to qualify as a final order. That's because there are "final" agency actions other than orders, such as rules. *See* 5 U.S.C. § 551(4). As the Ninth Circuit noted in *Southern California Aerial Advertisers' Association v. FAA*—a case cited by and relied upon in *Aerosource*—there are "**three factors** relevant to th[e] determination" of "whether agency action is an 'order' within the meaning of [the precursor statute to § 46110]" 881 F.2d 672, 675 (9th Cir. 1989) (emphasis added). Only one of those three factors was finality. *Id.* at 675–676. Notably, the other two factors were whether it met the definition of an "order" in § 551(6) of the APA, *id.* at 675, and "the adequacy of the administrative record." *Id.* at 676.

The magistrate judge's reliance on *Aerosource* is misplaced because that case was fundamentally about whether particular agency actions—namely the FAA's issuance of a Service Difficulty Report (SDR) and a related alert regarding deficient repairs by Aerosource, along with letters refusing to withdraw those advisory warnings—was sufficiently formal and final to constitute a "final agency action." 143 F.3d at 581–82. But those issues are simply not present in this case—Plaintiffs do not contend that the formal, written SOPs and MD 100.4 are insufficiently formal or final. Instead, Plaintiffs stress that the challenged policies are not an adjudicative "order," and are thus outside the scope of the claim-channeling provision. Moreover, unlike this case—which challenges broadly applicable screening policies that have been in place nationwide for years—*Aerosource* was about an individualized adjudication regarding the FAA's issuance and possible withdrawal of advisory warnings about Aerosource's deficiencies. The Third Circuit found that those advisory warnings were tentative and indicative of an ongoing investigation, and that the letters failed to impose an obligation, deny a right, or fix some legal relationship, so were not reviewable under § 46110. *Id.* at 579–81. That conclusion has no bearing here, as neither party contends that TSA's cash-screening policies are

13

tentative or fail to impose requirements on TSA Screeners that affect passengers traveling with "large" amounts of cash.

To be clear, Plaintiffs are *not* objecting to any lack of formality or finality of the challenged cash-screening policies, which are formal, written policies contained in MD 100.4 and specific chapters of the SOP, and which are regularly distributed to all TSA Screeners and are in their umpteenth iteration. The problem here is not a difference in degree, but a difference in kind. No matter how formal or final these policies may be, they are simply not "orders" arising from an adjudication anything like what is described in § 46110 or Chapter 461.

The report and recommendation's focus on the "finality" of challenged orders fails to address the central problem with TSA's argument, which is that the challenged cash-screening policies are not "orders" developed via adjudication before the agency.

### 2. The out-of-circuit precedent cited by the magistrate judge is unpersuasive, offering cursory reasoning that fails to engage with the text of the statute, the statutory scheme, and the APA.

The magistrate judge pointed to six circuits that have purportedly "held that TSA policies are final orders for purposes of Section 46110." *See* ECF 227 at 10–11. Only four of those circuits discussed Section 46110 and TSA's SOPs. Four of the six circuits conflated finality with the antecedent question of what constitutes an "order" under Section 46110. One case, from the First Circuit, involved an actual "order" under Section 46110 because it arose from TSA's adjudication (and denial) of a traveler's request for individualized accommodation from its SOPs. Most importantly, none of the six circuits analyzed the text of Section 46110 nor the companion statutes in Chapter 461.

*Ninth Circuit.* In *Gilmore v. Gonzales*, the plaintiff sued in district court to challenge the government's "airline passenger identification policy" as unconstitutional. 435 F.3d 1125, 1129 (9th Cir. 2006). On appeal, the government argued the district court lacked jurisdiction under 49 U.S.C. § 46110. *Id.* at 1131. To determine whether the challenged policy in the security directive was an

14

"order" under Section 46110, the Ninth Circuit cited its precedent regarding Section 46110's predecessor statute that the word "order" is "given a broad construction" and that "finality is key" to the analysis. *Id.* at 1132. The Ninth Circuit then cited extra-textual factors from its precedent, such as whether the agency "fixes some legal relationship" or provides "a 'definitive' statement of [its] position." *See id.* The Ninth Circuit then concluded the security directive was final based on those extratextual factors, and was therefore an "order" under Section 46110. *See id.* The Ninth Circuit did not analyze the text of Section 46110 or its companion statutes in Chapter 461, and it mistakenly concluded finality is sufficient for showing that agency action is an "order" under Section 46110—the same error the magistrate judge made here.

*Eleventh Circuit.* In *Corbett v. United States*, the plaintiff sued in district court to challenge TSA's SOPs. 458 F. App'x 866, 868 (11th Cir. 2012) (per curiam). On appeal, the Eleventh Circuit affirmed the district court's dismissal under Section 46110. *Id.* at 870. In doing so, the Eleventh Circuit cited its prior precedent—in a case involving Section 46110's predecessor statute—for the proposition that "order" under Section 46110 is "construed broadly." *Id.* at 869 & n.1. The Eleventh Circuit looked to that same precedent regarding when an order is "final," such as when it imposes an obligation. *Id.* at 869. Relying exclusively on that precedent, the Eleventh Circuit specifically construed "order" broadly and noted the SOPs impose obligations on air passengers and employees. *Id.* at 870. Like the Ninth Circuit and the magistrate judge here, the Eleventh Circuit did not analyze the text of Chapter 461 and conflated finality with "order."

*D.C. Circuit.* In *Roberts v. Napolitano*, the plaintiff sued in district court to challenge TSA's SOPs. 463 F. App'x 4, 4 (D.C. Cir. 2012). On appeal, the D.C. Circuit cited its precedent that agency actions are "orders" under Section 46110 if "they are final, i.e., so long as they mark the consummation of the agency's decisionmaking process and determine rights or obligations or give rise to legal consequences." *Id.* at 4–5. Without analyzing the text, the D.C. Circuit concluded that the SOPs were

15

"orders" under Section 46110 because they "took effect without need for further agency action and 'give rise to legal consequences.'" *Id.* at 4. Again, the opinion contains no textual analysis of Chapter 461 and conflates finality with "order."

**Fourth Circuit.** In *Blitz v. Napolitano*, the plaintiffs sued in district court to challenge TSA's SOPs for checkpoint screening. 700 F.3d 733, 735 (4th Cir. 2012). On appeal, the Fourth Circuit rejected the plaintiffs' argument that TSA's SOPs are not an "order" under Section 46110. *Id.* at 739–40. While the Fourth Circuit stated that it had "no reason to look beyond the plain text of the statute," it did not actually analyze the text of the statute. *See id.* at 740. Instead, the Fourth Circuit looked to precedent regarding Section 46110's predecessor statute that an order is reviewable at the court of appeals when it is the "final disposition." *Id.* at 739–40 & n.6. It was enough for the court that the SOPs "conclusively settled the agency's position." *Id.* at 740. Once again, the opinion contains no textual analysis of Chapter 461 and conflates finality with "order."

**First Circuit.** In *Ruskai v. Pistole*, the petitioner bypassed the district court and filed a petition before the First Circuit, challenging TSA's "refusal to grant [a] requested accommodation" **and** TSA's SOPs. *See* 775 F.3d 61, 62–65 (1st Cir. 2014). To decide whether it had jurisdiction under Section 46110, the First Circuit noted that the petitioner and the government did not dispute that TSA's "refusal to grant [the petitioner's] requested accommodation" and "TSA's security protocol" are an order. *Id.* at 65. Without reference to the text, it then "agree[d]," citing *Blitz, Gilmore*, and circuit precedent that "order" under Section 46110 is interpreted "expansively." *Ruskai*, 775 F.3d at 65. Here, too, no textual analysis of Chapter 461. Regardless, *Ruskai* involved a genuine "order" under Section 46110 because, prior to the lawsuit, TSA adjudicated (and denied) Ms. Ruskai's individualized request for accommodation from its screening policies, not because the petitioner challenged the SOPs. *See id.* at 65–66.

**Seventh Circuit.** In *Muir v. TSA*, the plaintiff raised claims involving TSA's SOPs. *See* 2021

16

WL 231733, at *10–13 (C.D. Ill. Jan. 22, 2021). The district court concluded it lacked jurisdiction under Section 46110 to consider those claims. *See id.* at *11–12. The district court, however, did not analyze the text of Section 46110 or its companion statutes. Rather, it relied on circuits that have held TSA's SOPs are an "order" under Section 46110. *Id.* at *11. On appeal, the Seventh Circuit did not reach whether Section 46110 applies. *See Muir v. TSA*, 857 F. App'x 251, 253–54 & n.1 (7th Cir. 2021) (mem.).

In sum, while the magistrate judge points to six circuits, (1) only four of the six circuits discussed Section 46110 and TSA's SOPs (the First, Fourth, Eleventh, and D.C. Circuits); (2) four of the six circuits conflated finality with what an "order" is in the first place (the Fourth, Ninth, Eleventh, and D.C. Circuits); (3) one of the circuits (the First Circuit) decided a case that involved an actual adjudicative order under Section 46110; and (4) none of the six circuits analyzed the statutory text of Section 46110. These opinions err by interpreting "order" so broadly as to make practically *anything* issued by TSA or FAA an "order," thus depriving plaintiffs of district court jurisdiction even when they have never filed a complaint with TSA or FAA or otherwise initiated any adjudication proceeding with the agency resulting in any order to be appealed. Rather than rely on these inapplicable or unpersuasive out-of-circuit cases, this Court must "begin [its] analysis with the plain language of the statute," *see CFPB*, 96 F.4th at 609; *accord Hughes Aircraft Co.*, 525 U.S. at 438, as Plaintiffs do *supra* in subsections (1)(a)–(b).

3. **The unavailability of an adequate factual record for review—the jurisdictional touchstone for § 46110 according to circuits who embrace the expansive definition of "order"—also confirms this Court's jurisdiction.**

Alternatively, even if the Court relies on the circuits cited by TSA and the magistrate judge interpreting "order" expansively in § 46110, those circuits have held that "the availability of a record for review" is the "jurisdictional touchstone" for purposes of judicial review under § 46110 or its precursor. *Deutsche Lufthansa Aktiengesellschaft v. Civ. Aeronautics Bd.*, 479 F.2d 912, 916 (D.C. Cir. 1973);

17

*see also City of Rochester v. Bond*, 603 F.2d 927, 932 (D.C. Cir. 1979); *Sima Prods. Corp. v. McLucas*, 612 F.2d 309, 312 (7th Cir. 1980) ("order" is interpreted broadly under § 46110's precursor "providing an adequate administrative record has been compiled by the agency"); *S. Cal. Aerial Advertisers' Ass'n*, 881 F. 2d at 676 (citing "the adequacy of the administrative record" as one of three factors courts use to determine whether an agency action is an "order" reviewable under § 46110's precursor); *accord Aerosource*, 142 F.3d at 578 ("to be appealable, the 'order' must be predicated on an administrative record sufficient to allow a court to engage in a meaningful review of the order.")

Administrative records that contain little more than the challenged policy and related regulatory proposals have been found to be inadequate for review under § 46110's precursor statute, 49 U.S.C. § 1486(a). *See S. Cal. Aerial Advertisers' Ass'n*, 881 F.2d at 676 (Ninth Circuit finding that an FAA determination letter and a proposed FAA regulation were "not an adequate basis on which to rest a determination as to the substantive effect of the letter" under 49 U.S.C. § 1486(a) and ***declining to exercise appellate jurisdiction under § 1486(a)*** on the petitioner's claim that the determination letter was void because it violated a statutory requirement); *San Diego Air Sports Ctr., Inc. v. FAA*, 887 F.2d 966, 969 (9th Cir. 1989) (noting that on the limited record in *Aerial Advertisers*, the court had "limited review to procedural questions" and finding that "[t]he record in this appeal also consists of little more than the letter," before holding that: "***The limits of the record limit our jurisdiction***; we too confine ourselves to [the petitioner's] procedural arguments.") (emphasis added).

Here, Plaintiffs do not raise procedural challenges to how the challenged cash-screening policies were adopted but instead bring substantive challenges to their constitutionality and statutory validity. And TSA's administrative record (AR) here contains no factual findings or evidence whatsoever that bears on these substantive challenges, beyond the policies themselves. *See* AR, ECF 169-2, 169-3. None of the extensive factual record developed by Plaintiffs, *see* ECF 174 at 3–20; ECF 175, regarding (1) how TSA interprets and implements the challenged cash-screening policies, (2) how

18

TSA trains its Screeners about these policies, and (3) how TSA communicates about these policies directly to Screeners, such as in internal shift briefs, breakroom bulletins, and newsletter articles, is included in TSA's AR. The AR instead consists solely of 12 items: five versions of the written policies themselves (the "final agency action[s]" that Plaintiffs are challenging), and seven email reminders or updates about those policies. *See* AR Index, ECF 169-1; AR, ECF 169-2, 169-3. Specifically, the AR contains a copy of MD 100.4, a copy of now-repealed OD-400-54-6, three iterations of the screening SOPs, an email memo update about OD-400-54-6 being cancelled and replaced by the SOPs, four email memos reminding staff about the cash-screening policies (and attaching OD-400-54-6 or the SOPs), a March 2025 email from a TSA official entitled "Bulk Currency procedures" sent to six airport officials to provide "guidance" on TSA's cash-screening policies, and an May 2025 weekly email newsletter containing much the same information. *See* AR Index, ECF 169-1; AR, ECF 169-2, 169-3.

On the merits, TSA disputes what its written cash-screening policies mean, *see* ECF 171 at 21, 23–28, but the written policies themselves cannot offer more information than what they state, and the emails in the AR provide little or no factual information about that issue. *See* AR189–232, ECF 169-2, 169-3. And TSA also disputes how these written policies are actually implemented by its Screeners, *see* ECF 171 at 28-37, but there is zero information about that in the AR. *See* AR001–232, ECF 169-2, 169-3. Factual information about these disputes is contained only in the factual record developed by Plaintiffs in discovery and presented in support of their motion for summary judgment, as presented in their Concise Statement of Material Facts (SUMF), ECF 175, and the accompanying evidentiary material from depositions of TSA's designated Rule 30(b)(6) witnesses, TSA's training materials on these polices for Screeners, TSA's official records regarding six years of checkpoint "incidents" involving thousands of travelers with cash (including sample narratives from approximately 160 such incidents), emails between top TSA airport officials regarding such checkpoint "incidents" and how they implement these policies at their own airports, and communications directed

19

to TSA Screeners about discoveries of cash during checkpoint screening. *See* Plaintiffs' Opening MSJ Brief, ECF 174 at 3–20; SUMF, ECF 175; Appendix, ECF 176; Evidentiary Exhibits, ECF 176-03 thru 176-36 (containing the evidentiary record materials).

Thus, even if this Court decides to follow the line of cases that expansively interpret the term "order" in § 46110, it would still not be deprived of jurisdiction because the AR is inadequate for substantive review by an appellate court (without the additional factual development that Plaintiffs have developed in discovery) and thus the challenged cash-screening policies are not an "order" under that same line of cases.

> **4. Even if all "final agency actions" by TSA were subject to claim-channeling under § 46110, parties may still bring general collateral challenges to unconstitutional policies in district court.**

Even if the claim-channeling provision of § 46110 applied to all "final agency actions" by TSA (it does not), binding Supreme Court precedent still permits parties to bring "general collateral challenges to unconstitutional practices and policies used by the agency" in district court. *See McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 492 (1991) (permitting a general collateral attack to INS deportation procedures as violating due process despite a claim-channeling provision that applied to review of individual determinations); *Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 56–59 (1993) (a claim-channeling provision that applied to review of the denial of individual applications did not bar a general collateral attack challenging the validity of INS procedures for alien legalization); s*ee generally Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212 (1994) (noting that "[t]his Court previously has upheld district court jurisdiction over claims considered wholly collateral to a statute's review provisions and outside the agency's expertise" and citing examples (cleaned up)).

Relying on cases such as *McNary* and *Reno*, general collateral challenges to FAA policies or practices have been permitted to be brought in district court despite the claim-channeling provision of § 46110 or its precursor statute. *See,* e.g., *Mace v. Skinner*, 34 F.3d 854, 859 (9th Cir. 1994). As the

20

Ninth Circuit explained in *Mace*, "any examination of the constitutionality of [agency policies under § 46110's precursor] should logically take place in the district courts, as such an examination is neither peculiarly within the agency's 'special expertise' nor an integral part of its 'institutional competence.'" *Id.*; *see also Merritt v. Shuttle, Inc.*, 187 F.3d 263, 271 (2d Cir. 1999) ("a broad-based, facial constitutional attack on an FAA policy or procedure—in contrast to a complaint about the agency's particular actions in a specific case—might constitute appropriate subject matter for a stand-alone federal suit").

Therefore, in the absence of any underlying adjudication for Plaintiffs to appeal, nor any special agency expertise on matters of constitutional law, § 46110's claim-channeling provision does not prevent Plaintiffs from bringing this "general collateral challenge" to the constitutionality and statutory validity of the agency's cash-screening policies in this Court.

### B. Even if this Court now concludes that Section 46110 strips it of jurisdiction, it would be in the interest of justice to transfer this case to the court of appeals, and Rule 12(h)(3) does not "bar[] transfer."

Plaintiffs have long asked the Court to transfer their claims against TSA to the U.S. Court of Appeals under 28 U.S.C. § 1631 if the Court holds there is no jurisdiction under 49 U.S.C. § 46110.[2] *See* ECF 174 at 30; ECF 182 at 10–11. The report and recommendation rejected Plaintiffs' transfer request because Rule 12(h)(3) of the Federal Rules of Civil Procedure purportedly "bars transfer." *See* ECF 227 at 12 n.7. Plaintiffs object because Rule 12(h)(3) does not bar transfer, as demonstrated by several cases that have approved transfer in this very same context, and because the interests of justice favor transfer of Plaintiffs' claims against TSA if the Court concludes there is no jurisdiction.

Again, Plaintiffs request transfer under 28 U.S.C. § 1631 if this Court now concludes it lacks jurisdiction. That statute speaks in mandatory terms: "Whenever . . . [a federal] court finds that there is a want of jurisdiction, the court *shall*, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was

---

[2] Plaintiffs continue to object to the conclusion that 49 U.S.C. § 46110 applies. *See supra* Part I.A.

filed[.]" 28 U.S.C. § 1631 (emphasis added). As the Third Circuit explained, this statute "governs transfer when there is 'a want of jurisdiction.'" *Chavez v. Dole Food Co.*, 836 F.3d 205, 224 (3d Cir. 2016). So, even if "there is a want of jurisdiction," this Court must transfer to the U.S. Court of Appeals—the court "in which [the magistrate judge said] the action . . . could have been brought"— if doing so "is in the interest of justice." *See* 28 U.S.C. § 1631.

Here, it is in the interest of justice to transfer to the U.S. Court of Appeals so as not to waste judicial and party resources after six years of litigation—four of which were spent in intensive discovery—and the development of a complete record, which includes the transcripts of Rule 30(b)(6) depositions of TSA officials about how TSA interprets and applies the challenged screening procedures, TSA records of thousands of checkpoint "incidents" involving travelers questioned, investigated, and temporarily seized by Screeners because they were traveling with cash, and hundreds of TSA training documents and internal emails from TSA officials providing instruction and guidance on how to implement the challenged cash-screening policies.

Indeed, under 28 U.S.C. § 1631, "[n]ormally transfer will be in the interest of justice because normally dismissal of an action that could be brought elsewhere is time-consuming and justice-defeating." *Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990) (cleaned up). It would be a waste of judicial and party resources to "dismiss the case and force the Plaintiffs to refile and restart in another jurisdiction" at this late stage. *See Farber v. Tennant Truck Lines, Inc.*, 84 F. Supp. 3d 421, 435 (E.D. Pa. 2015) (transferring under 28 U.S.C. § 1631). Indeed, the Third Circuit has held that a district court erred by refusing to honor the "statutory obligation to transfer" under Section 1631. *See Chavez*, 836 F.3d at 223–24; *see also, e.g.*, *Paul v. INS*, 348 F.3d 43, 47 (2d Cir. 2003) (holding the district court abused its discretion under 28 U.S.C. § 1631); *Miller*, 905 F.2d at 262 (similar). Thus, if the Court concludes it lacks jurisdiction, the Court should transfer the TSA portion of the case under 28 U.S.C. § 1631. Given the diversity of the plaintiffs (and the putative class), the D.C. Circuit may be the most

22

appropriate venue.

The lack of any prejudice to the government only underscores why transfer is in the interest of justice. At oral argument before the magistrate judge, TSA could not identify any prejudice associated with transfer. *See* ECF 232, Hr'g Tr., Feb. 5, 2026 at 29:3–19. The only discernable reason for TSA to urge dismissal instead of transfer is to prevent Plaintiffs from relying on the complete record in this case—including TSA's Rule 30(b)(6) testimony about how TSA interprets and applies their written cash-screening policies and TSA's internal records showing it violated the rights of hundreds or even thousands of travelers by detaining them at checkpoints because of their cash—in any action before the U.S. Court of Appeals. But TSA's apparent desire to start afresh and hamper judicial review of the merits is not in the interest of justice.

Despite the mandatory language in 28 U.S.C. § 1631 and precedent, the magistrate judge declined to analyze whether it is in the interest of justice to transfer because the magistrate judge believed Rule 12(h)(3) requires dismissal. *See* ECF 227 at 12 n.7. That was error.

Rule 12(h)(3) does not end the analysis. Notably, it does not expressly bar transfer. And it has instead been interpreted to permit transfer. In response to an argument that "the mandatory language of" Rule 12(h)(3) means a district court cannot transfer after it first concludes there is no jurisdiction, the Third Circuit concluded that "broad argument" was "weakened" after Congress authorized district courts to transfer under 28 U.S.C. § 1631—the same statute Plaintiffs rely upon here.[3] *See McLaughlin v. Arco Polymers, Inc.*, 721 F.2d 426, 428 (3d Cir. 1983). While lack of jurisdiction ordinarily results in dismissal, 28 U.S.C. § 1631 changes the analysis. *See Phillips v. Seiter*, 173 F.3d 609, 610 (7th Cir. 1999) (distinguishing the "ordinary course" from 28 U.S.C. § 1631). Specifically, if there is no jurisdiction, a

---

[3] The language of Rule 12(h)(3) at the time *McLaughlin* was decided differs from the language of Rule 12(h)(3) today, but the thrust of both is the same. *Compare McLaughlin*, 721 F.2d at 428 ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court **shall** dismiss the action."), *with* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

federal court must decide "whether to dismiss the case or, in the interest of justice, to transfer it to a court that has jurisdiction." *Tootle v. Sec'y of Navy*, 446 F.3d 167, 173 (D.C. Cir. 2006) (cleaned up) (discussing Rule 12(h)(3) and 28 U.S.C. § 1631); *accord Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988). So district courts within the Third Circuit correctly transfer under 28 U.S.C. § 1631 once they conclude there is no jurisdiction. *See, e.g., Farber*, 84 F. Supp. 3d at 435; *Steinfield v. EmPG Int'l, LLC*, 97 F. Supp. 3d 606, 616 (E.D. Pa. 2015). Rule 12(h)(3) does not bar transfer.

To the contrary, 28 U.S.C. § 1631 by its terms requires the Court to analyze whether transfer is in the interest of justice. The Third Circuit has held that "a district court that lacks personal jurisdiction must at least consider a transfer" under 28 U.S.C. § 1631. *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 132 (3d Cir. 2020). The same transfer rule applies for lack of jurisdiction under 49 U.S.C. § 46110, as demonstrated by several examples of cases transferred to appellate courts due to lack of jurisdiction under § 46110. *See, e.g.*, ECF 174 at 39 (citing *Amerijet Int'l, Inc. v. DHS*, 43 F. Supp. 3d 4, 21 (D.D.C. 2014)); *Nat'l Fed'n of Blind v. U.S. Dep't of Transp.*, 78 F. Supp. 3d 407, 414–16 (D.D.C. 2015); *TRE Aviation Corp. v. FAA*, 2015 WL 1538075, at *3–4 (D. Ariz. Apr. 7, 2015). Thus, the magistrate judge departed from binding and directly applicable precedent by not analyzing whether transfer is in the interest of justice and by declining to recommend transfer.

In sum, the magistrate judge erred by concluding that Rule 12(h)(3) bars transfer and by declining to recommend transfer under 28 U.S.C. § 1631. If this Court concludes it lacks jurisdiction under 49 U.S.C. § 46110 (and it should not), this Court should transfer Plaintiffs' claims against TSA to the U.S. Court of Appeals under 28 U.S.C. § 1631.

Before this Court does so, however, Plaintiffs respectfully request the opportunity to move to bifurcate the TSA and DEA portions of the case to avoid any unintentional transfer of Plaintiffs' claims against DEA.

**III. Plaintiffs Request That This Court Decide This Case on the Merits.**

If the Court agrees that it retains jurisdiction over this case, Plaintiffs respectfully request a ruling on the merits before this Court to avoid the delays occasioned by the report-and-recommendation-followed-by-objections process. This Court is the final decision-maker in this case and should rule directly on the merits rather than steering this case to another round of briefing requiring the magistrate judge to draft an initial report and recommendation followed by mini-appeals in the form of objections. This case has already been litigated for more than six years and ruling directly on the merits would help avoid any further delay.

To make those merits assessments, Plaintiffs respectfully request an in-person hearing on the merits of the parties' cross-motions for summary judgment before this Court.

## CONCLUSION

The Court should sustain Plaintiffs' objections to the magistrate judge's report and recommendation and hold an in-person hearing regarding the merits of the parties' cross-motions for summary judgment so that it may consider these matters directly without further delay.

Ultimately, if this Court wishes to rule directly on the cross-motions for summary judgment, it should (1) deny Defendants' motion for summary judgment; (2) grant summary judgment for Plaintiffs; (3) set aside and vacate TSA's Cash-Screening Policies under the APA; (4) enjoin TSA's Cash-Screening Policies; (5) declare TSA's Cash-Screening Policies unlawful and unconstitutional; and (6) order any such further relief, at law or in equity, to which Plaintiffs are justly entitled, including provisionally on behalf of the putative class, pending certification of that class.

In the alternative, if this Court finds that it lacks jurisdiction, Plaintiffs request that venue be transferred to a court of appeal in the interest of justice under 28 U.S.C. § 1631. Plaintiffs further request that before such transfer is ordered, they have an opportunity to move to bifurcate the TSA and DEA portions of the case to avoid any unintentional transfer of Plaintiffs' claims against DEA.

25

Dated:  March 4, 2026.

Respectfully submitted,

**INSTITUTE FOR JUSTICE**

*/s/ Dan Alban*
Dan Alban*
VA Bar No. 72688
dalban@ij.org

Jaba Tsitsuashvili*
DC Bar No. 1601246
jtsitsuashvili@ij.org

Robert Fellner*
DC Bar No. 90027493
rfellner@ij.org

Nick DeBenedetto*
NJ Bar No. 382442021
ndebenedetto@ij.org

901 North Glebe Road, Suite 900
Arlington, VA 22203
(703) 682-9320

Marco Vasquez Jr.*
TX Bar No. 24115892
mvasquez@ij.org

816 Congress Avenue, Suite 970
Austin, TX 78701
(512) 480-5936

*Admitted *Pro Hac Vice*

*Attorneys for Plaintiffs*

26

**CERTIFICATE OF SERVICE**

I hereby certify that on March 4, 2026, a true and correct copy of the foregoing document was filed via the Court's CM/ECF System and served upon all counsel of record.

<u>/s/ Dan Alban</u>

**CERTIFICATE OF COMPLIANCE**

Counsel for Plaintiffs certifies that this Brief complies with this Court's font and typesetting rules as set forth at LCvR 5.1(B) of the Local Rules of Court. Specifically, this Brief was written in Garamond 12-point font, which complies with this Court's requirement that filings be written in font that is no "smaller than 12 point word processing font." LCvR 5.1(B).

<u>/s/ Dan Alban</u>

27