**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| REBECCA BROWN, AUGUST TERRENCE ROLIN, STACY JONES-NASR, and MATTHEW BERGER, on behalf of themselves and all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> TRANSPORTATION SECURITY ADMINISTRATION; ADAM STAHL, in his official capacity as Senior Official Performing the Duties of the Administrator of the Transportation Security Administration; DRUG ENFORCMENT ADMINISTRATION; DEREK S. MALTZ, in his official capacity as Acting Administrator of the Drug Enforcement Administration; UNITED STATES OF AMERICA, <br><br> *Defendants*. | Civil Action No. 2:20-cv-64-MJH-KT |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS TO
REPORT AND RECOMMENDATION ON
<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................................1

BACKGROUND ...................................................................................................................................2

STANDARD OF REVIEW ..................................................................................................................3

ARGUMENT.........................................................................................................................................3

I.     The Challenged TSA Policies Are "Orders" Under 49 U.S.C. § 46110(a) ...............................4

        A.     Third Circuit Precedent and § 46110 Confirm that TSA's Challenged Policies Are "Orders" Subject to Direct Appellate Review.............................................4

        B.     The APA's Definition of "Order" Does Not Apply to § 46110(a) ...............................7

        C.     Judge Taylor Did Not Err in Concluding that Finality Is Dispositive ..........................9

II.    Every Federal Court to Have Considered the Issue Has Held that TSA's Challenged Policies Are Final Orders Under § 46110(a) ............................................................................11

III.   Purported Disputes over the Adequacy of the Administrative Record Do Not Confer Jurisdiction on This Court.............................................................................................14

IV.   Appellate Courts Retain Jurisdiction over Programmatic Challenges Under § 46110(a) ............................................................................................................................16

V.    Dismissal Is the Appropriate Remedy.....................................................................................18

CONCLUSION....................................................................................................................................21

## TABLE OF AUTHORITIES

**Cases**

*Aerosource, Inc. v. Slater,*
142 F.3d 572 (3d Cir. 1998) ..................................................................................................*passim*

*Am. Beef Packers, Inc. v. Interstate Com. Comm'n,*
711 F.2d 388 (D.C. Cir. 1983) ...........................................................................................19

*Avia Dynamics, Inc. v. FAA,*
641 F.3d 515 (D.C. Cir. 2011) ...........................................................................................13

*Bivens v. Six Unknown Named Agents,*
403 U.S. 388 (1971) ..............................................................................................................2

*Blitz v. Napolitano,*
700 F.3d 733 (4th Cir. 2012) .............................................................................................*passim*

*BP Am. Prod. Co. v. Burton,*
549 U.S. 84 (2006) ................................................................................................................5

*Chavez v. Dole Food Co., Inc.,*
836 F.3d 205 (3d Cir. 2016) ...............................................................................................19

*Corbett v. United States,*
458 F. App'x 866 (11th Cir. 2012) ............................................................................... 12, 17

*Danziger & De Llano, LLP v. Morgan Verkamp LLC,*
948 F.3d 124 (3d Cir. 2020) ...............................................................................................21

*Duncan v. Walker,*
533 U.S. 167 (2001) ..............................................................................................................6

*Durso v. Napolitano,*
795 F. Supp. 2d 63 (D.D.C. 2011) ...............................................................................13, 15–16

*Farber v. Tennant Truck Lines, Inc.,*
84 F. Supp. 3d 421 (E.D. Pa. 2015) ...................................................................................19

*Frey v. Town of Jackson,*
No. 19-cv-50-F, 2019 WL 13260516 (D. Wyo. Dec. 2, 2019) ...........................................12

*Gilmore v. Gonzales,*
435 F.3d 1125 (9th Cir. 2006) .......................................................................... 12, 14, 16–17

*Hayes v. Silvers, Langsam & Weitzman, P.C.,*
441 F. Supp. 3d 62 (E.D. Pa. 2020) ...................................................................................19

*Hindes v. FDIC*,
   137 F.3d 148 (3d Cir. 1988) ...........................................................................................9

*Inv. Co. Inst. v. Bd. of Governors of Fed. Rsrv. Sys.*,
   551 F.2d 1270 (D.C. Cir. 1977) .....................................................................................7

*Jumara v. State Farm Ins. Co.*,
   55 F.3d 873 (3d Cir. 1995) ...........................................................................................21

*Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*,
   26 F.3d 375 (3d Cir. 1994) ...........................................................................................19

*McLaughlin v. Arco Polymers, Inc.*,
   721 F.2d 426 (3d Cir. 1983) .........................................................................................21

*McNary v. Haitian Refuge Ctr., Inc.*,
   498 U.S. 479 (1991) ......................................................................................................16

*Mace v. Skinner*,
   34 F.3d 854 (9th Cir. 1994) ..........................................................................................17

*Merritt v. Shuttle, Inc.*,
   187 F.3d 263 (2d Cir. 1999) ..........................................................................................18

*Miller v. Hambrick*,
   905 F.2d 259 (9th Cir. 1990) .........................................................................................19

*Muir v. U.S. Transp. Sec. Admin.*,
   No. 1:20-cv-01280, 2021 WL 231733 (C.D. Ill. Jan. 22, 2021),
   *aff'd*, 857 F. App'x 251 (7th Cir. 2021)................................................................. 12, 18

*N.Y. Republican State Comm'rs v. SEC*,
   799 F.3d 1126 (D.C. Cir. 2015) ................................................................................. 7, 8

*Nat'l Fed'n of Blind v. U.S. Dep't of Transp.*,
   78 F. Supp. 3d 407 (D.D.C. 2015) .................................................................................5

*Nat'l Fed'n of the Blind v. U.S. Dep't of Transp.*,
   827 F.3d 51 (D.C. Cir. 2016) .........................................................................................7

*Paul v. I.N.S.*,
   348 F.3d 43 (2d Cir. 2003) .......................................................................................19–20

*Reno v. Cath. Soc. Servs., Inc.*,
   509 U.S. 43 (1993) ........................................................................................................16

*Roberts v. Napolitano*,
   463 F. App'x 4 (D.C. Cir. 2012) ...................................................................................12

*Rubin v. Islamic Republic of Iran*,
    583 U.S. 202 (2018) ..................................................................................................5

*Ruskai v. Pistole*,
    775 F.3d 61 (1st Cir. 2014) ................................................................................ 12, 14

*San Diego Air Sports Ctr., Inc. v. FAA*,
    887 F.2d 966 (9th Cir. 1989) ..........................................................................15–16

*Sebelius v. Cloer*,
    569 U.S. 369 (2013) .......................................................................................... 5, 13

*S. Cal. Aerial Advertisers Ass'n v. FAA*,
    881 F.2d 672 (9th Cir. 1989) .............................................................. 10–11, 15–16

*St. John's United Church of Christ v. City of Chicago,*
    502 F.3d 616 (7th Cir. 2007) ..................................................................................15

*Tootle v. Secretary of Navy*,
    446 F.3d 167 (D.C. Cir. 2006) ...............................................................................21

*Tulsa Airports Improvement Tr. v. FAA*,
    839 F.3d 945 (10th Cir. 2016) ................................................................................12

*Vanderklok v. United States*,
    868 F.3d 189 (3d Cir. 2017) .....................................................................................5

*Ventura v. Napolitano*,
    828 F. Supp. 2d 1039 (D. Minn. 2011) .............................................................. 6, 13

*Wisconsin Cent. Ltd. v. United States*,
    585 U.S. 274 (2018) ..................................................................................................5

**Statutes**

5 U.S.C. § 551 ................................................................................................................ 5, 7

5 U.S.C. § 701 ....................................................................................................................5

5 U.S.C § 702 .....................................................................................................................9

28 U.S.C. § 636 ............................................................................................................ 3, 21

28 U.S.C. § 1631 ........................................................................................................18–19, 21

49 U.S.C. § 114 ..................................................................................................................6

49 U.S.C. § 1486 ..............................................................................................................12

49 U.S.C. § 46101 ........................................................................................................4, 6–7

49 U.S.C. § 46102.................................................................................................................4, 6–7

49 U.S.C. § 46103.................................................................................................................4, 6–7

49 U.S.C. § 46104.................................................................................................................4, 6–7

49 U.S.C. § 46105....................................................................................................................*passim*

49 U.S.C. § 46110....................................................................................................................*passim*

Civil Aeronautics Act of 1938, Ch. 601, 52 Stat. 973 .............................................................. 6–7

**Other Authorities**

*Order*, Black's Law Dictionary 1298 (3d ed. 1933).........................................................................6

*Order*, 7 Oxford English Dictionary 183 (1933) ...........................................................................6

**INTRODUCTION**

After two rounds of briefing, and extensive discovery on topics that are no longer relevant to the remaining claims against the Transportation Security Administration ("TSA"), Magistrate Judge Taylor's Report and Recommendation correctly recognized that this Court lacks jurisdiction over Counts I and II, because Plaintiffs have brought their claims in the wrong forum.

Plaintiffs concede that, at bottom, their claims challenge a set of formal and final screening policies—TSA's Standard Operating Procedures ("SOPs") and Management Directive ("MD") 100.4. Yet every court to have reviewed challenges to TSA's screening SOPs and related security directives has held that such policies are "orders" for purposes of 49 U.S.C. § 46110(a), and that Congress has channeled exclusive review of such challenges to the courts of appeals. Plaintiffs nevertheless ask this Court to ignore that prevailing body of law entirely and construe the term "order," for purposes of § 46110(a), in a manner that the Third Circuit (amongst other courts of appeals) has squarely rejected. Plaintiffs' strained textual reading of § 46110(a), however, fails even on its own terms, as they ignore the plain meaning of "order" at the time of enactment and distort the procedural requirements for a certain type of TSA order issued under an entirely different provision into a universal definition of any and every order that TSA may issue. Plaintiffs then compound that error by attempting to conscript a general Administrative Procedure Act ("APA") definition onto every iteration of the term "order" throughout the U.S. Code, despite the fact that the APA post-dated the very statute that enacted the channeling provision at issue here.

The Court should thus adhere to Judge Taylor's recommendation and the uniform body of law rejecting Plaintiffs' tortured reading of the statutes TSA administers and dismiss Counts I and II for lack of subject-matter jurisdiction. It should likewise reject Plaintiffs' last-ditch attempt to salvage jurisdiction through purported disputes over adequacy of the administrative record and claims of programmatic challenges—all of which can be resolved by the appropriate court of appeals.

1

Finally, this Court should conclude that the interests of justice do not require transfer to the court of appeals. The Third Circuit has instructed that the ability to refile does not demand transfer, and Plaintiffs have provided no compelling or specific reason as to why party and judicial economy would be better served through transfer rather than dismissal.

Accordingly, for the reasons set forth below, this Court should adopt Judge Taylor's recommendation and dismiss the claims against TSA for lack of subject-matter jurisdiction.

## BACKGROUND

On January 15, 2020, Plaintiff Rebecca Brown (and her father, who is now deceased and no longer a party) filed the original complaint in this case, bringing official capacity claims against TSA, the TSA Administrator, the Drug Enforcement Administration ("DEA"), and the DEA Administrator, along with individual capacity claims against a DEA agent. *See* Compl., ECF No. 1. On July 17, 2020, Plaintiffs filed their First Amended Complaint, adding new plaintiffs Stacy Jones-Nasr (now Stacy Esposito) and Matthew Berger, seeking certification of a nationwide class under Rule 23(b)(2), and bringing three claims seeking declaratory and injunctive relief on behalf of the putative class. *See generally* First Am. Compl. ("FAC"), ECF No. 43. On March 30, 2021, the Court dismissed Count IV (which sought interest on the currency that was seized and held by DEA) and Count V (which sought damages against DEA Agent Steven Dawkin under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), and the Fourth Amendment). *See* Mem. Op., ECF No. 78. The only counts that survived were therefore Counts I–III, alleging official capacity claims against DEA and TSA. *Id.*[1]

---

[1] As of this filing, Judge Taylor has also recommended the dismissal of Count III against DEA. Plaintiffs' objections to that report and recommendation and DEA's responses are currently pending before this Court.

Following TSA's production of the administrative record and more than 9,000 pages of documents, Plaintiffs, at the summary-judgment stage, conceded that they were merely challenging "a series of formal, written policies," Pls.' Consolidated Mem. in Supp. of Cross-Mot. for Summ. J. ("Pls.' Opp.") at 3, ECF No. 174—effectively retracting the very allegations that had prompted discovery beyond the administrative record in the first place. Consequently, Defendants renewed their statutory subject-matter jurisdiction arguments under 49 U.S.C. § 46110(a), and Judge Taylor, in line with prevailing federal precedent, concluded that "the challenged TSA policies related to travelers carrying cash are squarely within the types of policies held to constitute final orders within other circuits, and is consistent with the definition of a final order as contemplated in [the Third Circuit's decision in] *Aerosource*." Report and Recommendation ("R&R") at 11, ECF No. 227. Accordingly, Judge Taylor's recommendation of dismissal is pending before this Court.

## STANDARD OF REVIEW

When a party files objections to a magistrate judge's findings and recommendations on a dispositive motion, a district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The district judge may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## ARGUMENT

Plaintiffs' objections to Judge Taylor's R&R reflect nothing more than a brazen attempt to circumvent binding Third Circuit precedent, the statutory text, and the prevailing body of federal law concluding that the challenged TSA policies are "orders" under § 46110(a) that can only be challenged in the appropriate court of appeals. Indeed, in spite of that prevailing precedent, Plaintiffs attempt to confer jurisdiction on this Court by invoking purported disputes about the adequacy of the administrative record and recasting their challenge as programmatic in nature. Neither attempt to

3

reframe the issue is defensible, and so, this Court should adopt Judge Taylor's recommendation and dismiss Counts I and II, as the interests of justice do not require transfer.

## I.   The Challenged TSA Policies Are "Orders" Under 49 U.S.C. § 46110(a)

Judge Taylor did not err in concluding that the challenged TSA policies are "orders" under § 46110.  That conclusion is bolstered by binding Third Circuit precedent and the plain text of § 46110—both of which confirm that finality is dispositive for determining what constitutes an "order" that must be challenged in the courts of appeals.

### A.   Third Circuit Precedent and § 46110 Confirm that TSA's Challenged Policies Are "Orders" Subject to Direct Appellate Review

Plaintiffs principally argue that the TSA SOPs and MD are not "orders" for purposes of § 46110, because they do not satisfy certain procedural requirements for adjudicative proceedings identified elsewhere in Chapter 461.  *See* Pls.' Objs. to R&R on Cross-Mots. for Summ. J. ("Pls.' Objs.") at 7–10, ECF No. 233 (citing 49 U.S.C. §§ 46101–46105(b)).[2]  But as Judge Taylor correctly recognized, the uniform consensus of every federal court to have considered this issue—including binding Third Circuit precedent in *Aerosource, Inc. v. Slater*, 142 F.3d 572 (3d Cir. 1998)—forecloses Plaintiffs' strained textual argument.  *See* R&R at 11.  Indeed, the Third Circuit rejected a narrow definition of "order" that would encompass only determinations in administrative adjudications served by the Administrator on parties to that adjudication (as would be required under § 46105(b)), holding, instead, that an "order" under § 46110 "must be final, but need not be a formal order, the

---

[2] Although Plaintiffs cite other provisions within Chapter 461 for the proposition that "orders" under § 46110 must be the result of adjudicative proceedings, the only section that includes a description of "orders" is § 46105(b), which, for reasons explained below, is textually insufficient to upend prevailing precedent.  *See infra.*  Regardless, the remaining sections that Plaintiffs cite—many of which do not even include the term "order"—do not *require* administrative proceedings to take place.  *See, e.g.*, 49 U.S.C. § 46101(a) ("person may file a complaint"); *id.* § 46102(a) (Administrators "may conduct proceedings"); *id.* § 46102(b) ("person may appear and be heard"); *id.* § 46104(e) (designated appointee "may conduct a hearing"); *id.* § 46102(c) (requiring recording and/or public access if the Secretary conducts a proceeding); *id.* § 46103(a)–(c) (providing instruction for designation and service).

product of a formal decision-making process, or be issued personally by the Administrator." *Aerosource*, 142 F.3d at 577–78. Here, Plaintiffs concede that "the challenged cash-screening policies are final agency actions." Pls.' Objs. at 12. Thus, as Judge Taylor correctly recognized, "the challenged TSA policies related to travelers carrying cash . . . is consistent with the definition of a final order as contemplated in *Aerosource*." R&R at 11. That is the end of the matter.[3]

Even if Plaintiffs' textual construction were not foreclosed by precedent (it is), it fails on its own terms because § 46105(b) does not purport to define the term "order," much less for all of Chapter 461. When Congress defines a term for use throughout a particular chapter of the U.S. Code, it states as much. In the APA, for example, Congress included sections titled "Definitions," which specified what terms "mean[]" "[f]or the purpose of this subchapter." 5 U.S.C. §§ 551, 701(b). "Had Congress likewise intended" § 46105(b) "to have such an effect, it knew how to say so." *Rubin v. Islamic Republic of Iran*, 583 U.S. 202, 216 (2018). But here, Congress did no such thing, as § 46105(b) merely prescribes certain procedural requirements for the specific category of orders addressed in that section. Accordingly, Plaintiffs' repeated exhortations for this Court to follow an explicit definition miss the mark, *see* Pls.' Objs. at 9–10—there is no definition to follow. *See Nat'l Fed'n of Blind v. U.S. Dep't of Transp.*, 78 F. Supp. 3d 407, 412 (D.D.C. 2015) ("section 46110 does not" "contain a definition of order").

In these circumstances, then, "'statutory terms are generally interpreted in accordance with their ordinary meaning.'" *Sebelius v. Cloer*, 569 U.S. 369, 376 (2013) (quoting *BP Am. Prod. Co. v. Burton*, 549 U.S. 84 (2006)). *See also Wisconsin Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018) (In interpreting

---

[3] *Vanderklok v. United States*, 868 F.3d 189 (3d Cir. 2017), did not purport to define "orders" for purposes of § 46110, as Plaintiffs contend. *See* Pls.' Objs. at 10. That case instead emphasized that Congress has the power to "tailor any remedy to the problem perceived" and thus "chose to limit the scope of judicial review of TSA actions." *Vanderklok*, 868 F.3d at 208. That is precisely why this Court should not expand its own jurisdiction contrary to Congress's carefully tailored review scheme.

a statute, "words generally should be 'interpreted as taking their ordinary, contemporary, common meaning . . . at the time Congress enacted the statute.'" (citation omitted)).  Here, when the operative language in § 46110(a) was first enacted in 1938, *see* Civil Aeronautics Act of 1938, Ch. 601, § 1006(a), 52 Stat. 973, 1024, the ordinary meaning of the term "order" included "a command or direction authoritatively given," *Order*, Black's Law Dictionary 1298 (3d ed. 1933) ("[a] mandate, precept; . . . a rule or regulation"); *see also Order*, 7 Oxford English Dictionary 183 (1933) ("[t]he action or an act of ordering; regulation, direction, mandate").  TSA's screening SOPs and MD 100.4 fall squarely within this definition: they are commands and directions authoritatively given to TSA screeners with which passengers must then comply.  *Ventura v. Napolitano*, 828 F. Supp. 2d 1039, 1043 (D. Minn. 2011) ("The [SOP] is TSA's final decision on the issue, and it imposes consequences on passengers who refuse to comply with it.").  Plaintiffs offer no contemporaneous plain-meaning definition to the contrary, resting solely on secondary, contextual arguments that improperly nullify other provisions within § 46110.

Indeed, the relevant statutory language and context confirm that "order" in § 46110 encompasses the policies challenged here.  By its terms, § 46110(a) applies to an "order issued by . . . the Administrator . . . in whole or in part under this part, part B, or subsection (*l*) or (r) of section 114."  Subsection (*l*) of § 114 is entitled "Regulations," 49 U.S.C. § 114(*l*), and general regulations addressing security procedures and requirements are the subject of that subsection, *see, e.g.*, *id.* § 114(*l*)(2) (describing emergency procedures).  Accordingly, the reference in § 46110 to an "order issued . . . in whole or in part under . . . subsection (*l*) or (r)" necessarily encompasses generally applicable procedures like TSA's SOPs and MD 100.4.  Plaintiffs' contrary position, which would limit orders to a narrow category of final determinations in administrative adjudications, improperly renders this part of § 46110 a nullity.  Courts, however, must "give effect, if possible, to every clause and word of a statute." *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (citations omitted).  Thus, even if the Court

6

were writing on a blank slate (and it is not, given the Third Circuit's authoritative rejection of Plaintiffs' position), Plaintiffs' contextual reading of the statute would still fail.

**B.      The APA's Definition of "Order" Does Not Apply to § 46110(a)**

Plaintiffs next argue that § 46110(a) imports the APA's definition of "order," which is generally limited to adjudicatory proceedings, and thus, the TSA SOPs and MD 100.4 must represent "rules," under APA parlance. *See* Pls.' Objs. at 11–12. That argument makes no sense as a matter of basic chronology. The operative language in § 46110(a) relating to "orders" grants appellate courts exclusive jurisdiction over challenges to certain orders. That jurisdictional language was first enacted in the 1930s through the Civil Aeronautics Act of 1938, 52 Stat. at 1024, roughly a decade before Congress passed the APA. Thus, it is simply not credible to suggest that Congress in 1938 intended to channel claims stemming from TSA orders under § 46110(a), based on a definition of order contained in a different statute passed by a different Congress over a decade later.

Plaintiffs' argument also makes no sense as a matter of plain text. They contend that the definitional section of the APA, 5 U.S.C. § 551—and, specifically, the APA's definition of "order," *id.* § 551(6)—applies uniformly throughout the U.S. code, *see* Pls.' Objs. at 11. The problem, though, is that the APA expressly says otherwise: it limits its definitions to "this subchapter," meaning the APA itself. 5 U.S.C. § 551. For this reason, courts routinely reject the argument that the APA defines "order" for all statutory purposes. *See, e.g.*, *Nat'l Fed'n of the Blind v. U.S. Dep't of Transp.*, 827 F.3d 51, 55 (D.C. Cir. 2016); *N.Y. Republican State Comm'rs v. SEC*, 799 F.3d 1126, 1132 (D.C. Cir. 2015) ("*NYRSC*"); *Inv. Co. Inst. v. Bd. of Governors of Fed. Rsrv. Sys.*, 551 F.2d 1270, 1278 (D.C. Cir. 1977).

The D.C. Circuit's decision in *NYRSC* is instructive on this point. There, the court considered a similar statutory scheme, the Investment Advisers Act, which authorized the Securities and Exchange Commission ("SEC") to "proceed by 'order' or 'regulation,'" and allowed any aggrieved party to "'obtain review of such order' in an appropriate court of appeals." *NYRSC*, 799 F.3d at 1132

7

(citation omitted). Like Plaintiffs here, the plaintiffs in *NYRSC* sought to "apply the 'definitions' section of the Administrative Procedure Act broadly to hold that the word 'order' in the Investment Advisers Act's review provision cannot mean 'rule.'" *Id.* The D.C. Circuit squarely rejected that argument, concluding that "it makes sense to read [the term order] broadly in the context of direct review provisions unless a statute has separate review provisions for 'rules' and 'orders.'" *Id.* In other words, "[t]he multi-purpose Administrative Procedure Act's definitions distinguishing between a 'rule' and an 'order' are directed generally at [the APA]," "expressly apply only to '[that] subchapter,'" and do not present "a compelling reason to ignore this court's precedent specific to direct appellate review provisions in statutes like the Investment Advisers Act, enacted before the Administrative Procedure Act, when rulemaking was not yet a common method of agency decision making." *Id.* Here too, the Court should reject Plaintiffs' identical attempt to import a generic definition of "order" from the APA into § 46110's specific channeling provision, when that provision preceded the passage of the APA, and where Plaintiffs' interpretation would nullify portions of § 46110. *See supra* § I.B. (explaining that § 46110, which covers an "order issued . . . in whole or in part under . . . subsection (*l*) or (r)," necessarily encompasses generally applicable procedures like TSA's SOPs and MD 100.4).

Plaintiffs nevertheless invoke a passing reference in two footnotes within *Aerosource*—in which the Third Circuit recognized that *other* courts have looked to the term "order" in the APA, 142 F.3d at 574 n.1, 577 n.8—to support their strained reading of the text. To be sure, the Third Circuit did not adopt the approach of those other courts, as Plaintiffs suggest. Rather, the Third Circuit held that "to be reviewable under section 46110(a), an 'order' must be final, but need not be a formal order, the product of a formal decision-making process, or be issued personally by the Administrator." *Id.* at 578. In other words, the Third Circuit adopted the APA's concept of *finality* when defining "order" for purposes of § 46110(a). *See id.* ("[A] finding that [agency] actions, or any one of them, is final is not precluded by their lack of formality, . . . the lack of a formal hearing in this case, . . . or the fact

8

that the Administrator did not personally issue the letters. . . .  Thus, the focus of our inquiry is on whether one of these actions had the type of effect required of a 'final' agency action."). It did not, as Plaintiffs contend, graft wholesale the APA's definition of "order" onto § 46110(a) through footnotes that make mere mention of what *other* courts have considered.

As a last resort, Plaintiffs misleadingly point to language in *Aerosource* that suggests that "similar principles apply," when comparing the APA and § 46110(a).  *See* Pls.' Objs. at 12 (citing *Aerosource*, 142 F.3d at 581).  But Plaintiffs' invocation of that comparison ignores the relevant context.  There, the Third Circuit's comparison of 5 U.S.C § 702 (the APA's venue-related provision) and 49 U.S.C. § 46110(a) (the statute-specific channeling provision) turned on whether the Federal Aviation Administration's letter (in *Aerosource*) and the Federal Deposit Insurance Corporation's notice (in *Hindes v. FDIC*, 137 F.3d 148 (3d Cir. 1988)) constituted final agency action.  *See Aerosource*, 142 F.3d at 581.  Put differently, the discussion by the Third Circuit makes clear that the "similar principles" that apply to 5 U.S.C § 702 and 49 U.S.C. § 46110(a) is the APA's concept of *finality*—not the APA's separate and distinct definition of "order."

## C.    Judge Taylor Did Not Err in Concluding that Finality Is Dispositive

Plaintiffs contend that Judge Taylor erred because she "failed to consider that finality *might* be a necessary but insufficient condition to qualify as a final order."  Pls.' Objs. at 13 (emphasis added). Plaintiffs provide no persuasive support for that proposition.  Nor could they.  That is because the Third Circuit's binding and unequivocal ruling—which Judge Taylor correctly applied—makes clear that "to be reviewable under section 46110(a), an 'order' must be final, but need not be a formal order, the product of a formal decision-making process, or be issued personally by the Administrator." *Aerosource*, 142 F.3d at 578.  *See also id.* ("Of course, it also must impose an obligation, deny a right, or fix some legal relationship.").  Nothing more, nothing less.

Plaintiffs nevertheless attempt to distinguish *Aerosource* on the basis that that case dealt with the narrow issue of whether the agency's advisory warning and follow-on letters were sufficiently formal and final to constitute final agency action. Pls.' Objs. at 13. But the holding in *Aerosource* cannot reasonably be cabined to merely answering the question of whether *certain* agency actions were sufficiently formal and final enough to constitute an "order" under § 46110(a). Such a constrained reading ignores the very rationale underpinning that decision, where the Third Circuit explained that while it had "not yet determined what constitutes an 'order' within the meaning of 49 U.S.C. § 46110(a)," courts have held that "order" in § 1486 (§ 46110's predecessor) "'applies to an[y] agency decision which imposes an obligation, denies a right, or fixes some legal relationship' and which is final." *Aerosource*, 142 F.3d at 577. Thus, in determining that "there seems to be no reason why the judicial limitations [in section 1486] should not apply equally to section 46110(a), the current version of the statute," the Third Circuit clearly held that "to be reviewable under section 46110(a), an 'order' must be final, but need not be a formal order, the product of a formal decision-making process, or be issued personally by the Administrator." *Id.* at 578.[4] Plaintiffs' attempt to manufacture a factual distinction cannot erase the Third Circuit's clear and applicable holding.

In the same vein, Plaintiffs argue that Judge Taylor erred because the *Aerosource* court actually relied on *Southern California Aerial Advertisers Ass'n v. FAA*, 881 F.2d 672 (9th Cir. 1989), where the Ninth Circuit separately "noted" that finality was merely one of three factors relevant to determining what constitutes an order under § 46110. Pls.' Objs. at 13. Plaintiffs' error in asserting that argument,

---

[4] Plaintiffs likewise contend that *Aerosource* is distinguishable because the agency had been engaged in ongoing, individualized adjudication with respect to Aerosource's deficiencies. *See* Pls.' Objs. at 13. The Third Circuit, however, did not conclude that ongoing agency investigations constitute *adjudication*, let alone the type of formal adjudication that purportedly attaches to such a proceeding under Plaintiffs' strained reading of § 46110(a). *See supra.* In any event, the Third Circuit's discussion of the ongoing nature of the investigation and tentative recommendations made by the agency clearly relate to the core question of finality.

10

however, is two-fold. *First*, the Third Circuit did not adopt the Ninth Circuit's mere recognition that certain factors may be relevant for determining what constitutes an "order" as part of its holding. Indeed, the Third Circuit made no mention of the APA's definition of order or an administrative record when it held—consistent with "other courts of appeals"—that "to be reviewable under section 46110(a), an 'order' must be final, but need not be a formal order, the product of a formal decision-making process, or be issued personally by the Administrator." *Aerosource*, 142 F.3d at 578.

*Second*, Plaintiffs err in assuming that the Ninth Circuit's dicta in *Southern California* somehow saves their textual APA arguments. There, the Ninth Circuit ultimately held that under the predecessor statute to § 46110(a), it "may review a petitioner's claims regarding final agency action other than formal rulemaking so long as an administrative record adequate to permit evaluation of those claims exists." *S. Cal. Aerial Advertisers' Ass'n*, 881 F.2d at 676. *See also id.* at 675 n.4 (explaining that other courts have construed "§ 1486(a) to permit direct review of regulations promulgated through informal notice and comment rulemaking"). In other words, even if the TSA SOPs and MD were considered to be the product of rulemaking (as Plaintiffs wrongly contend), the Ninth Circuit still recognized that such informal rulemaking may be reviewable in the courts of appeals.

Regardless, Plaintiffs' misplaced reliance on *Southern California* is nothing more than an attempt to resuscitate their unfounded, textual APA arguments by invoking a passing reference to Ninth Circuit dicta that the Third Circuit did not expressly adopt. Such invocations do not convert the Third Circuit's clear proscription that "orders" for purposes of § 46110(a) turn on the singular concept of finality. That Plaintiffs do not dispute the finality, nor the formality, of the TSA SOPs and MD ends the matter.

## II. Every Federal Court to Have Considered the Issue Has Held that TSA's Challenged Policies Are Final Orders Under § 46110(a)

Unable to marshal any authority construing § 46110(a) as they do, Plaintiffs take issue with Judge Taylor's conclusion that "six other circuit courts have held that TSA policies are final orders for

11

purposes of Section 46110." R&R at 11. To be sure, Plaintiffs do not actually contest that conclusion but instead argue that four out of those six circuits simply got it wrong. *See* Pls.' Objs. at 14. In their view, those circuit courts erred because they conflated the concept of finality with "order," failed to analyze the statutory text of § 46110, and, as a result, construed "order" to cover "practically anything issued by TSA or FAA." *Id.* at 17 (emphasis omitted). What Plaintiffs fail to understand, however, is that every federal court to have considered the issue has determined that "order" under § 46110 turns on whether the agency action was considered final. *See, e.g.*, *Roberts v. Napolitano*, 463 F. App'x 4, *4–5 (D.C. Cir. 2012) ("Because the challenged SOPs constitute final agency action—that is, they took effect without need for further agency action and 'give rise to legal consequences'—the SOPs are 'orders' within the meaning of section 46110." (citation omitted)); *Ruskai v. Pistole*, 775 F.3d 61, 65 (1st Cir. 2014) (recognizing that TSA security directives are reviewable orders and that "order" under § 46110 should be read expansively); *Gilmore v. Gonzales*, 435 F.3d 1125, 1133 (9th Cir. 2006) (concluding "that the TSA Security Directive is final within the meaning of § 46110(a)"); *Tulsa Airports Improvement Tr. v. FAA*, 839 F.3d 945, 949 (10th Cir. 2016) (recognizing that "circuits that have considered the meaning of 'order' under this section or its predecessor, 49 U.S.C. § 1486, have concluded that an agency decision is an 'order' only if it possesses 'the quintessential feature of agency decisionmaking suitable for judicial review: finality'" (citation omitted)); *Corbett v. United States*, 458 F. App'x 866, *870 (11th Cir. 2012) ("the SOP was an order under § 46110" because it "imposes obligations on air passengers"); *Muir v. U.S. Transp. Sec. Admin.*, No. 1:20-cv-01280, 2021 WL 231733, at *11 (C.D. Ill. Jan. 22, 2021) ("The SOP has been widely and uniformly held to be a final order within the meaning of § 46110(a), and challenges to the SOP therefore lie within the exclusive jurisdiction of the courts of appeals."), *aff'd*, 857 F. App'x 251 (7th Cir. 2021); *Frey v. Town of Jackson*, No. 19-cv-50-F, 2019 WL 13260516, at *19 (D. Wyo. Dec. 2, 2019) ("the SOP are final for purposes of being a § 46110 'order'").

12

In other words, that prevailing conclusion among federal courts is not conflation, but rather a straight-forward application of precedent.[5]

As to Plaintiffs' suggestion that federal courts have not meaningfully grappled with the text, that too falls flat. The Fourth Circuit in *Blitz v. Napolitano* expressly considered Plaintiffs' same textual argument—that § 46110(a) "applies only to orders issued by the TSA Administrator after the completion of adjudicatory proceedings where affected persons have been accorded an opportunity to participate." 700 F.3d 733, 740 (4th Cir. 2012). It squarely rejected Plaintiffs' same attempt to incorporate § 46105, noting that "[n]one of our sister circuits have adopted such a narrow view of § 46110, however, and the adoption of the Plaintiffs' interpretation would contravene *the plain language of the statute* and controlling precedent." *Id.* (emphasis added). Other federal courts (which Plaintiffs conveniently ignore) likewise have engaged in the type of textual analysis that Plaintiffs unilaterally require. In *Durso v. Napolitano*, the district court explained that "§ 46110 and § 46105 do not use the term 'order' in the same way," as "the former's use of the term is broader, 'because of its function in providing for judicial review.'" 795 F. Supp. 2d 63, 68 (D.D.C. 2011) (quoting *Avia Dynamics, Inc. v. FAA*, 641 F.3d 515, 520 (D.C. Cir. 2011)). *See also Ventura*, 828 F. Supp. 2d at 1042 (same). Thus, the *Durso* court concluded, "the fact that § 46105(b) requires 'orders' to include factual findings and be served on affected parties does not mean that an agency determination made without those steps is not an 'order' for the purposes of § 46110." 795 F. Supp. 2d at 68–69.[6]

---

[5] Plaintiffs likewise contend that those circuit courts erred because they improperly relied on binding precedent within their respective circuits, rather than engage with the plain language of the statute. Pls.' Objs. at 17. That position is utterly perplexing. The fact that those federal courts applied the then-binding textual analysis of § 46110(a)'s predecessor statute to § 46110—when there is no meaningful difference between the two—does not confess error.

[6] Plaintiffs' emphasis on statutory construction is fundamentally disingenuous and misleading. *See* Pls.' Objs. at 17. "[S]tatutory terms are generally interpreted in accordance with their ordinary meaning," *Sebelius*, 569 U.S. at 376, and Plaintiffs provide no rebuttal to the plain meaning of the term "order" in § 46110(a), when it was first enacted in 1938. *See supra* § I.A.

Finally, Plaintiffs' rehashing of the First Circuit's decision in *Ruskai* likewise misses the mark. Plaintiffs argue that the First Circuit found a final order for purposes of § 46110 in *Ruskai* because the plaintiff challenged both "TSA's security protocol and refusal to grant [plaintiff's] requested accommodation." 775 F.3d at 65. But the First Circuit's exercise of exclusive jurisdiction did not turn on the secondary challenge to the denial of an accommodation, as demonstrated by the First Circuit's reliance on *Blitz*, 700 F.3d at 740, which squarely held that the SOPs at issue here are orders under § 46110(a), and *Gilmore*, 435 F.3d at 1133, which held that a TSA directive was an "'order' within the meaning of § 46110(a)."[7]

At bottom, nothing in Plaintiffs' objection changes the fact that every federal court to have considered the issue has conclusively held that the TSA SOPs and MD are "orders" under § 46110(a). So too here, this Court should dismiss Counts I and II for lack of subject-matter jurisdiction.

### III.    Purported Disputes over the Adequacy of the Administrative Record Do Not Confer Jurisdiction on This Court

In the alternative, Plaintiffs contend that the out-of-circuit decisions Judge Taylor relied on require "the availability of a record for review," Pls.' Objs. at 17 (quotations omitted)—never mind that Judge Taylor did not address the issue and that the Third Circuit is effectively silent on this score. Yet Plaintiffs do not explain how purported deficiencies in the administrative record somehow confer jurisdiction over *this* Court. Nor do they explain why factual disputes over implementation of the challenged policies have any bearing on the purely jurisdictional question at issue here. That is because this Court's determination of whether TSA's challenged polices are "orders" under § 46110(a) does not require any contested fact-finding or evaluation of an administrative record. *See, e.g.*, *Blitz*, 700 F.3d at 739 (concluding that "[i]n these circumstances," where no administrative record has been filed,

---

[7] Notably, TSA did not formally "adjudicate" the request in *Ruskai*, as Plaintiffs suggest. "[T]he order here was the result of informal agency action, not an administrative hearing or public notice and comment." *Ruskai*, 775 F.3d at 65.

"we have no trouble concluding that the Checkpoint Screening SOP is 'capable of review on the basis of an administrative record'" (citation omitted)); *Durso*, 795 F. Supp. 2d at 68 (because "the Screening Checkpoint SOP is final," "it need not be supported by an administrative record of any particular comprehensiveness to fall within the scope of § 46110"). Indeed, the out-of-circuit cases Plaintiffs cite only underscore that disputes over the adequacy of the administrative record may be raised in the appropriate courts of appeals, not as a means of conferring jurisdiction where none exists. *See S. Cal. Aerial Advertisers' Ass'n*, 881 F.2d at 676 (granting the petition for review and noting that the Ninth Circuit must "determin[e] whether the administrative record is an adequate basis for evaluating petitioner's three claims"); *San Diego Air Sports Ctr., Inc. v. FAA*, 887 F.2d 966, 969 (9th Cir. 1989) (noting that "[t]he limits of the record limit our jurisdiction" but nevertheless granting the petition for review). *See also Aerosource*, 142 F.3d at 578 n.10 ("We observe that while the courts recite that an appealable order must be based on a record sufficient to permit a meaningful review, they regularly find the record adequate for that purpose."); *St. John's United Church of Christ v. City of Chicago,* 502 F.3d 616, 628–29 (7th Cir. 2007) (concluding that courts of appeals have exclusive jurisdiction under § 46110, along with various options, including remand, for dealing with inadequate administrative records).

But even beyond that strained reading, Plaintiffs' arguments make little practical sense. They complain that the administrative record does not include discovery relating to how TSA interprets, implements, and trains TSA screeners with respect to the challenged policies. *See* Pls.' Objs. at 18–19. Yet Plaintiffs have already conceded that they are no longer challenging an informal or unwritten TSA policy (which prompted this Court to allow discovery in the first place). *See* R&R at 10 (explaining that the record "conclusively establishes that Plaintiffs are challenging the TSA's formal policies, which include SOPs"); Pls.' Objs. at 14 (conceding that Plaintiffs are challenging "formal, written policies contained in MD 100.4 and specific chapters of the SOP"). In other words, the substance of Plaintiffs'

15

Fourth Amendment/APA claim turns on the text of the policies itself, not the extrajudicial factual record predicated on Plaintiffs' now-withdrawn challenge to TSA's purported "informal" policies.[8]

## IV.   Appellate Courts Retain Jurisdiction over Programmatic Challenges Under § 46110(a)

Plaintiffs next claim that jurisdiction vests in this Court under the collateral-challenge doctrine. *See* Pls.' Objs. at 20.  To be sure, Judge Taylor did not address that issue in her R&R, and so Plaintiffs' objections fall outside the scope of review.  *See* Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the *proposed findings and recommendations*." (emphasis added)).  *See also* LCvR 72.D.2 (The objecting party's written objections "shall specifically identify the portions of the proposed, recommendations or report to which objection is made and the basis for such objections.").

Nevertheless, Plaintiffs' reliance on *Reno v. Catholic Social Services* and *McNary v. Hatian Refugee Center* is fundamentally misplaced.  Both *Reno* and *McNary* addressed statutes that channeled judicial review of the denial of individual immigration applications and authorized district courts to exercise jurisdiction over programmatic challenges.  *Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 56 (1993); *McNary v. Haitian Refuge Ctr., Inc.*, 498 U.S. 479, 492 (1991).  Those cases have no bearing on § 46110, which, by contrast, grants exclusive jurisdiction to courts of appeals for review of even programmatic orders. *See, e.g.*, *Gilmore*, 435 F.3d at 1133 n.9 ("Gilmore's other claims are as-applied challenges as opposed to broad facial challenges.  Given that they arise out of the particular facts of Gilmore's encounter with Southwest Airlines, these claims must be brought before the courts of appeals."); *Durso*, 795 F. Supp. 2d at 72 ("[P]laintiffs' constitutional claim is inescapably intertwined with a review of the Screening Checkpoint SOP because a court of appeals reviewing the SOP could rule on that claim

---

[8] Plaintiffs' comparison of the administrative record here is likewise inapt.  As Plaintiffs concede, the administrative record—which includes several iterations of the challenged policies and e-mail communications surrounding the implementation of those policies—is markedly different from the submitted administrative record in *San Diego Air Sports*, "which consisted of little more than the appealed letter."  887 F.2d at 969; *S. Cal. Aerial Advertisers' Ass'n*, 881 F.2d at 676 (similar).

and could, by setting aside or modifying the SOP, provide approximately the remedy that plaintiffs request.").

Indeed, as the Eleventh Circuit helpfully explained, *McNary* is distinguishable because the "statute at issue . . . required appellate courts to review the Immigration and Naturalization Service's denial of an alien's application for an adjustment of status." *Corbett*, 458 F. App'x at *870. In other words, unlike Plaintiffs here—who challenge a formal set of policies—the *McNary* "plaintiffs challenged unconstitutional practices and procedures utilized in making [individual application] determinations rather than a single act or determination," and thus, "jurisdiction was not limited to the appellate courts." *Id. See also Blitz*, 700 F.3d at 742 ("Neither" *Reno* nor *McNary* "is helpful to the Plaintiffs" in this context, as § 46110 enacts a "very different" scheme, one which "does not deprive the Plaintiffs of meaningful judicial review.").

Undeterred, Plaintiffs attempt to double-down on the inapt *McNary* comparison by invoking *Mace v. Skinner*, which construed the statutory predecessor of § 46110 to authorize district court jurisdiction "over a *Bivens*-type action that challenges conduct arising out of an administrative agency decision." 34 F.3d 854, 856 (9th Cir. 1994). But *Mace* has no relevance here because it was predicated in part on the fact that the plaintiff was "seeking to recover damages, a remedy not found among the possibilities of" the statute's exclusive grant of jurisdiction. *Id.* at 858. And as the Ninth Circuit subsequently clarified, *Mace* does not apply to constitutional challenges that "squarely attack[] the orders issued by the TSA with respect to airport security" because review of those challenges is "inescapably intertwined with a review of the . . . order." *Gilmore*, 435 F.3d at 1133 n.9 (quoting *Mace*, 34 F.3d at 858). Yet that is exactly what Plaintiffs seek to do here. They ask this Court to enjoin and vacate (the same types of relief specified in § 46110) TSA SOPs and MD (the same types of

17

transportation-security based TSA orders that the Ninth Circuit addressed in *Gilmore*).[9]  Accordingly, Plaintiffs' invocation of the collateral-challenge doctrine does not save their jurisdictional defect.

## V.    Dismissal Is the Appropriate Remedy

Because this Court lacks subject-matter jurisdiction over Plaintiffs' challenge to TSA policies, it should adopt Judge Taylor's recommendation to dismiss the claims against TSA so that Plaintiffs may refile their claims in the appropriate court of appeals, in line with several other federal courts. *See, e.g.*, *Blitz*, 700 F.3d at 738 (affirming dismissal without prejudice based on § 46110); *Muir*, 2021 WL 231733, at *17 (similar).

Plaintiffs nevertheless contend that transfer (not dismissal) is the appropriate remedy. Pls.' Objs. at 21.  The statute governing transfer, however, does not in itself mandate transfer any time subject-matter jurisdiction is found to be lacking.  Rather, it instructs courts to transfer an action for "want of jurisdiction," "*if it is in the interest of justice*."  28 U.S.C. § 1631 (emphasis added).  But just as in briefing before Judge Taylor, Plaintiffs provide no compelling reason for transfer.  They claim that transfer would be appropriate so as not to "waste judicial and party resources after six years of litigation," "four of which were spent in intensive discovery."  Pls.' Objs. at 22.  But the parties only engaged in extensive and burdensome discovery because Plaintiffs initially alleged an "informal TSA policy" that they no longer challenge.  Plaintiffs should not be able to double-down on their strategy of extracting irrelevant and burdensome discovery, when they concede that their challenge is now limited to the implementation of the formalized and final TSA policies.  Nor should Defendants be prejudiced on appellate review with extraneous discovery unrelated to the claims actually at issue in this case, when Plaintiffs effectively forfeited their transfer arguments in the briefing before Judge

---

[9] Plaintiffs' reliance on *Merritt v. Shuttle, Inc.*, fares no better.  There, the Second Circuit declined to "decide whether a broad-based, facial constitutional attack on an FAA policy or procedure . . . might constitute . . . a stand-alone federal suit," 187 F.3d 263, 271 (2d Cir. 1999), and thus does not help Plaintiffs here.

Taylor.  *See* Combined Reply in Supp. of Defs.' Mot. for Summ. J. on Counts I & II & Opp'n to Pls.' Cross-Mot. for Summ. J. at 8, ECF No. 179 (arguing that Plaintiffs did not explain why transfer would be in the interest of justice or even indicate to which court of appeals this action should be transferred until reply); *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief, and for those purposes 'a passing reference to an issue . . . will not suffice to bring that issue before this court.'" (citation omitted)).  *See also Hayes v. Silvers, Langsam & Weitzman, P.C.*, 441 F. Supp. 3d 62, 67 n.5 (E.D. Pa. 2020) (explaining that arguments raised for the first time on reply are waived).  Indeed, when Congress contemplated passing the relevant provision of the Federal Courts Improvement Act, 28 U.S.C. § 1631, it sought to "aid litigants who were confused about the proper forum for review," not reward sophisticated litigants who improperly imposed a fishing expedition on the government based on vague (and now specious) allegations.  *See Am. Beef Packers, Inc. v. Interstate Com. Comm'n*, 711 F.2d 388, 390 (D.C. Cir. 1983) (citing S. Rep. No. 97-275, at 11 (1981), *as reprinted in* 1982 U.S.C.C.A.N. 11, 21).

Plaintiffs likewise do not meaningfully explain why forcing them to refile in the appropriate court of appeals would actually save judicial and party resources, as they merely regurgitate boilerplate resource concerns—despite the fact that their cited cases include specific reasons for transfer and/or were predicted on dismissal for want of personal jurisdiction.  *See, e.g.*, *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 224 (3d Cir. 2016) (finding error in district court's dismissal for lack of personal jurisdiction because it mistakenly applied the first-filed rule); *Miller v. Hambrick*, 905 F.2d 259, 261 (9th Cir. 1990) (concluding that transfer of *pro se* habeas petition to different district was in the interest of justice because prisoner had originally filed in the proper district prior to being moved within the prison system); *Farber v. Tennant Truck Lines, Inc.*, 84 F. Supp. 3d 421, 435 (E.D. Pa. 2015) (allowing for transfer of venue because "it lacks personal jurisdiction over both Defendants"); *Paul v. I.N.S.*, 348 F.3d 43,

19

46–48 (2d Cir. 2003) (concluding that *pro se* immigration petitioner did not file "in bad faith" and that a new action would likely be barred due to the "strict thirty-day statutory deadline").

But even as a practical matter, this case differs markedly because Plaintiffs brought claims against DEA *and* TSA, and, after the close of fact discovery, conceded their informal, unwritten policy claims. Put differently, transfer, as Plaintiffs request, is not as simple as turning this case over wholesale to the D.C. Circuit. On the contrary, it would require this Court to excise portions of the TSA record before transferring it to the appropriate court of appeals. *See* Pls.' Objs. at 24 ("Plaintiffs respectfully request the opportunity to move to bifurcate the TSA and DEA portions of the case to avoid any unintentional transfer of Plaintiffs' claims against DEA."). And it would likely require this Court to resolve questions of record adequacy given Plaintiffs' insistence that the entirety of the discovery record relating to TSA be submitted to the relevant court of appeals—despite prevailing consensus that appellate review be limited to the appropriate administrative record, and Plaintiffs' concession that they are only challenging TSA's final (and formal) written policies.

By contrast, if this Court were to dismiss the claims against TSA for lack of subject-matter jurisdiction (consistent with Judge Taylor's recommendation), Plaintiffs could more easily narrow any petition to the issues (and policies) actually challenged. Only then can the reviewing appellate court with jurisdiction—not the district court that lacks subject-matter jurisdiction—make relevant determinations as to the sufficiency of the administrative record. *See supra* § III. *See also Aerosource*, 142 F.3d at 578 n.10 ("We observe that while the courts recite that an appealable order must be based on a record sufficient to permit a meaningful review, they regularly find the record adequate for that purpose."). In short, transferring this case and its voluminous record directly to a court of appeals for purposes of addressing newly narrowed claims is likely to complicate further proceedings, not streamline them.

Finally, even if Judge Taylor erred in failing to determine whether the interests of justice

require transfer, this Court has "'broad discretion' not to transfer." *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 132 (3d Cir. 2020) (quoting *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995)). It should thus likewise conclude, as the Third Circuit has instructed, that "'the interests of justice' do not demand transfer," because Plaintiffs "may, on [their] own, refile [this] case in a proper forum." *Id.* at 133; *see also Blitz*, 700 F.3d at 738 (affirming dismissal without prejudice based on § 46110).[10]

## CONCLUSION

Judge Taylor did not err in recommending dismissal for want of subject-matter jurisdiction, as binding Third Circuit precedent and the clear statutory text of § 46110 compel such a result. For these reasons, Defendants respectfully request that the Court adopt Judge Taylor's R&R and dismiss the claims against TSA for lack of subject-matter jurisdiction.[11]

---

[10] This Court need not adopt the rationale underlying Judge Taylor's recommendation for dismissal under Rule 12(h)(3), given that the interests of justice do not require transfer. *See supra*; 28 U.S.C. § 636(b)(1) ("[The district] judge of the court may 'accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.'"). Nevertheless, Plaintiffs' reliance on *McLaughlin v. Arco Polymers, Inc.*, 721 F.2d 426 (3d Cir. 1983), is misplaced, as the Third Circuit merely indicated that Rule 12's bar on transfer has been weakened by 28 U.S.C. § 1631, not that Rule 12 does not militate in favor of dismissal on these facts. Likewise, in *Tootle v. Secretary of Navy*, the D.C. Circuit explicitly recognized that "[a] district court must dismiss an action where, as here, it concludes that it lacks subject matter jurisdiction." 446 F.3d 167, 172 (D.C. Cir. 2006). It then rejected the district court's attempt to dismiss *and* transfer the case (under Rule 12 and § 1631, respectively), clarifying that the district court must either dismiss *or* transfer. *Id.* at 172–73. Put simply, *Tootle* stands for the proposition that either dismissal or transfer may be appropriate. It does not stand for the proposition that § 1631 somehow undercuts this Court's ability to dismiss for lack of subject-matter jurisdiction under Rule 12.

[11] Plaintiffs request that, should this Court retain jurisdiction, it should obviate the report-and-recommendation process on any remaining merits issues. Defendants take no position on this request and defer to this Court's judgment on process.

21

Dated: March 18, 2026                    Respectfully submitted,

                                         BRETT A. SHUMATE
                                         Assistant Attorney General
                                         Civil Division

                                         ANDREW I. WARDEN
                                         Assistant Branch Director
                                         Civil Division, Federal Programs Branch

                                         */s/ Sarah M. Suwanda*
                                         SARAH M. SUWANDA
                                         Trial Attorney
                                         Federal Programs Branch
                                         U.S. Department of Justice, Civil Division
                                         1100 L Street, NW
                                         Washington, D.C. 20005
                                         Tel.: (202) 306-3195
                                         E-mail: sarah.m.suwanda@usdoj.gov

                                         *Counsel for Defendants*

22